TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

PAUL A. TURCKE (Idaho Bar No. 4759)
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
202-353-1389 || 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | |
| THE STATE OF ALASKA, THE ALASKA DEPARTMENT OF FISH & GAME, and DOUG VINCENT-LANG, in his official capacity as Commissioner of the Alaska Department of Fish & Game, | Case No. |
| Defendants, | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff the United States of America, through its undersigned attorneys, by the authority of the Attorney General, and at the request of the United States Department of the Interior and the United States Department of Agriculture, through their Federal Subsistence Board, brings this civil action for declaratory and injunctive relief against Defendants State of Alaska, its Department of Fish & Game and Commissioner Doug Vincent-Lang (collectively, the "State of Alaska" or "State"), and alleges as follows:

## INTRODUCTION

1.      The United States brings this action against the State of Alaska to protect subsistence use of the Kuskokwim River Chinook and chum salmon populations by local rural residents who depend on these salmon for their physical, economic, traditional, and cultural existence.  The United States seeks a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that the State's actions in contravention of a rural Alaskan subsistence priority are preempted by federal law and are therefore unlawful.

2.      Title VIII of the Alaska National Interest Lands Conservation Act, Pub. L. No. 96-487, 94 Stat. 2371, 2371-2551 (1980) (codified at 16 U.S.C. §§ 3111–3126) ("ANILCA"), requires the Secretaries of the Interior and Agriculture to accord priority for the nonwasteful subsistence uses by rural Alaskans of fish and wildlife on public lands in Alaska.  16 U.S.C. § 3114.

3.      The Federal Subsistence Board ("FSB") accomplishes this mandate, under a delegation from the Secretaries of the Interior and Agriculture, through the adoption of regulations that implement the rural priority in a manner consistent with the preservation

of healthy populations of fish and wildlife within national wildlife refuges and other conservation system units in Alaska. 16 U.S.C. § 3124-5; 50 C.F.R. § 100.18. This includes the FSB's authority to: (a) adopt short-term emergency special actions to restrict or close public lands to the taking of fish and wildlife for non-subsistence uses when necessary to ensure the conservation of healthy populations of fish and wildlife or to continue subsistence uses, 16 U.S.C. § 3125(3); 50 C.F.R. § 100.19; and (b) to re-delegate its authority to agency field officials to set harvest limits, define harvest areas, and open or close harvest seasons within frameworks established by the FSB, 50 C.F.R. § 100.10(d)(6).

4. In 2021 and 2022, the FSB and agency field officials exercised their authority under ANILCA to issue emergency special actions to close the 180-mile-long section of the Kuskokwim River within the Yukon Delta National Wildlife Refuge (the "Refuge") to non-subsistence uses, while allowing limited subsistence uses by local rural residents under narrowly prescribed terms and means of harvest. The FSB and authorized agency officials determined these actions to be necessary to conserve the fish population for continued subsistence uses of the Chinook salmon upon which rural residents of the area depend.

5. In contravention of the federal regulatory scheme of ANILCA Title VIII and the associated federal regulatory actions addressing Kuskokwim River fishing within the Refuge, the State of Alaska, through the Alaska Department of Fish & Game ("ADF&G"), issued emergency orders in 2021 and 2022 that purported to provide

opportunities for all Alaskans – not just rural Alaskan subsistence users – to fish on the same stretch of the Kuskokwim River that had been closed to non-subsistence harvest by federal emergency special action.

6. The State of Alaska's actions conflict with ANILCA Title VIII and federal regulations. The State's actions threaten the conservation of the Chinook and chum salmon populations, usurp the rural priority, and reduce opportunities for those who are most dependent on the salmon resources of the Kuskokwim River for their physical, economic, traditional, and cultural existence – local rural residents.

7. The United States therefore seeks a declaratory judgment that the State's regulatory actions that contravene or interfere with federal actions are preempted by federal law. The United States also seeks to enjoin the State of Alaska, ADF&G, and their officers, employees, and agents from continuing to adopt, implement or enforce any state action that purports to authorize or encourage harvest of fish or wildlife that contravenes or interferes with federal law or regulatory actions instituted by the FSB or authorized federal officials.

## PARTIES

8. Plaintiff is the United States of America, acting through the United States Department of the Interior and the United States Department of Agriculture, and the FSB. The FSB administers subsistence uses in Alaska pursuant to and in accordance with federal law.

9. Defendant, the State of Alaska, is a State of the United States. The State of

Alaska includes all of its officers, employees, and agents.

10.     Defendant ADF&G is an agency of the State of Alaska charged with implementing state law to manage, protect, maintain, improve, and extend the fish, game, and aquatic resources of Alaska.

11.     At all times relevant to the events that are the subject of this dispute, Defendant Doug Vincent-Lang has served as Commissioner of the ADF&G. Commissioner Vincent-Lang is the highest-ranking official within the ADF&G and, in that capacity, has ultimate responsibilities for the administration and implementation of fish and wildlife management under Alaska law and for ADF&G's compliance with all applicable federal laws.  He is sued in his official capacity.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1345 (United States as plaintiff), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 2202 (injunctive relief).

13.     Venue is proper in the District of Alaska pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendants reside within this judicial district, a substantial part of the acts or omissions giving rise to this action arose from events occurring within this judicial district, and the Kuskokwim River and Refuge are situated in this judicial district.

## LEGAL BACKGROUND

14.     The Supremacy Clause states "[t]his Constitution, and the laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall

be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."  U.S. Const. art. VI, cl. 2.

15.     Over forty years ago, Congress passed ANILCA, which combined three existing National Wildlife Ranges or Refuges, including all "lands, waters, and interests," as well as approximately 13.4 million acres of additional public lands, to establish the Refuge.  ANILCA § 303(7)(A), 94 Stat. 2392.  ANILCA directed that the Refuge be managed as part of the National Wildlife Refuge System "to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to . . . salmon [. . . .]"  ANILCA § 303(7)(B)(i), 94 Stat. 2392.  ANILCA also directed that the Refuge be managed "to provide . . . the opportunity for continued subsistence uses by *local* residents."  ANILCA § 303(7)(B)(iii), 94 Stat. 2393 (emphasis added).

16.     ANILCA Title VIII requires the Secretaries of the Interior and Agriculture, and therefore the FSB, to implement a priority for the nonwasteful "subsistence uses" of fish and wildlife on public lands in Alaska over the taking on such lands of fish and wildlife for other purposes.  16 U.S.C. § 3114.

17.     The phrase "subsistence uses" is defined in ANILCA as "customary and traditional uses by *rural* Alaska residents of wild, renewable resources for direct personal and family consumption as food, shelter, fuel, clothing, tools, or transportation; for the making and selling of handicraft articles out of nonedible byproducts of fish and wildlife resources taken for personal or family consumption; for barter, or sharing for personal or family consumption; and for customary trade."  16 U.S.C. § 3113 (emphasis added).

18. Congress implemented the rural subsistence use priority after finding that:

a. The continuation of the opportunity for subsistence uses by rural residents of Alaska on public lands is essential to both Native physical, economic, traditional, and cultural existence, and to non-Native physical, economic, traditional and social existence;

b. The situation in Alaska is unique in that, in most cases, no other practical alternatives are available to replace the food supplies gathered from fish and wildlife resources by rural residents dependent on these resources; and

c. Continuation of the opportunity for subsistence uses is threatened by the increasing population of Alaska. 16 U.S.C. § 3111.

19. The Ninth Circuit has affirmed the "great emphasis" placed by Congress on providing rural Alaskans with an opportunity to maintain a subsistence way of life and the FSB's obligation to provide rural subsistence users with a meaningful use preference. *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1192-93 (9th Cir. 2000); *see also Native Vill. of Quinhagak v. United States*, 35 F.3d 388 (9th Cir. 1994).

20. The FSB generally implements the rural priority through the adoption of permanent regulations on a biennial cycle, issuing wildlife regulations in even-numbered years and fisheries regulations in odd-numbered years. 16 U.S.C. § 3124; 50 C.F.R. § 100.18.[1] During the intervening periods, the FSB may also adopt temporary or emergency special actions when necessary for conservation or to continue subsistence

---

[1] Identical regulations promulgated by the Department of Agriculture are found at 36 C.F.R. Part 242. Citations herein are to the Department of the Interior regulations at Title 50, Part 100 of the Code of Federal Regulations.

uses, among other reasons. 16 U.S.C. § 3126; 50 C.F.R. § 100.19. In the interest of efficiency in decision-making and reliance on local expertise, the FSB often re-delegates its authority to federal land managers in the field who are best situated to adopt out-of-cycle special actions within their units that are necessitated by changing circumstances or conditions to address the rural subsistence use priority, conservation needs, or other considerations. 50 C.F.R. § 100.10(d)(6). This re-delegation is particularly necessary and beneficial to address uncertain predictions and rapidly changing conditions as actual run strength information becomes available during the salmon spawning season.

21.     The Refuge manager has been delegated the authority by the FSB to serve as the local agency decision maker for the Kuskokwim River.

## FACTUAL BACKGROUND

## The Kuskokwim River and Chinook Conservation

22.     At over 700 miles long, the Kuskokwim River is the longest free-flowing river in the United States. It drains a remote area of the Alaska interior on the north and west side of the Alaska Range and flows generally westward into Kuskokwim Bay on the Bering Sea. There are numerous subsistence-dependent rural villages along the river and its tributaries, most of whose residents are members of the thirty-three different federally recognized tribes located in the Kuskokwim drainage area. The lower 180 river miles are within the boundaries of the Refuge.

23.     The Kuskokwim River supports stocks of Chinook (or king), chum (dog), sockeye (red), humpback (pink), and coho (silver) salmon. To conserve healthy

populations of salmon, the State of Alaska has established minimum goals for escapement of the five species of salmon to allow them to spawn. Escapement refers to the number of fish allowed to escape the active fishery and reach traditional spawning areas. The State expresses its escapement goal for Chinook on the Kuskokwim as a range of between 65,000 and 120,000 fish. However, both the federal in-season manager and Kuskokwim River Inter-Tribal Fish Commission (the "Inter-Tribal Fish Commission"), which is comprised of local residents with traditional ecological knowledge of salmon fisheries as well as a former federal biologist, have concluded that the escapement goal must be set at a minimum of 110,000 to preserve future run strength.

24.     While the 25-year average escapement is 243,000 Chinook, even the minimum State escapement goals were not met in 2010, 2011, 2012, 2013, and were just barely met in several other recent years despite conservation efforts.[2]  When fishing is open, the average annual subsistence harvest is 87,000 Chinook. The Chinook harvest constituting the amount necessary for subsistence uses is 67,200 to 109,800 fish.

25.     The Kuskokwim River has historically supported Alaska's largest subsistence salmon fishery, based on both numbers of rural residents supported and

---

[2]      Data that is more recent reflects a continuing trend, if not increasingly dire circumstances. On January 21, 2022, at the request of the Alaska Governor, the National Oceanic and Atmospheric Administration issued multiple fishery disaster determinations, including for the 2020 Kuskokwim salmon fishery. *See* https://www.noaa.gov/news-release/secretary-of-commerce-issues-multiple-fishery-disaster-determinations-for-alaska (last visited May 16, 2022). Among other criteria, this determination requires a finding of fishery impacts from "natural causes beyond the control of fishery managers to mitigate."

salmon harvested. Per capita income in this area is among the lowest in the State, with a disproportionately high production of wild foods for local use. Salmon traditionally comprise about half of the total weight of food produced for local village residents. The importance of salmon to local residents, and particularly Chinook, extends beyond nutrition. Coexistence with, and harvest of, these fish are interwoven with these communities' sociocultural identity and way of life.

26. When the population of one species is low but others remain healthy, conservation efforts are complicated by the fact that the run timing of these different species overlap such that it is impossible to fish for the healthy species without inadvertently catching those for which there is a conservation need. Gillnetting is the only practical method for catching enough salmon to meet subsistence needs on the Kuskokwim, but fish caught in gillnets do not survive and cannot be returned to the river unharmed.

27. Since at least 2009, the Kuskokwim Chinook runs have been significantly below historic levels, causing local residents to supplement their catch with other species to address subsistence harvest needs. These particularly include chum salmon, which have become critical for food security and are also necessary for unique traditional foods that cannot be prepared using other species. However, the 2021 Kuskokwim chum salmon returns were "the lowest on record" with estimated escapement of only 4,153 in comparison to the target escapement of 15,000-49,000 for chum salmon. *See* https://www.adfg.alaska.gov/static/applications/dcfnewsrelease/1345527186.pdf at 4 (last

visited May 16, 2022).

<u>**Federal Actions and Conflicting State Actions**</u>

28.     Every year since 2012, in response to the downward trend in the Chinook salmon population and the repeatedly low numbers predicted by the State's pre-season run projections, both federal and state managers have announced emergency closures to gillnet fishing at the start of the season for a period of at least several weeks until run strength can be verified and adequate escapement assured.

29.     These closures are typically punctuated by short openings to certain types of fishing by federally qualified subsistence users.  Federal decision-making with respect to the details of these openings always follows pre-season and in-season coordination between state and federal managers, and consultation with the Inter-Tribal Fish Commission, a State advisory group called the Kuskokwim River Salmon Management Working Group, and the Chair of the local Subsistence Regional Advisory Council.  It is also common for the federal manager to hold pre-season public outreach meetings in villages along the river.

30.     Following a series of discussions with the Inter-Tribal Fish Commission and ADF&G representatives starting in late 2020 and the first half of 2021 in preparation for the upcoming season, including a telephonic meeting to receive public comments, the federal in-season manager with delegated authority from the FSB, Mr. Boyd Blihovde, issued a federal emergency special action on May 7, 2021, in which he closed the Kuskokwim River main stem to the harvest of all salmon by using gillnets, and also

closed various tributaries to the harvest of Chinook and the use of all gillnets effective June 1, 2021. *See* Exhibit 1, Emergency Special Action ("ESA") #3-KS-01-21. Subsistence fishing for salmon was permitted by federally qualified subsistence users only, using dip nets, rod and reel, and other methods allowing for the live release of Chinook. Except for federal subsistence-only openings, the federal closure remained in effect until July 22, 2021.

31.     When making his closure decision, Mr. Blihovde relied heavily on both ADF&G's preseason forecast of 94,000-155,000 Chinook and the historical Chinook subsistence harvest range of 67,200-109,800, which, if unrestricted, would mean an escapement projection ranging from 0 to 87,800, well under federal escapement goals under the best-case scenario. Moreover, much of that escapement range would fall below even the State's goal of 65,000, deemed necessary to maintain the Chinook salmon population.

32.     The same May 7th announcement included the following opportunities in the Kuskokwim main stem for federally qualified subsistence users only:

a.      The use of nearshore set gillnets on June 2, 5, and 9; and

b.      The use of set or drift gillnets during 12-hour periods on June 12 and 15.

33.     Mr. Blihovde subsequently announced additional openings to federally qualified subsistence users as follows:

a.      Harvest with set or drift gillnets for 12 hours on June 19. *See* Exhibit 1, ESA #3-KS-02-21.

b.      The use of set or drift gillnets downstream of Kalskag Bluffs during 9 or 12-hour periods on July 2, 9, and 16.  *See* Exhibit 1, ESA #3-KS-03-21.

c.      Harvest with nearshore set gillnets only on July 10-11, and 17-18.  *Id.*

34.     ADF&G initially announced a closure to the use of gillnets on the Kuskokwim within the Refuge for reasons of conservation from June 1 until further notice consistent with the federal closure.  *See* Exhibit 2, Emergency Order ("EO") #3-S-WR-01-21.  However, the State then proceeded to adopt several emergency orders purporting to authorize gillnet openings to all Alaskans on Refuge waters during some of the same periods that Mr. Blihovde announced openings for federally qualified subsistence users only, thereby directly undermining the federal subsistence priority:

a.      On May 11, ADF&G adopted an order providing subsistence fishing opportunities for all Alaskans along the entire length of the river within the Refuge to use of nearshore set gillnets on June 2, 5, and 9.  *See* Exhibit 2, EO #3-S-WR-02-21.

b.      On June 10, ADF&G ordered subsistence fishing opportunities for all Alaskans to use set or drift gillnets along the entire length of the river within the Refuge on June 12 and 15.  *See* Exhibit 2, EO #3-S-WR-04-21.

c.      On June 18, ADF&G adopted an order allowing opportunities for set or drift gillnet fishing in the easternmost section of the Kuskokwim River within the Refuge (known as section 3) starting on June 19 until further notice even though the federal closure remained in effect.  This announcement also allowed for the retention of Chinook salmon taken using other methods allowing live release.  *See* Exhibit 2, EO #3-S-WR-06-

21.

        d.      On June 25, the State announced set or drift gillnet fishing openings for 12 hours on June 28, and retention of Chinook caught by other means during that same 12-hour period from the mouth of the river upstream to the Kalskag Bluffs. This state opening was not mirrored by any federal subsistence opening at that time. *See* Exhibit 2, EO #3-S-WR-07-21.

        e.      On July 1, ADF&G adopted an order allowing multiple openings, including using set or drift gillnets in the main stem downstream of Kalskag Bluffs during 9 or 12-hour periods on July 2, 9, and 16 and using nearshore set gillnets on July 10 and 17. *See* Exhibit 2, EO #3-S-WR-08-21.

        35.     The effect of each of these announced opportunities for all Alaskans was to cause confusion and encourage violation of the federal closure by non-federally qualified subsistence users.

        36.     A similar pattern has begun for the 2022 Kuskokwim River salmon fishery. Following similar coordination and outreach as occurred leading up to the 2021 season, Mr. Blihovde issued a federal emergency special action on May 2, 2022, in which he closed the Kuskokwim River main stem to the gillnet harvest of all salmon, and also closed various tributaries to the harvest of Chinook and the use of all gillnets effective June 1, 2022. *See* Exhibit 1, ESA #3-KS-01-22.

        37.     As in 2021, this same announcement included limited openings for federally qualified users to harvest salmon by set gillnet on June 1, 4 and 8, 2022, and to

harvest salmon by set and drift gillnet on June 12 and 16, 2022. *Id*.

38.     In similar fashion as in 2021, ADF&G announced on May 13, 2022, a closure to the use of gillnets on the Kuskokwim within the Refuge for reasons of conservation from June 1 until further notice consistent with the federal closure. *See* Exhibit 2, EO #3-S-WR-01-22. And then ADF&G issued a second announcement on the same day, purporting to authorize gillnet openings to all Alaskans on Refuge waters on June 1, 4, and 8, 2022, during three of the same periods that Mr. Blihovde announced openings for federally qualified subsistence users only. *See* Exhibit 2, EO #3-S-WR-02-22.

39.     These State actions directly undermine the federal subsistence priority.

### Federal Efforts to Collaborate and Coordinate with ADF&G

40.     In 2014, Commissioner Vincent-Lang, who was then head of ADF&G's Division of Wildlife, appeared at a public meeting of the FSB and presented a statement on a variety of issues, including expressing the State's future intent to disregard federal closures and provide harvest openings for all Alaskans.[3] *See* Exhibit 3 at 2-8 (Excerpts from April 15, 2014, FSB meeting).

41.     On June 16, 2020, during an email exchange with then-U.S. Fish and Wildlife Service Regional Director and FSB Board member Greg Siekaniec concerning

---

[3]     Transcript of the Federal Subsistence Board Public Regulatory Meeting, Volume I, April 15, 2014, pg. 35. Vincent-Lang was not a state employee during the administration of Governor Walker (2014-2018) but was appointed Commissioner in 2019 after Governor Dunleavy was elected.

*United States v. Alaska*
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    15

the federal closure on the Kuskokwim, Commissioner Vincent-Lang repeated his earlier message, writing:

> The state will manage its state fisheries this season based on our escapement goals and projections. When we are comfortable to [sic] meeting our king goals and have surplus chum and sockeye we will open state subsistence fisheries for these species. We see no reason to restrict opportunity for state qualified users, especially those economically or socially displaced to an urban area. The state will not enforce a federal only fishery.

*See* Exhibit 3 at 9. State and federal law use the same definition of "subsistence use," but "state qualified users" include not just rural residents but "all Alaska residents[.]" *See* https://www.adfg.alaska.gov/index.cfm?adfg=subsistence.definition#:~:text=Both%20Al aska%20state%20law%20(AS,%2C%20barter%2C%20and%20customary%20trade (last visited May 16, 2022) (citing Alaska Stat. § 16.05.940(32)). Mr. Vincent-Lang's response ignored that the reason to restrict opportunity for those users is to prioritize federally qualified subsistence users consistent with ANILCA Title VIII.

42. In 2021, when the State started to adopt emergency orders purporting to authorize openings for subsistence harvest by all Alaskans on the Kuskokwim, the FSB initiated communications with Commissioner Vincent-Lang and the Alaska Board of Fisheries concerning the State's actions.

43. On May 27, 2021, the Board wrote a letter to "invite discussion" between federal and state officials to more effectively collaborate. The letter described Mr. Blihovde's pre-season planning efforts, the federal order closing harvest by non-federally qualified subsistence users, the State's May 11, 2021, adoption and announcement of a

harvest opportunity for all Alaskans, and the need to provide better public service through clear, unambiguous messaging to the residents of Alaska.  *See* Exhibit 3 at 10-11.

44.     In a response dated June 3, 2021, Commissioner Vincent-Lang declined to address the ANILCA rural subsistence priority, but instead conveyed the State's conclusion that there are sufficient salmon to allow harvest by all Alaskans and discussed his perceived obligation pursuant to the Alaska State Constitution to provide for all Alaskans.  *See* Exhibit 3 at 13.

45.     In a response dated June 24, 2021, FSB Chair Anthony Christianson explained the biological basis for the federal closure and reiterated the FSB's legal obligations under ANILCA Title VIII.  Mr. Christianson also expressed the need for the FSB and the State to work together to attempt to meet both state and federal mandates through coordinated planning efforts.  *See* Exhibit 3 at 16-17.

46.     The next day, the State announced an opportunity for subsistence gillnet harvest by all Alaskans to occur on June 28.  *See* Exhibit 2, EO #3-S-WR-07-21.  There was no opportunity under order of the FSB or the federal in-season manager for harvest on that date for federally qualified subsistence users.  Thus, even federally qualified subsistence users, who are also Alaskans qualified to fish under state subsistence rules, could not fish on that day without violating the federal closure.

47.     The State's action to authorize subsistence fishing by all Alaskans on June 28, 2021, put federal managers in the position of either ignoring anyone fishing in violation of the federal closure during the state opening, and thereby failing to provide for

the rural subsistence priority, or seeking to enforce the federal closure even though some of those fishing might actually have been federally qualified subsistence users believing their harvest was authorized by the state opening.

48.     On June 25, 2021, Chair Christianson sent another letter addressed to Commissioner Vincent-Lang and state managers for the Kuskokwim that concluded as follows:

> Your announcement of a gillnet opportunity for all Alaskans on Monday, June 28 is in violation of the current closure and of Federal law. Moreover, it invites Alaskans who may not understand the complex interplay between State and Federal law to unwittingly engage in unlawful activity. Accordingly, in the interests of public service and conservation of the resource, we ask that you immediately rescind the announced opening and refrain from further efforts to open State gillnet fisheries on the Kuskokwim River or its tributaries within the exterior boundaries of the Refuge while the current or any future Federal closures are in effect.

*See* Exhibit 3 at 20.

49.     Commissioner Vincent-Lang responded not to the FSB or to Chair Christianson, but to Mr. Siekaniec. In a letter dated June 30, 2021, the Commissioner wrote, "*[i]rrespective of federal authorities*, the State of Alaska has a constitutional responsibility to manage for sustainable salmon runs and provide a subsistence opportunity for Alaskans when there is a harvestable surplus of salmon." *See* Exhibit 3 at 21 (emphasis added). He then requested "meaningful cooperation *from* the federal government and its agents" and concluded that the State "will continue to manage the river and fishery based on its assessment of run strength." *Id*. at 22 (emphasis added).

50.     As these communications demonstrate, the FSB's efforts were

unsuccessful in seeking a cooperative or collaborative dialogue with Defendants that would facilitate or recognize the FSB's obligation to fulfill the ANILCA Title VIII subsistence priority for rural Alaskans.

51.     Instead, through the communications described in paragraphs 40-50, *supra*, the State has made clear that it will continue to take actions that undermine federal authority and interfere with the FSB's obligation to provide a subsistence priority to those most dependent on fish and wildlife resources in times of scarcity – the rural Alaskans who are federally qualified subsistence users.

## CLAIMS FOR RELIEF

### Count I – Declaratory Judgment

52.     Plaintiff hereby incorporates paragraphs 1 through 51 as if fully set forth herein.

53.     Invoking its constitutional authority over Native affairs and its constitutional authority under the Property Clause and the Commerce Clause, Congress enacted ANILCA's protections for subsistence uses.  16 U.S.C. § 3111(4).

54.     ANILCA addresses the conservation and harvest of fish and wildlife within certain areas of Alaska, including the Refuge.  In part, Congress directed that "nonwasteful subsistence uses of fish and wildlife . . . shall be the priority consumptive uses of all such resources on the public lands of Alaska" and that, when it is necessary to restrict taking of fish and wildlife for enumerated reasons, "the taking of such population for nonwasteful subsistence uses shall be given preference on the public lands over other

consumptive uses."  16 U.S.C. § 3112(2).

55.    The phrase "subsistence uses" is defined as "the customary and traditional uses by rural Alaska residents of wild, renewable resources for direct personal or family consumption as food, shelter, fuel, clothing, tools, or transportation; for the making and selling of handicraft articles out of nonedible byproducts of fish or wildlife . . . ; for barter, or sharing for personal and family consumption; and for customary trade."  16 U.S.C. § 3114.

56.    The Secretaries of the Department of the Interior and the Department of Agriculture are empowered and directed to effectuate the mandates and fulfill the objectives of ANILCA.  They have done so, *inter alia*, through installation of the FSB and adoption of regulations at Title 50, Part 100 and Title 36, Part 242 of the Code of Federal Regulations.

57.    In accordance with their duties and in furtherance of these statutory and regulatory authorities, the FSB and Refuge manager issued multiple emergency special actions in 2021 and 2022 to address fishing on that portion of the Kuskokwim River within the Refuge, including actions that closed the river to subsistence fishing.  Some of these actions authorized limited subsistence fishing opportunities, but such opportunities were limited to certain federally qualified subsistence users, under prescribed terms and conditions.

58.    Subsequent to these federal emergency special actions in 2021 and 2022, the State, acting through ADF&G, issued its own emergency orders authorizing fishing

under the same terms and conditions as the federal actions, including harvest by gillnet, for all Alaskans. These orders purport to allow subsistence harvest under state law that would include harvest prohibited by federal emergency special actions.

59.     On June 25, 2021, the State, acting through ADF&G, issued an emergency order purporting to authorize state subsistence fishing opportunities on the Kuskokwim River within the Refuge, to occur on June 28, 2021, for all Alaskans. There were no federal authorizations for subsistence fishing on the Kuskokwim River within the Refuge to occur on June 28, 2021. The June 28 state fishing opportunity authorized harvest prohibited by applicable federal orders.

60.     The state emergency orders in 2021 and 2022 authorizing fishing on the Kuskokwim River within the Refuge contradict and interfere with federal orders and conservation of resources. The same orders also interfere with and impede the FSB's efforts to evaluate, recognize, and implement the rural subsistence priority set forth in ANILCA Title VIII. These orders have reduced subsistence opportunities for the rural Alaskans residing along the Kuskokwim River, contributed to conservation concerns for Chinook and chum salmon on the Kuskokwim River, and placed the United States at risk of litigation.

61.     This interference has created an actual controversy between the United States and the State of Alaska over the validity of the ADF&G emergency orders issued in 2021 and 2022 addressing fishing in the Kuskokwim River within the Refuge.

62.     The Supremacy Clause states "[t]his Constitution, and the laws of the

United States . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."  U.S. Const. art. VI, cl. 2.

63.    "[S]tates have no power . . . to retard, impede, burden, or in any manner control the operations of the Constitutional laws enacted by [C]ongress to carry into effect the powers vested in the national government."  *M'Culloch v. Maryland*, 17 U.S. 316, 317 (1819); *see also United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010).  A state enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

64.    ANILCA represents a "careful regulatory scheme established by federal law" and any recognition in ANILCA of state wildlife management authority "'was not meant to eviscerate the primacy of federal authority over [national wildlife refuge] management' and instead reflects Congress's intent that 'ordinary principles of conflict preemption apply' to disputes involving ANILCA."  *Alaska v. Bernhardt*, 500 F. Supp. 3d 889, 915 (D. Alaska 2020) (quoting *National Audubon Society, Inc. v. Davis*, 307 F.3d 835, 854 (9th Cir. 2002), *aff'd sub nom*,  *Safari Club Int'l v. Haaland*, No. 21-35030, 2022 WL 1132810 (9th Cir. Apr. 18, 2022) and *Wyoming v. United States,* 279 F.3d 1214, 1234 (10th Cir. 2002)).

65.    The 2021 and 2022 state emergency orders are preempted by federal statute, applicable implementing regulations, and duly adopted federal emergency special

actions to close the portion of the Kuskokwim River within the Refuge to subsistence fishing harvest by non-federally qualified subsistence users.

66.     Plaintiff therefore seeks a declaratory judgment under 28 U.S.C. § 2201(a) that the State does not have authority to issue emergency orders or otherwise take actions that contradict or interfere with federal actions implementing ANILCA's rural subsistence priority.

## Count II – Injunctive Relief

67.     Plaintiff hereby incorporates paragraphs 1 through 66 as if fully set forth herein.

68.     Defendants have consistently expressed their opinion that their perceived interpretation of state law not only empowers, but obligates, them to provide subsistence harvest opportunities for all Alaskans even when doing so will contradict or interfere with federal orders instituted under federal law.

69.     Plaintiff has invited Defendants to engage in collaborative efforts to explore a more productive status that will foster better state and federal coordination.  Defendants have instead continued to assert authority to contradict or interfere with federal orders.  A letter by the FSB Chair dated June 24, 2021, represents an example of one such invitation to a collaborative dialogue.  The next day, on June 25, 2021, ADF&G issued an emergency order purporting to authorize subsistence fishing by all Alaskans on the Kuskokwim River within the Refuge, when such fishing, and fishing even by federally qualified subsistence users, was prohibited under federal authority.

70.     Plaintiff has provided notice to the State of its intention to file this action, which has occasioned further meetings in 2022 between representatives of the Department of the Interior and the State.  These meetings have not resolved the continuing controversy – Defendants have responded by issuing orders in anticipation of the 2022 season that contradict or interfere with federal orders.

71.     Plaintiff has no adequate remedy at law to address Defendants' continuing and persistent assertion of unlawful authority, and therefore seeks a preliminary and permanent injunction prohibiting Defendants from taking action that contravenes or interferes with Plaintiff's actions under federal law.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

(A)     A declaratory judgment stating that Defendants' emergency orders purporting to open harvest on the public waters of the Kuskokwim River during the federal closure in 2021 and 2022, and any similar actions interfering with or in contravention of federal orders addressing ANILCA Title VIII and applicable regulations, are invalid, null, and void;

(B)     A preliminary and permanent injunction against the State of Alaska, including all of its officers, employees, and agents, from reinstating Defendants' 2021 orders, from proceeding under Defendants' 2022 orders, or from taking similar actions interfering with or in contravention of federal orders addressing ANILCA Title VIII and applicable regulations;

(C)     Any and all other relief necessary to fully effectuate any injunction;

(D)     An award to the United States of its costs in this action; and

(E)     Any other relief that the Court deems just and proper.

Respectfully submitted,

DATED:  May 17, 2022.                    TODD KIM
                                         Assistant Attorney General
                                         United States Department of Justice
                                         Environment and Natural Resources Division

                                         /s/ Paul A. Turcke
                                         PAUL A. TURCKE
                                         Idaho Bar No. 4759
                                         Trial Attorney
                                         Natural Resources Section
                                         P.O. Box 7611 Washington, D.C. 20044
                                         202-353-1389 || 202-305-0275 (fax)
                                         paul.turcke@usdoj.gov

                                         *Counsel for Plaintiff*

Of Counsel:

KENNETH M. LORD
Office of the Regional Solicitor
U.S. Department of the Interior
4230 University Drive, Suite 300
Anchorage, AK 99508
907-271-4184
ken.lord@sol.doi.gov