TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

PAUL A. TURCKE (Idaho Bar No. 4759)
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
202-353-1389 || 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>  v.<br><br>THE STATE OF ALASKA, THE ALASKA DEPARTMENT OF FISH & GAME, and DOUG VINCENT-LANG, in his official capacity as Commissioner of the Alaska Department of Fish & Game,<br><br>        Defendants, | Case No. 1:22-cv-00054-SLG |

**REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

A temporary restraining order is needed to prevent the State of Alaska from

allowing gillnet fishing by all Alaskans on the Kuskokwim River within the Yukon Delta National Wildlife Refuge (the "Refuge"). Without an injunction, the fishing Alaska purports to authorize will further deplete Chinook and chum salmon runs and deprive rural subsistence communities from fulfilling their subsistence needs, despite their priority status under federal law.

The State largely complains that it was not sued earlier, but neither disputes Plaintiff's presentation of the factual background nor the bedrock legal principle that a federal agency's application of federal law prevails over a contradictory state action. Rather than address these salient issues, Defendants offer an internally contradictory array of observations intended to emphasize the State's alleged role as the primary regulatory authority for fisheries in navigable waters within the Refuge. But Defendants fail entirely to address the established body of law making clear that Title VIII of the Alaska National Interest Lands Conservation Act, 16 U.S.C. §§ 3111-3126 ("ANILCA"), creates a rural subsistence priority implemented by federal authorities. The challenged State actions create a likelihood of irreparable injury to Plaintiff's interests, the sustenance and cultural identity of Kuskokwim area rural residents, and depleted or further declining fisheries. The Court should enter immediate injunctive relief to stem this unfortunate and unlawful state of affairs pending the further disposition of proceedings in this action.

## ARGUMENT

Plaintiff has demonstrated that it is likely to prevail on the merits, that irreparable

*United States v. Alaska*                                                                                                                                                                                                               Case No. 1:22-cv-00054-SLG
REPLY IN SUPPORT OF PL'S. MOT. FOR T.R.O.                                                                                                                                                                                                                       2

Case 1:22-cv-00054-SLG    Document 10    Filed 05/28/22    Page 2 of 11

injury is likely, and that the equities and public interest favor injunctive relief.

A.     **Plaintiff is Likely to Prevail on the Merits**

Plaintiff demonstrates a strong likelihood of success on the merits. Tellingly, the State does not address any of the cases cited in Plaintiff's opening brief. These cases make clear that federal law preempts contradictory state action, and particularly so in the context of ANILCA Title VIII.

The State suggests that in future briefing it will raise "a variety of reasons to doubt that the [Federal Subsistence Board ("FSB")] orders are valid," such as questioning the existence or scope of FSB delegation of authority to the Refuge Manager, or whether the orders are based upon sufficient data or analysis. Opp'n to Mot. for Restraining Order 19, n.74, ECF No. 9 ("Defs.' Opp'n"). But the State has notably declined to make those arguments here, and has thus waived them for purposes of Plaintiffs' TRO motion. This Court, moreover, has previously rejected the State's theories about the existence and scope of FSB's regulatory authority or its ability to delegate authority to federal in-season managers. *See Dep't of Fish & Game v. Fed. Subsistence Bd.*, 501 F. Supp. 3d 671 (D. Alaska 2020). More fundamentally, however, the State's anticipated arguments are improper because the State may not circumvent the Administrative Procedure Act ("APA") judicial review provisions by questioning the basis for federal regulation in the context of its defense to a preemption challenge. If the State considers the FSB orders to be invalid, it may seek judicial review of those orders under the APA, 5 U.S.C. §§ 701-706, as it has done in the past. *See id.* Insofar as the State would prefer for this Court to

review *de novo* the data and analysis underlying the federal closure order for 2022, that form of review is foreclosed by the APA. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) (holding that *de novo* review to determine whether an agency decision was "unwarranted by the facts" is available only in two narrow circumstances, neither of which is presented here); *see also Dep't of Fish & Game v. Fed. Subsistence Bd.*, No. 3:20-CV-00195-SLG, 2021 WL 5756381, at *12 (D. Alaska Dec. 3, 2021) (finding substantial evidence after examining the administrative record to support FSB's federal closure order).

The State next posits that FSB's authority to implement the federal subsistence priority in ANILCA Title VIII on the Kuskokwim River is "far from clear in the wake of *Sturgeon v. Frost*, 139 S. Ct. [1066] (2019)." Defs.' Opp'n at 19, n.74. In fact, the Ninth Circuit has clearly identified the scope of FSB's regulatory authority in a series of cases known as the *Katie John* trilogy, and the Supreme Court in *Sturgeon* expressly declined to upset those authorities.

The *Katie John* trilogy consists of three Ninth Circuit decisions considering whether navigable waters are "public lands" in addressing the ANILCA Title VIII subsistence use priority. *See Alaska v. Babbitt* (*Katie John I*), 72 F.3d 698 (9th Cir. 1995), *cert. dismissed,* 516 U.S. 1036, and *cert. denied*, 517 U.S. 1187 (1996), *adhered to sub nom. John v. United States* (*Katie John II*), 247 F.3d 1032 (9th Cir. 2001) (en banc); *John v. United States* (*Katie John III*), 720 F.3d 1214 (9th Cir. 2013), *cert. denied sub nom. Alaska v. Jewell*, 572 U.S. 1042 (2014). In significant part, the Trilogy confirmed

that federal reserved water rights in conservation system units bring affected waters within the definition of "public lands" for purposes of Title VIII. *See Katie John I*, 72 F.3d at 702-04.

A few years thereafter, the Supreme Court in *Sturgeon* held that federal reserved water rights do not similarly bring affected waters within the definition of "public lands" for other purposes in ANILCA, and thus concluded that the National Park Service lacked authority to regulate hovercraft use on the Nation River within the Yukon-Charley Preserve. *See Sturgeon*, 139 S. Ct. at 1079-81. The Court found that a federal reserved water right provides only a "limited" interest in fulfilling the purposes of the reservation, and "does not give the Government plenary authority over the waterway to which it attaches." *Id*. at 1079. Yet the Court did not extend that holding to subsistence use under Title VIII, and it acknowledged the continuing validity of the Trilogy's holding "that the term 'public lands,' when used in ANILCA's subsistence-fishing provisions, encompasses navigable waters like the Nation River." *Id*. at 1080 n.2.

The State, in short, has not reasonably explained why its orders can stand in the face of contrary federal orders issued pursuant to ANILCA Title VIII. Plaintiff, therefore, is likely to prevail on the merits.

## B. Plaintiff Shows a Sufficient Likelihood of Irreparable Injury

Plaintiff has not only shown that the State's orders are unlawful, but that their implementation would likely result in needless irreparable injury that could be avoided through an injunction.

Defendants fail to address Plaintiff's primary claim of irreparable injury – that the State's actions intrude upon the FSB's implementation of the federal subsistence priority and infringe upon rural residents' subsistence values and cultural identity. *See* Pl's. Mot. for Prelim. Inj. and Combined Mem. in Supp. 18, ECF No. 5 ("Pl's. Mem"). The proper analysis does not focus on whether early June gillnets are more likely to catch salmon or whitefish, or the specific numbers of each species that might be caught. Instead, in a time of undisputed conservation concern, the FSB is empowered to determine whether harvest is justifiable, and if so, whether it must be restricted to federally qualified users. In making this determination, the FSB must decide whether there is a tolerable level of intrusion upon rural Alaskans' subsistence lifestyle and cultural identity. Irreparable harm can occur through a regulation that "attack[s] the way [rural Alaskans] put food in [their] families' stomachs[.]" *Native Vill. of Quinhagak v. United States*, 35 F.3d 388, 394 (9th Cir. 1994); *see also United States v. Alexander,* 938 F.2d 942, 945 (9th Cir. 1991) ("If [rural Alaskans'] right to fish is destroyed, so too is their traditional way of life").

The State's primary thrust in responding to the motion is to accuse Plaintiff of delaying this action to manufacture the present circumstances and resultant need to seek expedited relief. *See* Defs.' Opp'n 12. These characterizations are unfounded.

Plaintiff has engaged in significant efforts to conduct a reasonable dialogue with the State. *See* Compl. ¶¶ 40-50, ECF No.1; Ex. 3, ECF No. 1-3. The present motion seeks to enjoin a State Emergency Order issued on May 13, 2022. Plaintiff filed its

complaint on May 17, and the pending motions on May 24. The State suggests that it was somehow incumbent upon Plaintiff to initiate a civil action after the close of the 2021 fishing season, so as to get a jump on any controversy that might develop in 2022. Defs.' Opp'n 11-12. First, doing so would have raised issues about whether this Court would have had jurisdiction under the State's suggested anticipatory filing approach. Second, Plaintiff appropriately allowed for the possibility that the State would refrain from repeating its 2021 behavior in 2022. Plaintiff has not detrimentally slept on its rights, but has acted appropriately and with due haste.

The United States does not casually initiate litigation, and particularly not against a sovereign state. So it is true that the Department of Justice sent a letter to the State on April 6, 2022, providing notice of this action. And the parties met on April 25, 2022, to explore the possibility of avoiding litigation. *See* Defs.' Opp'n 12; Decl. of Raina Thiele ¶¶ 2-6, ECF No. 5-2. Plaintiff continued to allow for the possibility of resolution, up to the hour of filing the pending motions. *Id*. ¶ 10. These efforts were calculated to avert a crisis, not to manufacture one.

Plaintiff reasonably waited to see if the State might reconsider its prior pattern of behavior on the Kuskokwim River within the Refuge, especially after legal developments in December 2021 and April 2022 solidified Plaintiff's theory of the case. *See Dep't of Fish & Game v. Fed. Subsistence Bd.*, No. 3:20-CV-00195-SLG, 2021 WL 5756381, at *16 (D. Alaska Dec. 3, 2021) (recognizing that ANILCA "grant[s] to federal agencies the authority to impose closures under certain circumstances" and "necessarily tolerates some

*United States v. Alaska*                                                  Case No. 1:22-cv-00054-SLG
REPLY IN SUPPORT OF PL'S. MOT. FOR T.R.O.                                               7

Case 1:22-cv-00054-SLG    Document 10    Filed 05/28/22    Page 7 of 11

level of federal interference with state authority"); *Safari Club Int'l v. Haaland*, 31 F.4th 1157, 1168-69 (9th Cir. 2022) (affirming this Court's conclusion that ANILCA contemplates that federal law will preempt conflicting state law). Also, factual developments between November 2021 and April 2022 crystallized the difficult choices in managing Kuskokwim salmon harvest, and amplified the rationale for allocating any limited subsistence harvest to federally qualified users. *See* Pl's. Mem. 6; Decl. of Nicholas Smith ¶ 6, ECF No. 9-3 (noting that 2021 chum salmon escapement was "the lowest on record"); Kuskokwim River Salmon Fishery Announcement #14 (November 2021) at 9 (indicating total chum salmon escapement of 6,212 against target range of 15,000-49,000), and at 12 (reporting Kuskokwim Bay commercial harvest of 5,310 chum salmon), ECF No. 9-7; ADF&G Regional Information Report No. 3A22-02 (April 2022) at 7 (stating that 2021 Chinook run abundance was below the range necessary to meet "at least the lower bound" of escapement or amount necessary for subsistence), and at 8 (stating that "expectations of Chinook salmon harvestable surplus in 2022 are highly uncertain"), ECF No. 9-5. Plaintiff appropriately tried to revisit these developments, to see whether they might cause the State to rethink its position entering the 2022 fishing season.

Finally, the accusation that Plaintiff has concealed "the scientific bases for its management decisions" from the State, Defs.' Opp'n 13, is a red herring – management of the Kuskokwim River fishery is a collaborative undertaking. Science is an analytical process of inquiry, and Kuskokwim area stakeholders collectively evaluate the same

*United States v. Alaska*	Case No. 1:22-cv-00054-SLG
REPLY IN SUPPORT OF PL'S. MOT. FOR T.R.O.	8

Case 1:22-cv-00054-SLG   Document 10   Filed 05/28/22   Page 8 of 11

underlying data and information, in large part based on the State's acknowledged data collection efforts. *See e.g.* Decl. of Boyd Blihovde 8-53, ECF No. 5-1 (KRITFC report). The parties' disagreement is not so much about "the science," but rather their managers' response to it based on policy considerations and perceived legal obligations. The State bases its policy on a perceived obligation to provide subsistence harvest for all Alaskans, irrespective of federal authorities. Compl. Ex. 3 at 21; ECF No. 1-3. This persists despite its own Kuskokwim River Salmon Management Working Group's request that the State "not announce setnet and driftnet opportunities on federal waters at any time during the 2022 fishing season the US Fish and Wildlife Service is managing the resource, during Federal Special Action." Decl. of Nicholas Smith ¶ 19.

Plaintiff has shown that irreparable injury is sufficiently likely to warrant an injunction, to prevent the State's imminent interference with the FSB's efforts to effectuate the federal subsistence priority on the Kuskokwim River within the Refuge.

C. The Equities and Public Interest Favor Injunctive Relief

Defendants do not respond to Plaintiff's position that the equities and public interest largely follow the strong policy established by ANILCA's federal subsistence priority. *See* Pl's. Mem. 20-22. Instead, Defendants restate their misplaced allegations of delay, and claim that one must discern particular equities or public interest in the narrow window of a temporary restraining order. Defs.' Opp'n 20. These arguments miss the mark – the relevant balancing is between the FSB's determination to prioritize subsistence harvest by federally qualified users, and the State's contradictory efforts to

allow for harvest by all Alaskans. Against ANILCA's recognized statutory priority, Defendants now admit it would be "pure fantasy" to think that meaningful numbers of "urban fishers" might avail themselves of any opportunity created by the State's orders. *Id*. 17. The State only questions the advisability of the FSB orders, but does not suggest a compelling interest that counters the need to honor the federal subsistence priority required by federal law.

## CONCLUSION

Plaintiff respectfully requests that the Court grant its motion for temporary restraining order, and enjoin the June 1 implementation of Defendants' orders purporting to create gillnet fishing opportunities for all Alaskans on the Kuskokwim River within the Refuge.

Respectfully submitted,

DATED: May 28, 2022.

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

*/s/ Paul A. Turcke*
PAUL A. TURCKE
Idaho Bar No. 4759
Trial Attorney, Natural Resources Section
P.O. Box 7611 Washington, D.C. 20044
202-353-1389 || 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Plaintiff*

Of Counsel:

KENNETH M. LORD
Office of the Regional Solicitor
U.S. Department of the Interior

4230 University Drive, Suite 300
Anchorage, AK 99508
907-271-4184
ken.lord@sol.doi.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2022, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Paul A. Turcke*
Paul A. Turcke