# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>THE STATE OF ALASKA, THE ALASKA DEPARTMENT OF FISH & GAME, and DOUG VINCENT-LANG, in his official capacity as Commissioner of the Alaska Department of Fish & Game,<br><br>    Defendants. | Case No. 1:22-cv-00054-SLG |

## ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Before the Court at Docket 6 is Plaintiff United States of America's Motion for Temporary Restraining Order. Defendants State of Alaska; Alaska Department of Fish & Game (ADF&G); and Doug Vincent-Lang, Commissioner of ADF&G, responded in opposition at Docket 9. Plaintiff replied at Docket 10.

Plaintiff seeks a temporary restraining order "enjoining implementation of Defendants' Emergency Order #3-S-WR-02-22, or from taking similar actions interfering with or contravening federal orders issued pursuant to Title VIII of the Alaska National Interest Lands Conservation Act ('ANILCA')."[1] Plaintiff describes

---

[1] Docket 6 at 1–2.

Defendants' Emergency Order #3-S-WR-02-22 as "purport[ing] to open the Kuskokwim River within the Yukon Delta National Wildlife Refuge to gillnet fishing by all Alaskans in violation of federal orders issued to effectuate the ANILCA Title VIII rural subsistence priority."[2] Defendants respond that Plaintiff has not met its burden to justify the immediate entry of a temporary restraining order.

**I. Background**

Running more than 700 miles in southwest Alaska before it ends in the Bering Sea, the Kuskokwim River is the longest free-flowing river in the United States that is contained entirely within one U.S. state. Approximately 180 miles of the Kuskokwim River runs within the Yukon Delta National Wildlife Refuge (the Refuge) beginning at the mouth of the river.[3] The Kuskokwim River contains several species of salmon, including Chinook and chum salmon. "The residents of the local villages along the Kuskokwim River and its tributaries are almost entirely federally qualified subsistence users, both native and non-native, who are highly dependent on salmon as a source of food."[4] In addition, "subsistence

---

[2] Docket 6 at 2–3.

[3] Docket 5-1 at 2, ¶ 3 (Decl. of Boyd Blihovde).

[4] Docket 5-1 at 3, ¶ 8 (Decl. of Boyd Blihovde).

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 2 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 2 of 17

harvest of salmon is engrained with the culture and identity of these Kuskokwim area rural residents."[5]

### A. ANILCA's rural subsistence use priority

Subsistence hunting and fishing by rural Alaskans along the portion of the Kuskokwim River located within the Refuge is protected and prioritized by federal law. In 1980, Congress passed the Alaska National Interest Lands Conservation Act (ANILCA).[6] Congress intended, in part, "to provide the opportunity for rural residents engaged in a subsistence way of life to continue to do so."[7] "Subsistence uses" are defined in ANILCA to include "customary and traditional uses by rural Alaska residents of wild, renewable resources . . . ."[8] Accordingly, Title VIII of ANILCA provides that rural subsistence users are given priority to hunt and fish on federal land and waters within Alaska.[9]

### B. Coinciding federal and state fishing regulations

The Federal Subsistence Board (FSB) has been delegated the authority to adopt regulations that aim to preserve healthy populations of fish within federal

---

[5] Docket 5-1 at 3, ¶ 8 (Decl. of Boyd Blihovde).

[6] Pub. L. No. 96-487, 94 Stat. 2371 (1980) (codified as amended in scattered sections of 16 U.S.C., 43 U.S.C., 48 U.S.C., and 54 U.S.C.).

[7] 16 U.S.C. § 3101(c).

[8] 16 U.S.C. § 3113.

[9] 16 U.S.C. § 3112(2).

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 3 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 3 of 17

lands in Alaska and implement ANILCA's rural subsistence use priority.[10] This authority allows the FSB to take emergency action to restrict or close fishing on public lands for non-subsistence uses if "necessary for the conservation of healthy populations of fish" so as to continue subsistence uses of such fish.[11] The FSB's regulations provide for the delegation of authority to agency field officials to "set harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons."[12]

In 2021 and 2022, the FSB and agency field officials determined that closing the 180-mile section of the Kuskokwim River with the Refuge to non-subsistence uses was "necessary to conserve the fish population for continued subsistence uses of the Chinook salmon upon which rural residents of the area depend."[13] Accordingly, "the FSB and agency field officials exercised their authority under ANILCA to issue emergency special actions to close the 180-mile section of

---

[10] 16 U.S.C. § 3124; *see Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1092 & n.1 (9th Cir. 2008) (explaining that Congress authorized the Secretary of the Interior and the Secretary of Agriculture to promulgate regulations, and they issued identical regulations codified at 50 C.F.R. pt. 100 and 36 C.F.R. pt. 242 establishing the Federal Subsistence Board).

[11] 16 U.S.C. § 3125(3).

[12] 50 C.F.R. § 100.10(d)(6).

[13] Docket 1 at 3, ¶ 4; *accord* Docket 1-1 at 4 ("The closure of Federal public waters to the harvest of salmon with gillnets beginning June 1 is based on conservation concerns and provisions of opportunity for subsistence uses."); Docket 5-1 at 4, ¶ 11 ("[I]n 2021 and 2022, the underlying basis for my decisions relating to harvest of salmon has been to reach an escapement of at least 110,000 Chinook while allowing at least some opportunity for federally qualified local residents to address their subsistence needs.") (Decl. of Boyd Blihovde).

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 4 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 4 of 17

Kuskokwim River within the Yukon Delta National Wildlife Refuge . . . to non-subsistence uses, while allowing limited subsistence uses by local rural residents under narrowly prescribed terms and means of harvest."[14]  Each year, ADF&G subsequently issued its own emergency orders that overlapped with, and are to some degree inconsistent with, the FSB's emergency actions.

### 1. 2021 federal and state closures

In May 2021, federal authorities in an emergency special action closed the Kuskokwim River located within the Refuge to all gillnet fishing of salmon, beginning on June 1, 2021.  However, the closure action provided five dates during which federally qualified subsistence users could use gillnets to fish.[15]  Federal authorities later added additional days and locations during which federally qualified subsistence users could use gillnets within the Refuge.[16]  At no time during the federal closure were non-federally qualified users allowed by federal

---

[14] Docket 1 at 3, ¶ 4.

[15] Docket 1-1 at 2 (Federal Emergency Special Action #3-KS-01-21). The emergency actions set different dates for federally qualified users to harvest salmon using set gillnets and using drift gillnets.  For the purposes of this order, the Court groups the set gillnet dates and the drift gillnet dates together.

[16] Docket 1-1 at 5 (Federal ESA #3-KS-02-21); Docket 1-1 at 7 (Federal ESA #3-KS-03-21).

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 5 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 5 of 17

emergency special actions to gillnet fish on the Kuskokwim River within the Refuge.

Several days after the first federal closure order was issued in May 2021, ADF&G issued an emergency order closing parts of the Kuskokwim River to gillnet fishing, which was consistent with the federal closure action.[17] However, later that same day, ADF&G issued an emergency order that allowed subsistence gillnet fishing along the Kuskokwim River for *all* Alaskans—regardless of whether they were federally qualified subsistence users—on each of the same dates that the federal emergency actions had reserved for federally qualified subsistence users.[18] In other state emergency actions in 2021, the State authorized subsistence gillnet fishing for all Alaskans on dates when even federal subsistence gillnet fishing was not allowed.[19]

### 2. 2022 federal and state closures

On May 2, 2022, federal authorities issued an emergency special action closing the main stem of the Kuskokwim River within the Refuge to gillnet fishing for all salmon and closing river tributaries to all gillnet fishing and to the harvest of Chinook and chum salmon, effective June 1, 2022.[20] However, the emergency

---

[17] Docket 1-2 at 2–4 (State Emergency Order #3-S-WR-01-21).

[18] Docket 1-2 at 5–6 (State Emergency Order #3-S-WR-02-21).

[19] Docket 1-2 at 7–16 (State Emergency Orders #3-S-WR-04-21, #3-S-WR-06-21, #3-S-WR-07-21, and #3-S-WR-08-21).

[20] Docket 1-1 at 10–13 (Federal ESA #3-KS-01-22).

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 6 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 6 of 17

action allows federally qualified subsistence users to use gillnets to harvest salmon on June 1, 4, 8, 12, and 16, 2022.[21]

On May 13, 2022, ADF&G issued an emergency order closing parts of the Kuskokwim River to gillnet fishing, which was consistent with the federal emergency action taken earlier that month in that regard.[22] However, later that same day, ADF&G issued a second emergency order that authorized subsistence gillnet fishing by all Alaskans—regardless of whether they were federally qualified subsistence users—on three of the dates that the federal emergency action had reserved for federally qualified subsistence users: June 1, 4, and 8, 2022.[23] The State explained that it did "not believe this opportunity under State subsistence fishing regulations will negatively impact the ability of federally qualified subsistence users from meeting their needs during these fishing periods."[24] The State also noted that it intended this opportunity to "allow those individuals who have been displaced to the urban areas of Alaska for educational, social, health or other reasons to practice their traditional and cultural subsistence way of life that is closely tied to the Kuskokwim River."[25] Plaintiff now seeks a temporary

---

[21] Docket 1-1 at 11–12 (Federal ESA #3-KS-01-22).

[22] Docket 1-2 at 17–18 (State EO #3-S-WR-01-22).

[23] Docket 1-2 at 19–20 (State EO #3-S-WR-02-22).

[24] Docket 1-2 at 19 (State EO #3-S-WR-02-22).

[25] Docket 1-2 at 19 (State EO #3-S-WR-02-22).

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 7 of 17

restraining order that would immediately enjoin Defendants from implementing this second emergency order or otherwise authorizing gillnet fishing by non-federally qualified Alaskans on the Kuskokwim River within the Refuge, pending a ruling on Plaintiff's motion for a preliminary injunction.[26]

## II. Legal standard

The standard for obtaining a temporary restraining order is "substantially identical" to that for obtaining a preliminary injunction.[27] In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits;[28] (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4)

---

[26] Docket 6-1 at 1–2 (Proposed Order).

[27] *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

[28] Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that the Circuit's "serious questions" approach to preliminary injunctions was still valid "when applied as a part of the four-element Winter test." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). Accordingly, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor.'" *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Serious questions are 'substantial, difficult, and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance on the merits.'" *Id.* (quoting *Marcos*, 862 F.2d at 1362). All of the *Winter* elements must still be satisfied under this approach for a temporary restraining order to issue.

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 8 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 8 of 17

a preliminary injunction is in the public interest.[29] *Winter* places the burden on a plaintiff to make a showing on all of the *Winter* factors before a court will issue a temporary restraining order.[30]

Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[31] The "purpose of a [temporary restraining order] is to preserve the *status quo* pending a full hearing on a preliminary injunction."[32] Thus, in the context of a motion for a temporary restraining order, the issue is whether irreparable harm is likely to occur before the Court can determine whether to issue a preliminary injunction.

## III. Discussion

Plaintiff asserts that all four *Winter* elements—irreparable harm, likelihood of success on the merits, the balance of the equities, and public interest—weigh in favor of a temporary restraining order. Defendants respond that Plaintiff has not

---

[29] 555 U.S. 7, 20 (2008). When the federal government is a party to the action, such as here, "the balance of equities factor and the public interest factor merge." *Jones v. Bonta*, __ F.4th __, Case No. 20-56174, 2022 WL 1485187, at *5 (9th Cir. May 11, 2022) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).

[30] *See All. for the Wild Rockies*, 632 F.3d at 1135.

[31] *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987).

[32] *Bronco Wine Co. v. U.S. Dep't of Treasury*, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996) (emphasis added).

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 9 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 9 of 17

shown that any of the *Winter* elements support the issuance of a temporary restraining order.

The Court finds that Plaintiff has not met its burden to show the second *Winter* element—that is, that irreparable harm is likely to occur before the Court can determine whether a preliminary injunction should issue. *Winter* requires that Plaintiff "must establish that irreparable harm is likely, not just possible."[33] Plaintiff contends that without a temporary restraining order, irreparable harm would occur in three ways, each of which Defendants dispute.[34]

### A. Plaintiff has not shown that irreparable harm to ANILCA's rural subsistence user priority is likely to occur before the Court determines the preliminary injunction motion.

Plaintiff's first and primary argument stresses ANILCA's federal subsistence user priority and asserts that the State's "interference with the FSB's ability to provide for federally qualified subsistence use constitutes irreparable injury to affected rural Alaskans."[35] According to Plaintiff, "[f]or local villages comprised

---

[33] *All. for the Wild Rockies v. Cottrell*, 632 F.3d at 1131 (emphasis omitted) (citing *Winter*, 555 U.S. at 20–24).

[34] Defendants also respond by criticizing Plaintiff's decision to wait until "mere days before the State's first scheduled subsistence fishing opener to file an expedited motion for a temporary restraining order." Docket 9 at 1. Defendants contend that "the alleged emergency . . . was manufactured by the United States, [and] this Court should be skeptical of the United States' claims of harm." Docket 9 at 12. Plaintiff replied to this response at Docket 10, pages 6–8. The Court notes that the State did not issue the relevant 2022 emergency order until May 13, 2022, and Plaintiff sought a temporary restraining order on May 24, 2022. The Court will not further address the motion's timeliness or the parties' purported efforts to resolve the conflict before Plaintiff filed suit.

[35] Docket 5 at 18.

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 10 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 10 of 17

almost entirely of federally qualified users, both native and non-native, salmon is a critically important food source. Each opportunity for harvest with a priority over others is important, and cannot be regained once gone."[36]

Defendants respond that Plaintiff fails to allege, or provide any evidence to support, "that non-federally qualified users *will in fact* catch fish in numbers that will impact federally qualified users' ability to meet their subsistence needs."[37] According to Defendants, the non-federally qualified users expected to take advantage of the State's openings are limited to "a small number of 'individuals who have been displaced to the urban areas of Alaska' . . . who may wish to return 'to practice their traditional and cultural subsistence way of life that is closely tied to the Kuskokwim River.'"[38] Defendants also emphasize that Plaintiff has "not present[ed] any evidence that non-federally qualified users have taken in the past or will take in the future *a single salmon* during State openers."[39]

Plaintiff replies that Defendants incorrectly focus on the numbers of fish that might be harvested during state-authorized openers.[40] Plaintiff contends that, pursuant to *Native Village of Quinhagak v. United States*, the correct analysis

---

[36] Docket 5 at 18 (citations omitted) (citing Docket 5-1 at 3, ¶ 8 (Decl. of Boyd Blihovde); *Native Vill. of Quinhagak v. United States*, 35 F. 3d 388, 393 (9th Cir. 1994)).

[37] Docket 9 at 16.

[38] Docket 9 at 17 (quoting Docket 1-2 at 19).

[39] Docket 9 at 17–18.

[40] Docket 10 at 6.

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 11 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 11 of 17

focuses on whether the state emergency order interferes with the FSB's authority to regulate "the way rural Alaskans put food in their families' stomachs."[41]

The facts in *Native Village of Quinhagak* lessen its applicability here. There, state and federal regulations severely restricted subsistence users from harvesting rainbow trout in the Kuskokwim Bay drainage but allowed for sport fishing of rainbow trout in all Alaskan waters, including the Kuskokwim Bay drainage.[42] Two Native Villages challenged the fishing regulations, alleging that the restrictions on subsistence rainbow trout fishing violated ANILCA's rural subsistence use preference.[43] The Ninth Circuit held that the balance of hardships tipped sharply in the villages' favor, as the circuit court concluded that "[n]o policy reasons support[ed] allowing the United States and Alaska to continue their potentially unlawful regulatory programs until trial," such that the district court had abused its discretion in not issuing a preliminary injunction.[44] Through the affidavit of a village resident, the circuit court determined that the Native Villages had demonstrated that the restriction on subsistence fishing "interfere[d] with the Villages' way of life and cultural identity"; the circuit court held that the Native Villages need "to prove

---

[41] Docket 10 at 6 (cleaned up) (quoting *Native Vill. of Quinhagak*, 35 F.3d at 394).

[42] *Native Vill. of Quinhagak*, 35 F.3d at 390.

[43] *Id.* at 391.

[44] *Id.* at 394–95.

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 12 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 12 of 17

nothing more in light of the clear congressional directive to protect the cultural aspects of subsistence living."[45]

Here, in contrast, the State's emergency action does not purport to prohibit rural subsistence users from harvesting Kuskokwim River salmon beyond the pre-existing federal limitations. Rather, it authorizes other types of harvest from the Kuskokwim River, which the federal government opposes. However, Plaintiff has not provided any evidence that Alaska rural subsistence salmon harvesters, or the federal government's ability to administer ANILCA, will be irreparably harmed in the next few weeks unless a temporary restraining order is immediately entered that prohibits the State's non-federally qualified subsistence gillnet fishery during those few weeks. Notably, similar state openers occurred on the Kuskokwim River in 2021, but Plaintiff has not presented evidence that the 2021 state action harmed federally qualified subsistence users.

### B. Plaintiff has not shown that irreparable harm is likely to occur due to uncertainty and confusion prior to the determination of the preliminary injunction motion.

Plaintiff next asserts that federally qualified users would be harmed by "uncertainty and confusion" if the state openers are not immediately enjoined.[46] According to Plaintiff, the State's 2022 emergency orders "create a practical risk that large numbers of Alaskans will arrive at the State-appointed times to set

---

[45] *Id.* at 394.

[46] Docket 5 at 18.

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 13 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 13 of 17

gillnets on the Kuskokwim, resulting in unpredictable and extensive harvest of the depleted fisheries."[47] Plaintiff also contends that "Kuskokwim rural residents face the dilemma of coming closer to their historical subsistence harvest of salmon by capitalizing on the possibility of additional harvest under the State's opening, while facing possible enforcement action or other consequences of being found in violation of federal orders prohibiting such harvest."[48]

Defendants respond that their actions "will not cause any confusion or uncertainty."[49] They contend that the State's emergency orders "use plain language of the same kind that has been used in similar orders for decades—the language speaks for itself and has not resulted in confusion or uncertainty for the users in the past."[50] As to the alleged harm to Kuskokwim rural residents, Defendants respond that "the state openers coincide with the federal openers and contain the same gear restrictions. In other words, a Kuskokwim rural resident fishing under the state openers will not be violating federal orders."[51]

The Court acknowledges that the upcoming conflicting subsistence openings create a likelihood of confusion and uncertainty in the absence of a

---

[47] Docket 5 at 18–19.

[48] Docket 5 at 19.

[49] Docket 9 at 14.

[50] Docket 9 at 14.

[51] Docket 9 at 14–15 (footnote omitted).

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 14 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 14 of 17

temporary restraining order, and particularly for non-federally qualified subsistence fishers.[52] But the Court does not find that this confusion and uncertainty constitutes the type of irreparable harm that warrants the immediate entry of a temporary restraining order prior to the determination of the preliminary injunction. Rather, the Court finds that the competing perspectives of the United States and the State of Alaska warrant the careful consideration by this Court that can only occur after full briefing on the preliminary injunction motion has been accorded to both parties.

### C. Plaintiff has not shown that irreparable harm is likely to occur to Kuskokwim River salmon populations prior to the Court's determination of the preliminary injunction motion.

Third, Plaintiff asserts that irreparable harm will occur because "Kuskokwim Chinook and chum salmon populations are in decline, and face risk of overharvest."[53] According to Plaintiff, the environmental injury to the Kuskokwim Chinook and chum salmon alone is a sufficient basis for a temporary restraining order.[54] Plaintiff points to the State's "recent request for a federal 'fishery disaster determination' for the 2021 Kuskokwim River salmon fishery" as evidence of the declining salmon resources.[55]

---

[52] The Court notes that this same confusion and uncertainty took place for the entire season in 2021, and, for good or for bad, represents the current *status quo*.

[53] Docket 5 at 20; *accord* Docket 5 at 17–18 (citing "threats to declining fisheries resources").

[54] Docket 5 at 19.

[55] Docket 5 at 20.

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 15 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 15 of 17

Defendants respond that Plaintiff has presented no scientific or other evidence showing "that an unspecified number of non-federally qualified users potentially taking a few hundred Chinook [salmon] will cause 'irreparable harm to resources.'"[56] Defendants maintain that Plaintiff's own actions of opening two drift net harvesting opportunities—involving "larger gear that more easily targets Chinook and purposefully removes salmon . . . from the allegedly critically depressed stock"—will cause more harm to the salmon population than the State's actions of allowing limited non-salmon harvesting with some incidental salmon bycatch.[57]

Plaintiff has provided some evidence that in recent years, the populations of Chinook and chum salmon appear to be in decline.[58] Plaintiff has also asserted that without the federal emergency action restricting gillnet fishing, "it was possible that the subsistence harvest of Chinook could have significantly depleted the run."[59] However, Plaintiff has presented no evidence that non-federally qualified users contribute in any meaningful way to this decline in the Chinook and chum salmon population. In short, Plaintiff has not demonstrated that Kuskokwim River

---

[56] Docket 9 at 15 (quoting Docket 6 at 3).

[57] Docket 9 at 15–16.

[58] Docket 5-1 at 2, ¶ 5 (Decl. of Boyd Blihovde).

[59] Docket 5-1 at 5, ¶ 13 (Decl. of Boyd Blihovde).

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 16 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 16 of 17

salmon populations will be irreparably harmed in the next few weeks without a temporary restraining order.

## CONCLUSION

The Court finds that Plaintiff has not demonstrated that there will likely be irreparable harm in the absence of an immediate temporary restraining order prior to the Court's determination of the motion for a preliminary injunction. Because at least this one of the requisite elements for obtaining a temporary restraining order has not been met, IT IS ORDERED that Plaintiff's Motion for Temporary Restraining Order at Docket 6 is DENIED.

Defendants' response to Plaintiff's Motion for Preliminary Injunction at Docket 5 is due **June 7, 2022**. Plaintiff's reply is due **June 14, 2022**. Each party's briefing shall address its position as to the propriety of the Court consolidating the hearing on the motion for a preliminary injunction with a trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2).

Oral argument on the motion for a preliminary injunction shall be held on **June 21, 2022, at 10:00 a.m. in Anchorage Courtroom 2.** Each side shall be accorded up to 20 minutes for its argument.

DATED this 31st day of May, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 1:22-cv-00054-SLG, *United States v. State of Alaska, et al.*
Order Denying Plaintiff's Motion for Temporary Restraining Order
Page 17 of 17
Case 1:22-cv-00054-SLG   Document 11   Filed 05/31/22   Page 17 of 17