Nathaniel Amdur-Clark
nathaniel@sonosky.net
Whitney A. Leonard
whitney@sonosky.net
Sonosky, Chambers, Sachse,
  Miller & Monkman, LLP
725 East Fireweed Lane, Suite 420
Anchorage, Alaska 99503
Telephone: (907) 258-6377
Facsimile: (907) 272-8332

*Attorneys for Intervenor Kuskokwim River Inter-Tribal*
  *Fish Commission*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE STATE OF ALASKA, THE ) <br> ALASKA DEPARTMENT OF FISH & ) <br> GAME and DOUG VINCENT-LANG, ) <br> in his official capacity as Commissioner ) <br> of the Alaska Department of Fish & ) <br> Game, ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:22-cv-00054-SLG |

**KUSKOKWIM RIVER INTER-TRIBAL FISH COMMISSION'S COMBINED MOTION TO INTERVENE AS PLAINTIFF AND MEMORANDUM IN SUPPORT**

The Kuskokwim River Inter-Tribal Fish Commission (the "Commission") hereby

moves this Court for leave to intervene as a plaintiff in this action as of right, pursuant to

Federal Rule of Civil Procedure 24(a)(2) or, alternatively, for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). In this matter, Plaintiff the United States of America seeks to protect the federal and nation-wide interests expressed by Congress in Title VIII of the Alaska National Interest Lands Conservation Act, Pub. L. No. 96-487, 94 Stat. 2371, 2371-2551 (1980) (codified at 16 U.S.C. §§ 3111–3126) ("ANILCA")) through:

(a)     a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that actions by Defendants the State of Alaska, its Department of Fish & Game, and Commissioner Doug Vincent-Lang in contravention of a rural Alaskan subsistence priority are preempted by federal law and are therefore unlawful; and

(b)     injunctive relief enjoining the Defendants from continuing to adopt, implement or enforce any state action that purports to authorize or encourage harvest of fish or wildlife that contravenes or interferes with federal law or regulatory actions instituted by the Federal Subsistence Board ("FSB") or authorized federal officials.

The Commission agrees with the need for these remedies, but seeks to protect a unique and different set of interests: the legally protected interests of the federally recognized Indian tribes of the Kuskokwim River watershed to continue their subsistence-based way of life through co-management of the Chinook and chum salmon resources within the Yukon Delta National Wildlife Refuge ("Refuge").

Pursuant to Federal Rule of Civil Procedure 24(c), this Motion is accompanied by the Commission's proposed Complaint in Intervention, including the attachments thereto.

## I.    ARGUMENT

### A.    The Commission Is Entitled to Intervene as of Right.

Under Federal Rule of Civil Procedure 24(a)(2), a court must grant intervention as a matter of right when a proposed intervenor "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties."[1]  Although the proposed intervenor "bears the burden of establishing these elements," the Ninth Circuit has "repeatedly instructed that "the requirements for intervention are [to be] broadly interpreted in favor of intervention."[2] This "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts."[3]  The intervention analysis is therefore "guided primarily by practical considerations, not technical distinctions."[4]

### 1.  Intervention is Timely.

The first element, timeliness, looks to "three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and

---

[1] *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020)).

[2] *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).

[3] *Id.* (quoting *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc)).

[4] *W. Watersheds Project*, 22 F.4th at 835 (quoting *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)).

(3) the reason for and length of [any] delay" in moving to intervene.[5]  The Commission's

intervention at this stage of the litigation easily meets this liberal standard.

First, there is not a set point in the litigation when a motion to intervene becomes

untimely; rather, courts "consider the totality of circumstances."[6]  Thus, for instance, an

intervenor's motion may be considered timely even months into the litigation and after

responsive pleadings have been filed.[7]  Here, the litigation is in its earliest stages.  The

United States' Complaint was filed just two weeks ago,[8] and Defendants have not yet filed

a responsive pleading; briefing has proceeded only with regard to the United States' Motion

for Temporary Restraining Order ("TRO").[9]  Given the expedited nature of the TRO

motion in the face of Defendants' unlawful order purporting to authorize gillnet fishing for

salmon by all Alaskans in the Kuskokwim River within the Refuge on June 1, 2022, the

Commission has chosen to bring this intervention action after briefing and consideration

of the TRO motion so as not to add any additional complexity or cause any delay on that

important issue.

Second, there is no prejudice to any other Party.  Both the United States and the

Defendants are well aware of the Commission's long-standing participation and co-

---

[5] *W. Watersheds Project*, 22 F.4th at 835–36 (quoting *Smith*, 830 F.3d at 854).

[6] *Id.* at 835.

[7] *Citizens for Balanced Use*, 647 F.3d at 897 (finding intervention motion timely where it was filed "less than three months after the complaint was filed and less than two weeks after the [defendant] filed its answer to the complaint").

[8] ECF No. 1.

[9] ECF No. 6;  *see also* ECF Nos. 9, 10.

management regarding the Kuskokwim River Chinook and chum populations[10] and there should be no surprise that the Commission would seek to protect its interests in this litigation. Because the Commission seeks to intervene at an early stage of the litigation, its participation will not delay the existing proceedings, nor would it preclude either the United States or the Defendants from raising any claim or defense.

And finally, there is no need to weigh the "reason for and length of [any] delay"[11] because there has been no meaningful delay in the Commission's intervention.

### 2. The Commission has a Significant Protectable Interest in this Litigation That May Be Impaired by the Disposition of this Action.

"To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue."[12] The Ninth Circuit's "intervention caselaw has not turned on . . . technical distinctions" regarding whether such rights would be independently enforceable; rather "a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."[13] Such interests may include cultural interests and "interests in the land for subsistence,"

---

[10] *See, e.g.*, ECF No. 1 at ¶ 29-30 (describing coordination between Federal Subsistence Board, Alaska Department of Fish & Game, and Commission's in-season managers).

[11] *W. Watersheds Project*, 22 F.4th at 835–36 (quoting *Smith*, 830 F.3d at 854).

[12] *Citizens for Balanced Use*, 647 F.3d at 897 (citing *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996)).

[13] *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

particularly where those interests are expressly recognized by a statute such as ANILCA.[14]

Indeed, where the proposed intervenors "are the intended beneficiaries" of the law at issue

in the pending litigation, that fact weighs heavily in favor of allowing intervention.[15]

Once it has been established that a proposed intervenor has "a significant protectable

interest," if the statute protecting that interest is at issue in the case, courts generally "have

little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect

[that interest]."[16]  If a proposed intervenor "would be substantially affected in a practical

sense by the determination made in an action, he should, as a general rule, be entitled to

intervene."[17]

Intervention by the Commission easily meets this standard.  The Commission is an

inter-tribal consortium that represents the Federally Recognized Indian Tribes[18] of the

---

[14] *Alaska Indus. Dev. & Exp. Auth. v. Biden* (*AIDEA*), No. 3:21-CV-00245-SLG, 2022 WL 1137312, at *2 (D. Alaska Apr. 18, 2022) (Gleason, J.) (citing *Native Village of Quinhagak v. United States*, 35 F.3d 388, 393–94 (9th Cir. 1994); and citing *Citizens for Balanced Use*, 647 F.3d at 897–98).

[15] *California ex rel. Lockyer*, 450 F.3d at 441 (citing *County of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980)).

[16] *Id.* at 442 (citing *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001)).

[17] *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee notes).

[18] Each of the following Member Tribes of the Commission has issued a duly-adopted resolution ratifying the Kuskokwim River Inter-Tribal Fish Commission Constitution and authorizing the Commissioner appointed by that Tribe to vote on behalf of the Tribe: Nikolai Village, Telida Village, McGrath Native Village, Takotna Village, Native Village of Georgetown, Village of Stony River, Village of Sleetmute, Village of Crooked Creek, Native Village of Napaimute, Native Village of Chuathbaluk, Village of Kalskag, Village of Lower Kalskag, Village of Aniak, Tuluksak Native Community, Akiak Native Community, Akiachak Native Community, Organized Village of Kwethluk, Orutsararmuit

Kuskokwim River watershed concerning fisheries management matters, including but not limited to the management of the Kuskokwim River Chinook and chum salmon populations that are the subject of this action. The Commission's thirty-three (33) Tribally appointed Fish Commissioners, seven (7) Executive Council members, and five (5) In-Season Managers combine Traditional Knowledge and western science to conservatively manage Kuskokwim fisheries according to Yup'ik and Athabascan Dené values, subsistence harvest needs, and escapement targets aimed at rebuilding depleted salmon populations. Through the Commission, the Tribes of the Kuskokwim River watershed seek to conserve, protect, and manage the Chinook and chum salmon resources that form a core element of the traditional subsistence lifestyle of the people in their communities. As provided in the preamble to the Commission's Constitution:

> We, the Tribes of the Kuskokwim River and its tributaries, proclaim that our fisheries are essential to our cultural, nutritional, economic and spiritual well-being and our way of life. We recognize our responsibility and authority to exercise our inter-tribal treaty rights to act as stewards to our common traditional territories and resources. Since time immemorial, we have properly cared for the fishery resources of the Kuskokwim River Drainage. We commit to conserve, restore, and provide for tribal use of fisheries based on indigenous knowledge systems and scientific principles. Founded on tribal unity, and striving for consensus, we form the Kuskokwim River Inter-Tribal Fisheries Commission for the health and well-being of our tribal

---

Native Village (a/k/a Bethel), Native Village of Napaskiak, Native Village of Napakiak, Village of Atmautluak, Kasigluk Traditional Elders Council, Native Village of Eek, Village of Chefornak, and Native Village of Kwinhegak (a/k/a Quinhagak). Currently, the Commissioners for Lime Village, Village of Red Devil, Oscarville Traditional Village, Native Village of Kongiganak, Native Village of Kwigillingok, and the Native Village of Kipnuk may participate but do not vote on Commission decisions.

members, our future generations, and all Alaskans who rely upon the health of the fisheries.[19]

Fundamentally, the Commission's Member Tribes and the communities they represent are the intended beneficiaries of ANILCA Title VIII,[20] including the rural subsistence priority that Defendants have systematically undermined through the actions challenged in this case.[21] And—making the Commission's interests here even clearer— during the 2021 and 2022 fishing seasons, the Commission co-managed the Kuskokwim salmon fishery cooperatively with the U.S Fish and Wildlife Service ("USFWS") within the Refuge. The Commission and USFWS work together pursuant to a Memorandum of Understanding[22] supported by the inherent authority of federally recognized Indian tribes

---

[19] Kuskokwim Inter-Tribal Fisheries Commission Constitution, Preamble (Attachment A to proposed Compl. in Intervention).

[20] *See* 16 U.S.C. § 3111.

[21] In enacting Title VIII of ANILCA, Congress specifically found that "the continuation of the opportunity *for subsistence uses by rural residents* of Alaska, including both Natives and non-Natives, on the public lands and by Alaska Natives on Native lands is *essential to Native physical, economic, traditional, and cultural existence* and to non-Native physical, economic, traditional, and social existence." 16 U.S.C. § 3111(a) (emphasis added); *see also id.* subsection (e) (recognizing the need to establish an "administrative structure . . . for the purpose of enabling rural residents who have personal knowledge of local conditions and requirements to have a meaningful role in the management of fish and wildlife and of subsistence uses on the public lands in Alaska").

[22] *See* Memorandum of Understanding Between the United States Department of the Interior, U.S. Fish and Wildlife Service Alaska Region, and Kuskokwim Inter-Tribal Fish Commission (2016) ("2016 MOU") (Attachment B to proposed Compl. in Intervention); *see also* Kuskokwim River Inter-Tribal Fish Comm'n & U.S. Fish & Wildlife Serv., Draft 2022 Kuskokwim River Salmon Management and Harvest Strategy (April 15, 2022) ("2022 Management and Harvest Strategy") (Attachment C to proposed Compl. in Intervention) (the USFWS/Commission practice has been to keep Management and Harvest Strategy documents in draft form until the fishing season is complete, given the need to maintain flexibility for in-season management).

to protect their welfare, food security, culturally vital foodways, and the natural resources of their homelands, as well as a bevy of federal laws, regulations, policies, and executive orders.[23]  Under this co-management regime, the Commission and USFWS have worked collaboratively to implement ANILCA Title VIII's requirement for the prioritization of subsistence uses of the Kuskokwim River Chinook and chum salmon over other uses.[24] USFWS and the Commission have also worked to implement a management and harvest strategy that:

- Avoids overharvest of salmon and works to rebuild the Chinook and chum salmon populations;

- Sustainably manages other currently healthy salmon populations to avoid overharvest of those species;

- Upholds ANILCA's fish conservation and diversity mandates;

- Works to support the relationship between the Refuge and the Federally Recognized Tribes of the Kuskokwim River watershed through the Commission;

- Integrates meaningful local and Indigenous Knowledge into the fisheries management decision-making process; and

---

[23] *See*, 2016 MOU art. II (citing ANILCA Title VIII; Alaska Native Claims Settlement Act, 43 U.S.C. § 1601 *et seq.*; Executive Order 13175 "Consultation and Coordination with Indian Tribal Governments"; U. S. Dep't of the Interior Secretarial Order 3317 "Department of the Interior Policy on Consultation with Indian Tribes"; U. S. Dep't of the Interior Secretarial Order 3335 "Reaffirmation of the Federal Trust Responsibility to Recognized Indian Tribes and Individual Indian Beneficiaries"; USFWS Native American Policy; 36 C.F.R pt. 242; 50 C.F.R. pt. 100; *see also* Presidential Memorandum, "Tribal Consultation and Strengthening Nation-to-Nation Relationships," 86 Fed. Reg. 7491 (Jan. 29, 2021).

[24] 16 U.S.C. § 3114; *see* 2022 Management and Harvest Strategy at 2.

- Strives to provide for continued customary and traditional subsistence harvest.[25]

Defendants' actions at issue in this lawsuit[26] are in direct opposition to the Commission's efforts. Defendants' issuance of emergency special actions during the 2021 fishing season purporting to allow fishing by all users on the Kuskokwim River within the Refuge, in contravention of the federal closure, created havoc for the Tribes of the Kuskokwim River watershed and confusion for the Tribes' substance fishers, who received conflicting information from the State regarding the critical "who, where, when" and "with what gear" questions of the subsistence fishery.

This confusion was exacerbated because many of these subsistence fishers speak English as a second language (if at all), and they may not be deeply familiar with the complicated federal and state regulatory schemes governing fishing in the region. Instead of minimizing confusion, ADF&G's orders told all Alaskans they could fish, and left it up to individual fishers to realize that following that State's guidance would constitute a violation of federal regulations. These actions by the State stand in direct opposition to the Commission's efforts to communicate clear management decisions that allow subsistence fishers to harvest in a sustainable manner pursuant to federal (and, where applicable, State of Alaska) law.

---

[25] 2022 Management and Harvest Strategy at 1-2.

[26] *See* ECF No.1 at ¶¶ 28-38.

*United States v. State of Alaska*, Case No. 1:22-cv-00054-SLG          Page 10 of 15

Defendants' actions in the lead-up to the 2022 fishing season[27] leave no doubt that

Defendants will continue to undermine and violate the Commission's interests unless this

Court provides the declaratory and injunctive relief sought here.  Moreover, because this

action seeks to enforce the rural subsistence priority that the State's actions have flouted,

the Court's ruling will *necessarily* address ANILCA's rural subsistence provisions and thus

will unavoidably impact the Commission's interests one way or the other.  Because a ruling

in favor of the State would directly impair the Commission's interests, this factor weighs

heavily in favor of intervention.

### 3. The Existing Parties Do Not Adequately Represent the Commission's Interests.

As for the final element, "[t]he burden of showing inadequacy of representation is

'minimal' and satisfied if the applicant can demonstrate that representation of its interests

'may be' inadequate."[28]  Courts consider three main factors in this analysis:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.[29]

---

[27] *See* ECF No. 1 at 38 (describing ADF&G's May 13, 2022, emergency special action purporting to authorize gillnet openings to all Alaskans within the Refuge on June 1, 4, and 8, 2022).

[28] *W. Watersheds Project*, 22 F.4th at 840 (quoting *Citizens for Balanced Use*, 647 F.3d at 898).

[29] *Id.* at 840–41 (quoting *Citizens for Balanced Use*, 647 F.3d at 898).

Although adequacy of representation may be presumed where the proposed intervenor "share[s] the same 'ultimate objective'" as an existing party, that presumption can be rebutted by a showing that the intervenor's "interests are not 'sufficiently congruent'" with the other party's interests.[30] Thus, for instance, where the federal government "represent[s] the at-large interests of the general public" and proposed intervenors have "specialized interests that seek only the preservation of the subsistence, cultural, and wilderness aspects of the lands at issue," that differentiation is sufficient to establish inadequacy of representation.[31]

Such is the case here. Although the Commission and the United States share the ultimate goal of stopping Defendants from continuing their pattern of undermining the federal subsistence priority and otherwise violating ANILCA Title VIII and applicable federal regulations, the United States and the Commission seek to protect different interests. Whereas the United States seeks to advance at-large federal interests and defend the supremacy of federal statutes such as ANILCA, the Commission's interests are narrowly confined to protecting the continued health, welfare, economic security, and cultural vitality of its Member Tribes and the Alaska Native communities of the Kuskokwim River watershed. The Commission also has a different relationship with the

---

[30] *AIDEA*, 2022 WL 1137312, at *2 (first citing *W. Watersheds Project*, 22 F.4th at 841; then citing *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823).
[31] *Id.*

State than does the United States,[32] which may elicit differing litigation strategy choices, including with regard to what arguments to raise.  In addition, given the long history of disagreement between the United States and the Tribes of the region,[33] there is certainly room for doubt as to whether the United States will "make all of [the Commission's] arguments" as the litigation progresses.[34]  Finally, the Commission is in a unique position to offer information and evidence about the impacts of the State's actions on the subsistence fishers of the Kuskokwim River watershed, which is a "necessary element[]" that the existing parties may not be able to offer to the same extent.[35]

Accordingly, all four factors favor intervention under Rule 24(a), and the Commission should be permitted to intervene as of right.

### B.    The Commission Meets the Requirements for Permissive Intervention.

Rule 24(b) of the Federal Rules of Civil Procedure provides an alternative basis for the Commission's intervention in this action.  Permissive intervention is appropriate where a party timely moves to intervene and "has a claim or defense that shares with the main

---

[32] *See, e.g.*, Kuskokwim River Inter-Tribal Fish Comm'n, 2021 Annual Report at 12 (Attachment E to proposed Compl. in Intervention) (describing Commission's partnership with ADF&G and Takotna Tribal Council to operate Takotna River weir for fish monitoring purposes).

[33] *See, e.g.*, *Native Vill. of Quinhagak v. United States*, 35 F.3d 388 (9th Cir. 1994) (discussing a Tribal challenge to both State of Alaska and federal regulations under ANILCA).

[34] *W. Watersheds Project*, 22 F.4th at 840 (quoting *Citizens for Balanced Use*, 647 F.3d at 898).

[35] *See id.* at 841 (quoting *Citizens for Balanced Use*, 647 F.3d at 898).

action a common question of law or fact."[36]  These two elements—timeliness and a common question of law or fact—are the only requirements that apply here.[37]  As noted in detail above, this motion is timely because the Commission is seeking to intervene during the earliest stages of this litigation, and its claims share common questions of both law and fact with those brought by the United States.[38]  Accordingly, the Commission has met the requirements for permissive intervention, and the Court should permit the Commission to intervene pursuant to Rule 24(b) if it determines that intervention as of right is not appropriate.

## II.  CONCLUSION

For the foregoing reasons, the Court should grant the Commission's motion to intervene as a matter of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure or, in the alternative, permissively pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

---

[36] *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24(b)(1)(B)).

[37] Although permissive intervention is often said to require "an independent ground for jurisdiction," that "requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims," as is the case here. *Id.* at 844.

[38] *See* Compl. in Intervention ¶ 2 (incorporating and adopting the allegations and claims for relief of the United States).

*United States v. State of Alaska*, Case No. 1:22-cv-00054-SLG                Page 14 of 15

DATED this 31st day of May 2022, at Anchorage, Alaska.

SONOSKY, CHAMBERS, SACHSE
MILLER & MONKMAN, LLP

By:  */s/ Nathaniel Amdur-Clark*
       Nathaniel Amdur-Clark
       Alaska Bar No. 1411111
       Whitney A. Leonard
       Alaska Bar No. 1711064

## Certificate of Service

I certify that on May 31, 2022, a copy of the
foregoing document was served via ECF on all
counsel of record.

*/s/ Nathaniel Amdur-Clark*
Nathaniel Amdur-Clark