Nathaniel Amdur-Clark
nathaniel@sonosky.net
Whitney A. Leonard
whitney@sonosky.net
Sonosky, Chambers, Sachse,
  Miller & Monkman, LLP
725 East Fireweed Lane, Suite 420
Anchorage, Alaska 99503
Telephone: (907) 258-6377
Facsimile: (907) 272-8332

*Attorneys for Intervenor Kuskokwim River Inter-Tribal
  Fish Commission*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF ALASKA, THE ALASKA DEPARTMENT OF FISH & GAME and DOUG VINCENT-LANG, in his official capacity as Commissioner of the Alaska Department of Fish & Game, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     Case No. 1:22-cv-00054-SLG |

## KUSKOKWIM RIVER INTER-TRIBAL FISH COMMISSION'S JOINDER IN PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR PRELIMINARY INJUNCTION

The Kuskokwim River Inter-Tribal Fish Commission (the "Commission"), which

moved to intervene in this action as a plaintiff on May 31, 2022, hereby joins in the Motion

*United States v. State of Alaska*, Case No. 1:22-cv-00054-SLG          Page 1 of 9

for Preliminary Injunction filed by Plaintiff the United States of America. Although the Commission recognizes that the Court has not yet ruled on its pending intervention motion, given the expedited nature of briefing on the Motion for Preliminary Injunction, the Commission is lodging this joinder in order to provide the Court with an opportunity to consider it (and allow the other parties to respond, if appropriate) during the ordinary course of briefing rather than creating additional delays.

A preliminary injunction is appropriate here: the Plaintiffs are likely to succeed on the merits; the United States, federally qualified subsistence users, and the Kuskokwim River Chinook and chum salmon fisheries will all face irreparable harm if an injunction is not issued; the balance of the equities favors an injunction; and an injunction is in the public interest.[1]

In addition, the Commission, its Member Tribes, and the federally qualified subsistence users of the communities they represent are also likely to suffer irreparable harm in the absence of an injunction. The Commission represents the Federally Recognized Indian Tribes of the Kuskokwim River watershed concerning fisheries management matters, including the management of the Kuskokwim River Chinook and chum salmon populations.[2] In that capacity, the Commission co-manages the Kuskokwim River salmon fishery within the Yukon Delta National Wildlife Refuge ("Refuge")

---

[1] *See* Dkt. 5 at 11 (citing *Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1054 (9th Cir. 2013)).

[2] *See* Dkt. 12-1 (Proposed Compl. in Intervention ¶ 3).

*United States v. State of Alaska*, Case No. 1:22-cv-00054-SLG          Page 2 of 9

cooperatively with the U.S. Fish and Wildlife Service ("USFWS") pursuant to a Memorandum of Understanding ("MOU").[3] By flouting the rural subsistence priority that is clearly established under federal law,[4] and by directly contravening the Emergency Special Actions issued by the federal in-season manager following input from the Commission,[5] the Alaska Department of Fish & Game's ("ADF&G") actions directly impact the Commission's co-management authority and interfere with its ability to carry out its responsibilities under the MOU.[6] This in itself constitutes an irreparable harm, as it directly threatens the sovereignty of the Commission's Member Tribes, and "[h]arm to a tribe's sovereignty 'cannot be remedied by any other relief other than an injunction.'"[7]

ADF&G's actions also directly harm the federally qualified subsistence users who the Commission represents through its Member Tribes. These actions have both sowed confusion and detrimentally impacted the Chinook and chum populations on which tribal

---

[3] Dkt 12-1 (Proposed Compl. in Intervention ¶ 6).

[4] *See* 16 U.S.C. § 3112(2).

[5] *See* Dkt. 1-1 (Federal Emergency Special Actions).

[6] Dkt. 12-3. The MOU recognizes the "government-to-government relationship and trust responsibility with the Federally recognized tribes in the Kuskokwim River Drainage" and is intended to "meaningfully integrate Kuskokwim Tribes and Federally qualified users into the decision-making process for fisheries management on Federal public waters of the Kuskokwim River drainage." *Id.* at 1-2. Among other things, it provides that the USFWS in-season manager will consult with the Commission and "collaboratively mak[e] fisheries management decisions with the integration and application of Commission knowledge, information, and management strategies." *Id.* at 3.

[7] *N. Arapaho Tribe v. LaCounte*, 215 F. Supp. 3d 987, 1000 (D. Mont. 2016) (citing *Tohono O'odham Nation v. Schwartz*, 837 F. Supp. 1024, 1034 (D. Ariz. 1993)).

members and other rural residents depend for their subsistence.[8]  The federal gillnet closure and the limited openings for federally qualified subsistence users were implemented based on the best available science and were carefully targeted to "[a]void collective overharvest of salmon and rebuild Chinook and chum salmon populations" by applying a "conservation-based approach to management" while balancing the subsistence needs of rural users.[9]  If allowed to proceed, the State's actions purporting to allow additional users to harvest Chinook and chum salmon would necessarily add additional pressure to the salmon stocks, threatening the careful balance the Commission's and federal in-season fisheries managers have struck to conserve the dangerously depleted stocks.

Although the State theorizes that few additional users will avail themselves of the State-announced openings,[10] evidence from past openings suggests just the opposite.  In 2021, when the State announced a purported opening on June 28—a day when there was no parallel federal opening—the Commission and its staff launched a wide-ranging informational campaign to educate subsistence fishers to the fact that gillnet fishing on the Kuskokwim on June 28 would constitute a violation of federal fisheries regulations.[11]  Despite these efforts, at least 220 boats fished and harvested salmon within the Refuge in reliance on the State's announced opening.[12]  Because ADF&G does not measure harvests

---

[8] Ex. A, ¶¶ 10-16 (Decl. of Mike Williams, Sr.)

[9] Dkt. 12-4, at 1–2 (2022 Draft Management & Harvest Strategy).

[10] *See* Dkt. 9 at 17 (State Opp. to Mot. for TRO).

[11] Decl. of Mike Williams, Sr. ¶ 14.

[12] Decl. of Mike Williams, Sr. ¶¶ 10, 15.

or require permitting (even for monitoring purposes) of Kuskokwim Chinook or chum salmon by individuals, communities, groups, or even location, despite being statutorily required to do so,[13] no data exists regarding exactly how many Chinook and chum salmon were harvested within Refuge waters during the unlawful opening. However, given that Chinook and chum salmon were present in the river on June 28, it is certain that salmon were taken in contravention of federal regulations.

Even without knowing exactly how many non-federally qualified users will take advantage of the State's purported openings in 2022, the events of last summer show that it is highly likely that users will rely on the State-announced openings and will harvest salmon in contravention of the federal closure. That is sufficient for preliminary injunction purposes, as a plaintiff need only show that "irreparable injury is *likely* in the absence of an injunction."[14] Even the State must believe that *some* State-qualified users will take advantage of the purported openings it announced; otherwise it is hard to imagine why the it would have issued those orders at all.[15]

---

[13] Alaska Statute 16.05.330(c) provides that "The Board of Fisheries and the Board of Game may adopt regulations providing for the issuance and expiration of subsistence permits for areas, villages, communities, groups, or individuals as needed for authorizing, regulating, and monitoring the subsistence harvest of fish and game. The boards *shall* adopt these regulations when the subsistence preference requires a reduction in the harvest of a fish stock or game population by nonsubsistence users." (emphasis added). Sportfishing and commercial fishing for Kuskokwim River Chinook salmon and chum salmon were closed in 2021.

[14] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original) (citation omitted).

[15] The State's historical management of the Kuskokwim salmon fishery, in the most recent years before federal management was put in place, showed a similar disregard for the

*United States v. State of Alaska*, Case No. 1:22-cv-00054-SLG          Page 5 of 9

Moreover, in the context of such critically depleted Chinook and chum runs,[16] *any* salmon taken outside the federal restrictions constitutes irreparable harm. The rural subsistence fishers of the Commission's Member Tribes rely heavily on subsistence harvest of salmon for their physical and spiritual wellbeing. As a tribal member and subsistence fisher from the Native Village of Georgetown explained:

> In Yup'ik, the general word for food is neqa, which is also the word for fish. . . . For us, we wouldn't exist without salmon. On the river, we coexist, salmon and people. And it's always been that way. We have this deep spiritual relationship that we have the obligation, but also the privilege, to maintain between fish and people.[17]

In the words of another tribal member and subsistence fisher from Quinhagak, "[w]ithout my subsistence life, I don't know how I'd get through it. It's my therapy, being outdoors on the land and on the water."[18] She described fishing as "the most important part" of this subsistence way of life and expressed concern that these subsistence resources could be lost if fisheries managers are "not proactive about this."[19] As the Commission reported in its 2021 Situation Report, "[t]he collapse of both Chinook and chum salmon threatens the food and economic security and spiritual and cultural vitality of subsistence

---

protection of subsistence resources: in 2010, 2011, and 2013, the State allowed unsustainable harvest levels of 50% to 60% of the entire Chinook run, even when the runs in those years were some of the lowest on record at the time. Decl. of Mike Williams, Sr. ¶ 4.

[16] *See* Dkt. 12-5, at 2, 4 (Situation Report) (documenting 2021 chum run more than 90% below long-term average and Chinook run 47% below long-term average).

[17] Dkt. 12-5, at 12 (Situation Report).

[18] Dkt. 12-6, at 13 (2021 Annual Report).

[19] *Id.*

fishing communities on the Kuskokwim River."[20]  In recent years, "only a fraction of the amount reasonably necessary for subsistence uses . . . was available for harvest" in both the Chinook and chum runs.[21]

The State has suggested that the number of fish harvested over a few weeks' time will not matter in the grand scheme of the run.[22]  This could hardly be farther from the truth. Against the backdrop of the "food security crisis" happening on the Kuskokwim,[23] each additional salmon taken by non-federally qualified users directly threatens the ability of families along the Kuskokwim to continue the subsistence fishery as specifically protected by ANILCA.  This harm is irreparable; fish taken from the river cannot simply be returned, and there is no compensatory remedy available.  And, as every Alaskan knows, each species of salmon runs for only a few fleeting weeks each summer. On the Kuskokwim, "the Chinook salmon run wanes" by the end of June.[24]  Thus, the few weeks that the State attempts to ignore are in fact the exact weeks during which rural subsistence users are attempting to harvest fish that will feed their families for the entire rest of the year.  Without a preliminary injunction, the State's illegal conduct will span essentially the entire Chinook and chum salmon runs.

---

[20] Dkt. 12-5, at 8.

[21] *Id.* at 5 (discussing Chinook harvest); *see id.* at 6 (discussing chum harvest).

[22] Dkt. 9 at 14–18 (State of Alaska Opp. to Mot. for TRO).

[23] *Id.* at 5.

[24] *Id.*

Finally, the State's past actions demonstrate that if it is allowed to proceed unchecked, its orders will create widespread confusion among both federally qualified rural subsistence users and non-federally qualified users alike. When the State issued purported openings during the 2021 season, especially on June 28th when no parallel federal opening existed, it "caused widespread confusion for federally qualified subsistence fishers who are dependent on salmon to meet their subsistence needs and who have not been able to meet their documented long-term subsistence needs for the past eleven years and who are, at the same time, concerned that they be cited for illegal fishing."[25] In each of the previous six years, the Chinook season had been managed by the federal in-season manager in collaboration with the Commission; now, for the first time, a different agency was telling users that they could disregard the federal closure and harvest salmon with gillnets during the federal closure.[26] The Commission received numerous phone calls from users who were confused by the State's announcement of a purported opening, and the Commission was forced to undertake significant outreach efforts to explain to federally qualified users that the federal closure was still in place—and the purported State opening was in contravention of federal law—in an attempt to clarify the confusion created by the State's actions.[27] In addition to creating immediate confusion for subsistence users themselves, State actions that conflict with federal management orders also erode trust in fisheries

---

[25] Decl. of Mike Williams, Sr. ¶ 12.

[26] *Id.* ¶ 13.

[27] *Id.* ¶ 14.

managers, making effective management increasingly difficult. In light of these events last year, there is a high likelihood that these harms will recur as the season unfolds in the coming weeks unless this Court issues an injunction.

For all of these reasons, the Commission and its Member Tribes face a likelihood of irreparable harm, which further supports the United States' Motion for Preliminary Injunction.

DATED this 3rd day of June 2022, at Anchorage, Alaska.

SONOSKY, CHAMBERS, SACHSE
MILLER & MONKMAN, LLP

By: _/s/ Nathaniel Amdur-Clark_
Nathaniel Amdur-Clark
Alaska Bar No. 1411111
Whitney A. Leonard
Alaska Bar No. 1711064

### Certificate of Service

I certify that on June 3, 2022, a copy of the foregoing document was served via ECF on all counsel of record.

_/s/ Nathaniel Amdur-Clark_
Nathaniel Amdur-Clark