Erin C. Dougherty Lynch (AK Bar No. 0811067)
Matthew N. Newman (AK Bar No. 1305023)
Megan R. Condon (AK Bar No. 1810096)
Maggie Massey (AK Bar No. 1911098)
NATIVE AMERICAN RIGHTS FUND
745 West 4th Avenue, Suite 502
Anchorage, AK 99501
Phone: 907-276-0680
dougherty@narf.org
mnewman@narf.org
mcondon@narf.org
massey@narf.org

*Counsel for Applicant Intervenor-Plaintiffs*

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE OF ALASKA, THE ALASKA DEPARTMENT OF FISH & GAME, and DOUG VINCENT-LANG, in his official capacity as the Commissioner of the Alaska Department of Fish & Game,<br><br>Defendants. | Case No. 1:22-cv-00054-SLG<br><br>**MEMORANDUM IN SUPPORT OF [APPLICANT] ASSOCIATION OF VILLAGE COUNCIL PRESIDENTS, et al.'s MOTION TO INTERVENE** |

Pursuant to Federal Rule of Civil Procedure 24(a) and (b), the Association of

Village Council Presidents (AVCP), Betty Magnuson, and Ivan Ivan move to intervene as

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*  Page **1** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 1 of 18

Plaintiffs in this litigation challenging the State of Alaska's (State or Defendants) actions that impede the rural subsistence priority set forth in the Alaska National Interest Lands Conservation Act (ANILCA). The United States initiated this lawsuit to protect the rights of rural subsistence users along the Kuskokwim River who depend upon Chinook and chum salmon for their physical, economic, traditional, and cultural existence. This case raises important questions about the federal government's trust responsibilities to Alaska Native Tribes and subsistence users, and it highlights the State's antagonistic attitude towards and actions against Alaska Native subsistence harvesters. In this case, longstanding conflicts between resource managers and critical questions about salmon conservation and management come to the fore during an unprecedented salmon crisis in Western Alaska. AVCP, the non-profit tribal consortium representing the 56 federally recognized Tribes in the Yukon-Kuskokwim region along with two individual, federally qualified subsistence users from the Kuskokwim River (collectively the Applicants or Subsistence Applicants) seek to intervene as Intervenor-Plaintiffs in this case because the questions presented will have direct, real-world implications for their subsistence fishing during the upcoming summer season and into the future.

Applicants satisfy the four-factor test for intervention as of right under Rule 24(a). First, this motion is timely. It is filed approximately three weeks after the lawsuit was initiated—there has been no delay in filing for intervention. Second, Applicants have a deep interest in protecting the federal subsistence priority on public lands in Alaska and the continuation of their traditional subsistence way of life. Third, without intervention an adverse ruling may impair the Applicants' ability to continue subsistence fishing

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*                                                                                                              Page **2** of **18**

Case 1:22-cv-00054-SLG    Document 19-1    Filed 06/10/22    Page 2 of 18

pursuant to the federal subsistence priority. And fourth, Applicants' interests are distinct both from the United States' interests in confirming the supremacy of federal laws and from Applicant-Intervenor the Kuskokwim River Inter-Tribal Fish Commission's (the Commission) interest in maintaining its co-management authority over the Kuskokwim River salmon stocks. Accordingly, this Court should grant the motion for intervention as a matter of right. In the alternative, Applicants also meet the standard for permissive intervention under Rule 24(b).

## I. FACTUAL BACKGROUND

AVCP is a non-profit tribal consortium based in Bethel, Alaska, dedicated to protecting and supporting the interests of its 56 member Tribes and their tribal citizens.[1] Founded in 1964, AVCP provides human, social, and other culturally relevant services to its member Tribes to promote self-determination and protection and enhancement of cultural and traditional values.[2] AVCP's purpose is to promote the common good and social welfare of the region's residents through its programs related to housing, employment, environmental matters, and health services, and to advocate for the region's Tribes and residents.[3] AVCP member Tribes and their tribal citizens speak their original languages and practice a subsistence way of life that has been continuously maintained since time immemorial.[4]

AVCP's member Tribes are located in communities throughout the Yukon-

---

[1] Korthuis Decl. ¶ 3.
[2] Korthuis Decl. ¶¶ 4-5, 16.
[3] Korthuis Decl. ¶¶ 5-6.
[4] Korthuis Decl. ¶ 14.

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*                                               Page **3** of **18**

Kuskokwim Delta (YK Delta) in an area of approximately 59,000 square miles.[5] The YK Delta is named after the two large rivers in the area: the Yukon River and the Kuskokwim River. Many AVCP communities are located along these rivers and originated from traditional hunting areas or fish camps.[6] The YK Delta is not accessible by roads and the rivers and tributaries provide connectivity between communities as well as access to important subsistence resources, including fish like Chinook and chum salmon.[7]

Subsistence resources, including Chinook and chum salmon, are essential for meeting the nutritional needs of YK Delta residents but their importance extends into all aspects of Yup'ik, Cup'ik, and Athabascan cultural life and identity.[8] Households in the region experience more food insecurity than in other areas of the state and nation.[9] Salmon make up over 50 percent of the region's subsistence harvests.[10] Over half of the Chinook salmon caught for subsistence across the state are caught in the Kuskokwim region, where salmon are over 85 percent of the subsistence harvest by poundage.[11]

Subsistence fishing is foundational to community and cultural existence in the YK Delta.[12] Traditional fish camps along the river are places where families and friends

---

[5] Korthuis Decl. ¶ 4.
[6] AVCP, *Our Region*, https://www.avcp.org/about-avcp/our-region/.
[7] *Id.*
[8] Ivan Decl. ¶¶ 7-8, 14; Korthuis Decl. ¶¶ 12-14.
[9] Korthuis Decl. ¶ 12.
[10] KUSKOKWIM RIVER INTER-TRIBAL FISH COMMISSION, SALMON SITUATION REPORT 4, ECF 12-5. [hereinafter KRITFC REPORT].
[11] *Id.*
[12] Ivan Decl. ¶ 7; Korthuis Decl. ¶ 14; Magnuson Decl. ¶ 9.

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*  Page **4** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 4 of 18

gather each summer to harvest, process and store fish, berries, and other foods.[13]  Cultural knowledge is passed down through the generations as Elders, adults, and youth work together to harvest food.[14]

AVCP is committed to protecting and maintaining the region's natural resources so that current and future generations of rural residents can continue to practice a traditional subsistence way of life.[15]  AVCP's Natural Resources Department is actively engaged in monitoring activities that could impact the region's subsistence resources and participates in state, federal, and international decision-making processes.[16]  AVCP communicates regularly with its member Tribes to provide information about events that could impact their way of life and collaborates with other organizations on efforts to protect the region's natural resources, including salmon.[17]

The region is currently experiencing a salmon crisis unlike any other in living memory.  Chinook and chum salmon numbers have declined precipitously during the past several years.  Subsistence users in Western and Interior Alaska have faced severe restrictions on their fishing activities in an attempt to preserve salmon stocks and meet escapement goals.[18]  Due to the high reliance on wild food, primarily salmon, in the region, these restrictions have a direct and outsized impact on the rural subsistence users

---

[13] AVCP, *Our Region*, https://www.avcp.org/about-avcp/our-region/.
[14] Ivan Decl. ¶ 8; Korthuis Decl. ¶ 14.
[15] Korthuis Decl. ¶ 6.
[16] Korthuis Decl. ¶¶ 6, 15.
[17] Korthuis Decl. ¶ 15.
[18] Korthuis Decl. ¶¶ 7-12.

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*　　　　　　　　　　　　　　　Page **5** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 5 of 18

along the Kuskokwim River.[19] 2021 was the eighth year that Chinook runs were too low to support subsistence fishing needs and the first year that once-abundant chum salmon returns were lower than Chinook runs.[20] These low return numbers resulted in significant restrictions on fishing for both species and in turn increased the pressure on other fish stocks as communities sought to replace Chinook and chum salmon with other food sources.[21]

AVCP has a long history of engaging on salmon management issues in both federal and state processes. AVCP engages in advocacy with other tribal organizations and federally recognized Tribes on federal Bering Sea fisheries management, engages with the Alaska State Board of Fisheries and Alaska Department of Fish and Game about salmon management, and works closely with member Tribes to share information and elevate tribal concerns and priorities.[22]

Betty Magnuson is a federally qualified subsistence user living in McGrath, Alaska.[23] She has been subsistence fishing for her entire life and on the Kuskokwim River for more than 25 years.[24] Salmon, including Chinook, red, and chum, are central to her heritage and traditional subsistence way of life.[25] It would be "devastating" if she

---

[19] Ivan Decl. ¶¶ 4-6, 9, 11; Korthuis Decl. ¶¶ 11-12; Magnuson Decl. ¶ 7.
[20] KRITFC REPORT at 6.
[21] *Id.* at 7; *see also* Robert J. Wolfe & Joseph Spaeder, *People and Salmon of the Yukon and Kuskokwim Drainages and Norton Sound: Fishery Harvests, Culture Change, and Local Knowledge Systems*, AM. FISHERIES SOC'Y SYMPOSIUM 70, 373 (2009).
[22] Korthuis Decl. ¶¶ 6, 15.
[23] Magnuson Decl. ¶ 3.
[24] Magnuson Decl. ¶ 4.
[25] Magunson Decl. ¶ 9.

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*   Page **6** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 6 of 18

didn't have salmon available because she depends on salmon to fulfill her nutritional and cultural needs.[26] Magnuson is an Elder and is no longer able to fish for herself due to health reasons but receives salmon from others who share their harvests with her.[27] As her family taught her to do, Magnuson relies on preserved salmon to last throughout the winter and to share with others in her community.[28] She experienced confusion caused by the dual management of salmon on the Kuskokwim River when she fished near Georgetown, Alaska.[29]

Ivan M. Ivan is a federally qualified subsistence user from Akiak, Alaska.[30] He has lived in Akiak and fished on the Kuskokwim River for his entire life.[31] As a lifelong subsistence fisherman, Ivan has experienced confusion navigating the dual salmon management system.[32] Salmon are central to Ivan's cultural traditions and provide essential food for him and his community, so the confusion, complexities, and potential penalties of the dual management system, make him feel as though subsistence fishermen are becoming "outlaws" for practicing their traditional ways of life.[33]

## II. APPLICANTS SATISFY THE FACTORS FOR INTERVENTION AS OF RIGHT.

Federal Rule of Civil Procedure 24(a) provides in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction

---

[26] *Id.*
[27] Magnuson Decl. ¶ 8.
[28] Magnuson Decl. ¶ 4.
[29] Magnuson Decl. ¶¶ 5-6.
[30] Ivan Decl. ¶ 3.
[31] Ivan Decl. ¶¶ 3-4.
[32] Ivan Decl. ¶¶ 10, 13.
[33] Ivan Decl. ¶¶ 4-5, 7, 10.

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.* Page **7** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 7 of 18

that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[34]

Under this Rule, a prospective intervenor must establish: (1) that its motion is timely; (2) that it has a cognizable interest in the litigation; (3) that without intervention an adverse ruling may impair or impede the ability to protect that interest; and (4) that its interest is not being adequately represented by the existing parties.[35]

Rule 24 is liberally construed in favor of intervention[36] and when evaluating whether Rule 24(a)'s requirements are met courts "are guided primarily by practical and equitable considerations."[37] As the Ninth Circuit notes, "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts."[38] As discussed in detail below, AVCP and the individual applicant intervenor-plaintiffs satisfy all of Rule 24(a)'s requirements and their motion to intervene as of right should be granted.

### A.    This Motion is Timely.

---

[34] FED. R. CIV. P. 24(a).
[35] *Sierra Club v. U.S. Envtl. Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983).
[36] *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)).
[37] *Donnelly*, 159 F.3d at 409.
[38] *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 397-98 (9th Cir. 2002) (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995)).

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*     Page **8** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 8 of 18

Whether a motion to intervene is timely is within the sound discretion of the court and is to be determined from the totality of the circumstances.[39] "Timeliness is measured by reference to '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the length of the delay.'"[40]

Here, Applicants seek to intervene while the proceedings are at an early stage. Defendants have yet to file an Answer to the Complaint, expedited briefing on the United States' Motion for a Temporary Restraining Order has just been completed, and briefing on the United States' Motion for a Preliminary Injunction is currently underway. Next, intervention at this stage will not prejudice the existing parties. Given the importance of this litigation to federally qualified subsistence users, if intervention is denied, any prejudice surrounding intervention would be borne by those users along the river who were unable to protect their interests at stake in this case. Finally, given the early stage of the litigation, there has been no appreciable delay in filing this motion.

### B. Applicants have a Protectable Interest in this Litigation.

Under Rule 24(a)(2), applicants must show that they have a "significantly protectable" interest relating to the subject of the action.[41] To demonstrate "a protectable interest sufficient to intervene as of right, an applicant-intervenor must establish (1) 'that the interest [asserted] is protectable under some law, and [ (2) ] that there is a relationship

---

[39] *NAACP v. New York*, 413 U.S. 345, 365 (1973).
[40] *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (quoting *Orange Cty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986)).
[41] *Donaldson v. United States,* 400 U.S. 517, 531 (1971).

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.* Page **9** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 9 of 18

between the legally protected interest and the claims at issue.'"[42] "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry."[43] The interest test "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[44]

> 1. **The Applicants have a legally protected interest in subsistence rights and the implementation of ANILCA's subsistence priority.**

The Applicants have a strong and long-standing interest in the protection of subsistence fishing along the Kuskokwim River. Subsistence fishing resources are not only a food source to residents of the YK Delta but are a foundational piece of the cultural fabric of the region's Tribes and their tribal citizens.[45]

In ANILCA, Congress found that "the continuation of the opportunity for subsistence uses by rural residents of Alaska . . . is essential to Native physical, economic, traditional, and cultural existence . . . ."[46] The purpose of ANILCA's Title VIII was "to provide the opportunity for rural residents engaged in a subsistence way of

---

[42] *Forest Conservation Council*, 66 F.3d at 1494, *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (alterations in original) (quoting *Sierra Club v. U.S. Evtl. Prot. Agency*, 995 F.2d 1478, 1484 (9th Cir. 1993)).
[43] *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993).
[44] *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002) (quoting *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)).
[45] Korthuis Decl. ¶¶ 7, 14, 16; Ivan Decl. ¶¶ 6-8, 14; Magnuson Decl. ¶¶ 4,9.
[46] 16 U.S.C. § 3111(1); *see also Native Vill. of Quinhagak v. United States*, 35 F.3d 388, 394 (9th Cir. 1994) (citing the congressional findings in ANILCA to support "the clear congressional directive to protect the cultural aspects of subsistence living").

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*     Page **10** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 10 of 18

life to do so."[47] ANILCA defines subsistence uses to include "customary and traditional uses by rural Alaska residents of wild, renewable resources . . . ."[48] ANILCA created a federal subsistence management program which prioritizes subsistence over other uses.[49]

Conflicts between the State of Alaska and the federal government over fish and wildlife management are longstanding.[50] In ANILCA, Congress envisioned an "elaborate" cooperative management scheme whereby the State could assume management duties, including implementation of the rural subsistence priority.[51] However, the State has failed to come into compliance with ANILCA's requirements to assume management authority and therefore lacks the ability to regulate subsistence hunting and fishing on federal public lands.[52]

The State's 2022 emergency orders purporting to allow fishing for all Alaska qualified users during federal openings for federally qualified users are yet another attempt to undermine Alaska Native subsistence protections.[53] The emergency orders directly threaten the ability of Alaska's rural residents to access essential subsistence

---

[47] 16 U.S.C. § 3112(1).
[48] 16 U.S.C. § 3113.
[49] 16 U.S.C. § 3114 ("Except as otherwise provided in this Act and other Federal laws, the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes.").
[50] *John v. United States*, 720 F.3d 1214, 1236 (9th Cir. 2013) ("As a result of this long-running federal-state controversy, ANILCA imposes negotiated limits on how certain natural resources are managed in Alaska.").
[51] *Id.*
[52] *Id.* at 1219-21.
[53] *See e.g. Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*, 501 F. Supp. 3d 671 (D. Alaska 2020) (denying State motion for preliminary injunction against limited emergency subsistence hunts and affirming the Federal Subsistence Board's ability to delegate authority and implement ANILCA's rural subsistence priority).

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.* Page **11** of **18**

Case 1:22-cv-00054-SLG Document 19-1 Filed 06/10/22 Page 11 of 18

resources. As was evident during similar overlapping openings in the past, the State's actions created confusion among subsistence fishers attempting to navigate a difficult regulatory scheme. Subsistence users have experienced the confusion described in the Complaint when federal openings for qualified subsistence users overlapped with state openings for all Alaska residents or when state openings occurred on days when the federal fishery was closed.[54] The fines and penalties for fishing in contravention of an opening are sizeable.[55]

Applicants also have a broader interest in the continued vitality of the federal trust responsibility. In Alaska, this responsibility is particularly important given the unique history and laws surrounding Alaska Native Tribes and the State's hostile history and continuing practice towards Alaska Native subsistence.[56] Alaska Native subsistence rights are an integral part of the federal trust responsibility.[57] Applicants' interest in the United States' fulfillment of its trust responsibilities, as implemented through ANILCA, is a legally protected interest sufficient to satisfy the requirements of Rule 24(a).

### 2. There is a strong relationship between the Applicants' legally protected interests and the claims at issue in this case.

---

[54] Ivan Decl. ¶¶ 10, 13.
[55] Ivan Decl. ¶ 10.
[56] DAVID S. CASE & DAVID A. VOLUCK, ALASKA NATIVES AND AMERICAN LAWS 290 (3d. ed. 2012) (discussing the atypical history of the United States' Alaska Native policy and the importance of federal statutes in developing a trust responsibility in the absence of formal treaties) and at 301-10 (summarizing the decades-long legal battles between the State and Alaska Natives over subsistence rights and access).
[57] *Id.* at 290-91.
[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*                    Page **12** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 12 of 18

The Applicants' interests in protecting subsistence rights and the implementation of ANILCA's subsistence priority are closely connected to the claims brought by the United States in this case. Here, the United States brought suit to protect subsistence uses and resources, specifically seeking declaratory and injunctive relief to prohibit the State's emergency orders and similar actions that undermine the subsistence priority.[58] The State's actions at issue in this case are part of its historic and ongoing efforts to impede subsistence rights and federal subsistence management. Resolution of this case will significantly impact the United States' ability to implement ANILCA's subsistence priority and fulfill its trust responsibilities. An adverse ruling against the United States will have a direct and harmful impact on the Applicants' ability to protect their subsistence rights and traditional subsistence-based ways of life.[59]

### C. This Action May as a Practical Matter Impair or Impede Applicants' Ability to Protect their Interests.

Applicants for intervention need only show that their interests "may" be impaired or impeded "as a practical matter."[60] The focus here is on whether the relief requested by plaintiffs may impair the applicant-intervenors' interests.[61]

The relief requested in this case will directly impact federally qualified subsistence users, including Betty Magnuson, Ivan Ivan, and AVCP's member Tribes. The rights at

---

[58] Compl. at 2, 24-25, ECF 1.
[59] *See Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998) (holding that the relationship requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant").
[60] FED. R. CIV. P. 24(a).
[61] *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.* Page **13** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 13 of 18

issue in this case stem from ANILCA's objective "to provide the opportunity for rural residents engaged in a subsistence way of life to do so."[62] The present case challenges the State's actions obstructing Applicants' subsistence rights and raises fundamental questions related to the United States' implementation of the subsistence priority and federal subsistence management under ANILCA. Thus, it is critical for Applicants to participate in this lawsuit to protect their interest in maintaining opportunities for subsistence fishing along the Kuskokwim River and other federal public lands.

### D. No Existing Party Will Adequately Protect Applicants' Interests.

To satisfy the fourth factor, a potential intervenor must show that no existing party will adequately represent its interests. Courts consider whether a present party "will undoubtedly make all of a proposed intervenor's arguments," "is capable and willing to make such arguments," and "whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect."[63]

Intervention is permitted when representation is potentially inadequate.[64] Courts "have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors" even when the government purports to take the same position as intervenor.[65] This is because the United States represents the broader interest of the

---

[62] 16 U.S.C. § 3112(1).
[63] *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).
[64] *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538–39, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").
[65] *Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 736 (D.C. Cir. 2003).

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*  Page **14** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 14 of 18

American people, which may or may not be identical to the interests of specific intervenors.[66]

Here, Applicants seek to intervene in this matter in support of the United States' actions to protect and defend AVCP member Tribes' and individual subsistence users' cultures and ways of life. AVCP's interests are unique to the organization and its member Tribes, deeply held, longstanding and critical, and are not fully shared by the United States or fellow Applicant Intervenor Kuskokwim River Inter-Tribal Fish Commission (Commission). AVCP is an advocate for the subsistence rights and interests of all its member Tribes' and their citizens—an advocacy mission distinct from the interests of the United States and from the Commission.[67] The Commission asserts particularized interests as a co-manager of salmon in the Kuskokwim River and has received delegated authority from Kuskokwim River Tribes to act on their behalf in that capacity.[68] That unique role carries interests that are distinct from AVCP's mission on behalf of its member Tribes. AVCP's membership is broader than the Commission's and includes Tribes along the Kuskokwim River but also extends out into the broader Yukon-Kuskokwim Delta region. This necessarily raises interests beyond those of the Commission. For example, sharing salmon is a fundamental component of Yup'ik,

---

[66] *Id.*
[67] Korthuis Decl. ¶¶ 4-6, 16.
[68] Kuskokwim River Inter-Tribal Fish Commission's Combined Mot. to Intervene as Pls. and Mem. in Supp. at 8, ECF 12.

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.* Page 15 of 18

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 15 of 18

Cup'ik, and Athabascan cultures and salmon harvested from the Kuskokwim River are shared between families and communities across the region.[69]

AVCP's member Tribes have charged it with a broader mission than the Commission's mission. AVCP has a Natural Resources Department that works on behalf of Tribes in navigating and improving the dual federal-state management systems.[70] AVCP has advocated on behalf of its member Tribes on federal subsistence management issues for nearly 40 years and regularly participates in Federal Subsistence Board hearings, subsistence management workshops, public forums, and submits comments on behalf of its member Tribes in both federal and state policy forums.[71] AVCP's unique position and perspectives make it unlikely that Plaintiffs would adequately represent is interests.

Similarly, Betty Magnuson and Ivan Ivan are individual federally qualified subsistence fishers whose perspective and lived-experiences will bring a perspective to this litigation that cannot be adequately represented by other parties.

The Applicants accordingly meet the requirements for intervention as of right under Rule 24(a).

### III. IN THE ALTERNATIVE, APPLICANTS SHOULD BE PERMITTED TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(b).

Alternatively, the Court should allow permissive intervention in this matter. Rule 24(b) provides in relevant part: "On timely motion, the court may permit anyone to

---

[69] Korthuis Decl. ¶ 14.
[70] Korthuis Decl. ¶ 15.
[71] Korthuis Decl. ¶ 15.

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*      Page **16** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 16 of 18

intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."[72]

As previously demonstrated, Applicants have moved to intervene early in the litigation and intervention will not prejudice existing parties. Their motion is timely. Further, while the Applicants bring perspectives to the case distinct from that of the other parties, they are the beneficiaries of ANILCA's rural subsistence priority and intend to support the United States' action to protect that priority from future State encroachment. Under these circumstances, the common question requirement is met.[73]

Applicants' motion to intervene therefore satisfies the requirements for permissive intervention under Rule 24(b).

V. CONCLUSION

For the reasons stated above, the Association of Village Council Presidents, Betty Magnuson, and Ivan Ivan respectfully request that their motion to intervene be granted.

Submitted this 10th day of June, 2022.

NATIVE AMERICAN RIGHTS FUND

/s/ Matthew N. Newman
Erin C. Dougherty Lynch (AK Bar No. 0811067)
Matthew N. Newman (AK Bar No. 1305023)
Megan R. Condon (AK Bar No. 1810096)
Maggie Massey (AK Bar No. 1911098)

---

[72] FED. R .CIV. P. 24(b).
[73] Applicants need not show an independent ground for jurisdiction because they do not bring new claims. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.* Page 17 of 18

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 17 of 18

Certificate of Service

I hereby certify that on June 10, 2022, a true and correct copy of the MOTION TO INTERVENE, MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE, COMPLAINT IN INTERVENTION and ASSOCIATED DECLARATIONS, were served electronically pursuant to the Court's electronic filing procedures upon the attorneys of record in this lawsuit.

*/s/ Matthew N. Newman*

[Applicant] Intervenor-Plaintiffs' Memo in Support of Motion to Intervene in
1:22-cv-00054-SLG, *United States v. State of Alaska, et.al.*  Page **18** of **18**

Case 1:22-cv-00054-SLG   Document 19-1   Filed 06/10/22   Page 18 of 18