## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>and<br><br>KUSKOKWIM RIVER INTER-TRIBAL<br>FISH COMMISSION,<br><br>                    Intervenor-Plaintiff,<br><br>                    v.<br><br>THE STATE OF ALASKA, THE<br>ALASKA DEPARTMENT OF FISH<br>& GAME, and DOUG VINCENT-<br>LANG, in his official capacity as<br>Commissioner of the Alaska<br>Department of Fish & Game,<br><br>                    Defendants. | Case No. 1:22-cv-00054-SLG |

## ORDER REGARDING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Before the Court at Docket 5 is Plaintiff United States of America's Motion

for Preliminary Injunction.  Intervenor-Plaintiff Kuskokwim River Inter-Tribal Fish

Commission ("the Commission") joined Plaintiff's motion at Docket 14.[1]

Defendants State of Alaska; Alaska Department of Fish & Game (ADF&G); and

---

[1] The case caption has been amended to include Intervenor-Plaintiff.  *See* Docket 29 (Order Regarding Kuskokwim River Inter-Tribal Fish Commission's Motion to Intervene).

Doug Vincent-Lang, Commissioner of ADF&G, responded in opposition at Docket

17. Plaintiff replied at Docket 21, and Intervenor-Plaintiff joined Plaintiff's reply at

Docket 24. Defendants responded in opposition to Intervenor-Plaintiff's joinder at

Docket 30. The Court heard oral argument on June 21, 2022.[2]

Plaintiff seeks a preliminary injunction "to prohibit Defendants from

continuing to authorize or implement actions that contravene the rural Alaskan

subsistence priority and are preempted by federal law."[3] The state action at issue

is Defendants' Emergency Order #3-S-WR-02-22, which Plaintiff describes as

"purport[ing] to open the Kuskokwim River within the Yukon Delta National Wildlife

Refuge to gillnet fishing by all Alaskans in violation of federal orders issued to

effectuate the ANILCA Title VIII rural subsistence priority."[4] Defendants respond

that Plaintiff has not met its burden to justify the issuance of a preliminary

injunction.

## I.    Background

The Court set forth the factual background relevant to the instant motion in

its May 31, 2022 Order Denying Plaintiff's Motion for Temporary Restraining Order

and assumes familiarity here.[5] On June 17, 2022, the Court allowed the

---

[2] As the Court indicated at oral argument, it will not consolidate a ruling on the instant motion for preliminary injunction with a determination of the case on its merits.

[3] Docket 5 at 2.

[4] Docket 6 at 2–3.

[5] Docket 11 at 2–11. The Court denied the Motion for Temporary Restraining Order because

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 2 of 19

Commission to intervene as a plaintiff.[6]   As explained by Intervenor-Plaintiff, it "represents the Federally Recognized Indian Tribes of the Kuskokwim River watershed concerning fisheries management matters, including the management of the Kuskokwim River Chinook and chum salmon populations."[7]

## II.    Legal Standard

The standard for obtaining a preliminary injunction was articulated in *Winter v. Natural Resources Defense Council, Inc.*, where the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits;[8] (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[9]  *Winter* places the

---

Plaintiff had not made a showing that irreparable harm would occur in the short time before the Court determined whether a preliminary injunction should issue.

[6] Docket 29.

[7] Docket 14 at 2.

[8] Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that the Circuit's "serious questions" approach to preliminary injunctions was still valid "when applied as a part of the four-element Winter test."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).  Accordingly, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor.'"  *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).  "Serious questions are 'substantial, difficult, and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'"  *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).  They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance on the merits.'"  *Id.* (quoting *Marcos*, 862 F.2d at 1362).  All of the *Winter* elements must still be satisfied under this approach for injunctive relief to issue.

[9] 555 U.S. 7, 20 (2008).  When the government is a party to the action, such as here, "the

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction

Page 3 of 19
Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 3 of 19

burden on a plaintiff to make a showing on all of the *Winter* factors before a court

will issue a preliminary injunction.[10]

Injunctive relief is an equitable remedy, and "[t]he essence of equity

jurisdiction is the power of the court to fashion a remedy depending upon the

necessities of the particular case."[11]

## III.    Discussion

Plaintiff and Intervenor-Plaintiff assert that all four *Winter* elements—

likelihood of success on the merits, irreparable harm, the balance of the equities,

and public interest—weigh in favor of a preliminary injunction.  Defendants respond

that Plaintiff has not shown that any of the *Winter* elements support the issuance

of a preliminary injunction.

### A. Plaintiff has shown a likelihood of success on the merits.

The Alaska National Interest Lands Conservation Act (ANILCA) provides

that rural subsistence users are given priority to hunt and fish on federal land and

waters within Alaska: "[N]onwasteful subsistence uses of fish and wildlife and other

renewable resources shall be the priority consumptive uses of all such resources

on the public lands of Alaska when it is necessary to restrict taking in order to

---

balance of equities factor and the public interest factor merge." *Jones v. Bonta*, 34 F.4th 704, 713 (9th Cir. 2022) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).

[10] *See All. for the Wild Rockies*, 632 F.3d at 1135.

[11] *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987).

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 4 of 19

assure the continued viability of a fish or wildlife population or the continuation of subsistence uses of such population, the taking of such population for nonwasteful subsistence uses shall be given preference on the public lands over other consumptive uses."[12]

Plaintiff construes the relevant question as one of conflict preemption governed by the Supremacy Clause of the United States Constitution.[13] Plaintiff maintains that "the State's management actions on the Kuskokwim River within the [Yukon Delta National Wildlife] Refuge contradict federal management efforts and create an obstacle to ANILCA's federal purposes and objectives of prioritizing the subsistence use of Chinook and chum salmon within the Refuge over all other uses."[14] Plaintiff asserts that ANILCA's express policy of protecting and prioritizing rural subsistence users' ability to harvest fish preempts any state action that conflicts with federal law or a federal emergency order.[15] Plaintiff contends that ANILCA "not only contemplates, but also prescribes that outcome of 'a clash of lifestyles and a dispute over who gets to fish. Congress, using clear language, has resolved this dispute in favor of [federally qualified users] . . . by giving them priority'" in waters located within federal lands.[16]

---

[12] 16 U.S.C. § 3112(2).

[13] Docket 5 at 12 (citing U.S. Const. art. VI, cl. 2).

[14] Docket 5 at 13.

[15] Docket 5 at 13–14.

[16] Docket 5 at 14 (quoting *Kenaitze Indian Tribe v. State of Alaska*, 860 F.2d 312, 318 (9th Cir.

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction

assure the continued viability of a fish or wildlife population or the continuation of subsistence uses of such population, the taking of such population for nonwasteful subsistence uses shall be given preference on the public lands over other consumptive uses."[12]

Plaintiff construes the relevant question as one of conflict preemption governed by the Supremacy Clause of the United States Constitution.[13] Plaintiff maintains that "the State's management actions on the Kuskokwim River within the [Yukon Delta National Wildlife] Refuge contradict federal management efforts and create an obstacle to ANILCA's federal purposes and objectives of prioritizing the subsistence use of Chinook and chum salmon within the Refuge over all other uses."[14] Plaintiff asserts that ANILCA's express policy of protecting and prioritizing rural subsistence users' ability to harvest fish preempts any state action that conflicts with federal law or a federal emergency order.[15] Plaintiff contends that ANILCA "not only contemplates, but also prescribes that outcome of 'a clash of lifestyles and a dispute over who gets to fish. Congress, using clear language, has resolved this dispute in favor of [federally qualified users] . . . by giving them priority'" in waters located within federal lands.[16]

---

[12] 16 U.S.C. § 3112(2).

[13] Docket 5 at 12 (citing U.S. Const. art. VI, cl. 2).

[14] Docket 5 at 13.

[15] Docket 5 at 13–14.

[16] Docket 5 at 14 (quoting *Kenaitze Indian Tribe v. State of Alaska*, 860 F.2d 312, 318 (9th Cir.

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 5 of 19

Defendants first respond that federal preemption fails here because the Federal Subsistence Board (FSB) is not validly constituted and thus cannot legally manage Kuskokwim River fisheries.  Specifically, Defendants contend that the make-up of the FSB violates the Appointments Clause of the federal Constitution because the FSB members "exercise[] significant authority pursuant to the laws of the United States"[17] and thus are "principal officers of the United States" but have not been appointed by the President with the consent of the Senate.[18]  And Defendants maintain that the FSB further violated the Appointments Clause when it delegated what they describe as "unreviewable executive power" to the Refuge Manager, "giv[ing] the Refuge Manager 'significant authority pursuant to the laws of the United States.'"[19]  Defendants also respond that the Refuge Manager's

---

1988)).  In *Kenaitze Indian Tribe*, the Ninth Circuit stated that ANILCA gives priority to rural subsistence users in "federal waters."  860 F.2d at 313, 318.  In *Sturgeon v. Frost*, 139 S. Ct. 1066, 1080 n.2 (2019), the Supreme Court did "not disturb the Ninth Circuit's holdings that the Park Service may regulate subsistence fishing on navigable waters." (Citing *Alaska v. Babbitt*, 72 F.3d 698 (1995); *John v. United States*, 247 F.3d 1032 (2001) (en banc); and *John v. United States*, 720 F.3d 1214 (2013)).

[17] Docket 17 at 12–19 (citing U.S. Const. art. II, § 2, cl. 2).  According to Defendants, "the Board surely 'exercises significant authority pursuant to the laws of the United States'—the secretaries have assigned to it the responsibility for implementing the rural subsistence priority, which is the primary focus of an entire title of an important federal statute."  Docket 17 at 14 (footnote omitted).

[18] Docket 17 at 12–19; *see* U.S. Const. art. II, § 2, cl. 2 ("The President . . . shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.").

[19] Docket 17 at 19–23; *see* U.S. Const. art. II, § 2, cl. 2.

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 6 of 19

Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 6 of 19

emergency actions were arbitrary and capricious in violation of the Administrative Procedure Act (APA) because he improperly entered into a Memorandum of Understanding with the Commission[20] and because his emergency actions lacked scientific justification or support.[21]

Plaintiff replies by first noting that "Defendants continue to forego any response to Plaintiff's preemption claim" that "federal action taken pursuant to ANILCA Title VIII preempts contradictory state action within the Refuge."[22] As to Defendants' APA arguments, Plaintiff replies that Defendants have "not yet invoked the APA's right of action" and thus "any such claims are not yet before the Court, so their assertion here is premature."[23] Regarding Defendants' Appointment Clause arguments, Plaintiff replies that Defendants are "unlikely able to demonstrate standing" and that claim preclusion prevents Defendants from maintaining these Appointment Clause claims.[24] Plaintiff also contends that, even

---

[20] Specifically, Defendants contend that, in issuing the emergency orders, "the Refuge Manager has relied on factors which Congress has not intended him to consider by participating in a co-management relationship with [the Commission] that is not authorized by ANILCA or by the FSB's delegation of authority." Docket 17 at 23.

[21] Docket 17 at 23–34. Defendants specifically contend that the Refuge Manager's "order does not contain any analyses explaining why the action was necessary or appropriate. . . . [T]he order fails to explain how restricting the fishery to federally qualified users only, then providing significant opportunity to take fish from the purportedly depleted stock, is 'necessary for the conservation of healthy populations of fish or wildlife,' a justification required by the Board's own regulations." Docket 17 at 31 (citing 50 C.F.R. § 100.10(d)(4)(vi)).

[22] Docket 21 at 4.

[23] Docket 21 at 5.

[24] Docket 21 at 6. Specifically, Plaintiff contends that Defendants could have raised their Appointments Clause claims in *Dep't Fish & Game v. Fed. Subsistence Board*, __ F. Supp. 3d

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 7 of 19

if Defendants had standing and had timely brought their arguments, Defendants are making a collateral attack on the validity of the federal action and "Plaintiff has amply demonstrated that the federal actions at issue here are within the scope of congressionally delegated authority, and the State's Appointments Clause arguments to the contrary have no merit."[25]  Intervenor-Plaintiff agrees that "federal law clearly establishes that ANILCA preempts the State's asserted authority; and the State's arguments raising issues of constitutional authority and administrative law are both meritless and misplaced."[26]

The Court finds that, on the current record, Plaintiff has shown a likelihood of success on the merits.  Defendants have not contested ANILCA's rural subsistence priority nor explained how the State's emergency order does not "both violate the federal orders and stand as an obstacle" to the congressional intent of ANILCA.[27]  Instead, Defendants assert that the federal action is constitutionally flawed but do not offer sufficient support for those assertions.  Defendants acknowledge that additional discovery "may be necessary" to develop their

---

__, Case No. 3:20-cv-00195-SLG, 2021 WL 5756381 (D. Alaska Dec. 3, 2021), a case in which the State of Alaska and ADF&G "challenged the authority of the FSB in a context where it could have presented the same claims."  Docket 21 at 6.

[25] Docket 21 at 7.

[26] Docket 24 at 2.

[27] Docket 5 at 17.

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 8 of 19

Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 8 of 19

Appointments Clause arguments,[28] which implicitly acknowledges the current gaps in those arguments. Regarding Defendants' yet-unpled APA claims as to the FSB's actions, Defendants have not properly raised an APA claim nor rebutted the presumption of regularity that attaches to the FSB's actions.[29] In contrast, Plaintiff has established that ANILCA's rural subsistence use priority preempts the State's regulatory authority when Plaintiff has determined that restrictions are "necessary to meet tributary and drainage-wide escapement goals while allowing for some harvest by federally qualified subsistence users."[30]

### B. Plaintiff and Intervenor-Plaintiff have shown that irreparable harm is likely to occur before the Court determines the case on its merits.

Plaintiff and Intervenor-Plaintiff contend that irreparable harm will occur in three ways, each of which Defendants dispute.

### 1. Irreparable harm to ANILCA's rural subsistence user priority.

Plaintiff's first and primary argument stresses ANILCA's federal subsistence user priority and asserts that the State's "interference with the FSB's ability to

---

[28] Docket 17 at 11.

[29] *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014).

[30] Docket 1-1 at 12; *see Gov't of Guam v. Guerrero*, 11 F.4th 1052, 1058 (9th Cir. 2021) ("We have held that a public actor is entitled to the presumption of regularity where there is some evidence that the public actor properly discharged the relevant official duties, which an opposing party must rebut with clear, affirmative evidence to the contrary.").

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 9 of 19

provide for federally qualified subsistence use constitutes irreparable injury to affected rural Alaskans."[31]

Intervenor-Plaintiff similarly contends that Defendants' "actions directly impact the Commission's co-management authority and interfere with its ability to carry out its responsibilities under the [Memorandum of Understanding]. This in itself constitutes an irreparable harm, as it directly threatens the sovereignty of the Commission's Member Tribes . . . ."[32]

Defendants respond that "ANILCA's rural subsistence use priority does not allow—much less require—the closure or restriction of fisheries in times of abundance when there is enough fish for everyone."[33] According to Defendants, Plaintiff has not shown that the State's fishing openers will result in the harvest of salmon, and thus ANILCA's rural subsistence use priority cannot be threatened by the State openers.[34] Defendants also respond that the State's openers help, not harm, the subsistence values and cultural identity of federally qualified subsistence users because "the involvement of . . . non-federally qualified users provides vital assistance for rural residents" who are federally qualified subsistence users.[35] As

---

[31] Docket 5 at 18.

[32] Docket 14 at 3 (footnote omitted).

[33] Docket 17 at 35.

[34] Docket 17 at 35–36.

[35] Docket 17 at 37–38.

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction

Page 10 of 19

Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 10 of 19

to Intervenor-Plaintiff, Defendants again point to alleged APA violations and also assert that Intervenor-Plaintiff has not presented evidence as to how tribal sovereignty is threatened by the State's actions.[36]

The Court finds that Plaintiff and Intervenor-Plaintiff have shown that irreparable harm will occur to the enforcement of ANILCA's rural subsistence user priority if the State's emergency order is not enjoined. Plaintiff and Intervenor-Plaintiff have shown "that enforcement of the [State's emergency order] in fact conflicts with federal . . . law and its objectives."[37] Promulgating a State emergency order that contradicts ANILCA's rural subsistence use priority violates the Supremacy Clause, and "an alleged constitutional infringement will often alone constitute irreparable harm"[38] even when the constitutional injury is structural, such as a Supremacy Clause violation.[39] Here, irreparable harm would necessarily result from the enforcement of a State emergency order that is likely preempted and in violation of the Supremacy Clause.

---

[36] Docket 30 at 2–3.

[37] *Arizona v. United States*, 567 U.S. 387, 416 (2012).

[38] *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) (quoting *Associated Gen. Contractors v. Coal. for Econ. Equity*, 950 F.3d 1401, 1412 (9th Cir. 1991)), *rev'd in part on other grounds*, 567 U.S. 387 (2012); *accord Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008) ("Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."), *rev'd on other grounds*, 562 U.S. 134 (2011).

[39] *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009).

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 11 of 19
Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 11 of 19

## 2. Uncertainty as to the legality of conflicting emergency orders will cause irreparable harm to federally qualified users.

Plaintiff next asserts that federally qualified users will be harmed by "uncertainty and confusion" if the State openers are not immediately enjoined.[40] According to Plaintiff, "Kuskokwim rural residents face the dilemma of coming closer to their historical subsistence harvest of salmon by capitalizing on the possibility of additional harvest under the State's openings, while facing possible enforcement action or other consequences of being found in violation of federal orders prohibiting such harvest."[41] Plaintiff also contends that the State's 2022 emergency orders "create a practical risk that large numbers of Alaskans will arrive at the State-appointed times to set gillnets on the Kuskokwim, resulting in unpredictable and extensive harvest of the depleted fisheries."[42]

Intervenor-Plaintiff has submitted considerable evidence that demonstrates how Defendants' emergency order has "sowed confusion."[43] Intervenor-Plaintiff points to the 2021 fishing season, when similar conflicting federal and state orders

---

[40] Docket 5 at 18.

[41] Docket 5 at 19. The Court's Order Denying Plaintiff's Motion for Temporary Restraining Order acknowledged the confusion created by conflicting emergency orders but concluded that in the short time prior to the Court's determination of the preliminary injunction motion, that short-term confusion did not warrant a temporary restraining order. Rather, the Court determined "that the competing perspectives of the United States and the State of Alaska warrant the careful consideration by this Court that can only occur after full briefing on the preliminary injunction motion has been accorded to both parties." Docket 11 at 14.

[42] Docket 5 at 18–19.

[43] Docket 14 at 3.

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction

Page 12 of 19

Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 12 of 19

were promulgated. The 2021 orders "caused widespread confusion for federally qualified subsistence fishers" who both needed to harvest salmon for subsistence but also worried about fishing illegally.[44]

Defendants respond that Plaintiff "has not presented any evidence to support [the] claim [that confusion and uncertainty will occur], much less that any harm resulted, even though . . . the same situation prevailed on the River" in summer 2021.[45] Defendants respond to Intervenor-Plaintiff's evidence of confusion by construing the 220 boats that were observed fishing on June 28, 2021, as evidence "that local residents ignored the Commission's message[,] . . . not evidence that they were confused."[46]

The Court finds that there is an irreparable harm to federally qualified subsistence users caused by the conflicting terms of the federal and state emergency orders, which may dissuade a federally qualified user from legal fishing opportunities or may cause a non-federally qualified user to harvest fish in violation

---

[44] Docket 14 at 8 (quoting Docket 14-1 at 6, ¶ 12 (Decl. of Mike Williams, Sr.)). Mike Williams, Sr., the Chairman of the Commission, has averred that the language in the State's emergency order was confusing, "especially for rural subsistence fishers who may speak English as a second language." Docket 14-1 at 6, ¶ 12 (Decl. of Mike Williams, Sr.). Intervenor-Plaintiff maintains that it "received numerous phone calls from users who were confused by the State's announcement of a purported opening, and the Commission was forced to undertake significant outreach efforts . . . in an attempt to clarify the confusion. Docket 14 at 8. Outreach efforts included "the Commission's webpage and email newsletter, social media posting, radio talk show announcements, and extensive word-of-mouth communications. Docket 14-1 at 7, ¶14 (Decl. of Mike Williams, Sr.).

[45] Docket 17 at 39.

[46] Docket 30 at 5.

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction

Page 13 of 19

Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 13 of 19

of federal law. Once confusion has prevented a federally qualified subsistence user from fishing—and thus working toward harvesting subsistence goals—or has prompted a non-federally qualified user to harvest salmon in violation of federal closures, neither the Court nor the parties can go back in time to remedy the harm financially. As emphasized by Intervenor-Plaintiff at oral argument, it is irrelevant whether the confusion causes one salmon or 10,000 salmon to be harvested by a non-federally qualified user, because "[y]ou can't give a fish back to the federally qualified users that was taken by a non-federally qualified user. We're not going to somehow compensate or be able to compensate the members of the federally recognized tribes along this portion of the [Kuskokwim River]."[47]

### 3. Kuskokwim River salmon populations.

Third, Plaintiff asserts that irreparable harm will occur because "Kuskokwim Chinook and chum salmon populations are in decline, and face risk of overharvest."[48] According to Plaintiff, the environmental injury to the Kuskokwim Chinook and chum salmon alone is a sufficient basis for a preliminary injunction.[49]

Intervenor-Plaintiff agrees that Defendants' actions "detrimentally impacted the Chinook and chum populations on which tribal members and other rural

---

[47] Docket 34 at 4–5.

[48] Docket 5 at 20; *accord* Docket 5 at 17–18 (citing "threats to declining fisheries resources").

[49] Docket 5 at 19.

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 14 of 19
Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 14 of 19

residents depend for their subsistence."[50]  Intervenor-Plaintiff points to a single day during the 2021 season—June 28—when the State announced an opening despite the federal closure and "at least 220 boats fished and harvested salmon within the Refuge in reliance on the State's announced opening."[51]  According to Intervenor-Plaintiff, "the events of last summer show that it is highly likely that users will rely on the State-announced openings and will harvest salmon in contravention of the federal closure.  That is sufficient for preliminary injunction purposes . . . ."[52]  Intervenor-Plaintiff also emphasizes that even a small amount of harvest by non-federally qualified users would cause irreparable harm: "Against the backdrop of the 'food security crisis' happening on the Kuskokwim, each additional salmon taken by non-federally qualified users directly threatens the ability of families along the Kuskokwim" to meet their subsistence needs.[53]

---

[50] Docket 14 at 3–4.

[51] Docket 14 at 4; *accord* Docket 14-1 at 5, ¶ 10 (Decl. of Mike Williams, Sr.).  Intervenor-Plaintiff contends that "no data exists regarding exactly how many Chinook and chum salmon were harvested within Refuge waters during the unlawful [State] opening" because ADF&G does not measure harvest numbers "despite being statutorily required to do so."  Docket 14 at 4–5 (citing Alaska Stat. § 16.05.330(c)).   Defendant responds that it is the Board of Fisheries' responsibility to comply with the cited Alaska statute, not the responsibility of ADF&G.  Docket 30 at 4.

[52] Docket 14 at 5.

[53] Docket 14 at 7 (footnote omitted) (citing *Native Village of Quinhagak v. United States*, 35 F.3d 388 (9th Cir. 1994)); *see Native Village of Quinhagak*, 35 F.3d at 394 (holding that the plaintiff "needed to prove nothing more" than that the disputed waterway was a source of subsistence fishing and that the contested regulations interfered with their way of life and culture "in light of the clear congressional directive to protect the cultural aspects of subsistence living").

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 15 of 19
Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 15 of 19

Defendants respond that Plaintiff and Intervenor-Plaintiff have presented insufficient evidence to demonstrate "that the State's actions in allowing limited openers on the Kuskokwim River will have a negative effect on the sustainability of the Chinook or chum runs."[54] Defendants point to Plaintiff's own actions of announcing "two drift[net] openers for June, with larger gear that more easily targets Chinook and purposefully removes salmon . . . from the allegedly critically depressed stock" as evidence that the State's "limited non-salmon openers" will not cause irreparable harm to the Kuskokwim River salmon runs.[55]

The Court acknowledges the parties' conflicting positions regarding whether there will be irreparable harm to the Kuskokwim River salmon populations if the State's emergency order remains in effect. However, because the Court finds that Plaintiff and Intervenor-Plaintiff have shown irreparable harm to the federal government's ability to enforce ANILCA's rural subsistence priority and irreparable harm to federally qualified subsistence users, it need not determine whether there would be irreparable harm to the salmon populations during the duration of this case if the State's emergency order remained in effect.

---

[54] Docket 17 at 35; *see also* Docket 30 at 3.

[55] Docket 17 at 36.

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 16 of 19
Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 16 of 19

### C. Plaintiff has shown that the balance of equities tips in its favor, and a preliminary injunction is in the public interest.

Plaintiff submits that a preliminary injunction barring implementation of Defendants' emergency order would support Congress's "determination of equities—that on public lands, conservation and subsistence uses by rural Alaskans be given priority over other consumptive uses."[56]  Plaintiff maintains that the Alaska Constitution cannot "authorize any state official to contravene a national policy expressed through a federal statute."[57]

Defendants respond that Plaintiff's position "assumes the outcome of the litigation—in effect, merging not just the equities and public interest, but also the probability of success on the merits."[58]  According to Defendants, it they are "correct that the Board lacks jurisdiction, or was invalidly appointed, or invalidly delegated its authority, or that the Refuge Manager's orders are arbitrary and capricious, the national policy expressed in ANILCA has not been contravened and neither the equities nor the public interest support an injunction."[59]

---

[56] Docket 5 at 21.

[57] Docket 5 at 21.

[58] Docket 17 at 40.  Defendants also contend that "because both the plaintiff and the defendant in this action are 'governments,' the rule [that the balance of equities factor and the public interest factor merge] is not especially helpful here."  Docket 17 at 40.

[59] Docket 17 at 40–41.

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction

Page 17 of 19

Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 17 of 19

Plaintiff replies by reasserting that "[a]llowing a state to enforce a state law in violation of the Supremacy Clause is neither equitable nor in the public interest."[60]

Plaintiff and Intervenor-Plaintiff have met their burden of establishing that the balance of equities tips in their favor and that a preliminary injunction is in the public interest. Plaintiff is correct that the Ninth Circuit has held that allowing a state to enforce a regulation that violates a federal rule in violation of the Supremacy Clause is neither equitable nor in the public interest.[61] Moreover, if the State emergency order—for which the Court has found a likelihood of preemption—is in effect, the State's fishing openers would interfere with ANILCA's stated policy of prioritizing rural subsistence uses and would likely cause confusion to both federally qualified subsistence users and non-federally qualified subsistence users. The issuance of a preliminary injunction will allow Plaintiff to pursue federal priorities, which is inherently in the public interest, until a final decision on the merits is reached in this case.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction at Docket 5 is GRANTED. Defendants are hereby

---

[60] Docket 21 at 16 (quoting *United States v. Arizona*, 703 F. Supp. 2d 980, 1007 (D. Ariz. 2010)).

[61] *Cal. Pharmacists Ass'n v. Maxwell–Jolly*, 563 F.3d 847, 852–53 (9th Cir. 2009); *Am. Trucking Ass'ns*, 559 F.3d at 1059–60.

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 18 of 19
Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 18 of 19

ENJOINED, pending a final ruling by this Court, from implementing ADF&G Emergency Order #3-S-WR-02-22 and are further ENJOINED from taking similar actions that authorize gillnet fishing by all Alaskans on the Kuskokwim River within the Yukon Delta National Wildlife Refuge when such action(s) would be contrary to federal orders issued pursuant to Title VIII of the ANILCA.

DATED this 23rd day of June, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 1:22-cv-00054-SLG, *United States, et al. v. State of Alaska, et al.*
Order Re Plaintiff's Motion for Preliminary Injunction
Page 19 of 19

Case 1:22-cv-00054-SLG   Document 35   Filed 06/23/22   Page 19 of 19