John M. Sky Starkey, Alaska Bar No. 8611141
Anna Crary, Alaska Bar No. 1405020
Andrew Erickson, Alaska Bar No. 1605049
Ambriel Sandone, Alaska Bar No. 2011124
LANDYE BENNETT BLUMSTEIN LLP
701 West Eighth Ave., Suite 1100
Anchorage, AK 99501
Telephone: (907) 276-5152
Fax: (907) 276-8433
Email: jskys@lbblawyers.com
       annac@lbblawyers.com
       andye@lbblawyers.com
       ambriels@lbblawyers.com

*Attorneys for Applicant-Intervenors Ahtna Tene Nené and Ahtna, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF ALASKA, THE ALASKA DEPARTMENT OF FISH & GAME, and DOUG VINCENT-LANG, in his official capacity as Commissioner of the Alaska Department of Fish & Game,<br><br>Defendants. | Case No. 1:22-cv-00054-SLG<br><br>**AHTNA TENE NENÉ & AHTNA, INC.'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT OF MOTION** |

## INTRODUCTION

Ahtna Tene Nené and Ahtna, Inc. (collectively, "Ahtna") move to intervene in this action to defend the application of the rural subsistence priority guaranteed by Title VIII

of the Alaska National Interest Lands Conservation Act ("ANILCA") to public lands, including certain navigable waters, as determined and affirmed by the Ninth Circuit.[1]

In 1985, Katie John, an Ahtna elder and resident of the Native Village of Mentasta, sought to enforce her right to pursue traditional subsistence fishing activities at Batzulnetas, a traditional fish camp on the upper Copper River.[2] Katie John's original complaint is the progenitor of the *Katie John* case, the Ninth Circuit's foundational decision recognizing that the rural subsistence priority extends to navigable waters within certain federal lands in Alaska. The *Katie John* precedent affirms the federal government's authority and responsibility under Title VIII of ANILCA to provide for a rural subsistence priority on certain navigable waters in Alaska where the United States holds reserved water rights.

In 2018, the State told the the Supreme Court of the United States not to upend this holding – specifically, that "Title VIII stands apart from the rest of ANILCA,"[3] that the Supreme Court "should preserve the *Katie John* precedent,"[4] and that the precedent "should not" be disturbed.[5] Now, the State takes a contrary position, as its averments in this case attack the *Katie John* precedent by counterclaiming that the Federal Subsistence

---

[1] *Alaska v. Babbitt*, 72 F.3d 698 (9th Cir. 1995); *John v. United States*, 247 F.3d 1032 (9th Cir. 2001) (en banc); *John v. United States*, 720 F.3d 1214 (9th Cir. 2013).

[2] *See Katie John v. State of Alaska*, No. A85-0698-CV (D. Alaska 1985).

[3] Brief for the State of Alaska as Amicus Curiae in Support of Petitioner, page 30, *Sturgeon v. Frost*, 139 S. Ct. 1066 (2019).

[4] *Id*. at 31.

[5] *Id*. at 35.

Board ("FSB") lacks authority to open a subsistence fishery on navigable waters within a National Wildlife Refuge[6] and by raising the affirmative defense that "[t]he Federal Subsistence Board lacks jurisdiction over the Kuskokwim River because it is not 'public land' under ANILCA."[7]

If successful, the State's attack upon the application of the rural priority to navigable waters will have far-reaching consequences extending well beyond the Kuskokwim River. Of specific importance to Ahtna, these consequences will extend to the public lands and reserved waters of the Copper River, where, since time immemorial, Ahtna members have practiced their customary and traditional fishing and hunting way of life. Ahtna shares this common question of law with the parties to this case and has protectable interests that are likely to be harmed if this Court rules in favor of the State. Ahtna is entitled to intervene in this lawsuit as of right under Federal Rule of Civil Procedure 24(a), or alternatively, as a permissive intervenor under Rule 24(b).

## STATEMENT OF FACTS

Ahtna, Inc. is an Alaska Native Regional Corporation formed under the Alaska Native Claims Settlement Act[8] ("ANCSA"). Ahtna represents more than 2,000 Ahtna Athabaskan shareholders, many of whom are rural residents and tribal members from eight villages in the southcentral and interior region of Alaska, centered within the Copper River

---

[6] *See* Docket 33 at 15-16 (State of Alaska Answer and Counterclaim),

[7] *Id*. at ¶ 4.

[8] Pub. L. No. 92-203, 85 Stat. 688 (December 18, 1971) (codified at 43 U.S.C. §§ 1601 - 1629).

Basin. Ahtna Tene Nené is an organization comprised of representatives from the eight federally recognized Native Villages in the Ahtna region; Gulkana, Cantwell, Chistochina, Gakona, Mentasta, Tazlina, Chitina, and Kluti Kaah. Ahtna Tene Nené's primary purpose is to assist these tribes and their members in protecting their fishing and hunting rights and customary and traditional way of life.

The Copper River, like the Kuskokwim and the Yukon, has experienced precipitous declines in its salmon runs – particularly with respect to Chinook and sockeye salmon. Unlike the Yukon and Kuskokwim Rivers, however, by virtue of its location adjacent to the road system, the Copper River is accessible to thousands of Alaskans who are not rural residents and who harvest significant amounts of Copper River salmon in commercial, personal use, and subsistence fisheries administered by the State throughout the Copper River drainage. Ahtna subsistence users participating in federal subsistence fisheries along the Upper Copper River are failing to catch enough Chinook and sockeye salmon to meet their subsistence needs in significant part because of State management decisions – primarily, the administration of an overwhelmingly popular personal use fishery and the issuance of a significant number of subsistence fishing permits to Alaskans who are not rural residents.[9] These actions, based upon the State's "All Alaskans" policy, disregard the importance of ANILCA's rural subsistence priority and chip away at the effectiveness of

---

[9] ADF&G harvest reports for subsistence uses on the Upper Copper River demonstrate that between 2003 and 2020, far fewer federal subsistence fishery permits were issued than state subsistence fishery permits by an almost 1:5 ratio (one federal permit to every 5 state permits). See ADF&G Special Publication No. 21-08, p. 38.

the United States' administration of that priority, resulting in significant pressure upon a dwindling resource and competition between non-rural Alaskans and rural Ahtna subsistence users who have relied upon for thousands of years for nutritional, cultural, and spiritual fulfillment.

The federal subsistence fisheries along the Upper Copper River are administered pursuant to Title VIII of ANILCA through a process established by ANILCA's regulations – a process that the State attacks in its counterclaims. The rural priority afforded to thousands of Ahtna people on those waters is done so as a result of the *Katie John* precedent – a precedent the State also squarely implicate in its counterclaims. Ahtna relies on the federal rural priority to participate in these federal subsistence fisheries because these are the only fisheries that prioritizes their subsistence uses over those of non-rural Alaskans. The rural priority is crucial in helping meet the subsistence needs of the Ahtna people. Those subsistence needs and Ahtna's traditional way of life are directly threatened by the State's challenges to the process through which the rural priority is administered.

## ARGUMENT

### I. Ahtna is entitled to intervene as a matter of right.

A party is entitled to intervention as a matter of right if it: "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be

adequately represented by existing parties."[10] "In evaluating whether Rule 24(a)(2)'s requirements are met, [courts in the Ninth Circuit] normally follow 'practical and equitable considerations' and construe the Rule 'broadly in favor of proposed intervenors.' "[11] The "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts."[12] Ahtna is entitled to intervene under Rule 24(a) because it meets all four elements of the applicable test.

### A. Ahtna's motion is timely.

The first element, timeliness of the motion, "hinges on 'three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.' "[13] Each factor is assessed by reference to the date when the "proposed intervenor should have been aware that their interests would not be adequately protected by the existing parties."[14] Generally, when a party seeks to intervene in the early stages of litigation, when the court has not yet substantially engaged in the legal issues in the case, the timeliness factor weighs in favor of intervention.[15] Similarly, the prejudice that may result must be a significant delay or

---

[10] *See Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006).

[11] *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)).

[12] *City of Los Angeles*, 288 F.3d at 397-98.

[13] *Kalbers v. United States Department of Justice*, 22 F.4th 816, 822 (9th Cir 2021) (quoting *Smith v. Los Angeles Unified School Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)).

[14] *Id.* (quoting (*Smith*, 830 F.3d at 854)).

[15] *See Kalbers*, 22 F.4th at 826 (noting that "[i]n the [timeliness] inquiry, substance prevails over form" and holding that intervention was timely because "the parties and the

complication – because "every motion to intervene will complicate or delay a case to some degree."[16] The Ninth Circuit has made clear that some minimal amount of delay or complication "is not a sufficient reason to deny intervention."[17]

Ahtna has not delayed its effort to intervene.[18] While mere footnotes in the State's oppositions to the United States' requests for a restraining order and preliminary injunction hinted that the State may challenge the *Katie John precedent* in the wake of *Sturgeon v. Frost*, the State's affirmative defenses and counterclaims, filed on June 21, 2022, were the first instance where the State explicitly expressed that intention.[19]

This litigation is still in its earliest stages – the United States filed its complaint on May 17, 2022, and the State filed its answer and counterclaims on June 21, 2022. Since the filing of the Complaint, this Court has only issued two orders addressing requests for

---

district court here had covered scarcely any legal ground together," and "what little ground they had covered did not meaningfully advance the case"); *Western Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022) ("We have also recognized, however, that 'the mere lapse of time, without more, is necessary a bar to intervention.' " (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)); *see also Blake v. Pallan*, 554 F.2d 947, 951-52 (9th Cir. 1977) ("It is generally noted that the concept of timeliness is a flexible one.").

[16] *Id.*

[17] *Id.*

[18] It is not necessary to address reasons for and length of delay because, as described above, Ahtna did not delay in filing its motion for intervention. *See U.S. ex rel. McGough v. Covington Tech. Co.*, 967 F.2d 1391, 1395-96 (9th Cir. 1992).

[19] Docket 9 at 19 n.74, State of Alaska's Opposition to Motion for Restraining Order, , *United States v. Alaska*, No. 1:22-cv-00054-SLG (D. Alaska May 27, 2022); DE 17 at 10 n.40, State of Alaska's Opposition to Motion for Preliminary Injunction, *United States v. Alaska*, No. 1:22-cv-00054-SLG (D. Alaska June 7, 2022).

preliminary relief. Although the parties have briefed and argued the United States' request for a temporary restraining order and preliminary injunction, the parties and the court have not substantially engaged in the merits of the legal issues raised in this case. Indeed, the State seems to concede that motions to intervene in the litigation generally are timely when brought after the preliminary injunction proceedings.[20]

Finally, Ahtna's intervention will not prejudice the parties in this case. Both the United States and the State are aware that Ahtna has long participated in consequential matters of federal and state management within its traditional territories. That Ahtna seeks to protect its interests in this lawsuit should not come as a surprise. Ahtna's intervention to defend against the State's efforts to dismantle the FSB and the federal system through which Title VIII of ANILCA is administered will not complicate the case or the issues presented. And, notably, Ahtna does not allege independent claims or intend to seek relief that is broader or different from the relief sought by the United States. That Ahtna would endeavor to protect the dismantling of decades of legal precedent that provide the primary mechanism through its members are able to meet their subsistence needs cannot be construed as prejudicing the State or any other party to this case.

---

[20] *See* Docket 23 at 7, State of Alaska's Partial Opposition to KRITFC Motion to Intervene as Plaintiff, *United States v. Alaska*, No. 1:22-cv-00054-SLG (D. Alaska June 14, 2022) (noting that "KRTIFC's assertion that it waited to file the 'intervention action after the briefing and consideration of the TRO motion so as not to add any additional complexity or cause any delay on that important issue' makes *good sense for intervention in the general litigation*") (emphasis added)).

### B. Ahtna has a significantly protectable interest related to the subject of the action.

A party "has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims."[21] "The 'interest' test is not a clear-cut or bright-line rule because no specific legal or equitable interest need be established. Instead, the 'interest' test directs courts to make a practical, threshold inquiry,"[22]; "a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."[23] Intended beneficiaries of a statute generally have a sufficient protectable interest that weighs in favor of permitting intervention.[24] And finally, "[t]he relationship requirement is met if the resolution of the plaintiff's claims actually will affect the applicant."[25]

Ahtna has an interest that can only be protected under Title VIII of ANILCA and the promulgation and enforcement of regulations under that statute: the provision for and

---

[21] *Kalbers*, 22 F.4th at 827 (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9thCir. 1998)); *accord Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003).

[22] *In re Estate of Ferdinand E. Marcos Human Rights Litigation*, 563 F.3d 980, 984-85 (9th Cir. 2008) (quoting *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002)).

[23] *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006); *see also Forest Conserv. Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995) ("[W]hen . . . the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test of Fed. R. Civ. P. 24(a)(2) . . . .").

[24] *See Cal. ex rel. Lockyer*, 450 F.3d at 441-42; *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).

[25] *Id.* at 984 (quoting *S. Cal. Edison Co.*, 307 F.3d at 803).

administration of a rural priority for subsistence uses of fish and game on all public lands in Alaska.

Ahtna Native Village residents are plainly among the intended beneficiaries of Title VIII of ANILCA and of the rural priority provided for in Section 3114 of ANILCA. Congress passed ANILCA in order to "fulfill the policies and purposes of the Alaska Native Claims Settlement Act," and "invoke[d] its constitutional authority over Native affairs" to do so,[26] and Congress explicitly declared that "the continuation of the opportunity for subsistence uses by rural residents of Alaska, including both Natives and non-Natives on the public lands and by Alaska Natives on Native lands is essential to Native physical, economic, traditional and cultural existence,"[27] and, to that end, provided for a rural subsistence priority.[28] Ahtna will suffer a practical and devastating impairment of this right as a result of this litigation, in which the State disputes the constitutionality of the FSB, challenges the federal government's authority to provide for ANILCA's rural priority, and seeks to relitigate *Katie John*. Indeed, Ahtna subsistence users have already suffered impairment of that right as a result of the competition for fish and game resources within its traditional territories resulting from the State's management strategies.

---

[26] 16 U.S.C. § 3111(4).

[27] 16 U.S.C. § 3111(1).

[28] 16 U.S.C. § 3114 ("[T]he taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes.").

There is a relationship between this interest and the United States' defense of the State's counterclaims because resolution of those counterclaims either in favor of the United States or in favor of the State will affect Ahtna. The scope and existence of the rural priority and the process through which that priority is administered will be analyzed and determined in this litigation. A final determination is likely to affect the ability of Ahtna subsistence users to access and seek enforcement of the rural priority in the future.

The practical impact of an outcome overturning the *Katie John* precedents and invalidating the rural priority will result in the loss of subsistence opportunity for Ahtna subsistence users in their traditional fishing territories, as significant portions of the Upper Copper River – in particular, those portions where they harvest Chinook and sockeye salmon pursuant to the rural priority – are within or adjacent to public lands administered by the National Park Service and the U.S. Forest Service.

The potential invalidation of the FSB and its regulations would also have dire implications for Ahtna members who depend upon that rural priority to hunt moose and caribou within their traditional territories in order to meet their customary and traditional subsistence needs. Since the 1970s, hunting pressure on caribou and moose populations in GMU 13 has increased because of the area's proximity to urban areas and road accessibility. This pressure has reached untenable levels, causing the FSB to close portions of public lands to ensure that rural residents – many of whom are residents of Ahtna's

*United States v. Alaska* — Case No. 1:22-cv-00054-SLG
Ahtna's Memorandum in Support of Motion to Intervene — Page 11 of 18

Case 1:22-cv-00054-SLG   Document 38   Filed 07/01/22   Page 11 of 18

Villages– have a meaningful opportunity to take advantage of the rural priority.[29] The effective implementation of Title VIII on the public lands, including reserved waters, is essential to meeting Ahtna's subsistence needs.

### C. Ahtna's ability to protect its interests may be impaired by the disposition of this matter.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, [it] should, as a general rule, be entitled to intervene."[30] Generally, the Ninth Circuit has instructed that when a court concludes that a party has a significant protectable interest, it is generally appropriate to conclude that the disposition of the case may affect it.[31]

Ahtna has a significant protectable interest in ensuring the United States is able to and continues to provide for and protect a rural priority on all public lands, including navigable waters where the United States holds reserved water rights, pursuant to Title VIII of ANILCA and the *Katie John* precedent. The outcome of this litigation will also have *stare decisis* effect in any litigation involving the rural priority throughout Alaska,

---

[29] *Alaska Department of Fish and Game v. Federal Subsistence Board et al.*, No. 3:20-cv-00195-SLG at *12 (D. Alaska Dec. 3, 2021).

[30] *Citizens for Balanced Use v. Montana Wilderness Assoc.*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24 advisory committee's note).

[31] *See, e.g.*, *id.* ("Under similar circumstances, 'having found that appellants have a significant protectable interest, this court had little difficulty conclude that the disposition of the case may, as a practical matter, affect it.' "); *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant protectable interest, we have little difficulty conclude that the disposition of this case may, as a practical matter, affect it.").

including on the Copper River and throughout Ahtna's traditional subsistence fishing and hunting grounds, where Ahtna ancestors and descendants have fished and hunted since time immemorial.[32] On this basis, intervention is further warranted.

### D. The current parties do not adequately represent Ahtna's interests.

"The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests '*may be*' inadequate."[33] Courts in the Ninth Circuit examine three factors in evaluating the adequacy of representation:

> (1) whether the interest of the present party is such that it will *undoubtedly* make all of a proposed intervenor's arguments; (2) whether the interest of the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.[34]

"The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.'"[35] Although a presumption of adequacy arises where the applicant has the same ultimate objective as an existing party,

---

[32] *Cf. United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (concluding institutionalized residents of a facility were entitled to intervene in suit by United States against State of Oregon regarding treatment and conditions at facility because the litigation "will have a persuasive *stare decisis* effect in any parallel or subsequent litigation" brought by the residents).

[33] *Citizens for Balanced Use*, 647 F.3d at 898 (9th Cir. 2011) (emphasis added).

[34] *Id.* (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)) (emphasis added).

[35] *Id.* (quoting *Arakaki*, 324 F.3d at 1086).

the presumption can be rebutted by showing that the applicant's interests are not sufficiently congruent with the existing party's interests, so as to create some doubt about the adequacy of representation.[36] For example, where the federal government "represent[s] the at-large interests of the general public" and proposed intervenors have "specialized interests that seek only the preservation of the subsistence, cultural, and wilderness aspects of the lands at issue," that differentiation is sufficient to establish inadequacy of representation.[37]

ANILCA's rural priority, the *Katie John* precedent, and the FSB's administration of the rural priority on public lands are of particular legal and cultural importance to Ahtna. The strenghth and determination of Ahtna elder Katie John over decades of litigation was key to the success of those critical decisions. While the United States and Ahtna currently have aligning interests in their defense of the State's counterclaims, the United States' interest in protecting the primacy of federal law is separate and distinct from Ahtna's interests in protecting its way of life. Ahtna's interests diverge from the interests of the United States because Ahtna rural residents are the intended beneficiaries of Title VIII of ANILCA, and have interests that are separate and necessarily distinct from the United

---

[36] *See Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (noting that the presumption of adequacy is "rebutted . . . because Applicants and Defendants do not have sufficiently congruent interests" and noting "there is sufficient doubt about the adequacy of representation to warrant intervention" (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972)).

[37] *Alaska Indus. Dev. & Exp. Auth. v. Biden*, No. 3:21-CV-00245, 2022 WL 1137312, at *2 (D. Alaska Apr. 18, 2022) (first citing *W. Watersheds Project*, 22. F.4th at 841; then citing *Sw. Ctr. For Biological Diversity*, 268 F.3d at 823).

States, who is charged with managing and providing for – but not receiving the benefit of – the ANILCA's rural subsistence priority. Also, while these parties may currently agree about fundamental aspects of defending against the State's counterclaims, the strategies employed may likely reveal a significant divergence of interests, especially given historic disagreements between the United States and Ahtna tribes.[38] Ahtna's relationship with the State is clearly different than the United States' relationship with the State, another consideration that may necessitate the development and assertion of different arguments and strategies. For these reasons, it is unlikely that the United States will "undoubtedly" make all of Ahtna's arguments.

Nor are Ahtna's interests adequately protected by plaintiff-intervenors Kuskokwim Inter-Tribal Fish Commission (KRITFC).[39] The KRITFC's interests are focused upon the Yukon-Kuskokwim Region of Alaska, and specific actions the State is taking to interfere with their both ability to have priority access to subsistence fishery resources on the Kuskokwim River and their co-management authority with respect to those subsistence fisheries. To the extent that the KRITFC litigates its claims to focus upon region-specific issues, those claims neither involve Ahtna nor advance region-specific interests Ahtna

---

[38] *See e.g., State of Alaska v. Babbitt*, 72 F.3d 698, 701 (9th Cir. 1995) (describing the divergence of interest and agreement between Katie John and the federal government in asserting legal strategies to bring navigable waters under the definition of "public lands" in ANILCA).

[39] Nor, for the same reaons, will Ahtna's interests be adequately represented by movant-intervenors AVCP, Ivan M. Ivan, and Betty Magnuson.

seeks to protect against the State's broad attack on the administration of the rural priority throughout Alaska.

Ahtna recognizes that the KRITFC's responses to the State's counterclaims may generally align with Ahtna's interests. However, the potential outcome of those counterclaims will have a significant and different impact within Ahtna's traditional territories and upon Ahtna's customary and traditional way of life. The scope of public lands and reserved waters in the Ahtna region is vital to the Ahtna's opportunity for the continuation of their subsistence uses. The Wrangell-St Elias National Park and Preserve encompasses vast areas where the Ahtna have hunted, fished and gathered since time immemorial, including nearly the entire Copper River Basin where seven of the eight Ahtna Villages are located and where they fish.[40] Ahtna's subsistence practices and patterns, and their use and dependency on the fish and wildlife in their traditional territory is unique. Ahtna's interests and perspectives are important to this litigation.

## II. Alternatively, Ahtna satisfies the requirements for permissive intervention.

Permissive intervention is appropriate where a party timely moves to intervene and "has a claim or defense that shares with the main action a common question of law or fact."[41] As described above, Ahtna's motion to intervene is timely, as this litigation is still in its earliest stages, and Ahtna's claims share a common question of law with the main

---

[40] *See e.g.*, https://www.ahtna.com/about/region-map/.

[41] Fed. R. Civ. P. 24(b).

action, specifically and primarily: what is the scope of federal jurisdiction to enforce a rural subsistence priority on navigable waterways under *Katie John* after *Sturgeon*? Ahtna also shares a common interest in defending the constitutionality of the FSB, the authority of the FSB to open and close public lands to provide access to the rural priority, and the ability of the Secretaries to enter into co-management agreements with Alaska Tribes. Accordingly, Ahtna respectfully requests this Court permit it to intervene pursuant to Rule 24(b) if it determines that intervention as of right is not appropriate.

## CONCLUSION

For the foregoing reasons, this Court should grant Ahtna's motion to intervene as a matter of right under Rule 24(a)(2), or in the alternative, permissively under Rule 24(b). Ahtna's interests may be affected and its legal rights impaired by the outcome of this case. This Court should not analyze and decide the merits of this case without permitting Ahtna to assume a seat at the table.

DATED this 1st day of July 2022, at Anchorage, Alaska.

LANDYE BENNET BLUMSTEIN LLP

By: /s/ John M. Sky Starkey
John M. Sky Starkey
Alaska Bar. No. 8611141

/s/ Anna C. Crary
Anna C. Crary
Alaska Bar No. 1405020

/s/ Andrew Erickson
Andrew Erickson
Alaska Bar No. 1605049

/s/ Ambriel Sandone
Ambriel Sandone
Alaska Bar No. 2011124

Attorneys for Ahtna Tene Nené and Ahtna, Inc.

**Certificate of Service**

I hereby certify that on July 1, 2022, I filed a true and correct copy of the foregoing document with the Clerk of Court for the United States District Court, District of Alaska, by using the CM/ECF system.

*/s/ John M. Sky Starkey*
John M. Sky Starkey