TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

PAUL A. TURCKE (Idaho Bar No. 4759)
Trial Attorney
Natural Resources Section
c/o U.S. Attorney's Office
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 ‖ 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br>　and<br><br>KUSKOKWIM RIVER INTER-TRIBAL<br>FISH COMMISSION, *et al.*,<br><br>　　　　　　Intervenor-Plaintiffs,<br><br>　v.<br><br>THE STATE OF ALASKA, *et al.*,<br><br>　　　　　　Defendants. | Case No. 1:22-cv-00054-SLG |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND COMBINED MEMORANDUM IN SUPPORT**

# INTRODUCTION AND MOTION

This case addresses whether the State of Alaska has authority to create gillnet fishing opportunities for all Alaskans on the Kuskokwim River within a federal wildlife refuge, despite the depleted state of Chinook and chum salmon runs and a federal law establishing that priority be given to subsistence harvest by rural Alaskans. In its preliminary injunction order, the Court determined that Plaintiff United States has shown a likelihood of succeeding on the merits of its claim that Defendants' efforts are preempted by federal law. *See United States v. Alaska*, 608 F. Supp. 3d 802 (D. Alaska 2022) ("*Kuskokwim II*"). Following that, the parties stipulated to presenting the merits of the case on cross motions for summary judgment. Plaintiff thus hereby moves for summary judgment. Nothing has changed since the Court's preliminary injunction ruling, and as a matter of law the Court should enter judgment for the United States.

# BACKGROUND

The Court has already summarized the background to this action in its order granting Plaintiff's motion for preliminary injunction. *See Kuskokwim II*, 608 F. Supp. 3d at 805 (incorporating by reference the factual background in *United States v. Alaska*, Case No. 1:22-cv-00054-SLG, 2022 WL 1746844 (D. Alaska May 31, 2022) ("*Kuskokwim I*"), *subsequent determination*, 608 F. Supp. 3d 802 (D. Alaska 2022)). Plaintiff summarizes this background as needed for the pending motion.

## I.     Legal Background

In the Alaska National Interest Lands Conservation Act, 16 U.S.C. §§ 3111-3126

*United States v. Alaska*             Case No. 1:22-cv-00054-SLG
Pl.'s Mot. for Summ. J. and Memo in Supp.             2

Case 1:22-cv-00054-SLG   Document 70   Filed 07/21/23   Page 2 of 17

("ANILCA"), Congress sought "to preserve Alaska's natural resources, historic sites, and ecosystems, while also providing the continued opportunity for rural residents to engage in a subsistence way of life." *Dep't of Fish & Game v. Fed. Subsistence Bd.*, No. 3:20-cv-00195-SLG, 2020 WL 5625897, at *5 (D. Alaska Sept. 18, 2020) (citing *Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1091 (9th Cir. 2008) [hereinafter *Alaska*]).

The Federal Subsistence Board ("FSB") administers the federal subsistence program to preserve a way of life "essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence." 16 U.S.C. § 3111(1). Congress directed that "nonwasteful subsistence uses of fish and wildlife . . . shall be the priority consumptive uses of all such resources on the public lands of Alaska" and that "the taking of such population for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes." 16 U.S.C. §§ 3112(2), 3114. While establishing the rural subsistence priority, Congress made clear that even subsistence uses must yield to conservation of healthy populations of fish and wildlife. *See* 16 U.S.C. § 3125(1).

ANILCA defines "subsistence uses" to mean:

> the customary and traditional uses by rural Alaska residents of wild, renewable resources for direct personal or family consumption as food, shelter, fuel, clothing, tools, or transportation; for the making and selling of handicraft articles out of nonedible byproducts of fish and wildlife . . . ; for barter, or sharing for personal or family consumption; and for customary trade.

16 U.S.C. § 3113. This definition specifies that the priority applies only to *rural* Alaskans. Also, the term "customary and traditional uses" carries significant weight,

because "[i]n the course of its administration, the FSB '[d]etermine[s] which rural Alaska areas or communities have customary and traditional subsistence uses of specific fish and wildlife populations.'" *Alaska*, 544 F.3d at 1092 (second and third alterations in original) (quoting 50 C.F.R. § 100.10(d)(4)(iii)).

The term "federally qualified users" typically describes users meeting these criteria. ANILCA, and the regulations promulgated by the Secretaries of Agriculture and the Interior, empower the FSB and federal officials to implement the federal subsistence priority, and otherwise manage subsistence taking and uses on public lands. *See* 50 C.F.R § 100.10(d)(4).

## II. Factual and Procedural Background

The Kuskokwim River runs more than 700 miles in southwest Alaska before it enters the Bering Sea, making it "the longest free-flowing river in the United States that is contained entirely within one U.S. state." *Kuskokwim I*, 2022 WL 1746844 at *1. The lower 180 miles of the river are within the Yukon Delta National Wildlife Refuge ("Refuge"). *Id.* (citing Decl. of Boyd Blihovde ¶ 3, ECF No. 5-1 ("Blihovde Decl.")). The residents of villages along the river and its tributaries are almost entirely "rural Alaskans" under ANILCA Title VIII who are "highly dependent on salmon as a source of food[,]" and "subsistence harvest of salmon is engrained with the culture and identity of these Kuskokwim area rural residents." *Id.* (quoting Blihovde Decl. ¶ 8).

The FSB "has been delegated the authority to adopt regulations that aim to preserve healthy populations of fish within federal lands in Alaska and implement

*United States v. Alaska*  
PL.'S MOT. FOR SUMM. J. AND MEMO IN SUPP.

Case No. 1:22-cv-00054-SLG  
4

Case 1:22-cv-00054-SLG   Document 70   Filed 07/21/23   Page 4 of 17

ANILCA's rural subsistence use priority." *Id*. at *2 (citing 16 U.S.C. § 3124; *Alaska*, 544 F.3d at 1092 & n.1). Such regulatory authority extends to defining harvest areas, opening or closing specific harvest seasons, defining methods of take, and setting harvest and possession limits. *Id*.

The FSB and agency field officials determined that closing the 180-mile section of river within the Refuge to non-subsistence uses for the 2021 and 2022 fishing seasons "was 'necessary to conserve the fish population for continued subsistence uses of the Chinook salmon upon which rural residents of the area depend.'" *Id*. (quoting Compl. ¶ 4, ECF No. 1; *see also* Blihovde Decl. ¶ 11). To balance these conservation concerns with ANILCA's subsistence use priority, the federal officials issued emergency actions authorizing gillnet harvest by federally qualified users for short periods "'under narrowly prescribed terms and means of harvest.'" *Id*. (quoting Compl. ¶ 4). But "[e]ach year, [Defendants] subsequently issued . . . emergency orders that overlapped with, and [were] to some degree inconsistent with, the FSB's emergency actions." *Id*. In 2021, Defendants issued emergency orders that mirrored the federal orders but created gillnet fishing opportunities "for *all* Alaskans – regardless of whether they were federally qualified subsistence users – on each of the same dates that the federal emergency actions had reserved for federally qualified subsistence users." *Id*. (citing Compl. Ex. 2 at 19-20, ECF No. 1-2). Additionally, Defendants adopted other 2021 emergency orders that "authorized subsistence gillnet fishing for all Alaskans on dates when even federal subsistence gillnet fishing was not allowed." *Id*. (citing Compl. Ex. 2 at 7-16). A similar

*United States v. Alaska*  
Pl.'s Mot. for Summ. J. and Memo in Supp.

Case No. 1:22-cv-00054-SLG  
5

Case 1:22-cv-00054-SLG    Document 70    Filed 07/21/23    Page 5 of 17

pattern started in May 2022 on the verge of the 2022 fishing season. *Id*. at *3.

Plaintiff filed the complaint on May 17, 2022, and shortly thereafter filed a motion for a temporary restraining order and preliminary injunction. *Id*. The Court allowed expedited consideration of, but denied, the motion for temporary restraining order, finding that Plaintiff did not sufficiently demonstrate that irreparable harm would be likely in the few weeks that would allow the Court to rule on the motion for a preliminary injunction. *Id*. at *7. However, following completion of additional briefing and argument, the Court granted the motion for preliminary injunction. *See Kuskokwim II*, 608 F. Supp. 3d at 813. The Court ordered that Defendants "are hereby ENJOINED, pending a final ruling by this Court, from implementing ADF&G Emergency Order #3-S-WR-02-22 and are further ENJOINED from taking similar actions that authorize gillnet fishing by all Alaskans on the Kuskokwim River within the [Refuge] when such action(s) would be contrary to federal orders issued pursuant to Title VIII of the ANILCA." *Id*. Defendants have not issued any further order purporting to create gillnet fishing for all Alaskans within the Refuge since that June 2022 preliminary injunction ruling.

## LEGAL STANDARDS

### I. Summary Judgment

"Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment if the movant 'shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law.'" *Int'l Bhd. of Elec. Workers, Loc. 1547, AFL-CIO v. Alaska Commc'ns Sys. Holdings, Inc.*, 424 F. Supp. 3d 598, 604 (D.

Alaska 2019) (quoting Fed. R. Civ. P. 56(a)), *on reconsideration*, No. 3:19-cv-00160-SLG, 2019 WL 8227382 (D. Alaska Dec. 31, 2019), *and aff'd*, No. 20-35021, 2021 WL 5276022 (9th Cir. Nov. 12, 2021). A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c) (1986)). But the moving party is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id*. Instead, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. Preemption can be properly resolved through summary judgment because the "question of pre-emption is one for a judge to decide[.]" *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1672 (2019).

  II. **Permanent Injunction**

  A plaintiff seeking a permanent injunction "must establish: '(1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction.'" *Riley's Am.*

*United States v. Alaska* Case No. 1:22-cv-00054-SLG
Pl.'s Mot. for Summ. J. and Memo in Supp. 7

Case 1:22-cv-00054-SLG   Document 70   Filed 07/21/23   Page 7 of 17

*Heritage Farms v. Elsasser*, 32 F.4th 707, 730 (9th Cir. 2022) (quoting *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019) (per curiam)). This is "essentially the same" as the standard for a preliminary injunction except that a permanent injunction requires showing "actual success" on the merits. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

## ARGUMENT

Nothing has altered the Court's analysis since it granted Plaintiff's motion for preliminary injunction. The United States should prevail on the merits and continues to meet the test for entry of injunctive relief.

### I. State Orders Interfering with FSB Management Are Unlawful

Federal law preempts Defendants' orders addressing subsistence fishing within the Refuge. There exists an actual and ongoing controversy, and the Court can "declare the rights and other legal relations" of the parties in accordance with the Declaratory Judgment Act. 28 U.S.C. § 2201(a).

The Supremacy Clause states: "[t]his Constitution, and the laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause thus "provides 'a rule of decision' for determining whether federal or state law applies in a particular situation." *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020) (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015)). And equitable relief "is

*United States v. Alaska*　　　　　　　　　　　　　　　　　　　　　　　　Case No. 1:22-cv-00054-SLG
Pl.'s Mot. for Summ. J. and Memo in Supp.　　　　　　　　　　　　　　　　　　　　　　　　　8

Case 1:22-cv-00054-SLG   Document 70   Filed 07/21/23   Page 8 of 17

traditionally available to enforce federal law." *Armstrong*, 575 U.S. at 327, 329.[1] The Supreme Court has "identified three different types of preemption – conflict, express, and field . . . – but all of them work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018) (internal quotation marks and citation omitted); *see also Chamber of Com. of U.S. v. Bonta*, 13 F.4th 766, 773-74 (9th Cir. 2021), *withdrawn on other grounds by* 45 F.4th 1113 (9th Cir. 2022), *and on reh'g*, 62 F.4th 473 (9th Cir. 2023).

This dispute raises issues of conflict preemption. "Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, . . . or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 605 (1991) (internal quotation marks and citations omitted). In this case, Defendants' management actions on the Kuskokwim River within the Refuge contradict federal management efforts and create an obstacle to ANILCA's federal purposes and objectives

---

[1] The Supreme Court in *Armstrong* explained that the Supremacy Clause "does not create a cause of action. It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." 575 U.S. at 325. This holding does not constrain the United States' ability to "enforce federal laws in court." Rather, the holding appears to limit the ability of private litigants to enforce federal statutes. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).

of prioritizing the subsistence use of salmon within the Refuge over all other uses.

"ANILCA, read as a whole, clearly expresses Congress's intent to create a federal regulatory scheme 'to protect the resources related to subsistence needs' and 'to provide the opportunity for rural residents engaged in a subsistence way of life to continue to do so.'" *John v. United States*, 247 F.3d 1032, 1036 (9th Cir. 2001) (per curiam) (en banc) (Tallman, J., concurring) (quoting 16 U.S.C. § 3101(b)-(c)). This Court has recognized that "Title VIII of ANILCA expressly provides that the FSB has the authority to restrict the taking of wildlife on federal public lands . . . [and] that by its plain language Section 815 of ANILCA gives the FSB the authority to adopt restrictions on nonsubsistence uses" as appropriate to ensure continued subsistence use. *Dep't of Fish & Game*, 2020 WL 5625897, at *8. Indeed, courts have enforced the subsistence mandate upon finding that the FSB insufficiently prioritized federally qualified subsistence users over non-federally qualified users. *See Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1195 (9th Cir. 2000) (upholding validity of a ten-day "advance season" but finding that two days failed to "qualify as a priority" for subsistence hunting).

ANILCA, thus, not only contemplates, but also prescribes the outcome of "a clash of lifestyles and a dispute over who gets to fish. Congress, using clear language, has resolved this dispute in favor of the [federally qualified users] who choose to pursue the traditional subsistence way of life by giving them priority in federal waters." *Kenaitze Indian Tribe v. State of Alaska*, 860 F.2d 312, 318 (9th Cir. 1988). As in *Kenaitze*, Defendants here "ha[ve] attempted to take away what Congress has given[.]" *Id*.

*United States v. Alaska*     Case No. 1:22-cv-00054-SLG
Pl.'s Mot. for Summ. J. and Memo in Supp.     10

Case 1:22-cv-00054-SLG   Document 70   Filed 07/21/23   Page 10 of 17

Finally, any claim that ANILCA's savings clause recognizes a role for Defendants in wildlife management does not alter the legal analysis. The Ninth and Tenth Circuits have rejected similar arguments under the statutory scheme for the National Wildlife Refuge System.[2] *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002) (a state law banning the use of leghold traps within units of the Refuge System was preempted by contrary authorizations issued by federal managers), *amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002); *Wyoming v. United States*, 279 F.3d 1214 (10th Cir. 2002) (upholding the Fish and Wildlife Service's ("FWS") refusal of a state request to vaccinate wild elk against brucellosis on the National Elk Refuge near Jackson, Wyoming). Both courts rejected arguments based on the Refuge Act's savings clause.[3] While acknowledging the traditional role of the states in managing wildlife within their borders, the Tenth Circuit ultimately affirmed the district court's dismissal of Wyoming's

---

[2] That statute is the National Wildlife Refuge System Improvement Act of 1997 ("Refuge Act"), Pub. L. No. 105-57, 111 Stat. 1252-1260 (codified as amended at 16 U.S.C. §§ 668dd-668ee) (amending the National Wildlife Refuge System Administration Act of 1966, Pub. L. No. 89-669, 80 Stat. 926-930 (as amended)).

[3] The Refuge Act savings clause provides:

> Nothing in this Act shall be construed as affecting the authority, jurisdiction, or responsibility of the several States to manage, control, or regulate fish and resident wildlife under State law or regulations in any area within the System. Regulations permitting hunting or fishing of fish and resident wildlife within the System shall be, to the extent practicable, consistent with State fish and wildlife laws, regulations, and management plans.

16 U.S.C. § 668dd(m); *see Wyoming*, 279 F.3d at 1229.

*United States v. Alaska*  Case No. 1:22-cv-00054-SLG
Pl.'s Mot. for Summ. J. and Memo in Supp.  11

Case 1:22-cv-00054-SLG   Document 70   Filed 07/21/23   Page 11 of 17

claim:

> If we construed the [Refuge Act] to grant the State of Wyoming the sweeping power it claims, the State would be free to manage and regulate the [Elk Refuge] in a manner the FWS deemed incompatible with the [Refuge]'s purpose. But the Secretary alone is authorized, "under such regulations as he may prescribe," to "permit the use of any area within the System for any purpose . . . whenever he determines that such uses are compatible with the major purposes for which such areas were established[.]"

*Id*. at 1234 (fourth alteration in original) (quoting 16 U.S.C. § 668dd(d)(1)(A)).

This Court relied upon *National Audubon Society* and *Wyoming* in extending a similar conflict preemption analysis to ANILCA. In *Alaska v. Bernhardt*, 500 F. Supp. 3d 889 (D. Alaska 2020), *aff'd sub nom. Safari Club Int'l v. Haaland*, 31 F.4th 1157 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1002 (2023), Alaska attempted to employ ANILCA's savings clause[4] as a foothold establishing state sovereignty, from which to invert the preemption analysis and overturn a federal statutory management scheme for the Kenai National Wildlife Refuge. 500 F. Supp. 3d at 910-11. The Court rejected the argument and determined that ANILCA "§ 1314 specifically contemplates that federal law will apply to NWRs, and where there is a clear conflict between federal and state law, the federal law controls." *Id*. at 914. The Court concluded that ANILCA represents a

---

[4] This savings clause is found in the ANILCA "administrative provisions" codified at 16 U.S.C. § 3202. It states, "[n]othing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands except as may be provided in subchapter II of this chapter [(providing for subsistence management)], or to amend the Alaska constitution," *id*. (a), and further states that taking of fish and wildlife in conservation system units "shall be carried out in accordance with the provisions of this Act and other applicable State and Federal law[,]" *id*. (c).

"careful regulatory scheme established by federal law" and "that § 1314(a) 'was not meant to eviscerate the primacy of federal authority over [national wildlife refuge] management' and instead reflects Congress's intent that 'ordinary principles of conflict preemption apply' to disputes involving ANILCA." *Id*. at 915 (alteration in original) (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 870 (2000), *Nat'l Audubon Soc'y*, 307 F.3d at 854, and *Wyoming*, 279 F.3d at 1234).

The Court acted consistently with the above analysis in its order granting Plaintiff's motion for preliminary injunction; it noted that "Defendants have not contested ANILCA's rural subsistence priority nor explained how the State's emergency order does not 'both violate the federal orders and stand as an obstacle' to the congressional intent of ANILCA." *Kuskokwim II*, 608 F. Supp. 3d at 808 (quoting Pl.'s Mot. for Prelim. Inj. and Combined Mem. in Supp. 17, ECF No. 5). Instead, Defendants asserted "that the federal action is constitutionally flawed" but "implicitly acknowledge[d] . . . gaps in those arguments." *Id*. Similarly, suggestions that Plaintiff's orders were "arbitrary and capricious" or otherwise invalid under the Administrative Procedure Act ("APA") were "not properly raised" in the preliminary injunction proceedings. *Id*. at 807-08.

Despite the passage of time and procedural opportunities to address them, those shortcomings persist. Defendants did plead constitutional and APA-based "affirmative defenses" as well as a counter-claim under ANILCA. *See* Answer 14-15, ECF No. 33. But Defendants ultimately stipulated to dismissal of the counter-claim with prejudice, ECF No. 64. Thereafter, the parties stipulated "that the case can likely be resolved by

*United States v. Alaska*  Case No. 1:22-cv-00054-SLG
Pl.'s Mot. for Summ. J. and Memo in Supp.  13

Case 1:22-cv-00054-SLG   Document 70   Filed 07/21/23   Page 13 of 17

cross-motions for summary judgment because the remaining issues are primarily questions of law" and submitted a proposed briefing schedule. Am. Scheduling & Planning Conference Report 2, ECF No. 67; *see also* Am. Scheduling Order, ECF No. 68 (adopting "the parties' joint request" and setting schedule). Defendants, therefore, have not only failed to address the gaps in their response to Plaintiff's position on the merits, but have made procedural choices that all but foreclose development of their defenses. Summary judgment for Plaintiff is appropriate in these circumstances. *See Celotex Corp.*, 477 U.S. at 322-24.

In sum, Defendants' actions opening the Kuskokwim to gillnetting in contravention of federal closure orders both violate the federal orders and stand as an obstacle to the accomplishment and execution of Congress's full purposes in Title VIII of ANILCA. Accordingly, Plaintiff United States has demonstrated as a matter of law that Defendants' orders interfering with or contradicting federal orders implementing Title VIII of ANILCA within the Refuge are preempted by federal law.

## II. The Court Should Enter a Permanent Injunction

Plaintiff has demonstrated that it prevails on the merits, and this Court's analysis and conclusions in the preliminary injunction order continue to satisfy the remaining elements of the test for entry of a permanent injunction.

Plaintiff's showing of irreparable injury remains valid. "Irreparable harm 'analysis focuses on irreparability, irrespective of the magnitude of the injury.'" *Downtown Soup Kitchen v. Municipality of Anchorage*, 406 F. Supp. 3d 776, 797 (D.

Alaska 2019) (quoting *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018)). The Court found that Plaintiff established irreparable injury through harm to the ANILCA subsistence use priority, and through federally qualified users' uncertainty having to interpret conflicting orders. *Kuskokwim II*, 608 F. Supp. 3d at 809-11.[5] In doing so, the Court properly observed that "a State emergency order that contradicts ANILCA's rural subsistence use priority violates the Supremacy Clause, and 'an alleged constitutional infringement will often alone constitute irreparable harm[.]'" *Id*. at 809 (quoting *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011), *rev'd in part on other grounds*, 567 U.S. 387 (2012)). The Court further found that the confusing terms of federal and state emergency orders might "dissuade a federally qualified user from legal fishing opportunities or may cause a non-federally qualified user to harvest fish in violation of federal law." *Id*. at 810-11. Once either event occurs, "neither the Court nor the parties can go back in time to remedy the harm financially." *Id*. at 811.[6] It is enough to show that Defendants' actions "interfere with [the villages'] way of life and cultural identity" –

---

[5] Plaintiff also argued that unauthorized Chinook or chum salmon harvest under Alaska's orders could constitute irreparable harm to those salmon populations. *See Kuskokwim II*, 608 F. Supp. 3d at 811-12. The Court "acknowledge[d] the parties' conflicting positions" but did not determine this issue. *Id*. at 812. Plaintiff does not raise the issue here because the showing of "irreparable harm to the federal government's ability to enforce ANILCA's rural subsistence priority and irreparable harm to federally qualified subsistence users" amply supports entry of a permanent injunction. *Id*.

[6] This observation also explains why the demonstrated injury here cannot be redressed by some remedy at law – damages are neither available nor calculable to redress injury to subsistence salmon harvest or loss of cultural identity.

*United States v. Alaska*  Case No. 1:22-cv-00054-SLG
Pl.'s Mot. for Summ. J. and Memo in Supp.  15

Case 1:22-cv-00054-SLG   Document 70   Filed 07/21/23   Page 15 of 17

Kuskokwim area residents need "to prove nothing more in light of the clear congressional directive to protect the cultural aspects of subsistence living." *Native Vill. of Quinhagak v. United States*, 35 F.3d 388, 394 (9th Cir. 1994) (quoting 16 U.S.C. § 3111(1)).

Moreover, the balance of equities and public interest plainly support continuing injunctive relief. When the federal government is a party, the balance of equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The Court concluded "that the Ninth Circuit has held that allowing a state to enforce a regulation that violates a federal rule in violation of the Supremacy Clause is neither equitable nor in the public interest." *Kuskokwim II*, 608 F. Supp. 3d at 812-13 (citing *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852-53 (9th Cir. 2009), *vacated and remanded sub nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1059-60 (9th Cir. 2009)).[7] ANILCA establishes a clear policy on public lands that conservation and subsistence uses by rural Alaskans shall be given priority over other consumptive uses. *See* 16 U.S.C. §§ 3112(2), 3114. Congress adopted this policy because "the continuation of the opportunity for subsistence uses by rural residents of Alaska, including both Natives and non-Natives, . . . is essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence." 16 U.S.C. § 3111(1).

---

[7] Intervenor-Plaintiffs, including subsistence users along the Kuskokwim, will likely punctuate the various ways in which the balance of equities and public interest favor continuing injunctive relief.

*United States v. Alaska*  
PL.'S MOT. FOR SUMM. J. AND MEMO IN SUPP.

Case No. 1:22-cv-00054-SLG  
16

Case 1:22-cv-00054-SLG   Document 70   Filed 07/21/23   Page 16 of 17

# CONCLUSION

For the above reasons, the United States respectfully requests that the Court grant its motion, issue a permanent injunction enjoining Defendants from taking actions interfering with or contravening federal orders issued pursuant to ANILCA Title VIII, and enter judgment for Plaintiff United States.

Respectfully submitted,

DATED: July 21, 2023.

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

*/s/ Paul A. Turcke*
PAUL A. TURCKE
Idaho Bar No. 4759
Trial Attorney, Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 ǁ 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Plaintiff*

Of Counsel:

KENNETH M. LORD
Office of the Regional Solicitor
U.S. Department of the Interior
4230 University Drive, Suite 300
Anchorage, AK 99508
907-271-4184
ken.lord@sol.doi.gov

# CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2023, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Paul A. Turcke*
Paul A. Turcke