Jahna M. Lindemuth (AK No. 9711068)
Scott M. Kendall (AK No. 0405019)
Cashion Gilmore & Lindemuth
510 L Street, Suite 601
Anchorage, Alaska 99501
Phone: (907) 222-7932
Fax: (907) 222-7938
jahna@cashiongilmore.com
scott@cashiongilmore.com

*Attorneys for Applicant-Intervenor Alaska Federation of Natives*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>KUSKOKWIM RIVER INTER-TRIBAL FISH COMMISSION, *et al.*,<br><br>Intervenor Plaintiffs,<br><br>v.<br><br>STATE OF ALASKA, *et al.*,<br><br>Defendants. | Case No. 1:22-CV-00054-SLG |

## ALASKA FEDERATION OF NATIVES' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT

The Alaska Federation of Natives ("AFN") hereby moves this Court for leave to intervene as a plaintiff in this action as of right, pursuant to Federal Rule of Civil Procedure 24(a)(2), or, alternatively, for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Pursuant to Federal Rule of Civil Procedure 24(c), this Motion is

accompanied by AFN's proposed Complaint in intervention and is supported by the Declaration of Julie Kitka and Declaration of Jahna M. Lindemuth.[1]

AFN is a 501(c)(4) nonprofit originally formed in 1966, with a primary purpose of protecting the aboriginal use and occupancy land claims, including hunting, fishing, and gathering needs, of Alaska Native peoples. To that end, AFN devoted significant efforts from 1966 to 1971 towards securing a fair and just land settlement with the U.S. Congress. Those efforts resulted in the passage of the Alaska Native Claims Settlement Act ("ANCSA"). Then, from 1975-1980, AFN was the principal Alaska Native organization pressing for settlement of Alaska Native peoples' subsistence claims. That campaign ultimately resulted in Title VIII of the Alaska National Interest Lands Conservation Act ("ANILCA").

AFN also participated in some capacity (as an intervenor/party or *amicus*) in virtually every major lawsuit with potential statewide implications to subsistence, including as a party in all three *Katie John* cases.[2] Given its longstanding role advocating for the interests of all Alaska Native peoples across the state, AFN has a unique and vital perspective on ANCSA and Title VIII of ANILCA. The argument for reinterpretation of Title VIII of ANILCA only recently advanced by State Defendants, if accepted, would profoundly impair Alaska Native peoples' subsistence-based traditions, customs, cultural practices, and food security statewide. AFN therefore seeks to intervene to protect the

---

[1] The Declaration of Julie Kitka is hereinafter referred to as "Kitka Decl." and the Declaration of Jahna M. Lindemuth is hereinafter referred to as "Lindemuth Decl."

[2] *See* Kitka Decl. ¶ 17.

interests of its 160,000 Alaska Native members, which includes 209 federally recognized tribes and 194 Alaska Native Corporations (ANCs) established under ANCSA—of which 185 are village corporations and 9 are regional corporations, and 10 regional nonprofit tribal organizations.

All parties have confirmed that they do not oppose AFN's intervention except for the State of Alaska defendants ("State").[3] In accordance with Local Civil Rule 7.3(a), AFN has contemporaneously filed a separate Motion to Expedite Consideration seeking a ruling on its Motion to Intervene no later than October 17, 2023.

## I. ARGUMENT

### A. AFN Is Entitled to Intervene as a Matter of Right.

Federal Rule of Civil Procedure 24(a) requires district courts to allow a party to intervene as a matter of right if the party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[4] The four-part test for a movant to satisfy to intervene as of right requires that:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that

---

[3] *See* Lindemuth Decl. ¶ 5.

[4] The standard for intervention as of right was previously addressed by the Court in its Orders, see ECF No. 29 at 2-3 & ECF No. 47 at 2-3.

interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.[5]

However, "the requirements for intervention are [to be] broadly interpreted in favor of intervention."[6] This "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts."[7]

### 1) AFN's Intervention is Timely.

Courts weigh three factors to determine whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."[8] "[T]he timeliness requirement for intervention as of right should be treated more leniently than for permissive intervention because of the likelihood of more serious harm" to the proposed intervenors' protectable interests.[9] "Timeliness is a flexible concept; its determination is left to the district court's discretion."[10]

---

[5] *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)).

[6] *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (alteration in original) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).

[7] *Wilderness Soc'y*, 630 F.3d at 1179.

[8] *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (quoting *United States v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996)).

[9] *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) [hereinafter *Oregon I*] (citing *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978), *cert. denied*, 439 U.S. 837 (1978)); *see also Washington State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) ("Rule 24 traditionally has received a liberal construction in favor of applicants for intervention.").

[10] *Alisal Water Corp.*, 370 F.3d at 921.

The Ninth Circuit has concluded that "the crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties."[11] "Determining this crucial date is necessarily a fact-specific inquiry, as timeliness is 'determined by the totality of the circumstances.'"[12]

The "stage of proceeding" factor employs a "nuanced, pragmatic approach."[13] "In this inquiry, substance prevails over form," and neither the stage of litigation nor the length of time since the suit was filed is dispositive.[14] This means that "a party's interest in a specific phase of a proceeding may support intervention at that particular stage of the

---

[11] *L.A. Unified Sch. Dist.*, 830 F.3d at 854 (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)); *see also United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990) [hereinafter *Oregon II*] ("A party seeking to intervene must act as soon as he 'knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.'" (quoting *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989))).

[12] *Kalbers v. United States DOJ*, 22 F.4th 816, 822-23 (9th Cir. 2021) (quoting *L.A. Unified Sch. Dist.*, 830 F.3d at 854).

[13] *Id.* at 826 (quoting *League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297, 1303 (9th Cir. 1997)).

[14] *Id.* (citing *Oregon II*, 913 F.2d at 588); *see also Washington*, 86 F.3d at 1503 (explaining delay is not measured from "the date [the proposed intervenor] learned of the litigation").

lawsuit."[15] In other words, "the mere lapse of time, without more, is not necessarily a bar to intervention."[16]

Moreover, "[c]ourts should discourage premature intervention that wastes judicial resources. A better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties."[17] As the Ninth Circuit has acknowledged, it may be "inappropriate for [a party] to intervene before [even] the remedies phase of the litigation because it was only at this stage that its interests were implicated."[18] "[M]indful of the balance of policies underlying intervention," the Ninth Circuit "do[es] not require hasty intervention."[19]

Applying this fact-specific inquiry here, the United States originally filed a complaint seeking declaratory and injunctive relief from State Defendants' actions purporting to authorize harvest in contravention of federal law and federal orders on the

---

[15] *Alisal Water Corp.*, 370 F.3d at 921-22; *see also Oregon I*, 745 F.2d at 552 ("[A] change of circumstance, which suggests that the litigation is entering a new stage, indicates that the stage of the proceeding and reason for delay are factors which militate in favor of granting the application [to intervene]."); *Harris v. Pernsley*, 820 F.2d 592, 599 (3d Cir. 1987) (noting "given the nature of an applicant's interest, he or she may have a sufficient interest to intervene as to certain issues in an action without having an interest in the litigation as a whole").

[16] *Alisal Water Corp.*, 370 F.3d at 921 (citing *Oregon I*, 745 F.2d at 552).

[17] *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (internal citations omitted).

[18] *Alisal Water Corp.*, 370 F.3d at 921.

[19] *Kalbers*, 22 F.4th at 823 (citing *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) ("[T]imeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner.")); *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989) ("The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." (citation omitted))).

Kuskokwim River.[20] The stages of this litigation addressing motions for a temporary restraining order and preliminary injunction have been completed.[21] The arguments now advanced by the State in its Summary Judgment briefing, however, go far beyond challenging the validity of emergency special actions on the Kuskokwim River, and instead seek to entirely destroy federal subsistence rights by invalidating Title VIII of ANILCA.[22] The State's position has therefore elevated this matter from a regional conflict to a much larger statewide issue with serious implications for all Alaska Natives, who make up the majority of rural subsistence users and for whom Title VIII was enacted to protect. This is a matter of fundamental importance for AFN given its historical role in the passage of Title VIII of ANILCA and its membership, who rely on subsistence to sustain themselves, provide food security, and continue their ways of life.[23]

As a statewide organization with limited staff and many important issues requiring attention, AFN prioritizes work that unifies the Alaska Native community on issues of statewide importance.[24] For this reason, AFN does not generally involve itself in region-specific or inter-regional conflicts.[25] And, while AFN has a long history of involvement in legal matters of critical statewide importance for the Alaska Native community,[26] it does

---

[20] Complaint for Declaratory and Injunctive Relief (dated May 17, 2022), ECF No. 1 at 24.

[21] *See* ECF Nos. 11 & 35.

[22] *See* ECF No. 72 at 34-39.

[23] *See, e.g.*, Kitka Decl. ¶¶ 4, 6-8, 15, 18.

[24] *See* Kitka Decl. ¶ 5.

[25] *Id.*

[26] *See, e.g., id.* at ¶ 17.

not consider itself to be a litigious organization. Accordingly, while AFN was aware of and tracked the present litigation, the matters at issue were initially limited to the Kuskokwim River and conflicting State and federal fisheries management orders in 2021 and 2022.[27] While AFN followed the conflict with concern—due to its impacts to Alaska Native subsistence users on the Kuskokwim—AFN maintained its policy of restraint due to the regional nature of the conflict. AFN also noted regional Alaska Native representation via Plaintiff Intervenors Kuskokwim River Inter-Tribal Fish Commission ("Fish Commission"); Association of Village Council Presidents ("AVCP"), Betty Magnuson, and Ivan M. Ivan; Ahtna Tene Nene and Ahtna, Inc ("Ahtna").[28]

When a lawsuit has clear implications for the entire statewide population of Alaska Natives, however, particularly on an issue as important as subsistence, AFN's policy is to seek involvement to ensure a statewide voice for Native peoples is heard by the Court.[29] For example, in the past four decades AFN has participated in some capacity (as an intervenor/party or *amicus*) in virtually every major lawsuit with potential statewide implications to subsistence, including as a party in all three *Katie John* cases.[30] The State did not file its cross-motion for summary judgment seeking to void Title VIII of ANILCA until September 1, 2023.[31] Moreover, in filing this briefing, the State reversed its prior

---

[27] *See* Compl., ECF No. 1.

[28] ECF Nos. 29, 37, & 47 (Court Orders granting Plaintiff Intervenors' Motions to Intervene).

[29] Kitka Decl. ¶ 5.

[30] *See, e.g.*, *id.* at ¶ 17.

[31] *See* ECF No. 72 at 34-39.

position in the *Sturgeon v. Frost* litigation that the National Park Service's authority to regulate hovercraft use was a separate and distinct legal issue from the federal subsistence priority addressed in the *Katie John* trilogy.[32] In sum, AFN is filing its motion to intervene in the same month as it became clear that the State had unexpectedly reversed its position on the validity of the federal subsistence priorities in Title VIII and was now clearly attacking the statewide interests of AFN and its members. The Ninth Circuit has addressed the exact situation of a party seeking intervention in the summary judgment phase within weeks of learning that the existing parties may not adequately represent its interests, and concluded such motion was timely.[33] AFN is timely in moving to intervene at the summary judgment stage of this litigation.[34]

---

[32] Brief of Amicus Curiae State of Alaska in Support of Petitioner at 29-35, *Sturgeon v. Frost*, 139 S. Ct. 1066 (2019) (No. 17-949) (containing Argument III, which is titled "In Restoring Alaska's Sovereignty Over Its Navigable Waters, this Court Need Not and Should Not Disturb the *Katie John* Circuit Precedents.").

[33] *Kalbers*, 22 F.4th at 825 ("Properly measured, the delay between when VW should have known that its interests might be inadequately protected by the parties (early-to mid-September 2019) and when VW filed its motion (September 27, 2019) was just a few weeks. We have little trouble concluding that such a short delay weighs in favor of timeliness, rather than against it."); *see also Washington*, 86 F.3d at 1503 ("Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation.").

[34] *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022) ("Although Chesapeake moved to intervene over two years after the start of this litigation, its motion came just three months after it discovered that its leases were involved in this litigation, and just over two weeks after the District Court stayed vacatur of the Phase One lease sales."); *Oregon I*, 745 F.2d at 552 (noting "reason for its attempted intervention at this time" including a "change of circumstances" are "factors which militate in favor of granting the application"); *see also Janusziewicz v. Sun Shipbuilding & Dry Dock Co.*, 677 F.2d 286, 293 (3d Cir. 1982) (intervention should have been granted where applicant

Relatedly, AFN's intervention creates no prejudice to the existing parties, a factor weighing heavily in favor of intervention.[35] In fact, the State is the only party that has not consented to AFN's intervention, and the only inconvenience it will suffer is the need to respond to one additional party. "[P]rejudice must be connected in some way to the timing of the intervention motion—and the fact that including another party in the case might make resolution more difficult *does not constitute prejudice*."[36] Here, AFN has moved expeditiously to retain outside counsel and prepare summary judgment briefing consistent with the established schedule, and AFN does not seek modification of the existing schedule.[37] AFN has also requested expedited consideration of its Motion to Intervene to avoid delay to the existing parties.

As the Ninth Circuit has noted, the complications inherent to adding another party do not create prejudice sufficient to deny intervention, as this can be said of every motion to intervene.[38] "Applying the proper rule, [there is] no prejudice stemming from the timing of [AFN's] motion. In fact, there need not [be] *any* delay from [AFN's] intervention, as

---

sought to participate in a new phase of litigation); *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 906-08 (D.C. Cir. 1977) (in assessing timeliness, district court should consider reason intervention is sought and abused its discretion in denying application).

[35] *Oregon I*, 745 F.2d at 552 (describing prejudice as "the most important consideration in deciding whether a motion for intervention is untimely" (quotation omitted)).

[36] *Kalbers*, 22 F.4th at 825 (cleaned-up) (emphasis added).

[37] *See* Lindemuth Decl. ¶ 5.

[38] *Kalbers*, 22 F.4th at 825 ("The district court's prejudice analysis failed to conform to this rule. The court focused on the fact that permitting intervention would raise 'additional complicating issues' that would 'unduly delay this action.' Yet every motion to intervene will complicate or delay a case to some degree—three parties are more than two. That is not a sufficient reason to deny intervention.").

[AFN has] offered to comply with the existing summary judgment briefing schedule. This lack of prejudice weighs heavily in favor of timeliness."[39]

> 2) **AFN has a significant protectable interest in the federal rural subsistence priority in Title VIII of ANILCA that could be impaired by the disposition of this action.**

"A would-be intervenor has a significant protectable interest if the interest is protected by law and there is a relationship between that interest and the claim or claims at issue."[40] The Ninth Circuit's "intervention caselaw has not turned on . . . technical distinctions;" instead, "a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."[41] Where the movants are "intended beneficiaries" of the statute at issue in the litigation, it weighs strongly in favor of allowing intervention.[42] Here, AFN's declaration establishes that AFN's statewide membership has significant interests in continuing their traditional subsistence practices, which are recognized and protected interests under Title VIII of ANILCA.[43]

---

[39] *Id.* at 826.

[40] *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021).

[41] *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

[42] *Id.*; *see also County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (rejecting notion that the statute must create a specific legal interest, and instead looking to who "Congress intended to protect" with the statute in determining motion to intervene).

[43] Kitka Decl. ¶¶ 3-19; *see also Native Village of Quinhagak v. United States*, 35 F.3d 388, 393-94 (9th Cir. 1994) (explaining that ANILCA represents a "clear congressional directive" to protect the physical and "cultural aspects of subsistence living").

Moreover, the Ninth Circuit has also consistently recognized that an organization has a protectable interest where "an action challeng[es] the legality of a measure it has supported" and is therefore "entitled as a matter of right to intervene."[44] Here, AFN did more than simply support Title VIII; it was a principal contributor to many of its terms. Because AFN was formative to the development, passage, and implementation of Title VIII of ANILCA, it has a legally protectable interest that it should be allowed to defend against the State's attack in this case.[45]

AFN was initially established around the issue of Alaska Native land claims, which, for Native peoples, was of utmost importance because large amounts of land are necessary to be able to continue the traditional subsistence practices that sustain Native ways of life.[46] AFN was formative in the passage of ANCSA and believed that Congress' plain expectation that the State of Alaska and the federal government would do everything they could to protect Alaska Natives' ability to continue hunting, fishing, and gathering on their

---

[44] *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983)); *Bates v. Jones*, 127 F.3d 870, 874 (9th Cir. 1997) ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported."); *Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980) (holding organization was entitled to intervene in litigation challenging Equal Rights Amendment it actively supported); *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (summarizing cases allowing intervention when proposed intervenor was directly involved in the enactment of the law); *see also Alaska v. Nat'l Marine Fisheries Serv.*, No. 3:22-CV-00249-JMK, 2023 WL 2789352, at *4 (D. Alaska Apr. 5, 2023) (recognizing that proposed intervenor's efforts to list the Arctic ringed seal under the Endangered Species Act created a protectable interest when that listing status was threatened by the present litigation).

[45] Kitka Decl. ¶¶ 9-10 (development and passage), 11-17 (implementation).

[46] *Id.* at ¶ 7.

own land and the public domain would be fulfilled.[47] Title VIII of ANILCA was Congress'

attempt to ensure that expectation was realized. And, just as it had done in ANCSA, AFN

was also imperative to Title VIII's development, as a prime negotiator in the federal

legislative process to ensure that Alaska Native interests were addressed, clarified, and

protected.[48] After the passage of ANILCA, AFN also ensured Native involvement in the

implementation of the statute: AFN was a member of the Alaska Land Use Council created

by ANILCA and provided direct input into drafting regulations and developing policies

implementing the Act.[49] AFN even opened  a Washington, D.C. office in 1981 to more

effectively and efficiently collaborate with the federal government on implementing Title

VIII.[50]

AFN also worked tirelessly to help the State achieve compliance with Title VIII,

both before and after the Alaska Supreme Court's *McDowell* decision made a State

constitutional amendment a precondition of compliance.[51] After *McDowell*, AFN

strategized with the State (as well as the federal government and Alaska citizens) for over

a decade to help the State permanently gain a unified fish and game management regime

---

[47] Kitka Decl. at ¶ 8.

[48] Kitka Decl. at ¶ 10; *1979 Hearing Report before the Subcommittee on Fisheries and Wildlife Conservation and the Environment of the Committee on Merchant Marine and Fisheries*, H.R. 39, H.R. 2219, 96th Cong. 670-76 (1979) (testimonies of Morris Thompson, President of AFN and Don Mitchell, counsel to AFN, describing development of Title VIII and providing examples of AFN's role in "work[ing] closely with the State and [Congress] to fashion a workable subsistence title." *Id.* at 674).

[49] Kitka Decl. at ¶ 11.

[50] *Id.*

[51] *Id.* at ¶¶ 12-13.

under ANILCA via a constitutional amendment that would allow for the rural priority required by Title VIII.[52] Post-*McDowell*, AFN petitioned the federal government to ensure it asserted jurisdiction over Title VIII subsistence uses until the State came into compliance.[53] In 1993, AFN petitioned the federal government again, this time to assert Title VIII regulatory authority over navigable waters because most traditional Alaska Native subsistence fisheries are in navigable waters.[54]

When Katie John filed her initial lawsuit in 1990, challenging the federal government's decision to place navigable waters under state control for the purpose of Title VIII of ANILCA, AFN was fully by her side.[55] AFN participated as a party in all three of the *Katie John* cases as the courts over many years confirmed Congress's authority to enact Title VIII, as well as the federal government's authority to define the limits of the federal subsistence priorities in Title VIII through rulemaking.[56] AFN also has been involved in some capacity (as intervenor or *amicus*) in virtually every other major lawsuit with

---

[52] *Id.* at ¶ 13.

[53] *Id.* at ¶ 14.

[54] Fisheries provide the majority of the wild foods harvested by rural Native villages for subsistence purposes, ADF&G Division of Subsistence, *Food Production and Nutritional Values of Noncommercial Fish and Wildlife Harvests in Alaska* at 3 (2019), https://www.adfg.alaska.gov/static/home/subsistence/pdfs/Wild_Harvest_Notebook.pdf, and "[c]ustomary and traditional subsistence fishing occurs primarily on navigable waters." *John v. United States,* 247 F.3d 1032, 1036 (9th Cir. 2001) (en banc) (Tallman, J. concurring) (cleaned-up).

[55] Kitka Decl. ¶ 17.

[56] *Id.*; *State of Alaska v. Babbitt*, 72 F.3d 698, 702 (1995) (*Katie John I*); *John v. U.S.,* 247 F.3d 1032, 1036 (9th Cir. 2001) (en banc) (*Katie John II*); *John v. United States*, 720 F.3d 1214, 1229 (9th Cir. 2013) (*Katie John III*).

potential statewide implications to subsistence, including *McDowell v. State of Alaska*, *Madison v. Alaska Department of Fish and Game*, as well as *Sturgeon v. Frost*.[57]

AFN's significant and legally protected interests in ensuring Alaska Native subsistence uses statewide are protected by Title VIII's rural priority are threatened by the State Defendants' proposed evisceration of Title VIII of ANILCA, which, if adopted, would mean that the United States can no longer issue orders imposing the federal subsistence priority on navigable waters under ANILCA.[58] Because subsistence fishing provides the majority of the total Alaska subsistence harvest, and because the overwhelming bulk of subsistence fishing occurs in navigable waters, stripping those waters from Title VIII's coverage would deal a catastrophic blow to subsistence heritage. To be clear, the relief the State is asking this Court for is sweeping—to undo the *Katie John* trilogy of cases and hold that Congress had no power to enact the federal subsistence priorities in Title VIII.

The legal arguments raised in the State's summary judgment briefing risk obliterating the entire federal rural subsistence priority throughout Alaska, which would plainly harm AFN's protectable interests in the continuation of traditional subsistence practices under ANILCA. AFN seeks to intervene in this lawsuit, as it has in all prior *Katie John* cases, to ensure that AFN and its members will maintain the benefit of the bargain

---

[57] Kitka Decl. ¶ 17.

[58] ECF No. 72 at 34-39.

struck with the United States in Title VIII. "Because disposition of the present action might impair [AFN's] significant protectable interests, the third factor is satisfied."[59]

### 3) The existing parties do not adequately represent AFN's interests.

"The third element, adequacy of representation, 'is satisfied if the applicant shows that representation of his interest *may* be inadequate'—a 'minimal' burden."[60] Courts consider three main factors in analyzing adequacy of representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.[61]

Normally, the fact that the United States and AFN share the same "ultimate objective"—namely, seeking declaratory and injunctive relief to prevent the State Defendants from undertaking actions directly undercutting the federal rural subsistence priority—would create a presumption that the Federal Plaintiff adequately represents

---

[59] *Alaska Indus. Dev. & Exp. Auth. v. Biden*, 2022 U.S. Dist. LEXIS 71097, *6 (D. Alaska, Apr. 18, 2022).

[60] *Kalbers*, 22 F.4th at 828 (quoting *Legal Aid Soc'y v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980) (emphasis added) (internal quotation marks and citation omitted)); *see also W. Watersheds Project,* 22 F.4th at 840 ("The burden of showing inadequacy of representation is minimal and [is] satisfied if the applicant can demonstrate that representation of its interests may be inadequate." (internal quotation marks omitted) (citing *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011))).

[61] *W. Watersheds Project*, 22 F.4th at 840 (quoting *Citizens for Balanced Use*, 647 F.3d at 898).

AFN's interests.[62] However, this presumption is rebutted when the Movant's and the Plaintiff's interests are not "sufficiently congruent."[63] This is especially so where the "complexity" of the issues can make the determination of "ultimate interests" far from straightforward.[64] Courts have also consistently recognized that although a governmental entity and an intervenor may occupy a similar litigation posture, the government frequently does not adequately represent the intervenor's distinct interests.[65]

As the Fish Commission correctly noted in its intervention motion, given the long history of litigation between the Alaska Native community and the United States related to ANILCA, the federal government will not offer the same perspective as AFN.[66] During the course of the fight to protect subsistence, AFN has at times been at odds with the federal government. For example, AFN first petitioned the federal government to assert jurisdiction over subsistence when the State was out of compliance with Title VIII in the 1980s, again in 1990 post-*McDowell*, and again in 1993 when the federal government

---

[62] *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001).

[63] *Id.*

[64] *Id.*

[65] *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538-39 (noting that the government body does not adequately represent interests of proposed intervenor when their interests are narrower); *Citizens for Balanced Use*, 647 F.3d at 899 (noting that the government's representation of the public interest may not be identical to an individual intervenor's interests merely because both occupy the same posture in the case); *Alaska v. Nat'l Marine Fisheries Serv.*, No. 3:22-CV-00249-JMK, 2023 WL 2789352 (holding that the federal government may not adequately represent the environmental plaintiff's interests regarding ESA protection for the ringed seal (despite having the same common goal), in part because the government had originally opposed ringed seal listing).

[66] ECF No. 12 at 13 (citing *Native Vill. of Quinhagak*, 35 F.3d 388 (discussing a Tribal challenge to both State of Alaska and federal regulations under ANILCA)).

failed to assert jurisdiction over navigable waters.[67] AFN then supported plaintiffs in the first *Katie John* case, in which the federal government was initially the defendant.[68] And while the federal government asserts jurisdiction over Title VIII subsistence, it does so because it is legally compelled by Congress' enactment of ANILCA and because doing so is in the interest of the public, including the rural, non-Alaska Native residents who also benefit from the subsistence priority.[69] AFN, by contrast, has advocated since its formation to ensure that the traditional subsistence uses of Alaska Native peoples are protected.[70] Subsistence has been a core aspect of Alaska Native peoples' way of life for over 12,000 years and the very survival of Alaska Native culture and communities relies on it.[71] Therefore, the United States will broadly represent the "the at-large interests of the general public"[72] and the supremacy of federal law,[73] whereas AFN will represent its specific and unique interests in protecting Alaska Native subsistence specifically and the continued existence of Alaska Native peoples ways of life.

Finally, although the current Intervenor Plaintiffs including the Fish Commission, AVCP, and Ahtna all undeniably offer specialized knowledge and expertise,[74] they cannot

---

[67] Kitka Decl. at ¶¶ 12, 14, 16.

[68] *Id.* at ¶ 17.

[69] 16 U.S.C. § 3111(1).

[70] Kitka Decl. ¶ 4.

[71] *Id.*

[72] *Alaska Indus. Dev. & Exp. Auth.*, 2022 U.S. Dist. LEXIS 71097, *7.

[73] *See* ECF No. 70 at 8-14.

[74] *See* ECF No. 71.

represent the breadth of Alaska Native statewide interests as AFN can through its membership, nor can they present the same arguments as AFN given its historical role in the passage of ANCSA and ANILCA and primary role in protecting subsistence since AFN's inception in 1966.[75] The Fish Commission, as the co-manager of the Kuskokwim River salmon fishery within the Yukon Delta National Wildlife Refuge, represents the federally recognized Tribes in the Kuskokwim watershed.[76] AVCP is a non-profit tribal consortium dedicated to protecting and supporting the interests of its 56-member federally recognized Tribes and their tribal citizens located in Native villages throughout the Yukon-Kuskokwim Delta.[77] Betty Magnuson and Ivan M. Ivan are federally qualified subsistence users that have subsistence fished on the Kuskokwim River their entire lives.[78] Ahtna is a regional ANC that represents more than 2,000 Ahtna Athabaskan shareholders, including the descendants of Katie John.[79]

All three Intervenor Plaintiff groups undoubtedly have indispensable and unique perspectives to offer the Court in the present matter.[80] Each are regional entities or individuals, however, and AFN is different because it is a statewide organization, representing over 160,000 Alaska Native peoples.[81] And, because this case implicates the

---

[75] *See, e.g.*, Kitka Decl. ¶¶ 4, 6-17.

[76] *See* ECF Nos. 12, 71.

[77] *See* ECF Nos. 19, 71.

[78] *See id.*

[79] *See* ECF Nos. 38, 71.

[80] *See* ECF Nos. 12, 19, 38, 71.

[81] Kitka Decl. ¶¶ 3-4.

interpretation and application of the rural subsistence priority in Title VIII of ANILCA statewide, AFN's historical role in advocating for the rights and interests of Alaska Native peoples during the passage and implementation of this legislation provides a "necessary element" that the existing parties may not be able to address to the same extent.[82] AFN's long history of involvement in protection of subsistence also means the organization can offer the Court deep institutional knowledge of the long fight for Alaska Native subsistence.[83] AFN has shown "the existing parties *may* not represent [AFN's] interests adequately. Nothing more is required."[84]

AFN has shown all four factors favor intervention as of right, and therefore AFN should be permitted to intervene under Rule 24(a).

## B. Alternatively, AFN Meets the Requirements for Permissive Intervention.

In the event this Court determines intervention as of right is not appropriate, AFN should be granted permissive intervention pursuant to Rule 24(b). Rule 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." As detailed above, AFN satisfies the requirements of the two applicable elements of

---

[82] *Citizens for Balanced Use*, 647 F.3d at 898.

[83] *See, e.g.*, Kitka Decl. ¶¶ 4, 6-17.

[84] *Kalbers*, 22 F.4th at 828; *see also Southwest Ctr. for Biological Diversity*, 268 F.3d at 824 ("[I]t is not Applicants' burden at this stage in the litigation to anticipate specific differences in trial strategy. It is sufficient for Applicants to show that, because of the difference in interests, it is likely that Defendants will not advance the same arguments as Applicants.").

permissive intervention: (1) "a timely motion," and (2) "a common question of law and fact."[85]  Specifically, AFN timely seeks to intervene in the summary judgment stage of this litigation to address the common legal question—the validity of Title VIII of ANILCA.

## II.    CONCLUSION

Based on the foregoing, AFN respectfully requests that this Court grant its motion to intervene as of right pursuant to Rule 24(a)(2).  In the alternative, this Court should grant AFN permissive intervention pursuant to Rule 24(b).

CASHION GILMORE & LINDEMUTH
Attorneys for Alaska Federation of Natives


DATE: <u>September 26, 2023</u>          <u>/s/ Jahna M. Lindemuth</u>
Jahna M. Lindemuth
Alaska Bar No. 9711068
Scott M. Kendall
Alaska Bar No. 0405019



<u>CERTIFICATE OF SERVICE</u>

I certify that on September 26, 2023, a copy
of the foregoing document was served via ECF
on all counsel of record.


<u>/s/ Jahna M. Lindemuth</u>

---

[85] *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)).  AFN seeks to intervene in this "federal-question case" and brings no new state-law claims, therefore "the independent jurisdictional grounds requirement does not apply." *Id.* at 843-44.