Scott Kendall (AK No. 0405019)
Jahna M. Lindemuth (AK No. 9711068)
Cashion, Gilmore & Lindemuth
510 L Street, Suite 601
Anchorage, Alaska 99501
Phone: (907) 222-7932
Fax: (907) 222-7938
scott@cashiongilmore.com
jahna@cashiongilmore.com

*Attorneys for Alaska Federation of Natives*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>KUSKOKWIM RIVER INTER-TRIBAL FISH COMMISSION, *et al.*,<br><br>Intervenor Plaintiffs,<br><br>v.<br><br>STATE OF ALASKA, *et al.*,<br><br>Defendants. | Case No. 1:22-CV-00054-SLG |

## **DECLARATION OF JULIE KITKA**

I, Julie Kitka, declare as follows:

1. I submit this declaration in support of the Alaska Federation of Natives' (AFN) Motion to Intervene in the above-captioned matter. I have personal knowledge of the matters set forth below.

2. I am the President of AFN and have served in this role for over 32 years.

3. AFN is the largest statewide Native organization in Alaska. It represents over 160,000 Alaska Natives through its membership, which includes 209 federally recognized tribes, 194 Alaska Native corporations (ANCs)—of which 185 are village corporations and 9 are regional corporations, and 10 regional nonprofit tribal organizations. The mission of AFN is to enhance and advance the cultural, economic, and political voice of the Alaska Native community on matters of mutual concern, including subsistence hunting and fishing, which is the foundation of Alaska Native ways of life.

4. AFN was formed in 1966 to protect Alaska Native use and ownership of our lands. For the first five years, we focused exclusively on obtaining a fair and just land settlement with the United States Congress. At issue was what lands Alaska Natives owned by right of traditional use and occupancy. Alaska is the traditional homeland for Alaska Natives. As such, we claimed traditional use and occupancy over the majority of the entire state to, among other things, meet the subsistence needs of our people. Subsistence was, and remains, the core aspect of our cultures and people's way of life for over 12,000 years.

5. As a statewide organization, AFN seeks to inform and unify the Alaska Native community on issues of statewide implication. We generally do not get involved in region specific or interregional conflicts. When a lawsuit has implications for the entire statewide population of Alaska Natives, however, AFN may then seek involvement to ensure a fuller Native perspective is heard by the court.

6. I knew and worked with the late Robert Arnold, and late Esther Wunnicke, who were the principal investigators of the Federal Field Committee for Development Planning in Alaska,[2] which was charged by the late U.S. Senator Henry Jackson, Chairman of the Committee on Interior and Insular Affairs, United States Senate to identify all the relevant, available data and information on Alaska Natives, the land and resources of Alaska, the uses which Alaska Natives made of them in the past, their present uses and ownership, and future. Their report was entitled *Alaska Natives and the Land* and was issued in October 1968. This report became the basis for legislation which eventually became the Alaska Native Claims Settlement Act of 1971 (ANCSA).

7. Because I knew Mr. Arnold and Mrs. Wunnicke, and worked with them later in their careers, I was always aware of the significance of their report and how it gave the United States Congress the most comprehensive study of Alaska Native subsistence activities and the maps of traditional use and occupancy ever prepared at that time. The land acreage in ANCSA was premised on the Federal Field Committee's detailed report, that Alaska Native peoples and our land-based cultures were i) very different than other Alaskans or Americans; and ii) covered nearly 2/3 of the entire state. Subsistence activities themselves require over 60 million acres of land.

---

[2] The Federal Field Committee was a small federal agency set up to help Alaska recover from the damage of the 9.2 magnitude Earthquake of 1964. It was tasked to help the U.S. Senate gather data and information to assist in the development of land claims legislation.

8. In ANCSA, the U.S. Congress settled on allowing Alaska Natives, through regional and village Native corporations that would soon be established under the act, to select 44 million acres of unincumbered federal public land for economic and social use and development, as well as the continued use of public lands for our subsistence needs. Continued use by Alaska Natives of federal and state lands for subsistence was recognized early as necessary for the very survival of Alaska Native culture since fish and wildlife traveled hundreds (if not thousands) of miles during their annual migrations, regardless of land ownership. Protection of traditional culture practices and the ability to continue the Alaska Native subsistence way of life was central to the negotiations leading up to the passage of ANCSA.

9. From 1971 to 1980, AFN divided our attention between righting the subsistence wrongs that failed to come to fruition under ANCSA, while simultaneously overseeing the implementation of that law.

10. In the years leading up to and including 1980, AFN was a prime negotiator in the federal legislative process to ensure Alaska Native interests were addressed, clarified, and protected under the development and passage of the Alaska National Interest Lands Conservation Act (ANILCA). AFN ensured that, unlike ANCSA, Title VIII, and its provision for a rural subsistence priority in times of shortage was included in the final version of the statute—and not just congressional report language. AFN strongly urged an Alaska Native priority but, in the interest of compromising with the State of Alaska, agreed

to a rural priority for the final version.

11. After the passage of ANILCA, AFN continued to ensure Alaska Native involvement in the implementation of that statute. For example, AFN was a member of the Alaska Land Use Council created by ANILCA of all major landowners—federal, state, and Native—to provide direct input into drafting regulations and developing policies governing the implementation of ANILCA. AFN even opened an office in Washington, DC in 1981 to more closely work with Congress and federal agencies to implement the ANILCA provisions related to federal and state management of subsistence.

12. During the 1980s (prior to the *McDowell* case) AFN worked tirelessly to urge the State to come into compliance with Title VIII of ANILCA, including presenting testimony during state legislative hearings on the issue. When the State failed to do so, AFN petitioned the federal government to enforce federal law ensuring the subsistence priority for rural Alaskans.

13. After the *McDowell* case, AFN spent more than 10 years working with the Alaska congressional delegation, Governor, state legislative leadership, and the U.S. Secretaries of Interior and Agriculture, as well as other Alaskans (Native and non-Native) to help the State regain a unified fish and game management regime by giving amending the Alaska State Constitution to include a rural subsistence priority and thus be in compliance with federal law. AFN was a member of numerous Governor's advisory committees on subsistence seeking to resolve implementation issues and other user conflicts. AFN even organized multiple Subsistence Summits for the statewide Alaska

Native community to deliberate on the various governor's proposals and offer up possible solutions.

14. In 1990, after the *McDowell* decision, AFN petitioned the Secretary of the Interior Manuel Lujan to assert subsistence regulatory authority to protect Alaska Natives as required by law. Secretary Lujan became the first Interior Secretary to ever testify before the Alaska State Legislature—and it was on subsistence. Secretary Lujan joined with Alaska Native leaders, the Alaska congressional delegation, and the Governor to urge the State Legislature to take action.

15. Also in 1990, when the U.S. Secretaries of the Interior and Agriculture asserted federal jurisdiction under Title VIII of ANILCA, they only announced actions over game. They did not assert jurisdiction over fish because they believed the State of Alaska was on the cusp of solving the issue and putting a State constitutional amendment on the ballot. AFN was shocked that fish was not covered when we knew that subsistence fishing was so vital to our people. We were told that with the solution of a constitutional amendment at hand, there was no need to disrupt commercial fishing.

16. In 1993, AFN petitioned the Secretaries of the Interior and Agriculture to assert subsistence regulatory authority for navigable waters and spoke with Interior Secretary Bruce Babbitt about the need for federal jurisdiction during his July 15, 1993 visit to Alaska.

17. When Katie John filed her initial lawsuit in 1990, challenging the federal government's decision to place navigable waters under state control for the purpose of

Title VIII of ANILCA, AFN was fully by her side. AFN participated as a party in all three of *Katie John* cases. AFN also has been involved in some capacity (as intervenor or amicus) in virtually every other major lawsuit with potential statewide implications to subsistence, including *McDowell v. State of Alaska*, *Madison v. Alaska Department of Fish and Game*, as well as *Sturgeon v. Frost*.

18. This conflict between the federal and state government must come to an end. The Alaska Native community deserves the full protection of the law to preserve our subsistence way of life. Even now, fish shortages are hurting our people in many villages and families are having a hard time feeding their families.

19. I believe that allowing AFN to intervene in this matter as plaintiff would enable AFN to advocate for our interests in Alaska Native subsistence rights as shown by our long record of engagement to ensure subsistence is protected.

   a. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

   b. Executed this 24th day of September, 2023

*[signature]*
Julie Kitka

CERTIFICATE OF SERVICE

I certify that on September 26, 2023, a copy of the foregoing document was served via ECF on all counsel of record.

*/s/ Jahna M. Lindemuth*

COMPLAINT IN INTERVENTION OF ALASKA FEDERATION OF NATIVES
*USA et al. v. State of Alaska et al., Case No. 1:22-CV-00054-SLG* Page 8 of 8

Case 1:22-cv-00054-SLG   Document 90   Filed 09/26/23   Page 8 of 8