Nathaniel Amdur-Clark
nathaniel@sonosky.net
Whitney A. Leonard
whitney@sonosky.net
Lloyd B. Miller
lloyd@sonosky.net
Sonosky, Chambers, Sachse,
  Miller & Monkman, LLP
510 L Street, Suite 310
Anchorage, Alaska 99501
Telephone: (907) 258-6377
Facsimile: (907) 272-8332

*Attorneys for Intervenor-Plaintiff Kuskokwim River Inter-Tribal
  Fish Commission*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| KUSKOKWIM RIVER INTER-TRIBAL FISH COMMISSION *et al.* | ) ) ) Case No. 1:22-cv-00054-SLG |
| Intervenor-Plaintiffs, | ) ) |
| v. | ) ) |
| THE STATE OF ALASKA *et al.*, | ) ) |
| Defendants. | ) ) ) |

## KUSKOKWIM RIVER INTER-TRIBAL FISH COMMISSION'S COMBINED REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO STATE'S MOTION FOR SUMMARY JUDGMENT

*United States v. State of Alaska,* Case No. 1:22-cv-00054-SLG

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 2

ARGUMENT........................................................................................................... 7

   I.   THE STATE IS BARRED FROM RAISING BOTH ITS *KATIE JOHN* AND APPOINTMENTS CLAUSE ARGUMENTS. ................................. 7

      A.  Judicial Estoppel Bars the State from Arguing in this Case the Precise Opposite of the Position it Took in *Sturgeon*. ........................................ 7

      B.  Issue and Claim Preclusion Bar the State from Relitigating Issues it Lost or Could Have Raised in *Katie John*. .................................................... 15

      C.  The Six-Year Statute of Limitations Also Bars the State's Challenges to Federal Authority. ..................................................................... 21

   II.  EVEN IF THEY WERE NOT BARRED, THE STATE'S CLAIMS FAIL. ........................................................................................................ 25

      A.  The *Katie John* Decisions Remain Good Law and Control Here.................... 25

      B.  Congress Ratified the Secretaries' Interpretation of Title VIII. ...................... 34

      C.  The FSB is both Statutorily Authorized and Constitutional. ............................ 40

CONCLUSION ..................................................................................................... 41

*United States v. State of Alaska*                             Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT      i

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 2 of 49

# TABLE OF AUTHORITIES

**Cases**

*Alaska v. Babbitt* (*Katie John I*), 72 F.3d 698 (9th Cir. 1995) ..................................passim

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012) .................... 8, 9, 13

*City of Saint Paul v. Evans*, 344 F.3d 1029 (9th Cir. 2003) ........................................ 23, 24

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986).............................. 40

*Corner Post, Inc. v. Bd. of Governors*, FRS, No. 22-1008, 2023 WL
   6319653 (Sept. 29, 2023) ............................................................................................ 22

*Crum v. Mt. Shasta Power Corp.*, 220 Cal. 295, 30 P.2d 30 (1934) ................................ 32

*Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884 (9th Cir. 2017) .................................. 39

*Gundy v. United States*, 139 S. Ct. 2116 (2019)............................................................... 27

*In re Greenberg*, 626 B.R. 554 (S.D. Cal. 2021), *appeal dismissed*, No. 21-
   55184, 2021 WL 3876949 (9th Cir. Aug. 12, 2021) .................................................... 20

*John v. United States* (*Katie John II*), 247 F.3d 1032 (9th Cir. 2001) ......................passim

*John v. United States* (*Katie John III*), 720 F.3d 1214 (9th Cir. 2013).....................passim

*John v. United States*, No. 3:05-CV-0006-HRH, 2007 WL 9637058, at *1
   (D. Alaska May 17, 2007), *aff'd*, 720 F.3d 1214 (9th Cir. 2013) ................................ 22

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct.
   1589 (2020)................................................................................................................... 20

*McDowell v. State*, 785 P.2d 1 (Alaska 1989)............................................................... 7, 34

*Metlakatla Indian Cmty. v. Egan*, 369 U.S. 45 (1962)..................................................... 29

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003)............................................................... 25

*Montana v. United States*, 440 U.S. 147 (1979)................................................................ 17

*Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985 (9th Cir. 2005) .......................... 18, 19

*N. Dakota Retail Ass'n v. Bd. of Governors of the Fed. Rsrv. Sys.*, 55 F.4th
   634 (8th Cir. 2022) ...................................................................................................... 22

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                    ii

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 3 of 49

*N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1982) ........................................................ 40

*Native Village of Quinhagak v. United States*, 35 F.3d 388 (9th Cir. 1994) ..................... 30

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ................................................................ 8

*Radcliff's Ex'rs v. Mayor of Brooklyn*, 4 N.Y. 195 (1850) ............................................... 32

*Sturgeon v. Frost*, 139 S. Ct. 1066 (2019) ............................................................... passim

*Tex. Dep't of Housing & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ...................................................................................... 40

*United States v. Alaska*, 608 F. Supp. 3d 802 (D. Alaska 2022) ........................................ 2

*United States v. Alexander*, 938 F.2d 942 (9th Cir. 1991) ............................................... 31

*United States v. LKAV*, 712 F.3d 436 (9th Cir. 2013) ..................................................... 31

*United States v. Mendoza*, 464 U.S. 154 (1984) ....................................................... 17, 18

*United States v. Olson*, 856 F.3d 1216 (9th Cir. 2017) ........................................ 27, 30, 31

*Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036 (9th Cir. 2004) .............................. 9

*Wind River Min. Corp. v. United States*, 946 F.2d 710 (9th Cir. 1991) ...................... 22, 23

*Yong v. I.N.S.*, 208 F.3d 1116 (9th Cir. 2000) ............................................................... 26

## Federal Statutes

Alaska National Interest Lands Conservation Act (ANILCA), Pub. L. No. 96-487, § 303(7)(B)(i), (iii), 94 Stat. 2371 (1980) ................................................ passim

ANILCA Title VIII, 16 U.S.C. §§ 3101-3233 ............................................................. 1

ANILCA § 303(7)(B)(i), (iii) ................................................................................... 33

16 U.S.C. § 3102 ..................................................................................................... 31

16 U.S.C. § 3111 ......................................................................................... 29, 30, 33

16 U.S.C. § 3112 .................................................................................................. 1, 30

16 U.S.C. § 3115 ..................................................................................................... 37

*United States v. State of Alaska*　　　　　　　　　　　　　Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT　　　　iii

Case 1:22-cv-00054-SLG　Document 109　Filed 11/03/23　Page 4 of 49

16 U.S.C. §§ 3101-3233 ........................................................................................ 2

28 U.S.C. § 2401 ................................................................................................ 21

Department of the Interior and Related Agencies Appropriations Act, 1998,
 § 13, Pub. L. No. 105–83, 111 Stat 1543, 1592 (Nov. 14, 1997)................ 35, 36, 37, 38

Omnibus Consolidated and Emergency Supplemental Appropriations Act,
 1999, Div. A, § 339(a), Pub. L. No. 105–277, 112 Stat 2681 (Oct. 21,
 1998) ................................................................................................ 38, 39

Omnibus Consolidated and Rescissions and Appropriations Act of 1996,
 Pub. L. No. 104-134, § 336, 110 Stat. 1321 (1996) ...................................... 38

**Federal Rules and Regulations**

50 C.F.R. § 100.10 .............................................................................................. 22

50 C.F.R. § 100.3 ................................................................................................ 35

50 C.F.R. § 100.4 ................................................................................................ 16

Subsistence Management Regulations for Public Lands in Alaska, 62 Fed.
 Reg. 66216 (Dec. 17, 1997)..................................................................... 38, 41

Subsistence Management Regulations for Public Lands in Alaska, 64 Fed.
 Reg. 1276-01 (Jan. 8, 1999) ....................................................................... passim

Subsistence Management Regulations for Public Lands in Alaska, 76 Fed.
 Reg. 56,109 (Sept. 12, 2011) ....................................................................... 21

Subsistence Management Regulations for Public Lands in Alaska, Subparts
 A, B, and C, 57 Fed. Reg. 22940-01 (May 29, 1992). .................................. 34, 35

**Other Authorities**

In-Season Management, Kuskokwim River Inter-Tribal Fish Commission,
 available at  (last visited Nov. 1, 2023) ........................................................ 1

Kuskokwim River Intertribal Fish Commission, Kuskokwim River Salmon
 Situation Report 1 (Sept. 2021), ECF No. 12-5 ........................................... 5, 6

*United States v. State of Alaska*                      Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                      iv

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 5 of 49

Lindemuth, Jahna, Subsistence and State management of Alaska
   Waterways Aren't Incompatible, Anchorage Daily News, (Aug. 8, 2018),
   https://www.adn.com/opinions/2018/08/08/subsistence-and-state-
   management-of-alaska-waterways-arent-incompatible.............................................8, 15

State of Alaska FAQs on the Kuskokwim Case,
   https://law.alaska.gov/press/releases/2023/090123-FAQ.html ......................................4

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                    v

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 6 of 49

# INTRODUCTION

"Every decision we make as In-Season Managers means caring for the whole river, and its drainage, its tributaries, its people, the people's survival and food security, and the whole Yup'ik [and Athabaskan] culture."[1]

Since time immemorial, the Alaska Native communities of the Kuskokwim River Drainage have taken responsibility for stewardship of the fisheries that are critical for the continued survival of their subsistence ways of living.  In recent years, one aspect of that responsibility has taken the form of co-management, with the federal government, of the Chinook and chum salmon fisheries within the Yukon Delta National Wildlife Refuge ("Refuge").  This partnership implements the rural subsistence priority mandated by Title VIII of the Alaska National Interest Lands Conservation Act ("ANILCA").[2]

During the 2021 fishing season, and in the lead-up to the 2022 fishing season, the State of Alaska issued fishing orders through its Department of Fish and Game ("ADF&G") that purported to permit fishing that was specifically prohibited by federal regulations.  As this Court has noted, the State has "not contested ANILCA's rural subsistence priority nor explained how the State's emergency order[s] do[] not both

---

[1]  Kuskokwim River Inter-Tribal Fish Commission, *In-Season Management*, https://www.kuskosalmon.org/inseason-management (last visited Nov. 1, 2023) (quoting Jacki Cleveland, Quinhagak, Alaska).

[2]  16 U.S.C. § 3112(2). *See Alaska v. Babbitt* (*Katie John I*), 72 F.3d 698 (9th Cir. 1995); *John v. United States* (*Katie John II*), 247 F.3d 1032 (9th Cir. 2001); *John v. United States* (*Katie John III*), 720 F.3d 1214 (9th Cir. 2013).

violate the federal orders and stand as an obstacle to the congressional intent of ANILCA."[3]

Now, the State makes a full 180-degree turn from the legal position it took just a few years ago in the *Sturgeon* litigation,[4] arguing that Title VIII's rural subsistence preference does not apply in navigable waters. This argument is barred by judicial estoppel, precluded under both issue and claim preclusion, and foreclosed by binding precedent. It is also flatly wrong on the merits. In addition, the State challenges the regulatory structure implementing Title VIII of ANILCA, and argues that the Federal Subsistence Board ("FSB") is unconstitutional. These arguments are also precluded and, in any event, fail on the merits too.

This Court should grant summary judgment against the State and in favor of Plaintiff and Intervenor-Plaintiffs.

## BACKGROUND

The Court is well acquainted with the ADF&G orders purporting to allow gillnet fishing by all Alaskans on the Kuskokwim River within the Refuge[5] in contravention of ANILCA Title VIII.[6] Moreover, the United States' Response Brief provides a thorough

---

[3] *United States v. Alaska*, 608 F. Supp. 3d 802, 808 (D. Alaska 2022) (internal quotations omitted).

[4] *Sturgeon v. Frost*, 139 S. Ct. 1066 (2019).

[5] *United States v. Alaska*, No. 1:22-cv-00054-SLG, 2022 WL 1746844 (D. Alaska May 31, 2022).

[6] 16 U.S.C. §§ 3111-3126.

*United States v. State of Alaska*                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                    2

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 8 of 49

explication of the history of ANILCA and the FSB,[7] as well as ample analysis of the work of creative writing masquerading as the State's description of the situation leading up to and during the 2021 and 2022 fishing seasons.[8] In the interest of judicial economy, the Kuskokwim River Inter-Tribal Fish Commission ("Fish Commission") will not echo these points.[9] However, a few of the State's themes and statements are misleading enough to warrant additional discussion.

First, the State claims that "[f]or years, the federal government deferred to the State's management decisions on its navigable waters, allowing the State to achieve its goals" and that "all changed in the spring of 2021."[10] The assertion that, before 2021, the federal government "deferred" to State management decisions appears to be based on the statement of former Fish Commission Executive Director Mary Peltola that "it is Federal policy to defer to State management of the federal portion of the Kuskokwim River

---

[7] Pl.'s Reply/Opp'n Mem. on Mots. for Summ. J. ("U.S. Reply Br.") 2-5 (Oct. 27, 2023), ECF No. 101.

[8] *Id*. at 5-12 (discussing Defs.' Combined Mot. for Summ. J., Mem. in Supp., & Opp'n to Mots. for Summ. J. (Sept. 1, 2023) ("State Br."), ECF Nos. 72, 73. Citations to Defendants' brief refer to the ECF-stamped page numbers from the docket rather than the page numbers of Defendants' brief.

[9] Similarly, to avoid duplication, the Fish Commission does not repeat the other Intervenor-Plaintiffs' discussions of the historical background giving rise to this dispute. *See* Association of Village Council Presidents Reply Brief ("AVCP Reply Br."), Background §§ I-II; Ahtna Tene Nené Reply Brief ("Ahtna Reply Br."), Background §§ I-III; Alaska Federation of Natives Reply Brief ("AFN Reply Br."), Background §§ I-III.

[10] State Br. at 8.

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT            3

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 9 of 49

whenever possible."[11]   However, this statement simply reflects 50 C.F.R. § 100.14(a),

which provides that State "fish and game regulations apply to public lands and such laws

are hereby adopted and made a part of the regulations in this part *to the extent they are*

*not inconsistent with, or superseded by, the regulations in this part*."[12] That regulation

has long been in force and did not change in 2021, or at any point thereafter.  The <u>only</u>

thing that changed in 2021 is that, for the first time since the *Katie John* decrees, the State

issued emergency orders that directly conflicted with federal regulations.  Despite the

State's misleading suggestions otherwise,[13] the State picked this fight.

Second, the State's contention that the 2021 and 2022 federal emergency special

actions were somehow unsupported, unscientific, or "inexplicabl[e]"[14] is itself

unsupported.  It fails to recognize the established good faith of those who have stewarded

the waters and fish at issue in this case for thousands of years, and who currently do so as

parties of a federal-tribal partnership.  Specifically, as the United States has explained,

federal management of the Kuskokwim salmon fisheries is a "collaborative

undertaking"[15] that includes a co-stewardship "fishery management partnership" with the

---

[11] *Id*. at 27 (quoting Begakis Decl., Ex. CC at 22 (Statement of Mary S. Peltola)).

[12] Emphasis added.

[13] *See, e.g.*, Press Release, State of Alaska, Dep't of Law, FAQs on the Kuskokwim Case, https://law.alaska.gov/press/releases/2023/090123-FAQ.html.

[14] *See, e.g.*, Defs' Br. at 21, 32.

[15] U.S. Reply Br. at 6.

*United States v. State of Alaska*                           Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT          4

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 10 of 49

Alaska Native Tribes of the Kuskokwim River Drainage.[16] The Fish Commission's "33

Tribally appointed Fish Commissioners, 7 Executive Council members, and 4 In-Season

Managers combine Traditional Knowledge and western science to conservatively manage

Kuskokwim fisheries according to Yupik and Athabascan Dené values, subsistence

harvest needs, and escapement targets aimed at rebuilding depleted salmon

populations."[17]   In doing so—and in the context of a historic collapse of the Chinook and

chum runs that "threatens food security and the foundation of the subsistence economy in

Kuskokwim River communities"[18]—the Fish Commission's managers and biologists

worked hand-in-hand with the Refuge in-season manager "to create a management and

harvest strategy for Kuskokwim River Chinook and chum salmon before and during the

2021 fishing season."[19]   Each of the federal emergency special actions at issue in this

case was an implementation of that strategy "[b]ased on decision-making in collaboration

with the Commission that combines Western science with Traditional Indigenous

---

[16] *See* AR 0025 (Mem. of Understanding Between the U.S. Dep't of the Interior, U.S. Fish & Wildlife Serv. Alaska Region & Kuskokwim River Inter-Tribal Fish Comm'n).

[17] Kuskokwim River Intertribal Fish Commission, Kuskokwim River Salmon Situation Report 1 (Sept. 2021), ECF No. 12-5 ("2021 Salmon Situation Report").

[18] *Id*. at 3.

[19] Decl. of Mike Williams, Sr. ¶ 5 (June 3, 2022), ECF No. 14-1; *see also* 2021 Draft KRITFC-USFWS Kuskokwim River Salmon Management and Harvest Strategy (April 30, 2021), *available at* https://static1.squarespace.com/static/5afdc3d5e74940913f78773d /t/6095a582a323e624ac1a2686/1620419984318/Draft+2021+Management+Strategy+4-30-21.pdf (Attachment A).   The Fish Commission/U.S. Fish & Wildlife Service Management and Harvest Strategy documents are published in "draft" form in recognition that the management strategies will evolve as additional in-season data becomes available.

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment                5

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 11 of 49

Knowledge."[20]   The State's decision to issue emergency orders contravening federal fishing regulations was a politically-motivated rejection of federal authority—not a reflection of better fisheries management.

And finally, the State pats its own back regarding the "sustained yield" principle under the Alaska Constitution and "priority for subsistence fishing" under AS 16.05.258.[21]   Of course, the State's much-touted "subsistence priority" is not a rural priority compliant with Title VIII of ANILCA.  Moreover, the State's brief fails to take account of the wholesale collapse of the Kuskokwim River Chinook and chum runs at issue in this case, and its own role in that collapse.  As the Commission has explained:

> Since at least 2009, subsistence-dependent communities in the Kuskokwim drainage have . . . suffered because of significant and sudden drops in salmon populations, beginning with Chinook salmon and now including chum salmon.  The Kuskokwim River is experiencing a catastrophic multi-species salmon decline not seen in living memory.[22]

And further:

> ADF&G prosecuted fisheries that harvested 50 to 60 percent of the total Chinook salmon run in 2010, 2011 and 2013, which were three of the last four years that the [ADF&G] was the sole management agency responsible for management decisions for the entire Kuskokwim River Chinook salmon runs.  ADF&G's actions in 2010, 2011 and 2013 resulted in extremely high and demonstrably unsustainable total harvest rates on a declined population

---

[20] Decl. of Mike Williams, Sr.¶ 6. *See also* In-Season Management, *supra* note 1.

[21] Defs'. Br. at 10-13. Ironically, the State relies heavily on statements from trade associations and other sources relating to the sustainability and economic impacts of Alaska's *commercial* fisheries—all in the context of the Kuskokwim River Chinook and chum fisheries, which have long been too depressed to allow for sufficient subsistence harvests, much less a commercial fishery.

[22] 2021 Salmon Situation Report, at 3.

*United States v. State of Alaska*                                                      Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                    6

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 12 of 49

that constituted over-harvest. These years are among the lowest runs on record.[23]

It is clear why Katie John and her co-litigants fought so hard to ensure that the ANILCA Title VIII subsistence priority extended to the navigable waters where most subsistence fishing happens: the State is unable, and unwilling, to protect rural and Alaska Native subsistence fishing rights.[24] It is disingenuous for the State to pretend otherwise.

## ARGUMENT

I.  **THE STATE IS BARRED FROM RAISING BOTH ITS *KATIE JOHN* AND APPOINTMENTS CLAUSE ARGUMENTS.**

### A.  Judicial Estoppel Bars the State from Arguing in this Case the Precise Opposite of the Position it Took in *Sturgeon*.

For years, the State of Alaska has argued before this Court, the Ninth Circuit, the United States Supreme Court, and the court of public opinion, that the question of whether navigable rivers in Alaska are "public lands" for purposes of ANILCA's *non*-subsistence provisions is not relevant to the meaning of that phrase in ANILCA's subsistence provisions. As the Alaska Attorney General noted in the Anchorage Daily News explaining the State's participation in the *Sturgeon* litigation,[25] the State sought to:

protect[] the state's management rights *while also seeking to preserve the subsistence rights established in Katie John.* These are not inconsistent

---

[23] Decl. of Mike Williams, Sr. ¶ 4.

[24] *See generally McDowell v. State*, 785 P.2d 1, 1 (Alaska 1989) (holding that "the rural preference [in State statute] violates article VIII, sections 3, 15 and 17 of the Alaska Constitution").

[25] *Sturgeon*, 139 S. Ct. 1066.

*United States v. State of Alaska*                                        Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                              7

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 13 of 49

positions…. We will argue for the U.S. Supreme Court to leave Katie John in place — we know how important subsistence is to Alaska.[26]

The State's arguments carried the day: the Supreme Court gave the State <u>exactly</u> what it asked for—both adopting the State's reasoning regarding the extent of "public lands" for the purposes of ANILCA's non-subsistence provisions[27] and declining to upset *Katie John*.[28] Now, the State says the exact opposite, arguing that the Supreme Court's adoption of the position the State took in *Sturgeon* "effectively overruled"[29]—instead of "preserv[ed]"—"the subsistence rights established in Katie John."[30] The State is estopped from making that argument.

The doctrine of judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."[31] It is intended to stop the precise conduct the State is engaging in here—"'play[ing] fast and loose with the court' by adopting . . . contradictory positions."[32]

---

[26] Jahna Lindemuth, Subsistence and State management of Alaska Waterways Aren't Incompatible, Anchorage Daily News, Aug. 8, 2018, https://www.adn.com/opinions/2018/08/08/subsistence-and-state-management-of-alaska-waterways-arent-incompatible ("Lindemuth Op. Ed.") (emphasis added).

[27] *Sturgeon*, 139 S. Ct. at 1078-80.

[28] *Id*. at 1080 n.2.

[29] State Br. at 38 (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)).

[30] Lindemuth Op. Ed.

[31] *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal citations and quotations omitted).

[32] *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1134 (9th Cir. 2012) (cleaned up) (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The contradictory position need not be factual. Judicial estoppel "applies to a party's

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT          8

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 14 of 49

In evaluating whether a party should be estopped, courts look to three factors:

(1) Is the party's later position "clearly inconsistent with its earlier position?" (2) Did the party succeed in persuading a court to accept its earlier position, creating a perception that the first or second court was misled? and (3) Will the party seeking to assert an inconsistent position "derive an unfair advantage or impose an unfair detriment on the opposing party?"[33]

The answer to all three questions here is emphatically "yes."

<u>First</u>, the State's current position, which seeks to overturn *Katie John* and undermine the subsistence fishing rights of thousands of rural Alaskans, is entirely inconsistent with its earlier position in prior litigation. For example, broad swaths of the State's brief to the Supreme Court in *Sturgeon* read as direct refutations of the State's current arguments.[34] The State in *Sturgeon* starts by explaining that "the Question Presented concerns only Mr. Sturgeon's non-subsistence use of the Nation River, which *does not fall within or implicate Title VIII at all*,"[35] then launches into a point-by-point analysis of how—contrary to the State's argument today—the meaning of "public lands" for purposes of implementing Title VIII's subsistence priority is *different* than in the non-subsistence context "implicate[d]" by the *Sturgeon* cases:

---

stated position whether it is an expression of intention, a statement of fact, or a legal assertion." *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004).

[33] *Baughman*, 685 F.3d at 1133 (quoting *New Hampshire*, 532 U.S. at 750-51).

[34] *See* Brief of Amicus Curiae State of Alaska at 29-35, *Sturgeon v. Frost*, 139 S. Ct. 1066 (2019) (No. 17-949), 2018 WL 4063284 ("State Amicus Br.").

[35] *Id*. at 29 (emphasis added). It is plainly inconsistent to say both that the Question Presented in *Sturgeon* "does not . . . implicate Title VIII" (the State's position in 2018), and that in answering that same Question Presented, the Court "effectively overruled" the Ninth Circuit's Title VIII cases (the State's position in 2023).

*United States v. State of Alaska*    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT    9

Nor should the Katie John and Sturgeon decisions be tied together as the Ninth Circuit has done. Title VIII stands apart from the rest of ANILCA with its own findings, 16 U.S.C. § 3111, its own statement of policy, 16 U.S.C. § 3112, and—unlike any other part of the legislation—specific invocations of congressional authority under the Commerce Clause, the Property Clause, and Congress's "constitutional authority over Native affairs." 16 U.S.C. § 3111(4). Furthermore, while Congress began with the assumption and expectation that the State would enact and assume management authority over its subsistence regulations, as a backstop, Congress included language authorizing the federal government to step in if Alaska failed to act. 16 U.S.C. § 3115(d); *Katie John I*, 72 F.3d at 700 n.2. When the State found itself constitutionally unable to enforce state laws implementing the subsistence priority demanded by Congress because of the state constitutional guarantee of equal access to fish and game, *McDowell v. Alaska*, 785 P.2d 1, 5-9 (Alaska 1989), the federal government took over. *See Katie John I*, 72 F.3d at 701.

The Ninth Circuit decisions upholding this takeover of subsistence regulation were attempting to reconcile what were perceived as two conflicting statutory demands: the definition of public lands - which on its face does not include State navigable waters because Congress required a federal title interest - and the rural subsistence preference over fishing, which the court believed needed to include the navigable waters containing the fish in order to fulfill Congressional intent. *See, e.g., Katie John I,* 72 F.3d at 704 ("We recognize that our holding may be inherently unsatisfactory . . . . If we were to adopt the state's position, that public lands exclude navigable waters, we would give meaning to the term 'title' in the definition of the phrase 'public lands.' *But we would undermine congressional intent to protect and provide the opportunity for subsistence fishing* . . . . The issue raised by the parties cries out for a legislative, not a judicial, solution."). *Since the Katie John rationale was rooted in Congress's discrete intent that there be an enforceable subsistence priority, nothing in the decisions' rationale warrants expanding their definition of public lands outside the subsistence realm.* The Ninth Circuit identified a direct conflict within the statute between two commands - on the one hand, 16 U.S.C. § 3114's command that there exists an enforceable subsistence priority; and on the other, the statutory definition of "public lands," which would seem to vitiate that command (at least where Alaska is unable to effectuate the priority itself). By contrast, there is no conflict between the rest of ANILCA and the definition of "public lands." To the contrary,

*United States v. State of Alaska*  Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT  10

Case 1:22-cv-00054-SLG  Document 109  Filed 11/03/23  Page 16 of 49

reading "public lands" according to its plain meaning in non-subsistence contexts effectuates the statute's purposes.[36]

The State even added "prudential and policy reasons why [the] Court should preserve the *Katie John* precedents."[37] And at oral argument, counsel for the State expanded on its argument that "public land" may have different meanings for purposes of Title VIII than for other parts of ANILCA:

> [g]iving effect to Congress's intent in ANILCA does - may require preserving the rural subsistence priority in Title 8 of the legislation, even if it does require a different statutory definition.
>
> Now no party has challenged the current federal subsistence management -subsistence regulations. The briefing certainly reflects this is an issue of great concern to the people of Alaska and its rural residents. And the Court should not upset those settled expectations of Alaskans today.
>
> *A different definition in these titles does reflect Congress's very different intent in Title 8. Title 8 could have been its own statute. It has its own statement of purpose. It has its own -- it is the only place in this extensive law where Congress specifically exercised its commerce power.* And it has a federal takeover provision that says Congress was so concerned that there be an . . . enforceable subsistence priority that it gave explicitly the federal government the right to regulate that if the state could not, which is how it played out.
>
> So we don't think the Court needs to resolve this issue today, but *we do ask that the Court leave some space open for those to be differently interpreted in . . . accordance with Congress's intent.*
>
> . . .
>
> We've cited to the Court in our brief cases that do suggest, in these long complicated statutes, we do look to Congress's intent in the context of

---

[36] *Id*. at 30-31 (emphases added).

[37] *Id*. at 31-32.

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment                    11

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 17 of 49

the statute, and that can mean that *a term does have different meaning in different sections . . . when that is what Congress . . . intended*.[38]

Nor was the State's position before the Supreme Court new. It took the same position before the Ninth Circuit, where its conduct would, alone, be enough for judicial estoppel. There, a group of federally recognized Alaska Native tribes, intertribal organizations, and an individual Alaska Native moved to intervene, asserting an interest in the protection of federal jurisdiction over subsistence fishing in navigable waters in conservation system units.[39] The State opposed, explaining that "*Alaska is not seeking to overturn Katie John I or otherwise interfere with the regulatory infrastructure surrounding the rural subsistence fishing preference*."[40] The State was successful in preventing the proposed intervention.[41] Indeed, the State adhered to its former position for at least ten years.[42]

---

[38] Transcript of Oral Argument at 28-30, *Sturgeon v. Frost*, 139 S. Ct. 1066 (2019) (No. 17-949), https://www.supremecourt.gov/oral_arguments/argument_transcripts/2018/17-949_758b.pdf (emphasis added).

[39] Mentasta et al. Motion to Intervene at 2, *Sturgeon v. Frost*, 872 F.3d 927 (9th Cir. 2017) (No. 13-36165), ECF No. 89-1.

[40] State of Alaska's Opposition to Mentasta Traditional Council et al.'s Motion to Intervene at 2, *Sturgeon v. Frost*, 872 F.3d 927 (9th Cir. 2017) (No. 13-36165), ECF No. 101 (emphasis added) (footnote omitted).

[41] *Sturgeon v. Frost*, No. 13-36165 (9th Cir. Sept. 28, 2016), ECF No. 102 (order denying motion to intervene).

[42] The State's former position dates back at least to the first round of *Sturgeon* litigation. *See* State of Alaska's Summary Judgment Reply at 17-19, *Sturgeon v. Masica*, No. 3:11-cv-00183-HRH (D. Alaska Oct. 30, 2013), ECF No. 98; Oral Argument at 21:55-24:15, *Sturgeon v. Frost*, 872 F.3d 927 (9th Cir. 2017) (No. 13-36165), https://www.ca9.uscourts.gov/media/audio/?20161025/13-36165/ (Attachment B); State Amicus Br. at 14.

*United States v. State of Alaska*                    Case No. 1:22-cv-00054-SLG
KRITFC's REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT          12

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 18 of 49

The *Sturgeon* question of defining "public land" for purposes of ANILCA's non-subsistence provisions either "implicate[s]" Title VIII, or it does not. The State argued for some ten years across two trips to the United States Supreme Court that it did not. It argues *now* that it does. The State cannot have it both ways.

Second, the State "succeed[ed] in persuading a court to accept its earlier position" and thereby gained the benefits of its earlier position.[43] Not only was it successful in opposing intervention by interested Alaska Native entities and individuals in the Ninth Circuit, but it got exactly what it asked for from the Supreme Court—a holding that navigable waters are not "public land" for purposes of non-subsistence regulation under ANILCA and an explicit statement that the Court's decision did not disturb the *Katie John* cases.[44] The Court even cited *the State's briefing* in reaching that conclusion.[45] Under *Baughman*'s second prong, the State's earlier position (if now accepted) would have deeply "misled" the Supreme Court and the Ninth Circuit in the *Sturgeon* cases. The State now says that, in effect, it was wrong when it successfully argued that a victory in *Sturgeon* would leave intact federally protected subsistence fishing rights.

Without the State's assertion that the question presented in *Sturgeon* did not implicate Title VIII, *Sturgeon* would have been a much harder case for the courts that addressed it. The final result may very well have been different. As the State itself

---

[43] *Baughman*, 685 F.3d at 1133.

[44] *Sturgeon*, 139 S. Ct. at 1079-80 & 1080 n.2.

[45] *Id*. at 1080 n.2.

*United States v. State of Alaska*                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT          13

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 19 of 49

explained in its earlier briefing, the Court would have had to wrestle with three decades of hard-fought litigation on the precise question at issue—"congressional intent to protect and provide the opportunity for subsistence fishing"[46]—and the "prudential and policy" arguments undergirding the continuing vitality of the *Katie John* cases.[47]   The Court would also have had to address the question of whether to upset the settled expectations of both Congress[48] and the rural Alaska Native communities that "have depended on th[e] subsistence priority to effectuate" "the important values embodied by subsistence" and "preserve their way of life."[49]  Accepting the State's position that the meaning of the term "public land" in Title I (non-subsistence) did not implicate Title VIII (subsistence) allowed the *Sturgeon* Court to give the State what it asked for without struggling with the implications for Title VIII subsistence fishing rights.

Third, and finally, allowing the State to go forward in its about-face on rural subsistence fishing rights would impose massive, unfair, and detrimental impacts on all of the opposing parties in this case.  In addition to the direct impacts on the United States, if the State is successful here the federally recognized Alaska Native Tribes, tribal organizations, and Alaska Native individuals represented by the various Intervenors will lose any meaningful benefit from the rural subsistence fishing priority Congress promised in ANILCA.  The Fish Commission would also lose any federal authority for co-

[46] *Katie John I*, 72 F.3d at 704.

[47] State Amicus Br. at 31-32.

[48] *See* discussion *infra* Section II.B.

[49] State Amicus Br. at 31-32.

*United States v. State of Alaska*                                                              Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                    14

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 20 of 49

stewardship of the fisheries and other benefits of federal management pursuant to Title VIII of ANILCA.  During the *Sturgeon* litigation, the Alaska Attorney General promised that "[the State] is actively working in partnership with the Alaska Federation of Natives, Alaska Native corporations and tribes to preserve the rights that Katie John fought so hard for more than two decades ago," and the State at least appeared to do so throughout that litigation.[50]  It is manifestly unfair for the State to take the fruits of that partnership and use them to destroy Katie John's and other Alaska Natives' subsistence fishing rights.

The Court should not entertain the State's new arguments and should find them barred by judicial estoppel.

### B. Issue and Claim Preclusion Bar the State from Relitigating Issues it Lost or Could Have Raised in *Katie John*.

The State's arguments are also barred for an entirely independent reason: In the *Katie John* litigation, the State has already litigated and lost the "public lands" issue it is raising anew here.  Under the most basic principles of issue preclusion, the State may not relitigate that issue.  The State also could have raised its constitutional challenges to the FSB in that same litigation, which broadly challenged the Secretary's Title VIII regulations.[51]  Having chosen not to do so, claim preclusion bars the State from another bite at the apple.

---

[50] Lindemuth Op. Ed.

[51] Identical regulations implementing Title VIII are promulgated by the Secretary of the Interior, at 50 C.F.R. pt. 100, and by the Secretary of Agriculture, at 36 C.F.R. pt. 242.

*United States v. State of Alaska*                                     Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment                15

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 21 of 49

*Katie John III* addressed the 1999 Final Rule promulgated by the Secretary to "identify which navigable waters within Alaska constitute 'public lands' under Title VIII of ANILCA, which provides a priority to rural Alaska residents for subsistence hunting and fishing on such lands."[52] The 1999 Rule "amend[ed] the scope and applicability of the Federal Subsistence Management Program in Alaska to include subsistence activities occurring on inland navigable waters in which the United States has a reserved water right."[53] It did so by defining "public lands" in Title VIII to include "lands and waters and interests therein the title to which is in the United States, including navigable and non-navigable waters in which the United States has reserved water rights."[54] This regulation represented a codification of the Ninth Circuit's decision in *Katie John I* (which had been affirmed by the en banc court in *Katie John II*), and it is the same definition that continues to apply today.[55] The State challenged this definition in *Katie John III*, arguing "that the 1999 Rules sweep too broadly, in that they include as 'public

---

For simplicity, and because the waters at issue here are managed by the Secretary of the Interior, this brief refers to the Secretary of the Interior and the Interior regulations.

[52] *Katie John III*, 720 F.3d at 1218.

[53] Subsistence Management Regulations for Public Lands in Alaska, 64 Fed. Reg. 1276, 1276 (Jan. 8, 1999); *see Katie John III*, 720 F.3d at 1222.

[54] 64 Fed. Reg. at 1287. Under ANILCA, "public lands" are defined as most "federal lands," which in turn are defined as "lands, waters, and interests therein" the "title to which is in the United States." 16 U.S.C. § 3102(1)-(3). *Katie John I* concluded that the reserved water right associated with waters appurtenant to a federal reservation constitutes an interest sufficient to bring the waters within this definition. *Katie John I*, 72 F.3d at 703-04.

[55] 50 C.F.R. § 100.4; *see* State Br. at 34-35.

*United States v. State of Alaska*                                        Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                    16

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 22 of 49

lands' . . . waters in which no federal interest exists."[56]  Even then, the State's suit was an attempt to re-hash the *Katie John I* and *II* decisions.  The court rejected the State's argument, noting that *Katie John I*–where Alaska was also a party plaintiff—had already determined that "the definition of public lands includes those navigable waters in which the United States has an interest by virtue of the reserved water rights doctrine,"[57] and that *Katie John I* "remains controlling law."[58]

The State now attempts to relitigate the same issue here, arguing that "the Kuskokwim River is not 'public land' because the United States has no 'title' over 'lands, waters, [or] interests' in the river."[59]  At the very least, therefore, issue preclusion bars the State from raising that issue here.  Under issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit . . . involving a party to the prior litigation" regardless of whether the later suit involves the same cause of action.[60]  This is based on the fundamental principle that "a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies.'"[61]  The State seems to suggest that it may relitigate this issue

---

[56] *Katie John III*, 720 F.3d at 1218.

[57] *Katie John I*, 72 F.3d at 703-04.

[58] *Katie John III*, 720 F.3d at 1226 (citing *Katie John I*, 72 F.3d 698).

[59] State Br. at 35 (alteration in original).

[60] *United States v. Mendoza*, 464 U.S. 154, 158 (1984).

[61] *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *S. Pacific. R. Co. v. United States*, 168 U.S. 1, 48–49 (1897)).

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment                    17

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 23 of 49

because *Sturgeon v. Frost* constitutes an intervening change in the law. But as discussed below,[62] the *Sturgeon* decision *expressly* declined to disturb the *Katie John* trilogy[63]—and thus it cannot credibly be read as altering the decisions in the *Katie John* cases. Issue preclusion applies.[64]

Moreover, it is not just the same issue that is presented in this litigation; the same *claims* are presented too, giving rise to claim preclusion. Claim preclusion bars a party from relitigating a claim where an earlier suit "(1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies."[65] In determining whether "two suits involve the same claim," courts look at four criteria:

> (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.[66]

---

[62] *See* discussion *infra* Section II.A.

[63] *Sturgeon*, 139 S. Ct. at 1080 n.2.

[64] And issue preclusion (sometimes called collateral estoppel) may run against a government "when the parties to the two lawsuits are the same." *Mendoza*, 464 U.S. at 163 (1984) (citing *United States v. Stauffer Chemical Co.*, 464 U.S. 165 (1983)). Alaska and the United States were parties in all three *Katie John* cases.

[65] *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (citation omitted). Claim preclusion (sometimes called res judicata) can also run against a government. *Mendoza*, 464 U.S. at 163 ("The doctrine of res judicata, of course, prevents the government from relitigating the same cause of action against the parties to a prior decision.").

[66] *Mpoyo*, 430 F.3d at 987.

*United States v. State of Alaska*                      Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment        18

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 24 of 49

These criteria are not applied "mechanistically."[67]

Here, where the federal government's claims are the mirror image of the claims brought by the State in the *Katie John* litigation, they are the same claims under these criteria.[68] First, the core facts are the same in both sets of litigation: both address subsistence salmon fishing by rural users in navigable waters that run through federally reserved lands. In the *Katie John* cases, the State challenged federal authority to manage such subsistence fishing; here, the federal government challenges the State's failure to recognize that same authority. Second, it is self-evident that the "rights or interests" established in *Katie John* would be destroyed by a ruling for the State in this action—the State is specifically asking the court to discard the entire *Katie John* line of cases. And third, both suits involve the State's infringement of the federal government's authority to manage—and rural subsistence users' right to access—subsistence fisheries in navigable waters. (The fourth criterion is inapplicable here because this dispute centers on a legal issue rather than factual issues.) Taken together, these criteria demonstrate the requisite identity of claims in the *Katie John* litigation and this case.[69] The other two elements

---

[67] *Id.*

[68] *See Katie John I*, 72 F.3d at 704 (rejecting the State's claim that "that public lands exclude navigable waters" and holding instead "that public lands include some specific navigable waters as a result of reserved water rights"); *Katie John II*, 247 F.3d at 1033 (following entry of judgment by the district court on remand, addressing the same issues and declining to disturb *Katie John I*); *Katie John III*, 720 F.3d 1214 (rejecting the State's claim that by defining "public lands" to include navigable waters subject to reserved water rights, the 1999 regulations "swe[pt] too broadly").

[69] It makes no difference that the State is attempting to challenge federal authority as a defense rather than an affirmative claim (perhaps having dropped its counterclaims for

*United States v. State of Alaska*                         Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment        19

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 25 of 49

necessary for claim preclusion—final judgment on the merits and the presence of the same parties—are plainly satisfied.[70]

Claim preclusion not only bars a party from relitigating issues that have actually been adjudicated; it also "prevents parties from raising issues that *could have been* raised and decided in a prior action—even if they were not actually litigated."[71] So claim preclusion not only bars the State from raising the "public lands" issue, but also bars its arguments challenging the existence and function of the FSB. The regulations challenged by the State in *Katie John III* expressly spelled out the structure and role of the FSB, including specifying its voting members, "assign[ing] them responsibility for[] administering the subsistence taking and uses of fish and wildlife on public lands, and the related promulgation and signature authority for regulations," and enumerating the FSB's

---

this very reason, in an attempt to avoid preclusion). "Defense preclusion" may apply so long as the conditions "satisfy the strictures of issue preclusion or claim preclusion," as they do here. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020) (citation omitted); *see also In re Greenberg*, 626 B.R. 554, 561-65 (S.D. Cal. 2021), *reconsideration denied*, No. 20-CV-00506-GPC-MDD, 2021 WL 1515575 (S.D. Cal. Apr. 16, 2021), *and appeal dismissed*, No. 21-55184, 2021 WL 3876949 (9th Cir. Aug. 12, 2021) (applying this rule to preclude a defense).

[70] *Katie John I*, 72 F.3d 698; *Katie John II*, 247 F.3d 1032; *Katie John III*, 720 F.3d 1214 (all involving the State of Alaska as a party adverse to the United States).

[71] *Lucky Brand Dungarees*, 140 S. Ct. at 1594 (emphasis added); *see also id.* ("[T]he earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979); and citing Wright & Miller § 4407)).

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC's REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT          20

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 26 of 49

other powers.[72]  Indeed, the introduction to the 1999 Final Rule expressly noted the FSB's role in implementing Title VIII in navigable waters, explaining that the Rule "provide[d] the Federal Subsistence Board with clear authority to administer the subsistence priority in [the] waters" identified in the Rule.[73]  If the State believed there were legal flaws in the structure of the FSB, *Katie John III* was its opportunity to raise them.  Because the State directly challenged the regulations that established the FSB but elected not to challenge its existence or structure, claim preclusion bars the State from doing so now.

### C.    The Six-Year Statute of Limitations Also Bars the State's Challenges to Federal Authority.

Even if the State had not actually litigated these issues already, the 6-year statute of limitations on claims against the federal government[74] bars the State from bringing these challenges now, both as to federal authority over navigable waters and as to the FSB's structure and authority.

The State's attempt to reverse the *Katie John* decisions and challenge the creation of the FSB amounts to a facial attack on the 1999 Final Rule, which both spelled out the structure and role of the FSB and gave it authority to oversee subsistence fishing in

---

[72] 64 Fed. Reg. at 1289.  The only significant change to the Board in the intervening years was the addition of two "public" members.  Subsistence Management Regulations for Public Lands in Alaska, 76 Fed. Reg. 56,109, 56,114 (Sept. 12, 2011); *see* U.S. Reply Br. at 5.

[73] 64 Fed. Reg. at 1276

[74] 28 U.S.C. § 2401(a).

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT            21

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 27 of 49

navigable waters subject to a reserved water right.[75]  Although courts will sometimes find that the statute of limitations has not begun to run until a regulation is applied to a particular party,[76] that is not the case here.  The 1999 Final Rule—and all regulations implementing Title VIII, going back to the initial 1992 regulations—apply *only* in Alaska.[77]  And since the 1999 Rule went into effect on October 1, 1999,[78] at the very latest the 6-year statute of limitations began to run then and expired September 30, 2005.  Indeed, Alaska's own conduct in *Katie John III* of specifically challenging these regulations by filing suit on January 6, 2005, indicates that the State knew the regulations were being applied to Alaska, and time was running out.[79]  This is not a case of an unwitting party suddenly finding itself subjected to regulations it knew nothing about.[80]

---

[75] 64 Fed. Reg. at 1279, 1289; 50 C.F.R. § 100.10.

[76] *E.g.*, *Wind River Min. Corp. v. United States*, 946 F.2d 710, 716 (9th Cir. 1991) (challenge to agency action "may be brought within six years of the agency's application of that decision to the specific challenger").  *But see N. Dakota Retail Ass'n v. Bd. of Governors of the Fed. Rsrv. Sys.*, 55 F.4th 634, 641 (8th Cir. 2022) ("[W]hen plaintiffs bring a facial challenge to a final agency action, the right of action accrues, and the limitations period begins to run, upon publication of the regulation."), *cert. granted sub nom. Corner Post, Inc. v. Bd. of Governors*, FRS, No. 22-1008, 2023 WL 6319653 (Sept. 29, 2023).

[77] This fact is evident from the very first line of the 1999 Final Rule, which explains: "This rule amends the scope and applicability of the Federal Subsistence Management Program *in Alaska* to include subsistence activities occurring on inland navigable waters in which the United States has a reserved water right and to identify specific Federal land units where reserved water rights exist."  64 Fed. Reg. at 1276 (emphasis added).

[78] *Id.*

[79] *See John v. United States*, No. 3:05-CV-0006-HRH, 2007 WL 9637058, at *1 (D. Alaska May 17, 2007), *aff'd*, 720 F.3d 1214 (9th Cir. 2013) ("The proceedings which give rise to this decision were commenced January 6, 2005, in the United States District Court for the District of Columbia by the State of Alaska.  By its complaint for

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT          22

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 28 of 49

The State can be expected to argue that statutes of limitations typically apply to claims, not defenses—indeed, this may be why the State dropped its time-barred counterclaims. But the Ninth Circuit does not permit this type of procedural maneuvering; a party "cannot engage in a subterfuge to characterize a claim as a defense in order to avoid a temporal bar."[81]

In *City of St. Paul*, a case that similarly involved both claims and counterclaims, the Ninth Circuit held that the original plaintiff, whose claims were time-barred, could not raise those same claims as defenses.[82] The court placed "emphasis on the respective roles of the parties in the litigation as a whole," and explained that "whether affirmative defenses are exempt from statutes of limitations largely hinges on a realistic assessment

declaratory and injunctive relief, the State challenged the process by which the Secretaries of the Departments of Agriculture and the Interior undertook to identify federally reserved waters within navigable waters of the State of Alaska." (citing *Alaska v. Norton*, No. 05-cv-0012-RMC (D.D.C.))).

[80] Even cases allowing as-applied challenges more than six years after publication of a regulation, such as *Wind River*, confirm that if a party "wishes to bring a policy-based facial challenge to the government's decision, that . . . must be brought within six years of the decision," i.e., within six years after a regulation was promulgated. 946 F.2d at 715. Here, the State's challenge amounts to a facial attack on the Board and its authority as set out in the 1999 Final Rule. *See, e.g.*, State of Alaska's Answer to United States of America's Complaint for Declaratory and Injunctive Relief, ECF No. 33, at 14 ("The Federal Subsistence Board violates the Appointments Clause of the United States Constitution and therefore its regulations are invalid and cannot preempt state law.").

[81] *City of Saint Paul v. Evans*, 344 F.3d 1029, 1035 (9th Cir. 2003).

[82] *Id.*

*United States v. State of Alaska*                           Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT           23

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 29 of 49

of the parties' litigation posture."[83]  In reaching this conclusion, the court looked to authority from other circuits, including a Second Circuit decision which found that the party seeking to use a defense was the "aggressor," where the other party had "done nothing concrete to change the basic relations between the parties as they ha[d] existed for over ten years."[84]  The court applied that same principle to bar the City of St. Paul's assertion of defenses that it had previously raised as affirmative claims: "No matter what gloss the City puts on its defenses, they are simply time-barred claims masquerading as defenses and are likewise subject to the statute of limitations bar."[85]

The same is true of the State's affirmative defenses here.  Although the United States here is the plaintiff, a "realistic assessment" of the litigation reveals that the State was the initial actor that sought to "change the basic relations between the parties as they ha[d] existed" since the promulgation of the 1999 regulations.[86]  It had been established since the 1999 regulations—or, at the very latest, since the conclusion of *Katie John III* in 2013—that the federal government has authority to implement ANILCA Title VIII's rural subsistence priority in navigable waters subject to the reserved water right.  During the 2021 and 2022 fishing seasons, the State simply refused to accept this legal reality

---

[83] *Id.*  As relevant to that particular case, the court noted, that "[i]t is important that the party asserting the defense is not, simultaneously or in parallel litigation, seeking affirmative recovery on an identical claim."  *Id.*

[84] *Id.* (quoting *118 East 60th Owners, Inc. v. Bonner Props., Inc.*, 677 F.2d 200, 204 (2d Cir. 1982)).

[85] *Id.* at 1035-36.

[86] *See id.* at 1035 (quoting *118 East 60th Owners*, 677 F.2d at 204).

and instead engaged in self-help, forcing the federal government to sue to enforce the rule of law. Under *City of St. Paul*, the State may not seek to resurrect barred claims by couching them as defenses. Whether styled as claims or defenses, the statute of limitations bars the State's arguments challenging both the regulatory definition of "public lands" and the structure and role of the FSB.

## II. EVEN IF THEY WERE NOT BARRED, THE STATE'S CLAIMS FAIL.

### A. The *Katie John* Decisions Remain Good Law and Control Here.

At the core of this case is a legal reality that the State refuses to accept: the *Katie John* cases, which are binding on the district courts, remain good law.

In *Sturgeon*, the Supreme Court expressly chose not to disturb the *Katie John* decisions:

> As noted earlier, the Ninth Circuit has held in three cases—the so-called *Katie John* trilogy—that the term "public lands," when used in ANILCA's subsistence-fishing provisions, encompasses navigable waters like the Nation River. *See Alaska v. Babbitt*, 72 F.3d 698 (1995); *John v. United States*, 247 F.3d 1032 (2001) (en banc); *John v. United States*, 720 F.3d 1214 (2013); *supra*, at 1078. Those provisions are not at issue in this case, and we therefore do not disturb the Ninth Circuit's holdings that the Park Service may regulate subsistence fishing on navigable waters. *See* generally Brief for State of Alaska as *Amicus Curiae* 29–35 (arguing that this case does not implicate those decisions); Brief for Ahtna, Inc., as *Amicus Curiae* 30–36 (same).[87]

The State cites *Miller v. Gammie*[88] for the proposition that circuit precedent can be "effectively overruled" by a Supreme Court decision "even though those decisions do not

---

[87] 139 S. Ct. at 1080 n.2.

[88] 335 F.3d 889, 889 (9th Cir. 2003).

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 31 of 49

expressly overrule the prior circuit precedent."[89]   But *Sturgeon* did the opposite: it expressly left *Katie John* undisturbed.   *Miller v. Gammie* provides no support for the notion that a Supreme Court case should be interpreted as overruling circuit precedent that it expressly declined to disturb.

The Supreme Court's decision that the *Katie John* cases may coexist with *Sturgeon* suffices to resolve this case.   The *Katie John* decisions remain good law, and this Court is bound to follow them.[90]

But even if the Supreme Court had been silent on this issue, the State is wrong that *Sturgeon*'s reasoning is inconsistent with the *Katie John* precedent.   The general definition of "public lands" adopted in *Sturgeon* for Title I does not automatically apply to Title VIII—indeed, there is *overwhelming* evidence that the term carries a broader meaning in Title VIII—and that Congress intended Title VIII to protect continued subsistence fishing across Alaska.   As the State correctly argued before the Supreme Court, "in the unique context of Title VIII, in fact, the 'natural presumption that identical words used in different parts of the same act are intended to have the same meaning' is not controlling."[91]   Rather, "the presumption of consistent usage readily yields to context,

---

[89] State Br. at 38.

[90] *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority.").

[91] State Amicus Br. at 33-34 (quoting *Env't Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007)).

*United States v. State of Alaska*                                               Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment                            26

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 32 of 49

and a statutory term—even one defined in the statute—may take on distinct characters from association with distinct statutory objects calling for different implementation strategies."[92] This principle flows from the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."[93] Thus, "[i]f interpreting a term consistently with its statutory definition would, for instance, lead to 'obvious incongruities' or would 'destroy one of the major congressional purposes,' the statutory definition may yield to context."[94]

That is precisely the case when it comes to Title VIII, in which both the language and purpose present uniquely compelling reasons to give "public lands" a broader interpretation encompassing navigable waters. As the State argued to the Supreme Court in *Sturgeon*, "[t]he context of Title VIII and the remainder of ANILCA differ in material and significant ways. Unlike the bulk of the statute, Title VIII explicitly calls upon separate Congressional policies and findings of purpose."[95] Moreover, Title VIII also expressly "draws on the authority of the Property Clause, the Commerce Clause, and Congress's special powers over Native American affairs—constitutional sources of law

---

[92] *Id.* (quoting *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 320 (2014)).

[93] *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (quoting *Nat'l Assn. of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007)).

[94] *United States v. Olson*, 856 F.3d 1216, 1223 (9th Cir. 2017) (alteration omitted) (quoting *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949); and citing *Util. Air Regul. Grp.*, 573 U.S. at 319–20).

[95] State Amicus Br. at 34 (citing 16 U.S.C. §§ 3111, 3112).

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT          27

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 33 of 49

that are conspicuously absent from the remainder of the statute."[96]   Finally—still reviewing just the State's own arguments—"Title VIII explicitly contemplates federal regulation if necessary to ensure that rural Alaska residents can engage in traditional and customary subsistence fishing activities."[97]

In addition to these textual indications, the State also articulated powerful policy reasons why—consistent with the purpose of Title VIII—the statute must be interpreted to permit federal authority over navigable waters for purposes of subsistence fishing.  In the State's own words:

> Congress mandated the subsistence priority to protect the important values embodied by subsistence, 16 U.S.C. § 3111, and in the nearly twenty years since the federal government assumed management of subsistence activities on federal lands in Alaska, rural Alaskans have depended on this subsistence priority to effectuate those values and preserve their way of life.[98]

The State pointed to the Congressional findings emphasizing that subsistence hunting and fishing are "essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence," and that subsistence "food supplies and other items gathered from fish and wildlife" are irreplaceable for many rural Alaskans.[99]   As the State accurately noted, "Congress's observations remain

---

[96] *Id.* (citing 16 U.S.C. § 3111(4)).

[97] *Id.* (citing 16 U.S.C. § 3115(d)).

[98] *Id.* at 31-32.

[99] *Id.* at 32 (quoting 16 U.S.C. § 3111(1)-(2)).

*United States v. State of Alaska*                                          Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                            28

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 34 of 49

true today."[100]  It described the enormous quantity of wild foods harvested by Alaskans each year, as well as the lack of access to packaged and processed foods in rural Alaska.[101]  The State even underscored that "to many Alaska Natives, subsistence is not a recreational or purely practical activity, but rather a way of life, the lifeblood of cultural, spiritual, economic, and physical well-being."[102]  Indeed, these were the very reasons for the enactment of Title VIII.

The State's representations to the Court were indisputably correct.  Title VIII's dominant purpose was the "continuation of the opportunity for a subsistence way of life by residents of rural Alaska."[103]  Subsistence fishing—an integral and central part of the subsistence way of life—had occurred in Alaska's navigable waters for millennia,[104] and

---

[100] *Id.*

[101] *Id.*

[102] *Id.*  The State went on:

> Subsistence activities under ANILCA are also crucial to Alaskans living in remote, undeveloped settings where residents rely on customary and traditional harvest of wild and natural foods because access to packaged and other processed and non-local foodstuffs may not be available at a reasonable price—or any price. Limited or nonexistent job opportunities to earn cash wages in rural Alaska, the high costs of living in remote areas, and the seasonal nature of rural Alaskan life further enhance the importance of subsistence to rural residents.

*Id.*

[103]  16 U.S.C. § 3111(5).

[104] "Long before the white man came to Alaska, the annual migrations of salmon from the sea into Alaska's rivers to spawn served as a food supply for the natives." *Metlakatla Indian Cmty. v. Egan*, 369 U.S. 45, 46 (1962).  "Most subsistence fishing (and most of the best fishing) is in the large navigable waterways rather than in the smaller non-

*United States v. State of Alaska*                                  Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT          29

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 35 of 49

ANCSA's extinguishment of aboriginal fishing and hunting rights compelled Congress in Title VIII to act to protect the *continuation* of that way of life.[105]  Congress was crystal clear in ANILCA that "the purpose of [Title VIII] is to provide the opportunity for rural residents engaged in a subsistence way of life to do so," and was specific that "nonwasteful subsistence uses of *fish and* wildlife and other renewable resources shall be the priority consumptive uses of all such resources on the public lands of Alaska."[106]  The Congressional findings, too, emphasize the importance of "food supplies and other items gathered from fish and wildlife," specifically mentioning fish five times in five paragraphs.[107]

Where Congress has articulated such a clear purpose for a statute, key terms are not to be interpreted in a way that would "destroy one of the major congressional purposes"—indeed when it comes to Title VIII, in a way that would destroy Congress's *primary* purpose of continuing subsistence hunting and fishing.[108]  As this Circuit has noted in connection with Title VIII, "[i]f [Alaska Natives'] right to fish is destroyed, so

---

navigable tributaries upstream and lakes where fisherman [sic] have access to less fish." *Native Village of Quinhagak v. United States*, 35 F.3d 388, 393 (9th Cir. 1994).

[105] Congress refers to its actions as protecting the "continuation" of the subsistence way of life, "continued" subsistence activities, and the need to "continue" the subsistence way of life numerous times in Title VIII.

[106] 16 U.S.C § 3112(1)-(2) (emphasis added).

[107] 16 U.S.C. § 3111(2); *see generally* 16 U.S.C. § 3111.

[108] *See Olson*, 856 F.3d at 1223 (9th Cir. 2017) (alteration omitted) (quoting *Lawson*, 336 U.S. at 201 (1949); and citing *Util. Air Regul. Grp.*, 573 U.S. at 319-20).  Indeed, "[i]f [Alaska Natives'] right to fish is destroyed, so too is their traditional way of life."

*United States v. State of Alaska*                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                    30

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 36 of 49

too is their traditional way of life."[109]  Under these circumstances, a "statutory definition

may yield to context."[110]  In fact, both the text and the purpose point in the same

direction: the term "public lands" (including "lands, waters, and interests therein") is

capacious enough to encompass navigable waters, and all the relevant textual indications

indicate that Title VIII *must* be interpreted to include the rivers carrying the salmon runs

that are the lifeblood of Alaska Native communities across the State.  The interpretation

now urged by the State would produce the absurd result of eviscerating Title VIII's

protections for subsistence fishing in a statute that mentions fish (or variations of the

word) 49 times in Title VIII alone.[111]  The State's construction would also render

meaningless the term "waters, and interests therein" in the definition of "public lands" as

applied to Title VIII.[112]  In short, the idea that Title VIII does not protect subsistence

fishing does violence to both the text and the stated purpose of the statute.

Contrary to the State's interpretation of *Sturgeon*, the Supreme Court's analysis of

the reserved water rights doctrine leaves room for a different reading of Title VIII.

*Sturgeon* acknowledged that some cases have indicated "a person can hold 'title' to . . .

---

[109] *United States v. Alexander*, 938 F.2d 942, 945 (9th Cir. 1991).

[110] *Olson*, 856 F.3d at 1223.

[111] *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013) ("Statutory interpretations which would produce absurd results are to be avoided." (alteration omitted) (quoting *Ariz. St. Bd. for Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006))).

[112] *See* 16 U.S.C. § 3102(1).

*United States v. State of Alaska*                           Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment          31

Case 1:22-cv-00054-SLG  Document 109  Filed 11/03/23  Page 37 of 49

usufructuary interests" such as a reserved water right,[113] even though "the more common understanding" was that "reserved water rights are not the type of property interests to which title can be held."[114] The Court therefore asked whether there was "evidence that the Congress enacting ANILCA meant to use the term in any less customary and more capacious sense."[115] Although the Court found no such evidence with respect to ANILCA generally,[116] Title VIII presents a different story: there is overwhelming evidence that Congress intended a broader meaning with the specific goal of protecting the continuation of subsistence fishing.

To the extent the Supreme Court suggested that the powers flowing from reserved water rights must be linked to the purpose of the reservation, that is no obstacle here: section 303(7) of ANILCA, which established the Yukon Delta National Wildlife Refuge, specifies that "[t]he purposes for which the Yukon Delta National Wildlife Refuge is established and shall be managed include . . . to provide . . . the opportunity for continued subsistence uses by local residents," as well as "to conserve *fish* and wildlife populations and habitats in their natural diversity," including a non-exhaustive list of fish

---

[113] 139 S. Ct. at 1079 (citing *Niagara Mohawk Power Corp.*, 347 U.S. 239, 246 (1954); *Crum v. Mt. Shasta Power Corp.*, 220 Cal. 295, 307, 30 P.2d 30, 36 (1934); *Radcliff's Ex'rs v. Mayor of Brooklyn*, 4 N.Y. 195, 196 (1850)).

[114] *Id.* (quoting *Totemoff v. State*, 905 P.2d 954, 965 (Alaska 1995)). The Court did not assess the extent to which the Federal government's navigational servitude is an additional "interest" in navigable waters. *Cf. Katie John II*, 247 F.3d at 1039-40 (Tallman, J., concurring).

[115] *Sturgeon*, 139 S. Ct. at 1079.

[116] *Id.*

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment          32

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 38 of 49

and wildlife that specifically includes salmon.[117]  Thus, the purpose of the reservation squarely encompasses management and protection of subsistence salmon fishing, and the associated reserved water rights include such authority.

Finally, Congress invoked multiple sources of constitutional authority in enacting Title VIII.[118]  Each of those sources of power—the Property Clause, the Commerce Clause, and Congress' plenary authority over Native affairs—is independently sufficient to establish federal authority over subsistence fishing in navigable waters.  And by invoking these sources of power, Congress indicated that it was exercising these powers to accomplish the purposes set out in Title VIII.  The Fish Commission adopts Plaintiff's and the other Intervenor-Plaintiffs' arguments regarding Congress's use of those sources of authority,[119] including its broad authority over navigable waters.[120]  Whatever the source, Congress's unmistakable intent was to protect subsistence fishing, and Title VIII cannot be read otherwise.

---

[117] ANILCA, Pub. L. No. 96-487, § 303(7)(B)(i), (iii), 94 Stat. 2371, 2392-93 (1980) (emphasis added).

[118] 16 U.S.C. § 3111(4) ("[I]t is necessary for the Congress to invoke its constitutional authority over Native affairs and its constitutional authority under the property clause and the commerce clause to protect and provide the opportunity for continued subsistence uses on the public lands by Native and non–Native rural residents.").

[119] U.S. Reply Br. at 29 n.18; AVCP Reply Br., Argument §§ II-III; Ahtna Reply Br., Argument § II; AFN Reply Br., Argument § III.

[120] *See Katie John II*, 247 F.3d at 1034 (Tallman, J., concurring) ("We believe that Congress invoked its powers under the Commerce Clause to extend federal protection of traditional subsistence fishing to all navigable waters within the State of Alaska, not just to waters in which the United States has a reserved water right.").

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                33

Case 1:22-cv-00054-SLG  Document 109  Filed 11/03/23  Page 39 of 49

**B.      Congress Ratified the Secretaries' Interpretation of Title VIII.**

Moreover, Congress has specifically looked at these issues—even citing the *Katie John* litigation by name—and ratified both the Secretary's interpretation of "public lands" and her creation of the Federal Subsistence Board by regulation.  In both 1997 and 1998, Congress passed contingent amendments to ANILCA in which it affirmatively chose to leave the federal regulatory scheme in place *unless* the State could enact laws implementing the rural subsistence priority.  The State failed to do so.  This is conclusive that the Secretary's 1999 Final Rule was a lawful exercise of the powers Congress delegated to the Secretary under Title VIII.

When ANILCA was originally enacted, Congress envisioned that the State of Alaska would manage subsistence hunting and fishing on public lands and implement ANILCA's rural subsistence priority.  But Congress included a Plan B: if the State did not implement the rural subsistence priority, the federal government would step in.  And so, after the Alaska Supreme Court found the rural preference unconstitutional under state law,[121] and the Alaska Legislature then failed to approve a corrective constitutional amendment for presentation to Alaska's citizens,[122] the federal government promulgated regulations governing subsistence hunting and fishing on public lands.[123]  Among other things, those regulations established the FSB and delegated to it "responsibility for[]

---

[121] *McDowell v. State*, 785 P.2d 1 (Alaska 1989).

[122] *See infra* at 36, 37-38.

[123] Subsistence Management Regulations for Public Lands in Alaska, Subparts A, B, and C, 57 Fed. Reg. 22940-01 (May 29, 1992).

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                  34

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 40 of 49

administering the subsistence taking and uses of fish and wildlife on public lands, and the related promulgation . . . [of] regulations."[124]  And although the initial regulations generally excluded navigable waters, in *Katie John I* the Ninth Circuit concluded that "public lands" includes navigable waters in which the United States holds a reserved water right.[125]

Congress was aware of this history when, in 1997, it enacted contingent amendments to ANILCA.[126]  In its findings, Congress carefully explained that although the State of Alaska had initially implemented a law "providing subsistence use opportunities for rural residents of Alaska," that "law was challenged in Alaska courts, and the rural preference requirement in the law was found in 1989 by the Alaska Supreme Court in *McDowell v. State of Alaska* . . . to violate the Alaska Constitution."[127]  Therefore, Congress further explained, "in accordance with title VIII of [ANILCA], the Secretary of the Interior is required to manage fish and wildlife for subsistence uses on all public lands in Alaska because of the failure of State law to provide a rural preference."[128]  Congress then directly addressed the *Katie John* litigation, noting:

---

[124] *Id.* subpt. B § __.10(a) (sic); *see* 50 C.F.R. § 100.10.

[125] 72 F.3d at 703-04.  The Secretary subsequently promulgated regulations specifying the sections of river in which it held reserved water rights, and thus exercised Title VIII authority.  *See* 50 C.F.R. § 100.3.

[126] Department of the Interior and Related Agencies Appropriations Act, 1998, Pub. L. No. 105–83, § 316(b), 111 Stat 1543, 1592-95 (1997) (Attachment C).

[127] *Id.* § 316(b)(3)(B) (ANILCA § 801 amended subsections (b)(1)-(2)).

[128] *Id.* (amended subsection (b)(4)).

*United States v. State of Alaska*                                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                    35

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 41 of 49

the Ninth Circuit Court of Appeals determined in 1995 in *State of Alaska v. Babbitt* (73 F.3d 698) that the subsistence priority required on public lands under section 804 of this Act applies to navigable waters in which the United States has reserved water rights as identified by the Secretary of the Interior.[129]

All of this shows that Congress understood the lay of the land—specifically, that the Secretary was managing subsistence hunting and fishing on public lands in Alaska, and that "public lands" included navigable waters in which the United States held reserved water rights (like the Kuskokwim River within the Refuge).

Finally, Congress explained that it was enacting amendments aimed at restoring the originally contemplated system, in which ANILCA would protect the same rural subsistence uses "through the management of the State of Alaska."[130]  In doing so, however, Congress was unwavering on the rural subsistence priority.  And Alaska could not implement that priority unless the Alaska Constitution were amended.  Congress therefore chose to make the ANILCA amendments contingent on State action, effectively giving the State a chance to amend its constitution and resume management of subsistence hunting and fishing, but expressly providing that if the State did *not* do so, the amendments would sunset and the existing federal management scheme would remain in place:

> Unless and until laws are adopted in the State of Alaska which provide for the definition, preference, and participation specified in sections 803, 804, and 805 of the Alaska National Interest Lands Conservation Act [i.e., rural subsistence preference], the amendments made by subsection (b) of this

---

[129] *Id.* (amended subsection (b)(5)).

[130] *Id.* (amended subsection (b)(7)).

*United States v. State of Alaska*                    Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment          36

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 42 of 49

section shall be effective only for the purposes of determining whether the State's laws provide for such definition, preference, and participation. The Secretary shall certify before December 1, 1998 if such laws have been adopted in the State of Alaska. Subsection (b) *shall be repealed on such date if such laws have not been adopted*.[131]

In other words, if the State did not adopt a constitutional amendment allowing it to implement a rural subsistence priority, the existing federal regulations governing management of subsistence hunting and fishing—including fishing in those navigable waters in which the United States held reserved water rights, as Congress acknowledged following *Katie John I*—would remain in place.

Even in the contingent amendments, Congress emphasized the importance of the rural subsistence priority in the provisions addressing regulations: while 16 U.S.C. § 3124 generally gives the Secretary the authority to promulgate "such regulations as are necessary" to implement various responsibilities under Title VIII, Congress temporarily amended this provision to give the State regulatory power "at any time the State has complied with [16 U.S.C. § 3115(d)]"—that is, when the State "enacts and implements laws" providing for the rural subsistence priority.[132] And the amendments prohibited the Secretary from making or enforcing her own regulations, but only "[d]uring any time" when the State had complied with § 3115(d) by implementing a rural subsistence priority.[133] Ultimately, the State was unable to pass a constitutional amendment allowing

---

[131] *Id.* § 316(d) (emphasis added) (internal citation omitted).

[132] *Id.* § 316(b)(8)(A) (ANILCA § 814 amended); *see* ANILCA § 805(d), 16 U.S.C. § 3115(d).

[133] Pub. L. No. 105–83, § 316(b)(8)(B) (ANILCA § 814 amended).

*United States v. State of Alaska*                    Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment          37

it to implement the rural priority by the December 1998 deadline, and so—according to Congress' explicit instruction—these amendments were automatically repealed.[134]

Congress gave the State yet another chance the following year. By that point the Secretary had issued a proposed rule defining "public lands" to include waters in which the United States held a reserved water right (including in the Kuskokwim River), and was preparing to issue the corresponding final rule.[135] Those proposed regulations also specifically "provide[d] the Federal Subsistence Board with clear authority to administer the subsistence priority in these waters."[136] Congress enacted another set of contingent amendments, in which it temporarily froze the regulatory definition of public lands and delayed implementation of the final rule until after December 1, 2000.[137] But again, Congress held the rural subsistence priority paramount: if the State could not implement the rural priority, Congress chose to leave the federal management scheme in place and allow the pending rule to be finalized. Congress also required the Secretary of the Interior to certify whether the Alaska Legislature had passed a resolution to amend the

---

[134] *Id.* § 316(d).

[135] Subsistence Management Regulations for Public Lands in Alaska, 62 Fed. Reg. 66216, 66217-218 (Dec. 17, 1997) (proposed rule). Congress had already delayed this rulemaking once, providing in the 1996 appropriations bill that none of the Department of the Interior's funds could be used to issue or implement rules or regulations asserting federal control over navigable waters. Omnibus Consolidated and Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, § 336, 110 Stat. 1321, 1321-210 (1996).

[136] 62 Fed. Reg. at 66216.

[137] Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105–277, Div. A, § 339(a), 112 Stat 2681, 2681-295 (1998) (Attachment D).

*United States v. State of Alaska*                                   Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT          38

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 44 of 49

Alaska Constitution to allow a rural preference, and provided that the ANILCA amendments "shall be repealed on October 1, 1999, unless prior to that date the Secretary of the Interior makes such a certification."[138] Again the State failed to act.[139] So again, in accordance with Congress's direction, the amendments were automatically repealed, and Congress allowed the Secretary to implement the regulation that brought navigable waters within the definition of "public land."[140]

That Congress *twice* revisited ANILCA and affirmatively chose to leave the federal regulatory scheme in place serves as a double ratification of the Secretary's interpretation of Title VIII. "[W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress."[141] The case for congressional ratification is exceptionally strong here, given that Congress specifically mentioned the *Katie John* litigation and the agency's regulatory response. "Where an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in

---

[138] *Id.* § 339(b)(1)-(2).

[139] AFN Reply Br., Background § II.

[140] *See* 64 Fed. Reg. at 1276-01.

[141] *Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884, 889 (9th Cir. 2017) (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986)) (cleaned up).

*United States v. State of Alaska*                                           Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                    39

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 45 of 49

other respects, then presumably the legislative intent has been correctly discerned."[142] Not only was the agency's interpretation "brought to [Congress's] attention"; Congress looked directly at the proposed regulations, put them on hold, and then chose to let the agency proceed with promulgating the final rule. It is hard to imagine a clearer case for ratification. Indeed, when Congress acts by "positive legislation," as it did here, the agency interpretation that Congress ratified is "virtually conclusive."[143]

### C. The FSB is both Statutorily Authorized and Constitutional.

Congress's choice to leave the federal management scheme in place ratifies not only the Secretary's interpretation of "public lands" but also her implementation of federal authority through the FSB, which was an integral part of the scheme that Congress chose to leave in place. The final rule on federal waters mentions the FSB no fewer than 45 times.[144] Like the proposed rule that Congress considered in the 1998 amendments, the final rule explained that "[t]he Federal Subsistence Board assumed

---

[142] *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982) (quoting *United States v. Rutherford*, 442 U.S. 544, 554 n.10 (1979)); *see also Tex. Dep't of Housing & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 536-37 (2015) (where a term has been interpreted by the courts, "a later version of that act perpetuating the wording is presumed to carry forward that interpretation" (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 322 (2012))).

[143] *Commodity Futures Trading Comm'n*, 478 U.S. at 846. Since the regulations did not assert that the navigational servitude provides an additional federal "interest" in navigable waters, Congress's actions in 1998 and 1999 should not be read as taking a position on that unaddressed issue. Rather, Congress simply affirmed that the Secretary's actions were within the scope of her authority under Title VIII.

[144] 64 Fed. Reg. at 1276-1313.

*United States v. State of Alaska*                    Case No. 1:22-cv-00054-SLG
KRITFC's Reply and Opposition Re: Motions for Summary Judgment          40

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 46 of 49

subsistence management responsibility for public lands in Alaska in 1990."[145] It then clearly spelled out the structure and function of the Board[146] and "provide[d] the Federal Subsistence Board with clear authority to administer the subsistence priority in [federal] waters."[147] Congress' ratification of those regulations removes any doubt that the FSB was properly created "by law."[148].

In addition, for the reasons ably presented in the United States reply brief, the Fish Commission agrees that "[t]he federal actions at issue here are within the scope of congressionally delegated authority and neither the existence nor operation of the FSB violates the Appointments Clause"[149] and adopts the United States' other arguments on those points.

## CONCLUSION

For the above reasons, those presented in the United States' opening brief and the Fish Commission's joinder, those presented in the United States' reply brief, and those presented in the briefing of the other Intervenor-Plaintiffs, the Kuskokwim River Intertribal Fish Commission respectfully requests that the Court grant its motion and enter judgment for Plaintiff United States and Intervenor-Plaintiffs.

---

[145] *Id.* at 1276; *see* 62 Fed. Reg. at 66216 (proposed rule with effectively identical language).

[146] 64 Fed. Reg. at 1289; *see* 62 Fed. Reg. at 66224.

[147] 64 Fed. Reg. at 1276; *see* 62 Fed. Reg. at 66216.

[148] *See* State Br. at 37-39.

[149] U.S. Reply Br. at 31.

*United States v. State of Alaska*                                Case No. 1:22-cv-00054-SLG
KRITFC's REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT                 41

Case 1:22-cv-00054-SLG  Document 109  Filed 11/03/23  Page 47 of 49

DATED this 3rd day of November, 2023 at Anchorage, Alaska.

SONOSKY, CHAMBERS, SACHSE
  MILLER & MONKMAN, LLP
*Counsel for Intervenor-Plaintiff*
*Kuskokwim River Inter-Tribal Fish Commission*

By: _/s/ Nathaniel Amdur-Clark_
Nathaniel Amdur-Clark, AK Bar No. 1411111
Whitney A. Leonard, AK Bar No. 1711064
Lloyd B. Miller, AK Bar No. 7906040

*United States v. State of Alaska*                    Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT          42

Case 1:22-cv-00054-SLG   Document 109   Filed 11/03/23   Page 48 of 49

## CERTIFICATE OF COMPLIANCE WITH ECF NO. 47

Intervenor-Plaintiff Kuskokwim River Inter-Tribal Fish Commission hereby certifies that it has conferred, through counsel, with the other Intervenor-Plaintiffs in order to avoid duplication and determine whether the parties' filings could be combined. Given the import of the issues raised by the State in its motion for summary judgment, and the long history of those issues across Alaska and before the courts, the Intervenor-Plaintiffs determined that separate briefs were warranted. The Intervenor-Plaintiffs have coordinated to minimize duplication and ensure that each brief presents unique material.

DATED this 3rd day of November, 2023.

*/s/ Nathaniel Amdur-Clark*
Nathaniel Amdur-Clark

### Certificate of Service

I certify that on November 3, 2023, a copy of the foregoing document was served via ECF on all counsel of record.

*/s/ Nathaniel Amdur-Clark*
Nathaniel Amdur-Clark

*United States v. State of Alaska*                     Case No. 1:22-cv-00054-SLG
KRITFC'S REPLY AND OPPOSITION RE: MOTIONS FOR SUMMARY JUDGMENT          43

Case 1:22-cv-00054-SLG  Document 109  Filed 11/03/23  Page 49 of 49