TREG TAYLOR
ATTORNEY GENERAL

Margaret Paton-Walsh (Alaska Bar No. 0411074)
Aaron C. Peterson (Alaska Bar No. 1011087)
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
margaret.paton-walsh@alaska.gov
aaron.peterson@alaska.gov

J. Michael Connolly (*pro hac vice*)
Steven C. Begakis (*pro hac vice*)
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
Telephone: (703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com

*Attorneys for the State of Alaska*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>　　　*Plaintiff*, | ) )<br>) | |
| KUSKOKWIM RIVER INTER-TRIBAL<br>FISH COMMISSION, *et al.*,<br>　　　*Intervenor Plaintiffs*, | ) )<br>) )<br>) | Case No. 1:22-cv-54 (SLG) |
| v. | ) )<br>) | |
| STATE OF ALASKA, *et al.*,<br>　　　*Defendants*. | ) )<br>) )<br>) | |

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 8

I.    The State has not waived any argument against preemption. ........................... 8

II.   The State's arguments are not barred by issue preclusion. ................................ 9

III.  The State's arguments are not barred by claim preclusion. ............................. 19

IV.  The State's arguments are not barred by judicial estoppel. ............................. 25

V.   The State's arguments are not barred by the statute of limitations for suits
against the United States. ................................................................................... 30

VI.  The State's orders are not preempted because the Kuskokwim River is not
"public land" under ANILCA. ........................................................................... 33

    A.   The Kuskokwim River is not "public land" under the reserved water
rights doctrine. ........................................................................................... 34

        1.   *Sturgeon*—not *Katie John*—controls this case. ................................. 34

        2.   ANILCA's supposed "purpose" cannot override the statute's text. .... 41

        3.   Congress did not ratify the Secretaries' or Ninth Circuit's
interpretation of "public lands." ......................................................... 45

    B.   The Kuskokwim River is not "public land" under the Commerce
Clause or the Navigational Servitude ........................................................ 49

    C.   The Kuskokwim River is not "public land" under the Property Clause ..... 50

    D.   The Kuskokwim River is not "public land" under Congress's authority
over Native Affairs ..................................................................................... 51

VII. The State's orders are not preempted because the FSB members were not
properly appointed. ............................................................................................ 54

    A.   The FSB members are "officers of the United States." .............................. 54

    B.   The FSB's members are unconstitutionally appointed because the FSB
is not established "by Law." ....................................................................... 56

    C.   The FSB members are "principal" officers who were not appointed by
the President with the advice and consent of the Senate............................. 63

CONCLUSION ......................................................................................................... 67

# TABLE OF AUTHORITIES

## CASES

*A.H. ex rel. Hester v. French*,
  985 F.3d 165 (2d Cir. 2021) ........................................................... 38

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
  475 F.3d 1080 (9th Cir. 2007) .................................................. 3, 9, 10

*Alabama v. U.S. Army Corps of Eng'rs*,
  No. 15-cv-696, 2023 WL 7410054 (D.D.C. Nov. 9 2023) ......................... 17

*Alaska v. Babbitt*,
  72 F.3d 698 (9th Cir. 1995) .................................................... *passim*

*Alaska v. Babbitt*,
  No. 92-cv-264 (D. Alaska) .................................................... 11, 18

*Alaska v. FSB*,
  544 F.3d 1089 (9th Cir. 2008) ..................................................... 23

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ............................................................... 48

*Alfa Int'l Seafood v. Ross*,
  264 F. Supp. 3d 23 (D.D.C. 2017) ................................................. 55

*Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*,
  926 F.3d 1061 (9th Cir. 2019) ..................................................... 33

*Alvarado-Ochoa v. Ashcroft*,
  73 F. App'x 230 (9th Cir. 2003) .................................................. 24

*Am. Cas. Co. of Reading, Pa. v. Sentry Fed. Sav. Bank*,
  867 F. Supp. 50 (D. Mass. 1994) .................................................. 12

*Americredit Fin. Servs., Inc. v. Lyons*,
  No. 19-cv-1045, 2022 WL 135420 (M.D. Tenn. Jan. 13, 2022) .................... 20

*AMG Cap. Mgmt., LLC v. FTC*,
  593 U.S. 67 (2021) ............................................................... 48

*Amoco Prod. Co. v. Vill. of Gambell, AK*,
  480 U.S. 531 (1987) .......................................................... *passim*

*Arizona v. Tohono O'odham Nation*,
  818 F.3d 549 (9th Cir. 2016) ..................................................... 29

*Atl. City Elec. Co. v. FERC*,
  295 F.3d 1 (D.C. Cir. 2002) ...................................................... 60

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
  575 U.S. 138 (2015) .............................................................. 18

Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 3 of 84

*Baker v. Nelson*,
409 U.S. 810 (1972) ................................................................. 37

*Baskin v. Bogan*,
766 F.3d 648 (7th Cir. 2014) ................................................... 37

*Bowsher v. Synar*,
478 U.S. 714 (1986) ................................................................. 56

*Buckley v. Valeo*,
424 U.S. 1 (1976) ........................................................ 7, 55, 56

*Campaign for S. Equal. v. Bryant*,
64 F. Supp. 3d 906 (S.D. Miss. 2014) ..................................... 37

*Carson v. Makin*,
596 U.S. 767 (2022) ................................................................. 38

*Casa De Md. v. DHS*,
924 F.3d 684 (4th Cir. 2019) ................................................... 57

*CBN Corp. v. United States*,
176 Ct. Cl. 861 (1966) ............................................................. 13

*Chi. Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v.
Century Motor Freight, Inc.*,
125 F.3d 526 (7th Cir. 1997) .............................................. 16, 17

*City of St. Paul v. Evans*,
344 F.3d 1029 (9th Cir. 2003) ......................................... 6, 31, 32

*Coeur D'Alene Tribe of Idaho v. Hammond*,
384 F.3d 674 (9th Cir. 2004) ................................................... 19

*Coleman v. Cal. Bd. of Prison Terms*,
228 F. App'x 673 (9th Cir. 2007) ............................................ 19

*Collins v. Alaska*,
823 F.2d 329 (9th Cir. 1987) ................................................ 3, 10

*Conroy v. Aniskoff*,
507 U.S. 511 (1993) ................................................................. 52

*Coors Brewing Co. v. Méndez-Torres*,
562 F.3d 3 (1st Cir. 2009) .................................................. 12, 14

*Ctr. for Biological Diversity v. Hamilton*,
385 F. Supp. 2d 1330 (N.D. Ga. 2005) ................................... 12

*Dahl v. Bd. of Trustees of W. Mich. Univ.*,
15 F.4th 728 (6th Cir. 2021) .................................................... 38

*Demaree v. Fulton Cty. Sch. Dist.*,
515 F. App'x 859 (11th Cir. 2013) ............................................................ 19

*Digital Realty Trust, Inc. v. Somers*,
583 U.S. 149 (2018) ................................................................................... 39

*Duenas v. Garland*,
78 F.4th 1069 (9th Cir. 2023) ............................................................. *passim*

*Duvall v. Att'y Gen. of the U.S.*,
436 F.3d 382 (3d Cir. 2006) ...................................................................... 15

*Edmond v. United States*,
520 U.S. 651 (1997) ....................................................................... 8, 58, 66

*EEOC v. Hernando Bank, Inc.*,
724 F.2d 1188 (5th Cir. 1984) .................................................................. 61

*Env't Def. v. EPA*,
369 F.3d 193 (2d Cir. 2004) ........................................................... 4, 15, 16

*Esparraguera v. Dep't of the Army*,
981 F.3d 1328 (Fed. Cir. 2020) ................................................................ 66

*Espinoza v. Mont. Dep't of Revenue*,
140 S.Ct. 2246 (2020) ............................................................................... 38

*Farkas v. Rich Coast Corp.*,
No. 14-cv-272, 2017 WL 10311283 (M.D. Pa. Dec. 29, 2017) ............. 5, 30

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ............................................................................ 59, 60

*Foster-Fountain Packing Co. v. Haydel*,
278 U.S. 1 (1928) ...................................................................................... 44

*Franklin Cty. Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*,
240 F.3d 534 (6th Cir. 2001) .................................................................... 14

*Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*,
No. 13-cv-8997, 2016 WL 236249 (S.D.N.Y. Jan. 20, 2016) ................... 23

*Friends of Animals v. Bernhardt*,
961 F.3d 1197 (D.C. Cir. 2020) ................................................................ 66

*Garcon v. Van Reeth*,
511 F. App'x 877 (11th Cir. 2013) ............................................................ 22

*Garity v. APWU Nat'l Lab. Org.*,
828 F.3d 848 (9th Cir. 2016) ............................................................. 19, 21

*Golden Gate Way, LLC v. Enercon Servs., Inc.*,
No. 20-cv-3077, 2020 WL 4804933 (N.D. Cal. Aug. 18, 2020) ............... 31

*GP Vincent II v. Est. of Beard*,
  68 F.4th 508 (9th Cir. 2023) ......................................................................... 19

*Gruver v. La. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*,
  959 F.3d 178 (5th Cir. 2020) ......................................................................... 10

*GST Tuscon Lightwave, Inc. v. City of Tuscon*,
  No. 97-15328, 1998 WL 42251 (9th Cir. Feb. 2, 1998) ............................... 25

*Guess?, Inc. v. Russell*,
  No. 16-cv-780, 2016 WL 1620119 (C.D. Cal. Apr. 18, 2016) ..................... 14

*Haitian Ctrs. Council, Inc. v. McNary*,
  969 F.2d 1350 (2d Cir. 1992) ......................................................................... 17

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  28 F.4th 35, 40 (9th Cir. 2022) ............................................... 27, 28, 29, 30

*Helfand v. Gerson*,
  105 F.3d 530 (9th Cir. 1997) ......................................................................... 26

*Henson v. Santander Consumer USA Inc.*,
  582 U.S. 79 (2017) ......................................................................................... 42

*Hercules Carriers, Inc. v. Fla. DOT*,
  768 F.2d 1558 (11th Cir. 1985) ..................................................................... 19

*Hobbs ex rel. Hobbs v. Zenderman*,
  542 F. Supp. 2d 1220 (D.N.M. 2008) ........................................................... 16

*Hoonah Indian Ass'n v. Morrison*,
  170 F.3d 1223 (9th Cir. 1999) ........................................................... 45, 52, 54

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  No. 00-cv-20905, 2009 WL 292205 (N.D. Cal. Feb. 3, 2009) ..................... 18

*In re Grand Jury Investigation*,
  916 F.3d 1047 (D.C. Cir. 2019) ..................................................................... 66

*In re Greenberg*,
  626 B.R. 554 (S.D. Cal. 2021) ....................................................................... 20

*In re Hunt*,
  124 B.R. 200 (N.D. Tex. 1991) ...................................................................... 20

*In re Megan-Racine Assocs., Inc.*,
  176 B.R. 687 (N.D.N.Y. 1994) ...................................................................... 26

*Jama v. ICE*,
  543 U.S. 335 (2005) ....................................................................................... 48

*John v. United States*,
  247 F.3d 1032 (9th Cir. 2001) ............................................................. 1, 49, 50

*John v. United States,*
   720 F.3d 1214 (9th Cir. 2013)................................................................*passim*

*John v. United States,*
   No. 90-cv-484 (D. Alaska)........................................................ 18

*Keyes v. Lynch,*
   214 F. Supp. 3d 267 (M.D. Pa. 2016) ...................................... 13

*Kingdom v. Biden,*
   No. 21-cv-243, 2021 WL 4956507 (D. Haw. Sept. 30, 2021) ..................................... 25

*Latta v. Otter,*
   771 F.3d 456 (9th Cir. 2014)..................................................... 37

*Loper Bright Enters. v. Raimondo,*
   No. 22-451 (S.Ct.)...................................................................... 15

*Lucero v. Holland,*
   902 F.3d 979 (9th Cir. 2018)..................................................... 29

*Lucia v. SEC,*
   138 S.Ct. 2044 (2018) ...................................................... 7, 24, 55

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.,*
   140 S.Ct. 1589 (2020) ............................................................... 20

*Luna Perez v. Sturgis Pub. Schs.,*
   598 U.S. 142 (2023) ................................................................... 42

*Lutz v. Int'l Ass'n of Machinists & Aerospace Workers,*
   121 F. Supp. 2d 498 (E.D. Va. 2000)........................................ 17

*McDowell v. State,*
   785 P.2d 1 (Alaska 1989)........................................................... 45

*Merck & Co., Inc. v. HHS,*
   385 F. Supp. 3d 81 (D.D.C. 2019) ........................................... 60

*Midwest Operating Eng'rs Welfare Fund v. Allied Stone,*
   175 F. Supp. 3d 945 (N.D. Ill. 2016) ....................................... 20

*Miller v. Gammie,*
   335 F.3d 889 (9th Cir. 2003)..................................................... 36

*Miller-Wohl Co., Inc. v. Mont. Comm'r of Labor & Indus., State of Mont.,*
   694 F.2d 203 (9th Cir. 1982)............................................... 25, 26

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC,*
   692 F.3d 983 (9th Cir. 2012)..................................................... 26

*Monongalia Cty. Coal Co. v. United Mine Workers of Am., Int'l Union,*
   416 F. Supp. 3d 587 (N.D. W. Va. 2019) ................................. 22

Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 7 of 84

*Montana v. United States*,
440 U.S. 147 (1979) ........................................................................ 10

*Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*,
577 U.S. 136 (2016) ................................................................... 42, 44

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
243 F.3d 773 (3d Cir. 2001) ........................................................ 4, 25

*Morrison v. Olson*,
487 U.S. 654 (1988) ........................................................................ 67

*Myers v. United States*,
272 U.S. 52 (1926) .......................................................................... 56

*Nat'l Env't Dev. Ass'n's Clean Air Proj. v. EPA*,
752 F.3d 999 (D.C. Cir. 2014) ....................................................... 65

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*,
260 F.3d 1365 (Fed. Cir. 2001) ...................................................... 11

*New Edge Network, Inc. v. FCC*,
461 F.3d 1105 (9th Cir. 2006) ....................................... 5, 25, 27, 28

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ........................................................................ 28

*Norvell v. Blue Cross & Blue Shield Ass'n*,
699 F. App'x 760 (9th Cir. 2017) ................................................. 3, 12

*NYSE LLC v. SEC*,
962 F.3d 541 (D.C. Cir. 2020) ....................................................... 60

*Obergefell v. Hodges*,
576 U.S. 644 (2015) ................................................................... 37, 38

*OPM v. Richmond*,
496 U.S. 414 (1990) ........................................................................ 57

*Pegram v. Herdrich*,
530 U.S. 211 (2000) .................................................................... 5, 25

*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) .......................................................................... 66

*Perry v. Blum*,
629 F.3d 1 (1st Cir. 2010) .............................................................. 29

*Pharm. Care Mgmt. Ass'n v. Dist. of Columbia*,
522 F.3d 443 (D.C. Cir. 2008) ........................................... 14, 15, 17

*ProShipLine Inc. v. Aspen Infrastructures Ltd.*,
609 F.3d 960 (9th Cir. 2010) ............................................ 4, 21, 22, 23

*Quiñones Candelario v. Postmaster Gen. of the U.S.*,
   906 F.2d 798 (1st Cir. 1990) ....................................................... 17

*Roberts v. Sea-Land Servs., Inc.*,
   566 U.S. 93 (2012) ...................................................................... 59

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   348 F.3d 1116 (9th Cir. 2003) ..................................................... 24

*Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*,
   824 F.3d 1161 (9th Cir. 2016) ................................................ 4, 23

*Sackett v. EPA*,
   598 U.S. 651 (2023) ......................................................... 15, 41, 44

*Santa Maria City Firefighters Union v. City of Santa Maria*,
   No. 19-cv-1964, 2022 WL 2198707 (C.D. Cal. Feb. 9, 2022) ..... 20

*Segal v. AT&T*,
   606 F.2d 842 (9th Cir. 1979) .................................................. 9, 12

*Seila L. LLC v. CFPB*,
   140 S.Ct. 2183 (2020) ........................................................... 24, 63

*Seneca Nation of Indians v. New York*,
   26 F. Supp. 2d 555 (W.D.N.Y. 1998) ......................................... 16

*Smith v. Helzer*,
   614 F. Supp. 3d 668 (D. Alaska 2022) ....................................... 36

*Smith v. Ortiz*,
   234 F. App'x 698 (9th Cir. 2007) ............................................... 16

*State Farm v. Duel*,
   324 U.S. 154 (1945) .................................................................... 24

*State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*,
   425 F.3d 708 (9th Cir. 2005) ................................................ 18, 19

*State v. United Cook Inlet Drift Ass'n*,
   895 P.2d 947 (Alaska 1995) ....................................................... 15

*Stringfellow Mem'l Hosp. v. Azar*,
   317 F. Supp. 3d 168 (D.D.C. 2018) ............................................ 46

*Sturgeon v. Frost*,
   139 S.Ct. 1066 (2019) ..........................................................*passim*

*Sturgeon v. Frost*,
   872 F.3d 927 (9th Cir. 2017)................................................... 2, 40

*SWANCC v. U.S. Army Corps of Eng'rs*,
   531 U.S. 159 (2001) ...................................................... 7, 46, 47, 63

*United States v. Alaska*
Defs' Reply in Supp. of Mot. for Sum. J.

Case No. 1:22-cv-54-SLG

ix

*Teledyne Indus., Inc. v. NLRB,*
  911 F.2d 1214 (6th Cir.1990)................................................................. 25

*Totemoff v. State,*
  905 P.2d 954 (Alaska 1995)............................................................... 1, 16

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
  582 U.S. 449 (2017)........................................................................... 38

*Tucker v. Comm'r of Internal Revenue,*
  135 T.C. 114 (2010)..................................................................... 58, 62

*TVA v. Hill,*
  437 U.S. 153 (1978)..................................................................... 48, 49

*U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue
  Shield of Ga., Inc.,*
  755 F. Supp. 1040 (S.D. Ga. 1990)...................................................... 16

*United States v. Arpaio,*
  951 F.3d 1001 (9th Cir. 2020)............................................................ 11

*United States v. Arthrex, Inc.,*
  141 S.Ct. 1970 (2021).................................................................*passim*

*United States v. Atl. Richfield Co.,*
  612 F.2d 1132 (9th Cir. 1980)............................................................ 54

*United States v. California,*
  529 F. Supp. 303 (E.D. Cal. 1981)....................................................... 12

*United States v. Concord Mgmt. & Consulting LLC,*
  317 F. Supp. 3d 598 (D.D.C. 2018)...................................................... 58

*United States v. Donziger,*
  38 F.4th 290 (2d Cir. 2022)............................................................... 55

*United States v. Gonzalez-Zotelo,*
  556 F.3d 736 (9th Cir. 2009)............................................................. 36

*United States v. Hartwell,*
  73 U.S. 385 (1867)........................................................................... 56

*United States v. Hubenka,*
  No. 10-cv-93, 2010 WL 11435110 (D. Wyo. Aug. 30, 2010).................... 14

*United States v. Janssen,*
  73 M.J. 221 (C.A.A.F. 2014) ...................................................... 60, 61, 62

*United States v. Kim,*
  806 F.3d 1161 (9th Cir. 2015)............................................................ 29

*United States v. Lopez,*
    514 U.S. 549 (1995) ..................................................................... 50

*United States v. Mendoza,*
    464 U.S. 154 (1984) ..................................................................... 18

*United States v. Michigan,*
    940 F.2d 143 (6th Cir. 1991) ....................................................... 26

*United States v. Pinillos-Prieto,*
    419 F.3d 61 (1st Cir. 2005) ...................................................... 24, 33

*United States v. Stauffer Chem. Co.,*
    464 U.S. 165 (1984) ..................................................................... 17

*United States v. Valencia-Mendoza,*
    912 F.3d 1215 (9th Cir. 2019) ..................................................... 36

*United States v. W. Pac. R.R. Co.,*
    352 U.S. 59 (1956) ....................................................................... 31

*United States v. Windsor,*
    570 U.S. 744 (2013) ..................................................................... 37

*United Steelworkers of Am. v. Retirement Income Plan for Hourly-Rated*
    *Emps. of ASARCO, Inc.,*
    512 F.3d 555 (9th Cir. 2008) ....................................................... 28

*USFS v. Cowpasture River Preservation Ass'n,*
    140 S.Ct. 1837 (2020) ............................................................ 41, 44

*USPS v. Am. Postal Workers Union, AFL-CIO,*
    893 F.2d 1117 (9th Cir. 1990) ..................................................... 33

*Varnadore v. Sec'y of Labor,*
    141 F.3d 625 (6th Cir. 1998) ....................................................... 62

*Waagner v. United States,*
    416 F. Supp. 3d 740 (C.D. Ill. 2019) ........................................... 14

*Wild Fish Conservancy v. EPA,*
    331 F. Supp. 3d 1210 (W.D. Wash. 2018) ................................... 22

*Wildearth Guardians v. USFS,*
    No. 20-cv-223, 2021 WL 6274439 (E.D. Wash. May 19, 2021) ................... 26

*Willy v. Admin. Rev. Bd.,*
    423 F.3d 483 (5th Cir. 2005) ....................................................... 62

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.,*
    235 F.3d 1184 (9th Cir. 2000) ..................................................... 27

## STATUTES

5 U.S.C. §905 ....................................................................................... 61

5 U.S.C. §3395 ..................................................................................... 67

6 U.S.C. §521 ....................................................................................... 62

16 U.S.C. §742b ................................................................................... 56

16 U.S.C. §932 ..................................................................................... 56

16 U.S.C. §1401 ................................................................................... 56

16 U.S.C. §3102 ............................................................................. *passim*

16 U.S.C. §3111 ............................................................................. 43, 54

16 U.S.C. §3115 ............................................................................. 55, 60

16 U.S.C. §3123 ................................................................................... 59

16 U.S.C. §3124 ............................................................................. 57, 59

16 U.S.C. §3162 ................................................................................... 39

16 U.S.C. §3167 ................................................................................... 59

16 U.S.C. §3181 ............................................................................. 56, 59

16 U.S.C. §3182 ................................................................................... 59

16 U.S.C. §3203 ................................................................................... 59

16 U.S.C. §3209 ................................................................................... 59

16 U.S.C. §3210 ................................................................................... 59

28 U.S.C. §2401 ....................................................................... 6, 30, 31, 33

43 U.S.C. §1603 ................................................................................... 54

Alaska Statehood Act,
Pub. L. No. 85-508, 72 Stat. 339 (1958) ................................................ 53

AS §16.05.258 ..................................................................................... 45

Department of the Interior and Related Agencies Appropriations Act, 1998,
Pub. L. No. 105-83, 111 Stat. 1543 (Nov. 14, 1997) ...................... 46, 48, 63

Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999,
Pub. L. No. 105-277, 112 Stat. 2681 (Oct. 21, 1998) ........................... 46, 63

ANILCA,
Pub. L. No. 96-487, 94 Stat. 2371 (1980) ............................................ 40, 41

## OTHER AUTHORITIES

143 Cong. Rec. S11259 (Oct. 28, 1997) ................................................ 47

*Alaska Land Management: Resolving Ownership of Submerged Lands*,
U.S. Gov't Accountability Off. (July 27, 2023), https://bit.ly/3RvLVdx .................... 44

Black's Law Dictionary (11th ed. 2019) ......................................................... 26

Brief of *Amici Curiae* Alaska Native Subsistence Users,
*Sturgeon II*, 2018 WL 4611058 (U.S.) ......................................................... 40

Fact Sheet, *Title: Land Ownership in Alaska*,
Alaska Dep't of Nat'l Res. (Mar. 2000), https://bit.ly/3QysrG3 ................................. 43

Federal Appellees' Response to Supplemental Brief for the State of Alaska,
*Sturgeon II*, 2016 WL 6081578 (C.A.9) ......................................................... 26

Kevin Sholette, *The American Czars*,
20 Cornell J.L. & Pub. Pol'y 219 (2010) ....................................................... 62

Off. of Subsistence Mgmt., *Federal Subsistence Fisheries Regulations*,
DOI (Apr. 1, 2021), https://bit.ly/41jJv6l ..................................................... 44

*Officers of the United States Within the Meaning of the Appointments Clause*,
31 Op. O.L.C. 73 (2007) ..................................................................... 57

Petitioner's Br.,
*Sturgeon II*, 2018 WL 3830172 (U.S.) ......................................................... 5

Respondents BIO,
*Sturgeon II*, 2018 WL 2129796 (U.S.) ......................................................... 40

Respondents Br.,
*Sturgeon II*, 2018 WL 4381223 (U.S.) ......................................................... 39

Restatement (Second) of Judgments §28 (1982) .................................... 10, 11, 12

S. Rep. 96-413 (Nov. 14, 1979) ............................................................. 52

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (2012) .................... 42

State Amicus Br.,
*Sturgeon II*, 2018 WL 4063284 (U.S.) ................................................. 5, 27, 28

Steven G. Calabresi & Gary Lawson, *Why Robert Mueller's Appointment
as Special Counsel Was Unlawful*, 95 Notre Dame L. Rev. 87 (2019) ...................... 62

Wright & Miller, 16AA Fed. Prac. & Proc. Juris. §3975.1 (5th ed.) ................................ 29

Wright & Miller, 18 Fed. Prac. & Proc. Juris. §4418 (3d ed.) ..................................... 14

Wright & Miller, 18 Fed. Prac. & Proc. Juris. §4425 (3d ed.) .......................... 10, 12, 13

Wright & Miller, 18B Fed. Prac. & Proc. Juris. §4477 (3d ed.) ................................ 5, 25

**RULES**

Fed. R. Civ. Proc. 8 ......................................................................... 21

*United States v. Alaska*
Defs' Reply in Supp. of Mot. for Sum. J.

Fed. R. Civ. Proc. 56 ................................................................................................ 21

**REGULATIONS**

5 C.F.R. §317.901 ................................................................................................... 67

5 C.F.R. §359.501 ................................................................................................... 66

36 C.F.R. §242.10 ................................................................................................... 59

50 C.F.R. §100.10 ................................................................................. 55, 56, 59, 63

50 C.F.R. §100.22 ................................................................................................... 65

57 Fed. Reg. 22940 (May 29, 1992) ........................................................................ 1

62 Fed. Reg. 66216 (Dec. 17, 1997) ...................................................................... 46

64 Fed. Reg. 1276 (Jan. 8, 1999) ..................................................................... 45, 47

U.S.C. Reorg. Plan 3 1950 ............................................................................... 58, 61

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. IV, §3, cl.2 .................................................................................... 51

# INTRODUCTION

*Katie John I* has never been on strong footing. In reaching its "inherently unsatisfactory" holding, the Ninth Circuit gave no "meaning to the term 'title' in the definition of the phrase 'public lands,'" elevated Congress's supposed "intent" over the text of the statute, and deferred to a recently changed agency interpretation under *Chevron*.[1] Those who have rejected or criticized the reasoning of *Katie John I* are legion. They include, among others:

- The Agencies themselves.[2]
- The panel majority in *Katie John I*.[3]
- Judge Hall in dissent in *Katie John I*.[4]
- The Alaska Supreme Court.[5]
- Half of the Ninth Circuit sitting en banc in *Katie John II*.[6]

---

[1] *Alaska v. Babbitt* ("*Katie John I*"), 72 F.3d 698, 704 (9th Cir. 1995).

[2] 57 Fed. Reg. 22940, 22942, 22952 (May 29, 1992) (concluding that "public lands" do not include Alaska's navigable waters because the United States "does not generally own title to the submerged lands beneath navigable waters in Alaska").

[3] *Katie John I*, 72 F.3d at 704 (listing reasons why its ruling is "inherently unsatisfactory").

[4] *Id.* at 706 (Hall, J., dissenting) ("The majority embraces the doctrine of reserved water rights … [But] [t]he federal government can only reserve waters running over land that it owns. … Because *Alaska* has title to its navigable waters under the Submerged Lands Act, the United States cannot reserve these waters.").

[5] *Totemoff v. State*, 905 P.2d 954, 964-68 (Alaska 1995) ("[W]e find that neither the navigational servitude nor reserved water rights bring navigable waters within ANILCA's definition of 'public lands.'").

[6] *John v. United States* ("*Katie John II*"), 247 F.3d 1032, 1034 (9th Cir. 2001) (Tallman, J., concurring) ("The reserved water rights doctrine [relied on in *Katie John I*] is mentioned nowhere in the statute."); *id.* at 1044-50 (Kozinski, J., dissenting) ("Because ANILCA defines public lands as 'lands, waters, and interests' to which the United States holds title, the federal government's reserved water right is simply not sufficient to turn waters subject to that right into public lands.").

- The three-judge panel in *Katie John III*.[7]
- Two Ninth Circuit judges in *Sturgeon*.[8]

In *Sturgeon*, the Supreme Court removed any doubt that *Katie John*'s reasoning is unsound.[9] In a unanimous opinion, the Court held that navigable waters were *not* "public land" under the reserved water rights doctrine. The United States cannot have "title" to a reserved water right, and even if it could, such a right would not give the United States "plenary authority over the waterway," but only the right to protect the "amount" or "volume" of water needed to accomplish the reservation's purpose of the reservation.[10] That reasoning controls this case.

Given *Sturgeon* and the tenuous nature of *Katie John*, it is no surprise that the United States and Intervenors have taken a kitchen-sink approach to this case. Relatively little of their briefs—spanning more than 200 pages—is devoted to explaining how, after *Sturgeon*, the Kuskokwim River could be "public land" under the reserved water rights doctrine. Indeed, one Intervenor actually argues that *Sturgeon* was wrongly decided.[11] Instead of

---

[7] *John v. United States* ("*Katie John III*"), 720 F.3d 1214, 1245 (9th Cir. 2013) ("*Katie John I* was a problematic solution to a complex problem, in that it sanctioned the use of a doctrine ill-fitted to determining which Alaskan waters are 'public lands' to be managed for rural subsistence priority under ANILCA.").

[8] *Sturgeon v. Frost*, 872 F.3d 927, 937-38 (9th Cir. 2017) (Nguyen, J., concurring) (noting that a "reserved water right" is only "the right to a sufficient *volume* of water for use in an appropriate federal purpose" and advocating for abandoning *Katie John I* "[r]ather than continuing to shove a square peg into a hole we acknowledge is round").

[9] *See Sturgeon v. Frost* ("*Sturgeon II*"), 139 S.Ct. 1066, 1078-80 (2019).

[10] *Id.*

[11] *See* AVCP Opp. 40 (criticizing the Supreme Court for "ignor[ing]" its "own precedent," "divorcing the term title from its legislative context," "fail[ing] to recognize that the term 'title' simply connotes a right of control and disposition," and "ignor[ing] the language of ANILCA and its legislative history").

accepting *Sturgeon*, the United States and Intervenors urge this Court to bar the State from making its arguments at all; to ignore *Sturgeon*'s reasoning because of a single footnote in the opinion; and to find that the Kuskokwim River is "public land" based on alternative arguments that were either rejected in *Katie John I* or are so far-fetched that the *Katie John* trilogy never addressed them.

More disappointing are the attacks on the State's motives. The right to engage in subsistence fishing is enshrined in Alaska law, and the State's actions in this case were *more protective* for Alaska Natives than the federal orders. Yet Intervenors launch hyperbolic attacks against the Defendants, accusing the State of using "dog-whistles" and "shamelessly" and "paternalistic[ly]" attempting to "destroy" Alaska Natives' heritage in a "'transparent'" effort "'to protect commercial and sport fishing interests.'"[12] None of that is remotely true.

The United States' and Intervenors' myriad procedural and merits arguments fail:

**Issue Preclusion**. Issue preclusion seldom applies to issues of law, and it doesn't apply here.[13] Whether navigable waters are "public lands" under ANILCA is a pure issue of law and this action and *Katie John* "involv[e] substantially unrelated claims."[14] *Sturgeon* also was an "'intervening change in the applicable legal context.'"[15] The "public nature"

---

[12] AFN Opp. 1-2, 28, 47.

[13] *See Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007) (issue preclusion has "'never been applied to issues of law with the same rigor as to issues of fact'").

[14] *Collins v. Alaska*, 823 F.2d 329, 332 n.4 (9th Cir. 1987).

[15] *Norvell v. Blue Cross & Blue Shield Ass'n*, 699 F. App'x 760, 761 (9th Cir. 2017).

*United States v. Alaska*                                            Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                              3
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 17 of 84

of this case further counsels against a "strict application of collateral estoppel."[16] Countless Alaskans are affected by ANILCA, and they need to know the state of the law after *Sturgeon*. And issue preclusion would save no judicial resources, a key purpose of the judicially created doctrine. Because nonmutual collateral estoppel does not apply against the State, its arguments against KRITFC, AVCP, and Ahtna—who were not parties to the prior *Katie John* litigation—could never be barred by issue preclusion. No matter what, the Court will have to resolve this issue of law.

**Claim Preclusion**. Claim preclusion doesn't apply for a simple reason: The State is a *defendant* and has brought no *claims*. The State instead raises *arguments* for why the Plaintiffs cannot prevail on their claims. Neither the United States nor Intervenors identify a single case holding that claim preclusion applies in this context. Even if the State's arguments could be reclassified as "claims," the doctrine still wouldn't apply because there is no "identity of claims" between this case and any prior case.[17] Claim preclusion also could never apply to the State's arguments against KRITFC, AVCP, and Ahtna because they were not parties to *Katie John*.[18]

**Judicial Estoppel**. Judicial estoppel—the "'harshest remedy' that a court can impose for inequitable conduct"[19]—is wholly unwarranted. To begin, judicial estoppel

---

[16] *Env't Def. v. EPA*, 369 F.3d 193, 203 (2d Cir. 2004).

[17] *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010).

[18] *See Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) (claim preclusion requires an "'identity or privity between parties'").

[19] *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 784 (3d Cir. 2001).

*United States v. Alaska*                                              Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                    4

applies only to "parties,"[20] but the State was not a "party" in *Sturgeon*—it was an *amicus curiae*. The United States and Intervenors identify no case in which judicial estoppel was applied against an *amicus*. But even if the State had been a party, judicial estoppel still wouldn't apply. "[J]udicial estoppel does not preclude the [State] from changing its interpretation" of ANILCA because "public policy considerations allow the government to change its position in ways that might be inappropriate if merely a matter of private interest."[21] Nor is there any risk of an inconsistent court determination if this Court rules for the State.[22] The only argument of the State's that the Supreme Court in *Sturgeon* accepted—an argument also made by John Sturgeon—was that "[t]he *Katie John* decisions are not at issue in this appeal."[23] But the legal issue from *Katie John I is* at issue here. Moreover, because judicial estoppel is an equitable doctrine, the United States could never benefit from it because it lacks "clean hands."[24] In *Sturgeon*, the United States argued the *exact opposite* of what it argues now. The harsh medicine of judicial estoppel has no application here.

---

[20] *See, e.g.*, *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000); *New Edge Network, Inc. v. FCC*, 461 F.3d 1105, 1114 (9th Cir. 2006); Wright & Miller, 18B Fed. Prac. & Proc. Juris. §4477 (3d ed.).

[21] *New Edge Network*, 461 F.3d at 1114.

[22] *See id.*

[23] State Amicus Br. 29, *Sturgeon II*, 2018 WL 4063284 (U.S.); *see* Petitioner's Br. 34 n.4, *Sturgeon II*, 2018 WL 3830172 (U.S.) ("The Court need not … address [*Katie John*].").

[24] *Farkas v. Rich Coast Corp.*, No. 14-cv-272, 2017 WL 10311283, at *9 (M.D. Pa. Dec. 29, 2017).

*United States v. Alaska*                                              Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                    5
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 19 of 84

***Statute of Limitations***. The State's arguments are not barred by any statute of limitations because the State is *the defendant*, not the plaintiff. The rare exception to this rule applies only when a party files "a time-barred … action, wait[s] for the defendant to assert its interests in the form of a counterclaim, and then rais[es] the identical time-barred claims as defenses."[25] The State did not engage in this "subterfuge" here.[26] Moreover, the United States waived this argument by never asserting it. And the statute of limitations could never apply to the State's arguments against Intervenors' claims because Section 2401 bars only "action[s] commenced against the United States."[27]

***"Public Lands" and ANILCA***. ANILCA's subsistence priority applies only to "public lands," which are "lands, waters, and interests therein … the title to which is in the United States."[28] *Sturgeon* forecloses any argument that the Kuskokwim River is "public land" under the reserved water rights doctrine. And *Sturgeon*'s footnote two does not bless *Katie John*'s contrary reasoning. That footnote simply notes that because "ANILCA's subsistence-fishing provisions" were "not at issue in th[e] case" the Court's opinion did not "disturb" the *Katie John* opinions.[29] But ANILCA's subsistence provisions *are* at issue here, so the Court must reconcile *Katie John* with *Sturgeon*'s reasoning.

The Court cannot, as Plaintiffs urge, disregard the statutory text in favor of Congress's supposed "purpose." And there is no indication—let alone "overwhelming

---

[25] *City of St. Paul v. Evans*, 344 F.3d 1029, 1031 (9th Cir. 2003).
[26] *Id.* at 1035.
[27] 28 U.S.C. §2401(a).
[28] 16 U.S.C. §3102(1)-(3); *Sturgeon II*, 139 S.Ct. at 1076-77.
[29] *Sturgeon II*, 139 S.Ct. at 1080 n.2.

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                    6
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 20 of 84

evidence"[30]—that Congress ratified *Katie John I* or the agencies' rules enforcing it through two 1990s appropriations bills. Intervenors' remaining arguments for why the Kuskokwim River is "public land" are either foreclosed by precedent or easily rejected.

*The Appointments Clause*. The Appointments Clause requires that all "officers" must have their positions established "by Law," and that all "principal" officers must be nominated by the President and confirmed by the Senate. The members of the Federal Subsistence Board fail both requirements. To start, FSB members are clearly "officers." Their positions are "'continuing and permanent,'" and they exercise "'significant authority pursuant to the laws of the United States.'"[31] Their authority to issue regulations resolves their officer status under *Buckley v. Valeo*, a holding the United States ignores entirely.[32] And because no statute expressly creates the FSB, their positions were not established "by Law." Even if Congress could delegate its power to create offices, it didn't do so here. The United States identifies only two general "housekeeping" statutes, neither of which authorizes the Secretaries to create the FSB out of whole cloth.

Finally, the members of the Federal Subsistence Board are principal officers, not inferior officers. FSB members have the sole responsibility to administer Title VIII of ANILCA; their decisions are unreviewable; and most of them can be fired only for cause. Having delegated all their authority to the FSB, the Secretaries cannot plausibly claim to

---

[30] *SWANCC v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 169 n.5 (2001).
[31] *Lucia v. SEC*, 138 S.Ct. 2044, 2051 (2018); *Duenas v. Garland*, 78 F.4th 1069, 1072 (9th Cir. 2023).
[32] 424 U.S. 1, 140-41 (1976) ("rulemaking" is too "significant [of a] governmental duty" to be done by employees).

*United States v. Alaska*                                  Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                          7
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 21 of 84

"direc[t]" or "supervis[e]" the FSB.[33] The FSB members are principal officers that must be nominated by the President and confirmed by the Senate, just like the leaders of other federal agencies.[34]

*     *     *

The State recognizes the importance of this case. The authority to govern the State's lands and waters is an issue that has been hotly debated since Statehood. But here, the United States' and Intervenors' claims fail as a matter of law. Because the Kuskokwim River is not "public land" under ANILCA and the FSB members were not properly appointed under the Appointments Clause, the State's orders are not preempted. The Court should grant summary judgment to the State.

## ARGUMENT

### I.     The State has not waived any argument against preemption.

The United States asserts that the State has "waived any argument on preemption."[35] That is plainly wrong. The State briefed the issue extensively. As explained, "[t]he State's orders are not preempted because the Kuskokwim River is not 'public land' under ANILCA,"[36] and "[t]he State's orders are not preempted because the FSB members were not properly appointed."[37] Indeed, the United States and Intervenors never dispute that the State is entitled to summary judgment if it prevails on these arguments.

---

[33] *United States v. Arthrex, Inc.*, 141 S.Ct. 1970, 1982 (2021).
[34] *See, e.g.*, *Edmond v. United States*, 520 U.S. 651, 663-64 (1997) (Secretaries of the Department of Foreign Affairs and Department of War are "principal officers").
[35] U.S. Opp. 12.
[36] State Mot. 27-32.
[37] State Mot. 33-43.

## II. The State's arguments are not barred by issue preclusion.

According to the United States and KRITFC, issue preclusion bars the State from arguing that the subsistence priority does not apply to navigable waters because this issue of law was "squarely decided by the Ninth Circuit in the *Katie John* litigation."[38] "As a general proposition, the doctrine of collateral estoppel (or issue preclusion) prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding."[39] Although issue preclusion technically applies to "'an issue of fact *or law*,'" the doctrine has "'never been applied to issues of law with the same rigor as to issues of fact.'"[40] Issue preclusion rarely applies to issues of law because (1) it can "delay desirable growth of legal principles"; (2) it can be "unjust to preclude reargument of questions of law that would be open to challenge by other litigants"; (3) reexamining issues of law "ordinarily is less burdensome than reopening issues of fact" and "is more likely to produce improved results"; and (4) the "interests of courts and litigants" can be "protected adequately by the flexible principles of stare decisis."[41]

---

[38] U.S. Opp. 13-19; KRITFC Opp. 15-18.

[39] *Af-Cap*, 475 F.3d at 1086 (cleaned up).

[40] *Id.* (emphasis in original) (quoting *Segal v. AT&T*, 606 F.2d 842, 845 (9th Cir. 1979)).

[41] Fed. Prac. & Proc. §4425; *see, e.g.*, *Af-Cap*, 475 F.3d at 1086 (refusing to apply issue preclusion because it would "'foreclos[e] [the Ninth Circuit] from an opportunity to reconsider the applicable rule, and thus to perform [its] function of developing the law'"); *Gruver v. La. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, 959 F.3d 178, 182 n.3 (5th Cir. 2020) ("[A] reason why issue preclusion does not typically apply to pure questions of law is that the more flexible doctrine of stare decisis provides enough stability and protection against unnecessary litigation burdens.").

*United States v. Alaska*  Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.  9
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 23 of 84

Here, issue preclusion does not apply for six reasons. ***First***, the scope of "public land" under ANILCA is a pure issue of law and "the two actions involve claims that are substantially unrelated."[42] This exception exists because "the justification for applying collateral estoppel to [issues of law] is far less when … the second claim arises after the first has been disposed of and springs from an unrelated event or subject matter."[43] "[I]f the issue is one of the formulation or scope of the applicable legal rule, and if the claims in the two actions are substantially unrelated, the more flexible principle of stare decisis is sufficient to protect the parties and the court from unnecessary burdens."[44] "A rule of law declared in an action between two parties should not be binding on them for all time, especially as to claims arising after the first proceeding has been concluded, when other litigants are free to urge that the rule should be rejected."[45] Such preclusion could "unduly delay needed changes in the law and might deprive a litigant of a right that the court was prepared to recognize for other litigants in the same position."[46] This exception "applies

---

[42] Restatement (Second) of Judgments §28 (1982); *Montana v. United States*, 440 U.S. 147, 162 (1979) ("'[There is an] exception which obtains for 'unmixed questions of law' in successive actions involving substantially unrelated claims. … Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action *upon a different demand* are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases.'" (emphasis in original)); *Collins*, 823 F.2d at 332 n.4 (same); *see also* Fed. Prac. & Proc. §4425 ("There does not appear to be any frequent difficulty in applying the rule that preclusion does not attach to pure questions of law, unmixed with any common elements of fact.").

[43] Restatement (Second) of Judgments §28 Reporter's Note.

[44] *Id.* §28 cmt. b.

[45] *Id.*

[46] *Id.*

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                          10
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 24 of 84

with particular force when the issue to be re-litigated involves … 'the formulation or scope' of a statute or applicable legal rule."[47]

Here, there is no question that the United States and Intervenors seek preclusion of a pure issue of law—whether navigable waters are "public land" under ANILCA. And "the two actions involve claims that are substantially unrelated."[48] The United States' and Intervenors' claims have little in common with the State's claims in *Katie John I*[49]:

- The cases are far apart in time—the United States and Intervenors filed their lawsuits *30 years* after the State filed its lawsuit in *Katie John*.[50]

- The cases arise from different disputes—the State in *Katie John I* challenged federal regulations issued in 1992, but the United States and Intervenors here challenge "Defendants' emergency orders purporting to open harvest on the public waters of the Kuskokwim River during the federal closure in 2021 and 2022."[51]

---

[47] *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 260 F.3d 1365, 1373 (Fed. Cir. 2001) (quoting Restatement (Second) of Judgments §28 cmt. b).

[48] Restatement (Second) of Judgments §28.

[49] In their preclusion arguments, the United States and KRITFC refer generally to the "*Katie John* litigation," U.S. Opp. 14; KRITFC Opp. 15, but *Katie John III* could not have any preclusive effect here. Whether navigable waters are "public land" under ANILCA was not "actually litigated" in *Katie John III*, was not "determined by a valid and final judgment," and was not "essential to the judgment." *United States v. Arpaio*, 951 F.3d 1001, 1006 (9th Cir. 2020) (cleaned up); *see Katie John III*, 720 F.3d at 1223-24, 1245 ("The current litigation includes two consolidated challenges to the 1999 Rules. … *Katie John I* remains the law of this circuit, and we, like the secretaries, must apply it as best we can."). (And *Katie John II*, of course, was the same case as *Katie John I*.) The State therefore discusses *Katie John I* as the relevant case for the preclusion analysis. That said, the State's arguments apply equally to the "*Katie John* litigation" generally.

[50] *See Alaska v. Babbitt*, No. 92-cv-264 (D. Alaska).

[51] U.S. Compl 24; KRITFC Compl 7; AVCP Compl. 5; AFN Compl. 6; *see* Ahtna Compl. 7.

- The claims are brought by different parties—by the State in *Katie John I*, and by the United States and various individuals and groups here.[52]

- The cases involve different causes of action—the State in *Katie John I* sued under the APA, but the United States and Intervenors sue for preemption.[53]

Simply put, this case and *Katie John I* have none of the substantial overlap in facts and claims that could justify preclusion of an issue of law.[54]

**Second**, issue preclusion does not apply because "'[t]he issue is one of law and … a new determination is warranted in order to take account of an intervening change in the applicable legal context.'"[55] This exception is a low bar and many legal developments can trigger the exception. Courts have refused to apply issue preclusion in light of, among other things, "'an intervening judicial declaration, a modification or clarification of legal principles as enunciated in intervening decisions[,] and an alteration in a pertinent statutory

---

[52] *See Katie John III*, 720 F.3d at 1221-24; *Katie John I*, 72 F.3d at 701. Only AFN brought (unrelated) claims in both cases.

[53] *See id.*

[54] *See, e.g.*, *Am. Cas. Co. of Reading, Pa. v. Sentry Fed. Sav. Bank*, 867 F. Supp. 50, 57 (D. Mass. 1994) (no issue preclusion over an issue of law involving insurance policies with "identical terms" because they were "different policies"); *United States v. California*, 529 F. Supp. 303, 310 n.13 (E.D. Cal. 1981) (no issue preclusion over an issue of law concerning a statute of limitations involving different bodies of water); *Ctr. for Biological Diversity v. Hamilton*, 385 F. Supp. 2d 1330, 1335 (N.D. Ga. 2005) (no issue preclusion over a "pure question of law" because the two cases "involve[d] a different species designated as endangered").

[55] *Norvell*, 699 F. App'x at 761 (quoting *Segal*, 606 F.2d at 845); *see, e.g.*, *Coors Brewing Co. v. Méndez-Torres*, 562 F.3d 3, 11 (1st Cir. 2009); Fed. Prac. & Proc. §4425 ("Preclusion … may be defeated by showing … that there has been a substantial change in the legal climate suggesting a new understanding of the governing legal rules that may require a different application."); Restatement (Second) of Judgments §28(2) & cmt. c ("[A]n intervening change in the relevant legal climate may warrant reexamination of the rule of law applicable as between the parties.").

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                          12
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 26 of 84

interpretation.'"[56] Similarly, "Supreme Court clarification of issues that had been debated or uncertain in the lower courts is … a proper justification for avoiding preclusion."[57] Even the "mere general growth of a body of law may defeat preclusion."[58]

The "change in the applicable legal context" exception is on all fours here. As explained in the State's motion and further below, *Katie John I* is neither binding nor persuasive in light of *Sturgeon*. In *Katie John I*, the Ninth Circuit concluded—with little analysis and relying on *Chevron* deference—that "public land" under ANILCA includes those "navigable waters in which the United States has an interest by virtue of the reserved water rights doctrine."[59] But this holding is incompatible with the Supreme Court's (unanimous) holding in *Sturgeon* two decades later.[60] Writing for the Court, Justice Kagan *rejected* the argument that a navigable river was "public land" because "the United States has 'title' to an 'interest' in the Nation River, under what is called the reserved-water-rights doctrine."[61] There is no doubt that *Katie John* would come out differently now after *Sturgeon*.

---

[56] *Keyes v. Lynch*, 214 F. Supp. 3d 267, 276 (M.D. Pa. 2016) (listing cases); *see* Fed. Prac. & Proc. §4425 ("'[T]hese standards do not mean that the earlier decision must have been overruled or that the second ruling be inconsistent with the first. The … language means rather that "the second court should be freed from the prior determination if there has been some marked advance or alteration in relevant orientation, approach, reasoning[,] or principles."'" (quoting *CBN Corp. v. United States*, 176 Ct. Cl. 861, 865 (1966)).

[57] Fed. Prac. & Proc. §4425.

[58] *Id.*

[59] *Katie John I*, 72 F.3d at 701-04.

[60] *Infra* 34.

[61] *Sturgeon II*, 139 S.Ct. at 1078 (quoting 16 U.S.C. §3102)).

*United States v. Alaska*                                              Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                    13
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 27 of 84

The United States and KRITFC argue that this preclusion exception does not apply because *Sturgeon* did not change the law.[62] That reading of *Sturgeon* is wrong, as explained below. Yet issue preclusion is inapplicable even if the Court ultimately decides that *Katie John* remains good law and controls this case. The "change in the applicable legal context" exception is a low bar. "'[R]econsideration should be freely available whenever a *cogent claim* is made that the law has changed'" because "'[p]rinciples of stare decisis afford sufficient protection against undue efforts to avoid preclusion on this score.'"[63] Courts thus routinely apply this exception even when the intervening decision does not change the outcome of the case.[64] Here, at a minimum, the State has made a "cogent" argument that *Sturgeon* changed the legal climate.[65] Indeed, the presence of four

---

[62] U.S. Opp. 19-20; KRITFC Opp. 17-18.

[63] *Coors Brewing*, 562 F.3d at 12 (quoting Fed. Prac. & Proc. §4418) (emphasis added).

[64] *See, e.g.*, *Franklin Cty. Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 550, 552 (6th Cir. 2001) (rejecting issue preclusion because the Supreme Court's decision in "*Eastern Enterprises* signals a change in the legal climate," but then holding that "*Eastern Enterprises* has no precedential effect on this case"); *Guess?, Inc. v. Russell*, No. 16-cv-780, 2016 WL 1620119, at *3 n.2 (C.D. Cal. Apr. 18, 2016) ("[W]hile the Court is ultimately unpersuaded that this purported change in the law alters the reasoning in the Court's prior order, an intervening change in the law is a well-recognized exception to collateral estoppel."); *United States v. Hubenka*, No. 10-cv-93, 2010 WL 11435110, at *4-6 (D. Wyo. Aug. 30, 2010) (finding that an intervening Supreme Court decision changed the governing legal test, but reaching the same outcome); *Waagner v. United States*, 416 F. Supp. 3d 740, 750, 759-60 (C.D. Ill. 2019) (addressing prisoner's motion to vacate his sentence because "the legal principles and the relevant case law relating to the legal issue of whether Ohio Aggravated Burglary is generic burglary have significantly changed," yet ultimately declining to vacate his sentence); *Pharm. Care Mgmt. Ass'n v. Dist. of Columbia*, 522 F.3d 443, 447 (D.C. Cir. 2008) (rejecting issue preclusion because legal developments "may change the legal analysis," while "express[ing] no opinion on the merits of the [legal] issue").

[65] *Infra* 12-15.

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                14
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 28 of 84

groups of intervenors and hundreds of pages of briefing and exhibits should remove any doubt that *Sturgeon* changed the "legal context" for defining "public lands" under ANILCA.

And it's not just *Sturgeon* that changed the legal context. In *Sackett v. EPA*, issued last year, the Supreme Court emphasized that Congress must "'enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power,'" and that the "[r]egulation of land and water use lies at the core of traditional state authority."[66] Neither the United States nor KRITFC addresses this change in legal context. Moreover, *Katie John I*'s opinion depended heavily on *Chevron* deference,[67] and *Chevron* may soon be overturned or curtailed by the Supreme Court.[68] That too would create a new legal context.

***Third***, the "public nature of the issues presented counsels against strict application of collateral estoppel."[69] The scope of ANILCA is not a narrow issue about, say, a breach of contract between two private parties. Everyone agrees that this issue "concerns a matter of great public importance."[70] Indeed, issue preclusion is "especially" inappropriate here

---

[66] 598 U.S. 651, 679 (2023).

[67] *See Katie John I*, 72 F.3d at 701-04.

[68] *See Loper Bright Enters. v. Raimondo*, No. 22-451 (S.Ct.).

[69] *Env't Def.*, 369 F.3d at 203; *Pharm. Care*, 522 F.3d at 447 (issue preclusion not appropriate because it would "freeze the development of the law in an area of substantial public interest"); *see also Duvall v. Att'y Gen. of the U.S.*, 436 F.3d 382, 390-91 (3d Cir. 2006) (issue preclusion "was borne of equity and is therefore 'flexible,' bending to satisfy its underlying purpose in light of the nature of the proceedings").

[70] *Env't Def.*, 369 F.3d at 203; *see also State v. United Cook Inlet Drift Ass'n*, 895 P.2d 947, 953 (Alaska 1995) ("eligibility to participate in subsistence … fishing" is a "questio[n] of general interest" in Alaska).

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                    15
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 29 of 84

because "the issue involves a question of statutory constructio[n] and is therefore an issue of general interest."[71]

And this legal question is not going away. *Sturgeon*, at a minimum, called *Katie John I* into doubt. As the United States has recognized, Alaskans need certainty about the scope of ANILCA.[72] In this situation, the "traditional concerns about relieving the parties of the costs of litigation and conserving judicial resources" must give way to the public interest in resolving this hotly debated legal issue.[73] The harsh medicine of issue preclusion is simply not appropriate given the important public policy issues at stake.

*Fourth*, "concern[s] about consistency and fairness" counsel against preclusion.[74] Again, questions about the meaning of "public land" after *Sturgeon* are not going away. They will be front and center the next time someone is prosecuted for violating a federal order on navigable waters.[75] But if *Katie John*'s interpretation of "public lands" is "given collateral estoppel effect" here, then "only the [State], but not other[s] … would be

_____

[71] *Hobbs ex rel. Hobbs v. Zenderman*, 542 F. Supp. 2d 1220, 1225 (D.N.M. 2008); *Seneca Nation of Indians v. New York*, 26 F. Supp. 2d 555, 569 (W.D.N.Y. 1998) ("[C]ollateral estoppel is less favored when the issue to be precluded is a legal one, and least favored when it is one of statutory construction."); *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1040, 1046 (S.D. Ga. 1990) ("Issue preclusion is least favored where the pure question of law is one of statutory construction.").

[72] U.S. Mot. 15.

[73] *Env't Def.*, 369 F.3d at 203.

[74] *Chi. Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 532 (7th Cir. 1997).

[75] *Smith v. Ortiz*, 234 F. App'x 698 (9th Cir. 2007) ("[C]ollateral estoppel will not apply where, *inter alia*, the party to be estopped was not a party to or in privity with a party to the prior action."); *cf. Totemoff*, 905 P.2d at 962-63 (rejecting preclusion of "public lands" issue in prosecution for misconduct on navigable waters).

precluded from" arguing that "public lands" do not include navigable waters.[76] "As a pure question of law," the definition of "public lands" in ANILCA "might result in one answer when [the State] asks the question but another answer when the question is asked by anyone else."[77] Such "anomalous results" are another reason to deny preclusion.[78]

**Fifth**, applying issue preclusion would not aid judicial economy, a key purpose of this judicially created doctrine.[79] "Issue preclusion 'must be evaluated in light of the policy concerns underlying the doctrine. … There is no justification for applying collateral estoppel, which is a flexible, judge-made doctrine, in situations where the policy concerns underlying it are absent.'"[80] Because issue preclusion does not apply to the claims brought by KRITFC, AVCP, and Ahtna, as explained below, the Court must resolve this question of statutory interpretation regardless. Thus, no "judicial resources would be saved by collaterally estopping [the State] from litigating this issue."[81] Nor does

---

[76] *Lutz v. Int'l Ass'n of Machinists & Aerospace Workers*, 121 F. Supp. 2d 498, 504 (E.D. Va. 2000).

[77] *Chi. Truck Drivers*, 125 F.3d at 532.

[78] *Lutz*, 121 F. Supp. 2d at 504.

[79] *See, e.g.*, *Pharm. Care*, 522 F.3d at 447 (rejecting preclusion because the plaintiff trade association "could readily avoid the estoppel consequence of a loss by having one or more of its members bring the lawsuit").

[80] *Alabama v. U.S. Army Corps of Eng'rs*, No. 15-cv-696, 2023 WL 7410054, at *25 (D.D.C. Nov. 9 2023) (cleaned up) (quoting *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 176 (1984) (White, J., concurring)); *see also Quiñones Candelario v. Postmaster Gen. of the U.S.*, 906 F.2d 798, 802 (1st Cir. 1990) ("*[R]es judicata* should not be invoked when its application would not serve its underlying purposes or goals.").

[81] *Haitian Ctrs. Council, Inc. v. McNary*, 969 F.2d 1350, 1356-57 (2d Cir. 1992), *rev'd on other grounds*, 509 U.S. 155.

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                        17
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 31 of 84

it save any party resources, another purpose of issue preclusion.[82] The parties have now

fully briefed the statutory issue and it is ripe for resolution.[83] Applying issue preclusion

thus serves none of the doctrine's purposes.

***Finally***, at a minimum, issue preclusion does not apply to the claims of KRITFC,

AVCP, and Ahtna because those groups and individuals were not parties to the *Katie John*

litigation.[84] These Intervenors apparently seek "nonmutual offensive collateral estoppel,"

which is when "a plaintiff seeks to prevent a defendant from relitigating an issue that the

defendant previously litigated unsuccessfully against a different party."[85] But nonmutual

collateral estoppel does not apply against a state government or state officials. In *United*

*States v. Mendoza*, the Supreme Court held that "nonmutual offensive collateral estoppel

did not apply against the federal government so as to preclude relitigation of the issues in

that case."[86] That is because "the government differs from private litigants in the

geographic breadth of its litigation and in the nature of the issues it pursues."[87] The Ninth

Circuit has held that "*Mendoza*'s rationale applies with equal force" to any "attempt to

---

[82] *See, e.g.*, *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 140 (2015) ("issue preclusion is designed to prevent" litigation that "wastes litigants' resources"); *United States v. Mendoza*, 464 U.S. 154, 158 (1984) ("Collateral estoppel … serves to 'relieve parties of the cost and vexation of multiple lawsuits.'").

[83] *See Hynix Semiconductor Inc. v. Rambus Inc.*, No. 00-cv-20905, 2009 WL 292205, at *6 (N.D. Cal. Feb. 3, 2009) (issue preclusion not applicable where it "would generate no efficiency for the court or the parties").

[84] *See Alaska v. Babbitt*, No. 92-cv-264 (D. Alaska); *John v. United States*, No. 90-cv-484 (D. Alaska).

[85] *State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 713 & n.3 (9th Cir. 2005).

[86] *Id.* at 713 (footnote omitted) (citing *Mendoza*, 464 U.S. at 162).

[87] *Id.*

*United States v. Alaska*        Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.        18
Case 1:22-cv-00054-SLG    Document 122    Filed 12/22/23    Page 32 of 84

assert nonmutual … collateral estoppel against … a state."[88] Accordingly, at a minimum, issue preclusion does not apply to KRITFC's, AVCP's, and Ahtna's claims.

## III.    The State's arguments are not barred by claim preclusion.

The United States and KRITFC argue that the State's Appointments Clause arguments are barred by claim preclusion, and KRITFC alone argues that the State's statutory arguments under ANILCA are barred by claim preclusion.[89] Claim preclusion "'bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action.'"[90] Claim preclusion applies only when there is "'(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties.'"[91] Claim preclusion does not apply here for six reasons.

*First*, and most obvious, *claim* preclusion does not apply because the State raises no "claims." Instead, the State and State officials are the *defendants*, and they are raising *arguments* for why the United States and Intervenors should not prevail on their preemption claims. The United States and KRITFC, as the Plaintiffs, want to use claim preclusion "to

---

[88] *Id.* at 714; *see also Coleman v. Cal. Bd. of Prison Terms*, 228 F. App'x 673, 675-76 (9th Cir. 2007) (holding that the "prisoners cannot use the district court's opinion in this case as offensive nonmutual collateral estoppel against" the California Board of Prison Terms because "offensive nonmutual collateral estoppel [does not apply] against the [state] government"); *Demaree v. Fulton Cty. Sch. Dist.*, 515 F. App'x 859, 863-65 (11th Cir. 2013) ("[S]tate governments are not subject to offensive, non-mutual collateral estoppel." (citing *Hercules Carriers, Inc. v. Fla. DOT*, 768 F.2d 1558, 1579 (11th Cir. 1985)); *Coeur D'Alene Tribe of Idaho v. Hammond*, 384 F.3d 674, 689-90 (9th Cir. 2004) (no preclusion against "Commissioners, sued in their official capacity," because "the Supreme Court [in *Mendoza*] rejected … collateral estoppel against the government").

[89] U.S. Opp. 23-24; KRITFC Opp. 18-21.

[90] *GP Vincent II v. Est. of Beard*, 68 F.4th 508, 514 (9th Cir. 2023).

[91] *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 855 (9th Cir. 2016).

*United States v. Alaska*                                              Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                              19

preclude Defendant[s] as a matter of law from defeating Plaintiff[s'] claim[s]."[92] But claim preclusion "acts *defensively*, to preclude … [a] claim," not offensively to "*prevail on* [a] claim."[93] The United States and KRITFC have "not identified any case in which a plaintiff prevailed on a claim of offensive claim preclusion."[94]

The United States never addresses this obvious problem,[95] and KRITFC does so only briefly in a footnote.[96] According to KRITFC, "'[d]efense preclusion' may apply so long as the conditions 'satisfy the strictures of … claim preclusion.'"[97] But "the Supreme Court has refused to recognize a stand-alone doctrine of 'defense preclusion.'"[98] Nor has the Ninth Circuit, to the State's knowledge. Even if "defense preclusion" were a viable doctrine, it would apply only to the "affirmative defenses" identified in Rule 8(c), such as

---

[92] *Americredit Fin. Servs., Inc. v. Lyons*, No. 19-cv-1045, 2022 WL 135420, at *5 (M.D. Tenn. Jan. 13, 2022).

[93] *Id.* (emphasis in original); *In re Hunt*, 124 B.R. 200, 205 (N.D. Tex. 1991) ("*Res judicata* does not preclude relitigation of individual issues or defenses; it cuts off reprosecution of *claims* and *causes of action*, and is thus understood to be a doctrine of claim preclusion." (emphasis added)).

[94] *Santa Maria City Firefighters Union v. City of Santa Maria*, No. 19-cv-1964, 2022 WL 2198707, at *4 n.5 (C.D. Cal. Feb. 9, 2022) ("Plaintiffs have not identified any case in which a plaintiff prevailed on a claim of offensive claim preclusion, and the Court has been unable to identify such a case. Plaintiffs appear to have conflated claim preclusion with issue preclusion."); *Midwest Operating Eng'rs Welfare Fund v. Allied Stone*, 175 F. Supp. 3d 945, 949 (N.D. Ill. 2016) ("[T]he Funds' attempt to invoke claim preclusion offensively is highly unusual. Claim preclusion is typically a defensive doctrine that bars a party from asserting claims that were brought or could have been brought in a previous case.").

[95] *See* U.S. Opp. 23-24.

[96] KRITFC Opp. 19-20 n.69.

[97] *Id.* (quoting *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S.Ct. 1589, 1595 (2020)).

[98] *In re Greenberg*, 626 B.R. 554, 561 (S.D. Cal. 2021).

*United States v. Alaska*                                          Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                  20
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 34 of 84

"assumption of risk," "fraud," "laches," "statute of frauds," and "statute of limitations."[99] The State is asserting none of those affirmative defenses. It is instead moving for summary judgment because "there is no genuine dispute as to any material fact and the [State] is entitled to judgment as a matter of law."[100]

**Second**, even if the State's arguments could somehow be designated as "claims," there is no "'identity of claims.'"[101] To determine whether there is an "identity of claims," courts consider four factors: "'(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.'"[102] The party asserting claim preclusion "'must carry the burden of establishing all necessary elements.'"[103] "Though all four factors are considered, reliance on the transactional nucleus element is especially appropriate because the element is outcome determinative."[104] Whether two suits arise out of the "'same transactional nucleus'" depends on "'whether they are related to the same set of facts and *whether they could conveniently be tried together*.'"[105]

---

[99] Fed. R. Civ. Proc. 8(c).
[100] Fed. R. Civ. Proc. 56(a).
[101] *ProShipLine*, 609 F.3d at 968.
[102] *Id.*
[103] *Garity*, 828 F.3d at 855.
[104] *Id.* (cleaned up).
[105] *Id.* (emphasis in original).

*United States v. Alaska*  Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.  21
Case 1:22-cv-00054-SLG  Document 122  Filed 12/22/23  Page 35 of 84

Here, the United States' and Intervenors' claims arose from "Defendants' emergency orders purporting to open harvest on the public waters of the Kuskokwim River during the federal closure in 2021 and 2022."[106] These preemption claims "could not have been tried in"[107] *Katie John I* or any other case "address[ing] federal implementation of Title VIII"[108] because the 2021 and 2022 federal orders on the Kuskokwim River occurred *after* them.[109]

The remaining three "identity of claims" factors are also absent. The United States asserts that the State could have "raise[d] an Appointments Clause challenge … in *Katie John*" or in *Alaska v. Federal Subsistence Board*.[110] But no "'rights or interests established in the[se] prior judgment[s] would be destroyed or impaired by prosecution of [this] action,'" the suits don't "'involve infringement of the same right,'" and "'substantially the same evidence is [not] presented in the two actions.'"[111] If the Court finds that the FSB members were improperly appointed, the Secretaries will presumably continue to enforce ANILCA on "public lands" going forward. As for the State's statutory arguments under

---

[106] U.S. Compl. 24; *see supra* 11-12.

[107] *ProShipLine*, 609 F.3d at 968.

[108] U.S. Opp. 24.

[109] *See, e.g.*, *Wild Fish Conservancy v. EPA*, 331 F. Supp. 3d 1210, 1219 (W.D. Wash. 2018) (no claim preclusion, despite "overlapping facts and law," because "without a time machine, the instant case, which challenges a 2011 action, could not have been brought in 2008"); *Monongalia Cty. Coal Co. v. United Mine Workers of Am., Int'l Union*, 416 F. Supp. 3d 587, 594 (N.D. W. Va. 2019) (no claim preclusion, despite "similar" facts, because the "two events … occurred three years apart"); *Garcon v. Van Reeth*, 511 F. App'x 877, 881 (11th Cir. 2013) (no claim preclusion where the relevant events occurred "several years apart").

[110] U.S. Opp. 24.

[111] *ProShipLine*, 609 F.3d at 968.

ANILCA, KRITFC concedes that "'substantially the same evidence'" is not "'presented in the [prior] actions'" and this case.[112] And while a pure issue of law may be the same in both this case and *Katie John I* (whether "public lands" include navigable waters), that is not enough to justify claim preclusion—especially, again, when the State has brought no claims.[113]

   **Third**, claim preclusion does not apply to the State's arguments against KRITFC, AVCP, and Ahtna because they were not parties in the *Katie John* litigation or *Alaska v. Federal Subsistence Board*.[114] Claim preclusion requires "'identity or privity between parties.'"[115] The State's arguments thus could never be precluded as to KRITFC, AVCP, and Ahtna.

   **Fourth**, applying claim preclusion would not "serve the aims of fairness and efficient judicial administration,'" the core purposes of claim preclusion.[116] Because claim preclusion does not apply to the State's arguments against KRITFC, AVCP, and Ahtna, no efficiency is gained by applying it to the State's identical arguments against the United

---

[112] *Id.*; *see* KRITFC Opp. 19.

[113] *See ProShipLine Inc.*, 609 F.3d at 968.

[114] *See Alaska v. FSB*, 544 F.3d 1089 (9th Cir. 2008); *supra* 18.

[115] *Ruiz*, 824 F.3d at 1164.

[116] *Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*, No. 13-cv-8997, 2016 WL 236249, at *6 (S.D.N.Y. Jan. 20, 2016) ("Both *res judicata* and collateral estoppel are flexible doctrines, not to be mechanically applied merely because some of the formal prerequisites for application are present. … Since the doctrine is intended to serve the aims of fairness and efficient judicial administration, it need not be applied mechanically where those ends would not be served." (cleaned up)).

States or AFN.[117] Nor would it be fair to prohibit the State from making these arguments when any other litigant could raise these issues of law in future litigation.[118]

*Fifth*, even if the elements of claim preclusion were satisfied, there is a "traditional exception to res judicata 'where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation.'"[119] As explained above, *Sturgeon* and *Sackett* were "'intervening decision[s]'" that warrant a new determination of the legal issue.[120] There also have been intervening decisions on the Appointments Clause. Most of the key Supreme Court cases were issued within the last few years, including *Lucia v. SEC*,[121] *Seila Law LLC v. CFPB*,[122] and *United States v. Arthrex*.[123]

*Finally*, claim preclusion does not apply to the State's ANILCA arguments against the United States' claims because the United States has forfeited the argument. "'Claim preclusion is an affirmative defense which may be deemed waived if not raised in the pleadings.'"[124] Because the United States' claim preclusion argument applies only to the

---

[117] *See supra* 17-18.
[118] *See supra* 16-17.
[119] *Alvarado-Ochoa v. Ashcroft*, 73 F. App'x 230, 231 (9th Cir. 2003) (quoting *State Farm v. Duel*, 324 U.S. 154, 162 (1945)).
[120] *Id.*; *supra* 12-15.
[121] 138 S.Ct. 2044 (2018).
[122] 140 S.Ct. 2183 (2020).
[123] 141 S.Ct. 1970 (2021).
[124] *Rotec Indus., Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1119 (9th Cir. 2003); *see United States v. Pinillos-Prieto*, 419 F.3d 61, 67 n.5 (1st Cir. 2005) ("[E]ach [party] forfeit[s] the issues that he did not himself raise.").

State's Appointments Clause arguments, the United States cannot benefit from KRITFC's claim preclusion arguments, even if they had merit.

## IV. The State's arguments are not barred by judicial estoppel.

The United States and KRITFC assert that the State's statutory arguments under ANILCA are barred by judicial estoppel. "Judicial estoppel is an extraordinary remedy that should be employed only when a party's inconsistent behavior would otherwise result in a miscarriage of justice."[125] Judicial estoppel "'is often the harshest remedy' that a court can impose for inequitable conduct,"[126] and is "applied with caution to avoid impinging on the truth-seeking function of the court."[127] Judicial estoppel does not apply here for six reasons.

*First*, judicial estoppel applies only to "parties."[128] But the State was not a "party" in *Sturgeon*; it was an *amicus curiae*. It is hornbook law that "[a]n amicus curiae is not a party to litigation."[129] The "classic role of amicus curiae" is to "assis[t] in a case of general public interest, supplemen[t] the efforts of counsel, and dra[w] the court's attention to law

---

[125] *Montrose Med. Grp. Participating Sav. Plan*, 243 F.3d at 784 (cleaned up).

[126] *Id.*

[127] *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir.1990).

[128] *See, e.g.*, *Pegram*, 530 U.S. at 227 n.8; *New Edge Network*, 461 F.3d at 1114; Fed. Prac. & Proc. §4477.

[129] *Miller-Wohl Co., Inc. v. Mont. Comm'r of Labor & Indus., State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982); *GST Tuscon Lightwave, Inc. v. City of Tuscon*, No. 97-15328, 1998 WL 42251, at *3 n.1 (9th Cir. Feb. 2, 1998) ("[A]n amicus curiae is not a party to the litigation, and we are not bound to provide relief to the amicus apart from the relief appropriate to the actual parties." (citation omitted)); *Kingdom v. Biden*, No. 21-cv-243, 2021 WL 4956507, at *1 (D. Haw. Sept. 30, 2021) ("[An] amicus may not assume the functions of a party and may not initiate, create, extend, or enlarge the issues.").

*United States v. Alaska*                                     Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                            25
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 39 of 84

that escaped consideration."[130] An *amicus curiae* has "never been recognized, elevated to, or accorded the full litigating status of a named party or a real party in interest."[131]

Neither the United States nor KRITFC provides a single case in which judicial estoppel was applied against an *amicus curiae*.[132] Nor is the State aware of any. Because judicial estoppel applies only to "parties," the doctrine is inapplicable here.[133]

***Second***, "judicial estoppel does not preclude the [State] from changing its interpretation" of ANILCA because "public policy considerations allow the government to change its position in ways that might be inappropriate if merely a matter of private

---

[130] *Miller-Wohl*, 694 F.2d at 204; *Wildearth Guardians v. USFS*, No. 20-cv-223, 2021 WL 6274439, at \*2 (E.D. Wash. May 19, 2021) ("Generally, amicus curiae is an impartial individual or entity who suggests the interpretation and status of the law, gives information concerning it, and advises the Court in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another." (cleaned up)).

[131] *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991) (citing *Miller-Wohl*, 694 F.2d at 204). Indeed, when the State filed an amicus brief in the Ninth Circuit in *Sturgeon*, the United States urged the Ninth Circuit to ignore the State's arguments that "ha[d] not been presented by the parties to this litigation" because "[t]his Court generally does not review issues raised only by an *amicus curiae*." Federal Appellees' Response to Supplemental Brief for the State of Alaska, *Sturgeon II*, 2016 WL 6081578, at \*4 n.2 (C.A.9).

[132] The United States argues that judicial estoppel applies to "'litigant[s]'" U.S. Opp. 22 n.12 (quoting *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997)). But a "litigant" is a "*party* to a lawsuit." Black's Law Dictionary, *Litigant* (11th ed. 2019) (emphasis added); *see also Helfand*, 105 F.3d at 534 ("'Judicial estoppel … precludes a *party*….'" (emphasis added)). The United States' only other example is when judicial estoppel applies to "'a party that is in privity to a party in a previous litigation,'" which is "well-established." *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996 (9th Cir. 2012).

[133] Courts have also refused to apply other estoppel doctrines to an *amicus curiae*. *See, e.g.*, *In re Megan-Racine Assocs., Inc.*, 176 B.R. 687, 694 (N.D.N.Y. 1994) ("Hudson's amicus status does not make it a party to the proceedings, thus, neither collateral estoppel nor *res judicata* can be applied to bind Hudson.").

*United States v. Alaska*                                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                              26
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 40 of 84

interest."[134] The Ninth Circuit's opinion in *New Edge Network, Inc. v. FCC* is directly on point. There, the FCC had previously argued before the Supreme Court that "the language of §252(i) [of the Telecommunications Act] was unambiguous," but "the FCC's current position [was] that §252(i) [was] ambiguous."[135] Because the FCC was a government agency, the Ninth Circuit held that "judicial estoppel [did] not preclude the FCC from changing its interpretation of [the statute]."[136] So too here.[137]

**Third**, judicial estoppel doesn't apply because the State's position here is not "'clearly inconsistent with its earlier position.'"[138] The State's primary argument in its amicus brief in *Sturgeon* was that "[t]he *Katie John* decisions [were] not at issue in [Sturgeon's] appeal," and so the Supreme Court did not need to "directly address the prior circuit holdings in order to resolve this appeal."[139] But this Court *does* need to address the continued validity of the *Katie John* decisions here.[140] These positions are not inconsistent.

---

[134] *New Edge Network*, 461 F.3d at 1114.

[135] *Id.*

[136] *Id.*

[137] Applying judicial estoppel here would be especially ironic because the State's attempt to preserve *Katie John* in *Sturgeon* was *itself* a change in position. The State's longstanding position was that "public lands" did not include "navigable waters." *See, e.g.*, *Katie John III*, 720 F.3d at 1221-24.

[138] *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 40 (9th Cir. 2022).

[139] State Amicus Br. 29, *Sturgeon II*, 2018 WL 4063284 (U.S.).

[140] *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1190 (9th Cir. 2000) (judicial estoppel "'may apply'" only if "a litigant's current position is manifestly inconsistent with a prior position such as to 'amount to an affront to the court'").

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                        27
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 41 of 84

***Fourth***, judicial estoppel does not apply because there is no "'risk of inconsistent court determinations.'"[141] The United States and KRITFC discuss in detail the various arguments raised in the State's amicus brief in *Sturgeon*.[142] But for judicial estoppel to apply, "'the party [must have] succeeded in persuading a court to accept that party's earlier position.'"[143] The only possible argument that the Supreme Court accepted in *Sturgeon* was that "ANILCA's subsistence-fishing provisions" were "not at issue" and so the Court need not "disturb the Ninth Circuit's holdings."[144] Because the Supreme Court adopted nothing else from the State's brief, there is no possible risk of inconsistent court determinations: Nothing the Court does here will contradict the fact that "ANILCA's subsistence-fishing provisions" were "not at issue" in *Sturgeon*.[145] To the contrary, a ruling for the State would be in *harmony* with *Sturgeon* because the two opinions would consistently interpret

---

[141] *New Edge Network*, 461 F.3d at 1114 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)); *see, e.g.*, *New Hampshire*, 532 U.S. at 755 ("Were we to accept New Hampshire's latest view, the 'risk of inconsistent court determinations' would become a reality. We cannot interpret 'Middle of the River' in the 1740 decree to mean two different things along the same boundary line without undermining the integrity of the judicial process." (citation omitted)).

[142] U.S. Opp. 19-23; KRITFC Opp. 7-15.

[143] *Harbor Breeze*, 28 F.4th at 40.

[144] *Sturgeon II*, 139 S.Ct. at 1080 n.2; *compare with* State Amicus Br. 29-35, *Sturgeon II*, 2018 WL 4063284 (U.S.).

[145] *Sturgeon II*, 139 S.Ct. at 1080 n.2; *see, e.g.*, *New Edge Network*, 461 F.3d at 1114 ("Although the FCC argued in *AT&T Corp.* that the language of §252(i) was unambiguous, the Supreme Court did not adopt that position. Thus, the FCC's current position that §252(i) is ambiguous 'introduces no risk of inconsistent court determinations.'" (footnote omitted) (quoting *New Hampshire*, 532 U.S. at 751)); *United Steelworkers of Am. v. Retirement Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 563-64 (9th Cir. 2008) (no judicial estoppel because the first court "never *held* that ASARCO was a necessary party to the litigation").

*United States v. Alaska*                                          Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                              28
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 42 of 84

ANILCA. Nor can the Court infer that the Supreme Court accepted the State's other arguments.[146]

**_Fifth_**, judicial estoppel does not apply because the State's amicus brief has not given the State an unfair advantage here. For judicial estoppel to apply, "'the party seeking to assert an inconsistent position [must] derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'"[147] But the State "did not gain any advantage or impose a detriment" on the United States; "[i]nstead, the [State] made [Sturgeon's] case _more challenging_."[148] _Katie John I_'s reasoning was wafer thin, supported mainly by agency deference under _Chevron_ and a focus on ANILCA's supposed purpose. If the State had been solely focused on prevailing in _Sturgeon_, the far easier thing to do would have been to ignore or jettison _Katie John_—not to try to save it.

Moreover, as AFN points out, "John Sturgeon made these same points," telling the Supreme Court that it could rule for him without addressing _Katie John_.[149] The United States and Intervenors thus are in "no worse position now than [they] would have been" if the State had not made its arguments in _Sturgeon_.[150]

---

[146] _Arizona v. Tohono O'odham Nation_, 818 F.3d 549, 559 (9th Cir. 2016) (second judicial estoppel factor not satisfied because "the arbitrator expressed no view" on the argument that was made); _Perry v. Blum_, 629 F.3d 1, 11 (1st Cir. 2010) ("The showing of judicial acceptance must be a strong one. … 'The insistence upon a court having accepted the party's prior inconsistent position ensures that judicial estoppel is applied in the narrowest of circumstances.'" (listing cases)).

[147] _Harbor Breeze_, 28 F.4th at 40.

[148] _Lucero v. Holland_, 902 F.3d 979, 988 (9th Cir. 2018) (emphasis added).

[149] AFN Opp. 19; _see also_ Fed. Prac. & Proc. §3975.1 ("In ordinary circumstances, an amicus will not be permitted to raise issues not argued by the parties.").

[150] _United States v. Kim_, 806 F.3d 1161, 1167-68 (9th Cir. 2015).

_United States v. Alaska_                                           Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                              29
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 43 of 84

***Finally***, the United States cannot benefit from judicial estoppel because it lacks the "clean hands necessary to impose equitable judicial estoppel."[151] "[J]udicial estoppel is an equitable doctrine and like all equitable doctrines is subject to the maxim in equity that a party seeking equitable relief should proceed before the court with clean hands."[152] "Thus, it is a prerequisite to asserting judicial estoppel that the party asserting judicial estoppel be blameless and free from any assertion of inconsistent litigation positions."[153] The United States and Intervenors are inexplicably silent about the United States' arguments in *Sturgeon*, which were the *exact opposite* of those it is making now. In *Sturgeon*, the United States argued "that the term 'public lands' can[not] be given 'one meaning in the context of the subsistence-use-related sections of ANILCA and a different meaning' elsewhere."[154] Now it argues that the term "public lands" has different meanings in different contexts.[155] The United States cannot invoke judicial estoppel against the State given these inconsistent statements.

## V. The State's arguments are not barred by the statute of limitations for suits against the United States.

KRITFC (but not the United States) asserts that the State's arguments are barred by 28 U.S.C. §2401, "the 6-year statute of limitations on claims against the federal

---

[151] *Farkas*, 2017 WL 10311283, at *9; *see Harbor Breeze*, 28 F.4th at 40 (no judicial estoppel where "each side may have opportunistically shifted its arguments").

[152] *Farkas*, 2017 WL 10311283, at *9.

[153] *Id.*

[154] State Mot. 19.

[155] U.S. Opp. 25-29 & n.16; *see also* KRITFC Opp. 26-28, 31-32 (same); AFN Opp. 23-24, 26-31 (same).

*United States v. Alaska*                                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                              30
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 44 of 84

government."[156] Section 2401 provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."[157] This argument fails for three reasons.

**First**, Section 2401 does not apply because the State and the State officials are the *defendants*, not the plaintiffs. Section 2401 on its face bars only a "civil action commenced against the United States." But the State did not sue the United States. Nor does the State even have counterclaims against the United States. Instead, the State is raising *arguments* for why it is entitled to summary judgment as a matter of law. Section 2401 simply has no application here.[158]

KRITFC contends that the State's arguments should be treated as time-barred "claims" under *City of Saint Paul v. Evans*.[159] But that case is not on point. There, the Ninth Circuit held that a city's defenses were time-barred under Alaska law because the city had brought "a time-barred declaratory judgment action, wait[ed] for the defendant to assert its interests in the form of a counterclaim, and then rais[ed] the identical time-barred claims as defenses."[160] The Ninth Circuit refused to allow the city to "evade the limitations

---

[156] KRITFC Opp. 21-25.

[157] 28 U.S.C. §2401(a).

[158] *See, e.g.*, *Golden Gate Way, LLC v. Enercon Servs., Inc.*, No. 20-cv-3077, 2020 WL 4804933, at *2 (N.D. Cal. Aug. 18, 2020) ("A cause of action is not the same thing as an affirmative defense. 'To use the statute of limitations to cut off the consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation.'" (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 72 (1956)).

[159] KRITFC Opp. 23-25 (citing *City of St. Paul*, 344 F.3d at 1035-36).

[160] *City of St. Paul*, 344 F.3d at 1031.

*United States v. Alaska*                                          Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                              31
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 45 of 84

statut[e]" through this "jurisdictional jujitsu."[161] The City was the "aggressor in this litigation" because it "initiated the lawsuit" and "'disturbed the equilibrium between the parties' by first challenging the validity of the Agreement in court."[162] The defendants' counterclaims were filed only "in response to the City's claims, not as affirmative claims for relief."[163] And the "City's defenses to [the defendants'] counterclaims [were] mirror images of its time-barred claims."[164] Although the longstanding "maxim [is] that a statute of limitations should be used only as a shield, not a sword,"[165] in these circumstances, the City had "abandoned its right to seek solace in the status of a defendant."[166]

None of those unique facts are present here. The State did not "initiat[e] the lawsuit"; the United States did.[167] Nor is the State "simultaneously or in parallel litigatio[n] seeking affirmative recovery on an identical claim."[168] Indeed, even the State's abandoned counterclaims did not implicate the "public lands" and navigable waters issue.[169] There is simply no similar evidence of the "subterfuge" that occurred in *City of Saint Paul*.[170]

---

[161] *Id.*
[162] *Id.* at 1035.
[163] *Id.*
[164] *Id.*
[165] *Id.* at 1033.
[166] *Id.* at 1036.
[167] *Id.* at 1035.
[168] *Id.*
[169] State Answer 15-18.
[170] 344 F.3d at 1035.

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                    32
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 46 of 84

**Second**, even if KRITFC's argument had merit, the United States "waived this non-jurisdictional defense by failing to assert it."[171] The United States thus cannot benefit from KRITFC's statute-of-limitations argument.[172]

**Third**, even if KRITFC's argument had merit, the statute of limitations would not apply to the State's arguments against Intervenors' claims. Section 2401 applies only to "civil action[s] commenced against *the United States*."[173] Section 2401 thus could never bar the State's arguments against the Intervenors' claims.

## VI. The State's orders are not preempted because the Kuskokwim River is not "public land" under ANILCA.

ANILCA's subsistence priority applies only to "public lands," which are "lands, waters, and interests therein … the title to which is in the United States."[174] And there is no dispute that the State's orders are not preempted if the Kuskokwim River is not "public land." The United States and Intervenors argue that the Kuskokwim River is "public land" under the reserved water rights doctrine. But that argument is foreclosed by *Sturgeon*. As a backup, Intervenors lob multiple theories, most of which are either foreclosed by *Katie John I* or are so implausible that they are being raised for the first time here. Because the Kuskokwim River is not "public land," the State's orders are not preempted.

---

[171] *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1075 n.6 (9th Cir. 2019); *see, e.g.*, *USPS v. Am. Postal Workers Union, AFL-CIO*, 893 F.2d 1117, 1122 (9th Cir. 1990) (statute of limitations defense waived when the party "did not rely on the [statute of] limitations period in opposing the [plaintiff's] motion for summary judgment").

[172] *Pinillos-Prieto*, 419 F.3d at 67 n.5 ("[E]ach [party] forfeit[s] the issues that he did not himself raise.").

[173] 28 U.S.C. §2401(a) (emphasis added).

[174] 16 U.S.C. §3102(1)-(3); *Sturgeon II*, 139 S.Ct. at 1076-77.

### A. The Kuskokwim River is not "public land" under the reserved water rights doctrine.

#### 1. *Sturgeon*—not *Katie John*—controls this case.

The United States and Intervenors argue that the Kuskokwim River is "public land" because the United States holds a "federal reserved water right in the Kuskokwim River" and this right is an "interest" in the River.[175] But this argument is foreclosed by *Sturgeon*.[176] Public lands are "lands, waters, and interests therein … the *title* to which is in the United States."[177] As the Supreme Court made clear, the United States cannot hold "title" to reserved water rights.[178] Indeed, the United States and Intervenors appear to concede that the United States has no "title" to a reserved water right.[179] For good reason. Reserved water rights are "'usufructuary' in nature, meaning that they are rights for the Government to use—whether by withdrawing or maintaining—certain waters *it does not own*."[180] That should end the argument.

---

[175] U.S. Opp. 26-27; KRITFC Opp. 31-32; AFN Opp. 32-33; Ahtna Opp. 31; AVCP Opp. 28-30.

[176] State Mot. 28-30.

[177] 16 U.S.C. §3102(1)-(3) (emphasis added).

[178] *Sturgeon II*, 139 S.Ct. at 1078-79.

[179] *See* U.S. Opp. 27 ("[I]t is not possible to hold title to navigable waters, but only to hold 'interests' in them."); AFN Opp. 30-31 ("[N]o one holds title to waters. … [T]he federal government [has an] interest in navigable waters.").

[180] *Sturgeon II*, 139 S.Ct. at 1079 (emphasis added).

*United States v. Alaska*
Defs' Reply in Supp. of Mot. for Sum. J.

Case No.: 1:22-cv-54-SLG
34

Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 48 of 84

The United States argues—without a single citation for support—that it has a federal reserved water right[181] that is not "limited to maintaining [an] amount of water" but extends to subsistence fishing under Title VIII.[182] But this argument too is foreclosed by *Sturgeon*. Even if the United States could hold "title" to reserved water rights, such an interest would be "limited" and would "not give the Government plenary authority over the waterway to which it attaches."[183] A reserved water right "merely enables the Government to take or maintain the specific 'amount of water'—and 'no more'—required to 'fulfill the purpose of [its land] reservation.'"[184] Because Blihovde's orders do not "preven[t] the 'depletion or diversion' of waters in the River," the United States' purported "reserved right could not justify [Blihovde's orders] on the [Kuskokwim] River."[185]

No doubt recognizing their difficult task of distinguishing *Sturgeon*, the United States and Intervenors urge the Court to ignore the Supreme Court's reasoning and instead follow *Katie John I*. There, the Ninth Circuit held that ANILCA's definition of 'public lands' includes those "navigable waters in which the United States has an interest by virtue

---

[181] The State does not agree that "the United States holds a federal reserved water right in the Kuskokwim River." U.S. Opp. 27. Federal reserved water rights are not established until "an adjudicator … allocate[s] use of water among the claimants," and no such adjudication has happened for the Kuskokwim River. *Katie John III*, 720 F.3d at 1227. In any event, whether the United States has reserved water rights in the Kuskokwim is irrelevant because (1) the United States doesn't have "title" to such rights; and (2) even if it did, those reserved water rights would not extend to the regulation of subsistence fishing.

[182] U.S. Opp. 27-28; *see also* KRITFC Opp. 32-33; AVCP Opp. 28-29.

[183] *Sturgeon II*, 139 S.Ct. at 1079.

[184] *Id.*

[185] *Id.* at 1079-80.

of the reserved water rights doctrine."[186] But *Katie John I* is "clearly irreconcilable" with *Sturgeon*.[187] A district court, like a circuit panel, is "bound to follow the reasoning of [a circuit decision] unless it ha[s] been effectively overruled or [is] clearly irreconcilable with a case from the relevant court of last resort."[188] Here, this Court cannot "'apply [Ninth Circuit] precedent without running afoul of [*Sturgeon*].'"[189]

    The United States and Intervenors rely heavily on footnote two in *Sturgeon*, where the Supreme Court stated that it was not "'disturb[ing]'" the *Katie John* opinions.[190] But the United States and Intervenors give far too much weight to this footnote. The Supreme Court didn't hold that the *Katie John* opinions were correct or reconcilable with *Sturgeon*. The Court simply avoided addressing them because "ANILCA's subsistence-fishing provisions" were "not at issue in [the] case."[191] But these provisions *are* at issue here, and so the Court must reconcile *Katie John* with the *reasoning* of *Sturgeon*.

    The Supreme Court has made similar statements elsewhere, and the lower courts have not taken them as a license to ignore the rest of the opinion. In *United States v. Windsor*, for example, the Supreme Court found that the federal Defense of Marriage Act

---

[186] *Katie John I*, 72 F.3d at 701-04.

[187] *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).

[188] *United States v. Gonzalez-Zotelo*, 556 F.3d 736, 740-41 (9th Cir. 2009) (cleaned up). The United States is wrong to suggest that this standard applies only to a "three-judge Circuit panel" and not to a "district court." U.S. Opp. 18; *see, e.g.*, *Gonzalez-Zotelo*, 556 F.3d at 740-41; *Smith v. Helzer*, 614 F. Supp. 3d 668, 683 (D. Alaska 2022) (finding a Ninth Circuit decision was "'clearly irreconcilable'" with a Supreme Court decision).

[189] *United States v. Valencia-Mendoza*, 912 F.3d 1215, 1222 (9th Cir. 2019).

[190] U.S. Opp. 26 (quoting *Sturgeon II*, 139 S.Ct. at 1080 n.2); *see* KRITFC Opp. 25-26; AFN Opp. 22-23; Ahtna Opp. 32-35; AVCP Opp. 25-26.

[191] *Sturgeon II*, 139 S.Ct. at 1080 n.2.

violated "basic due process and equal protection principles" by defining marriage as a

"'legal union between one man and one woman as husband and wife.'"[192] In doing so, the

Supreme Court went "out of its way" to note that the opinion did not affect state laws

prohibiting same-sex marriages, stressing that its "opinion and its holding [were] confined

to those lawful marriages" already recognized by states where same-sex marriages were

legal.[193] Despite this explicit reservation, nearly every court of appeals in the country soon

applied *Windsor*'s reasoning to hold that "excluding same-sex couples from marriage

violates the Constitution."[194] The Ninth Circuit did too.[195] In *Latta v. Otter*, the Ninth

Circuit refused to follow Supreme Court precedent rejecting a challenge to a Minnesota

law banning same-sex marriages because *Windsor* "not only 'suggest[ed]' but ma[de] clear

that" the law had changed.[196] This was true even though "the Court made explicit in

*Windsor* … that it was not deciding whether states were required to allow same-sex couples

to marry" because "the question … was not presented to it."[197] And the Supreme Court

---

[192] 570 U.S. 744, 752, 769 (2013).

[193] *Id.* at 775; *see id.* at 776 (Roberts, C.J., dissenting) (noting that the majority opinion went "out of its way to make this [distinction] explicit").

[194] *Obergefell v. Hodges*, 576 U.S. 644, 663 (2015); *see, e.g.*, *Baskin v. Bogan*, 766 F.3d 648, 659 (7th Cir. 2014) ("[*Windsor*] held unconstitutional the denial of all federal marital benefits to same-sex marriages recognized by state law. The Court's criticisms of such denial apply with even greater force to Indiana's [marriage] law."); *Campaign for S. Equal. v. Bryant*, 64 F. Supp. 3d 906, 926 (S.D. Miss. 2014) ("Although *Windsor* does not address State [marriage laws] … its language leaves no room to allow homosexual citizens, and the children they love and rear, to be treated as second-class citizens. *Windsor* compels us to recognize gay and lesbian couples' substantive due process right to marry.").

[195] *Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014).

[196] *Id.* at 466 (citing *Baker v. Nelson*, 409 U.S. 810 (1972)).

[197] *Id.* at 466 n.6.

*United States v. Alaska*                                  Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                37
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 51 of 84

later agreed, relying on *Windsor* to find state laws prohibiting same-sex marriage unconstitutional.[198]

Similarly, in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, the Supreme Court held that Missouri violated a church's free exercise rights when it denied the church a grant to buy rubber playground surfaces.[199] In a footnote, the Court limited its holding to the facts of the case: "This case involves express discrimination based on religious identity with respect to playground resurfacing. We do not address religious uses of funding or other forms of discrimination."[200] Yet even though *Trinity Lutheran* was expressly limited to "playground resurfacing," lower courts have since applied the opinion's reasoning to find similar free-exercise violations in other contexts.[201] So too has the Supreme Court.[202]

The same principles apply here. *Sturgeon* itself did not "disturb" the *Katie John* opinions because they were "not at issue in th[e] case."[203] But they *are* at issue here, and so this Court must determine whether *Sturgeon*'s reasoning is reconcilable with *Katie John I.*

---

[198] *Obergefell*, 576 U.S. at 668.

[199] 582 U.S. 449, 453-57 (2017).

[200] *Id.* at 465 n.3.

[201] *See, e.g.*, *A.H. ex rel. Hester v. French*, 985 F.3d 165, 178-80 (2d Cir. 2021); *Dahl v. Bd. of Trustees of W. Mich. Univ.*, 15 F.4th 728, 731-33 (6th Cir. 2021).

[202] *See Carson v. Makin*, 596 U.S. 767, 780 (2022) ("The 'unremarkable' principles applied in *Trinity Lutheran* … suffice to resolve this case. … Maine's tuition assistance program—like the program in *Trinity Lutheran*—'effectively penalizes the free exercise' of religion."); *Espinoza v. Mont. Dep't of Revenue*, 140 S.Ct. 2246, 2255 (2020) (similar).

[203] *Sturgeon II*, 139 S.Ct. at 1080 n.2.

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                              38
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 52 of 84

The United States and Intervenors argue that this Court can adopt a different definition of "public lands" than the Supreme Court did in *Sturgeon* because *Sturgeon* dealt with Title I of ANILCA and this case deals with Title VIII of ANILCA.[204] But as the United States itself once explained, ANILCA "forecloses" the argument that the term "public lands" can be given "one meaning in the context of the subsistence-use-related sections of ANILCA and a different meaning" elsewhere.[205] ANILCA contains a definitional section for terms "[a]s used in this Act" that sets out the meaning of "public lands" throughout ANILCA.[206] Accordingly, the Supreme Court held in *Amoco Production* that "the same definition of 'public lands' which defines the scope of Title VIII"—ANILCA's subsistence-use provisions—"applies as well to the rest of the statute."[207] That holding reflects the principle that "'[w]hen a statute includes an explicit definition, [the Court] must follow that definition.'"[208] And when a statute says how its definition applies, that instruction "[l]eav[es] no doubt as to the definition's reach."[209] The United States put it best in *Sturgeon*: any argument that the term "public land" can mean different things

---

[204] *See* U.S. Opp. 27-28 & n.16; KRITFC Opp. 26-28, 31-32; AFN Opp. 23-24, 27.

[205] Respondents Br. 49, *Sturgeon II*, 2018 WL 4381223 (U.S.); *see also* State Mot. 19 n.101.

[206] 16 U.S.C. §3102(1)-(3). *Compare id.* (defining terms "[a]s used in this Act") *with* 16 U.S.C. §3162 (defining terms "[f]or purposes of this subchapter").

[207] *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 550-51 (1987); *id.* at 546 n.13 ("Section 102 provides that the definitions apply to the entire Act, except" in circumstances not relevant here); *see* Respondents Br. 49-50, *Sturgeon II*, 2018 WL 4381223 (U.S.).

[208] *Digital Realty Trust, Inc. v. Somers*, 583 U.S. 149, 160 (2018).

[209] *Id.*; *see* 16 U.S.C. §3102(1)-(3) (defining "public lands" "[a]s used in this Act").

"*cannot be squared* with ANILCA's single definition of 'public lands' that applies across the Act's subsistence-use and conservation provisions."[210]

As a fallback, the United States argues that Title III of ANILCA "directed that the [Yukon Delta National Wildlife] Refuge 'shall be managed … to provide … for continued subsistence uses by local residents,'"[211] and so "even if Title VIII's more specific subsistence use regulatory scheme were deemed inapplicable to navigable waters, federal Refuge managers would independently be required by Title III's command to provide for continued subsistence uses within the Refuge."[212] That is wrong. Section 303 of ANILCA does nothing more than "establis[h] or redesignat[e]" areas of land as "units of the National Wildlife Refuge System," and it describes "[t]he *purposes* [of] the Yukon Delta National Wildlife Refuge."[213] The subsistence priority that applies on the Refuge is in Title VIII of ANILCA, not Title III.[214] Moreover, even if Section 303 did impose a separate subsistence priority, it wouldn't apply here because the Refuge includes only "submerged lands …

---

[210] Respondents BIO 17, *Sturgeon II*, 2018 WL 2129796 (U.S.); *see also Sturgeon*, 872 F.3d at 934 (Because "ANILCA's definition of 'public lands' applies throughout the statute," it would be "anomalous" if the definition of "public lands" in Title VIII of ANILCA "employ[ed] a different construction of 'public lands' than applicable elsewhere in ANILCA."); Brief of *Amici Curiae* Alaska Native Subsistence Users 22-23, *Sturgeon II*, 2018 WL 4611058 (U.S.) (noting that any "attempt to distinguish the definition of 'public lands' for subsistence and other purposes is not persuasive").

[211] U.S. Opp. 25 (quoting ANILCA, Pub. L. No. 96-487, §303(7)(B)(iii), 94 Stat. 2371, 2392-93 (1980)).

[212] U.S. Opp. 25 n.13; *see also* KRITFC Opp. 32-33; AVCP Opp. 28-29.

[213] Pub. L. No. 96-487, §303(7)(B), 94 Stat. at 2389, 2392-93 (emphasis added).

[214] *See id.* §804, 94 Stat. at 2423.

*United States v. Alaska*                                                  Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                          40
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 54 of 84

[that] were retained in Federal ownership at the time of statehood."[215] That doesn't include navigable waters.[216]

The United States and Intervenors have no response to *Sackett v. EPA*. Just last summer, the Supreme Court held that Congress must "'enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power,'" and the "[r]egulation of land and water use lies at the core of traditional state authority."[217] The United States and Intervenors never deny that *Sackett* requires them to identify "'exceedingly clear language'" in ANILCA that authorizes the federal government to impose a subsistence priority on navigable waters.[218] Yet the United States and Intervenors never argue that ANILCA satisfies this standard. For good reason: Even the *Katie John I* panel recognized that, "ANILCA's language and legislative history *do not give us the clear direction* necessary to find that Congress spoke to the precise question of which navigable waters are public lands."[219] *Sackett* thus confirms that the Kuskokwim River is not "public land" under ANILCA.

## 2. ANILCA's supposed "purpose" cannot override the statute's text.

Recognizing the difficulty of their textual arguments, the United States and Intervenors retreat to Congress's supposed "purpose," arguing that not applying the subsistence priority to navigable waters would "contradict congressional intent and have

---

[215] *Id.* §303(7)(A), 94 Stat. at 2392.
[216] *See* State Mot. 28.
[217] *Sackett*, 598 U.S. at 679 (quoting *USFS v. Cowpasture River Preservation Ass'n*, 140 S.Ct. 1837, 1849-50 (2020)).
[218] *Id.*
[219] *Katie John I*, 72 F.3d at 702 (emphasis added).

disastrous consequences for rural Alaskans."[220] To begin, Congress's supposed "intentions" and issues of "public policy" cannot trump the text of the statute. "It is 'quite mistaken to assume' … that any interpretation of a law that does more to advance a statute's putative goal 'must be the law.'"[221] "Laws are the product of 'compromise,' and no law 'pursues its purposes at all costs.'"[222] "Vague notions of a statute's 'basic purpose' are inadequate to overcome the words of its text regarding the specific issue under consideration."[223] This Court must "presume" that "the legislature says what it means and means what it says."[224]

In any event, "it isn't exactly difficult to imagine that a rational Congress might have sought" to exclude navigable waters from the definition of "public lands."[225] Unlike the United States' and Intervenors' interpretation, the State's reading of ANILCA establishes a bright-line definition of "public lands." What is far more implausible is that

---

[220] U.S. Opp. 28-29; *see* KRITFC Opp. 28-31; AFN Opp. 28, 33; AVCP Opp. 30-31.

[221] *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023) (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017)).

[222] *Id.* (cleaned up) (quoting *Henson*, 582 U.S. at 89). Indeed, "ANILCA's primary purpose was to complete the allocation of federal lands in the State of Alaska," not to establish a subsistence priority for Natives. *Amoco Prod.*, 480 U.S. at 549.

[223] *Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 150 (2016) (cleaned up); *see* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 343 (2012) (discussing the "false notion that the spirit of a statute should prevail over its letter").

[224] *Henson*, 582 U.S. at 89 (cleaned up).

[225] *Luna Perez*, 598 U.S. at 150.

Congress intended to adopt a "problematic" and "ill-fitted" test for defining "public lands" based on reserved water rights.[226]

Nor would applying the subsistence priority to navigable waters "void Title VIII"[227] or disregard Congress's support for the "'continued subsistence uses on the public lands by Native and non-Native rural residents.'"[228] Congress was not "merely waving its hand in the general direction" of Alaskan lands and waters when it "defined the scope of ANILCA" to apply only to "public lands."[229] Congress supported "continued subsistence uses *on the public lands*."[230] And a ruling for the State does nothing to undermine subsistence activities on these lands. The United States owns about 60% of the total area of Alaska, an astounding 222 *million* acres.[231] Significant subsistence hunting, trapping,

---

[226] *Katie John III*, 720 F.3d at 1245 ("*Katie John I* was a problematic solution to a complex problem, in that it sanctioned the use of a doctrine ill-fitted to determining which Alaskan waters are 'public lands' to be managed for rural subsistence priority under ANILCA.").

[227] AFN Opp. 46.

[228] U.S. Opp. 28-29 (quoting 16 U.S.C. §3111(1)).

[229] *Amoco Prod.*, 480 U.S. at 548.

[230] 16 U.S.C. §3111(4) (emphasis added); *see also id.* §3111(1) ("Congress finds and declares that … the continuation of the opportunity for subsistence uses by rural residents of Alaska, including both Natives and non-Natives, *on the public lands* … is essential." (emphasis added)).

[231] Fact Sheet, *Title: Land Ownership in Alaska*, Alaska Dep't of Nat'l Res. (Mar. 2000), https://bit.ly/3QysrG3.

*United States v. Alaska*                                          Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                              43
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 57 of 84

and other activities occur on these lands.[232] These federal lands also include non-navigable lakes and waterways, which have long provided opportunities for subsistence fishing.[233]

True, applying the subsistence priority to navigable waters would extend ANILCA's reach. But Congress didn't do that. "Had Congress sought to" apply the subsistence priority more broadly to state-owned navigable waters, it easily "could have drafted" ANILCA to do that.[234] Its decision not to must be respected, especially because Congress must "'enact exceedingly clear language'" before it strips states of their "traditional state authority" to regulate their waters.[235] Indeed, "Congress clearly did not state in ANILCA that subsistence uses are always more important" than other interests; "rather, it expressly declared that preservation of subsistence resources is *a* public interest."[236]

Even if it mattered to the statutory analysis, Intervenors' hyperbolic predictions about the future of Native fishing opportunities are wrong and disappointing.[237] State law *mandates* that ADF&G provide reasonable opportunities for subsistence fishing and a

---

[232] *See, e.g.*, Dkt. 111-5 at 9-10 (discussing subsistence hunting of moose, caribou, and deer).

[233] *Alaska Land Management: Resolving Ownership of Submerged Lands* at 1, U.S. Gov't Accountability Off. (July 27, 2023), https://bit.ly/3RvLVdx ("Alaska contains over 12,000 rivers and more than 3 million lakes, with over 14 percent of the state's total square miles consisting of waterways."); Off. of Subsistence Mgmt., *Federal Subsistence Fisheries Regulations* at 60, 67, DOI (Apr. 1, 2021), https://bit.ly/41jJv6l (discussing subsistence fishing opportunities for non-navigable "lakes and ponds").

[234] *Montanile*, 577 U.S. at 150.

[235] *Sackett*, 598 U.S. at 679 (quoting *Cowpasture River Preservation Ass'n*, 140 S.Ct. at 1849-50); *see also Foster-Fountain Packing Co. v. Haydel*, 278 U.S. 1, 11 (1928) (States have the traditional "power to contro[l] the game and fish within [their] borders … in [their] sovereign capacity as representative of the people").

[236] *Amoco Prod.*, 480 U.S. at 546 (emphasis in original).

[237] *See, e.g.*, AVCP Opp. 31 (predicting "a disaster for subsistence users").

*United States v. Alaska*                                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                          44

priority for subsistence fishing over other uses.[238] Indeed, a ruling for the State would likely lead to *more* subsistence fishing opportunities for Alaska Natives because state law does not limit subsistence fishing to "rural" residents. As the Ninth Circuit has recognized, "many of the Native Alaskans who feed their families in significant part by hunting and fishing live in the larger towns and cities, not in the rural areas, so they do not get the benefit of the 'rural residents' preference."[239] Alaska Natives (both rural and urban) would have the right to return to the Kuskokwim River and elsewhere to continue practicing the traditions and customs of their culture.[240]

### 3. Congress did not ratify the Secretaries' or Ninth Circuit's interpretation of "public lands."

The United States and KRITFC argue that Congress "confirmed that navigable waters were included in Title VIII's definition of 'public lands' when it ratified regulations addressing that question."[241] But Congress did nothing of the sort. To begin, the United States and KRITFC appear to misunderstand the relevant timeline. The final rule "identif[ying] Federal land units in which reserved water rights exist" was passed on January 8, 1999.[242] But according to the United States and KRITFC, this rule was "ratified" by appropriations acts enacted on November 14, 1997, and October 21, 1998—*before* the

---

[238] AS §16.05.258; State Mot. 5-6.

[239] *Hoonah Indian Ass'n v. Morrison*, 170 F.3d 1223, 1229 (9th Cir. 1999). It is undisputed that as of 2016 "'more than 52.4 percent of Alaska Native peoples [were] living in non-subsistence areas of Alaska.'" State Mot. 6 n.25 (quoting Ex.CC at 53).

[240] *See McDowell v. State*, 785 P.2d 1, 9 (Alaska 1989).

[241] U.S. Opp. 29-30; *see* KRITFC Opp. 34-40.

[242] 64 Fed. Reg. 1276, 1276 (Jan. 8, 1999).

*United States v. Alaska*                                      Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                            45
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 59 of 84

final rule existed.[243] Congress could not ratify rules that were not yet promulgated. Nor could Congress ratify the *proposed* rules, which were issued on December 17, 1997.[244] A proposed rule is just that—a proposal. When "an agency issues notice of a proposed rule, … the agency is not required to finalize that proposed rule. Rather, agencies are free— indeed, they are encouraged—to modify proposed rules as a result of the comments they receive."[245] Neither the United States nor Intervenors identify any case holding that Congress ratified a proposed rule.

Even if the appropriations acts had occurred after the agencies' final rule, the United States' and Intervenors' ratification arguments would still fail. Without "overwhelming evidence of acquiescence, [courts] are loath to replace the plain text and original understanding of a statute with an amended agency interpretation."[246] The 1998 appropriations act states only that the Secretaries "may [not], prior to December 1, 2000, implement or enforce any final rule, regulation, or policy pursuant to title VIII of [ANILCA] to manage and to assert jurisdiction, authority, or control over land, water, and wild, renewable resources, including fish and wildlife, in Alaska for subsistence uses" except in certain locations.[247] That's it. This provision is not "overwhelming evidence of

---

[243] Department of the Interior and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-83, §316(b), 111 Stat. 1543, 1592-95 (Nov. 14, 1997); Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, Div. A, §339(a), 112 Stat. 2681, 2681-295 (Oct. 21, 1998).

[244] *See* 62 Fed. Reg. 66216 (Dec. 17, 1997).

[245] *Stringfellow Mem'l Hosp. v. Azar*, 317 F. Supp. 3d 168, 185 (D.D.C. 2018) (cleaned up).

[246] *SWANCC*, 531 U.S. at 169 & n.5.

[247] Pub. L. No. 105-277, Div. A, §339(a), 112 Stat. at 2681-295.

*United States v. Alaska*                                          Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                              46
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 60 of 84

acquiescence [in] … an amended agency interpretation."[248] Indeed, far from endorsing federal control over the State's waters, the provision was intended to *preserve* the State's rights. Senator Murkowski described the provision as "extending a moratorium preventing a Federal takeover of the management of Alaska's fisheries until December 1, 1998" so that Alaskans could "put a solution on the ballot in November 1998."[249] It is inconceivable that a provision designed to avoid the "disaster of Federal control" over "the management of our fish and game"[250] was actually an *endorsement* of federal control over the State's navigable waters. Neither the United States nor Intervenors cite a single statement from any member of Congress to support their ratification argument.

Nor did the agencies even provide an "administrative interpretation."[251] The agencies were merely acting "[a]s the Ninth Circuit directed."[252] That the supposed

_____

[248] *SWANCC*, 531 U.S. at 169 n.5.

[249] 143 Cong. Rec. S11259 (Oct. 28, 1997); *see id.* (Sen. Murkowski) ("[A]voiding a Federal takeover of fish and game management is simply critical in my State. When Alaska became a State, Alaskans were united in our desire to take over the management of our fish and game. Many Alaskans still have vivid memories of the disaster of Federal control. Alaska salmon runs plummeted to 25 million fish with Federal bureaucrats in control in Washington, D.C. Under State management, our runs are increasing and have approached 200 million in the last few years.").

[250] *Id.*

[251] *SWANCC*, 531 U.S. at 169.

[252] 64 Fed. Reg. at 1276.

"ratification" occurred in an appropriations act makes the argument even more implausible.[253]

KRITFC (but not the United States) argues that Congress ratified the Ninth Circuit's interpretation of "public lands" in *Katie John I* through the 1997 appropriations act.[254] But this appropriations act made only minor amendments to ANILCA, all of which expired a year later when the State did not amend its constitution.[255] "[W]hen, as here, Congress has not comprehensively revised a statutory scheme but has made only isolated amendments," the Supreme Court "ha[s] spoken … bluntly: It is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of [a] [c]ourt's statutory interpretation."[256] Nor was *Katie John I* "'settled'" and "unquestioned," such that this Court "must presume Congress … endorsed it."[257] In November 1997, *Katie John I* was merely a decision on interlocutory appeal; the *Katie*

---

[253] *See TVA v. Hill*, 437 U.S. 153, 190-91 (1978) ("When voting on appropriations measures, legislators are entitled to operate under the assumption that the funds will be devoted to purposes which are lawful and not for any purpose forbidden. Without such an assurance, every appropriations measure would be pregnant with prospects of altering substantive legislation, repealing by implication any prior statute which might prohibit the expenditure. Not only would this lead to the absurd result of requiring Members to review exhaustively the background of every authorization before voting on an appropriation, but it would flout the very rules the congress carefully adopted," including that "'[n]o appropriation shall … chang[e] existing law.'").

[254] KRITFC Opp. 35-38.

[255] *See* Pub. L. No. 105-83, §316, 111 Stat. at 1592-95.

[256] *Alexander v. Sandoval*, 532 U.S. 275, 292 (2001) (cleaned up); *see also AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 81 (2021) (two Congressional amendments to a statute's "venue, joinder, and service rules, not its remedial provisions … tell us nothing about [Congressional ratification of] the words 'permanent injunction'").

[257] *Jama v. ICE*, 543 U.S. 335, 349 (2005).

*United States v. Alaska*                                      Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                            48
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 62 of 84

*John* litigation was still ongoing, and the whole issue would be revisited in 2002 by the Ninth Circuit *en banc* in *Katie John II*.[258] And, again, an appropriations act is rarely sufficient to show ratification.[259] Simply put, this case is governed by the text of ANILCA, not by obscure provisions in two omnibus appropriations bills from the 1990s.[260]

### B. The Kuskokwim River is not "public land" under the Commerce Clause or the Navigational Servitude

AVCP and AFN argue that all navigable waters in Alaska are "public land" under the navigational servitude and the Commerce Clause.[261] This argument is foreclosed by *Katie John I*, as AFN and AVCP acknowledge.[262] In *Katie John I*, the Ninth Circuit "reject[ed] the argument that the navigational servitude is an 'interest … the title to which is in the United States,' such that all navigable waters are public lands within the meaning of ANILCA."[263] The Ninth Circuit in *Katie John I* also "reject[ed] the argument that Congress expressed its intent to exercise its Commerce Clause powers to regulate

---

[258] *See Katie John III*, 720 F.3d at 1221-24 (discussing litigation history).

[259] *See, e.g.*, *TVA*, 437 U.S. at 190-91.

[260] KRITFC's attempt to argue that Congress ratified *only Katie John I*'s reserved water rights holding but *not* its navigational servitude holding further shows the flimsiness of KRITFC's argument. KRITFC Opp. 40 n.143. The truth is that Congress ratified nothing in these appropriations bills.

[261] AFN Opp. 36-41; AVCP Opp. 35-42; *see also* U.S. Opp. 29 n.18.

[262] *See* AFN Opp. 37 n.148; AVCP Opp. 36.

[263] *Katie John I*, 72 F.3d at 702-03; *see also Katie John II*, 247 F.3d at 1050 (op. of Rymer, J.) (noting that *Katie John I* rejected "the theory upon which the district court proposed to decide which navigable waters constitute public lands (navigational servitude)").

subsistence fishing in all Alaskan navigable waters."[264] This Court cannot revisit these holdings.[265]

Regardless, the arguments would still fail. The navigational servitude is "'a concept of power, not of property.'"[266] The United States thus cannot "hold title to it."[267] And whether Congress has "power"[268] under the Commerce Clause to implement a subsistence priority on navigable waters is irrelevant; what matters is whether Congress did so. Because the Kuskokwim River is not "public land," the subsistence priority does not apply.[269] In any event, "[b]ecause the impact of ANILCA's subsistence priority in Alaskan navigable waters would not 'substantially affect' interstate commerce, this priority cannot be upheld under the Commerce Power."[270]

## C. The Kuskokwim River is not "public land" under the Property Clause

AFN argues that "even if the State were right that the federal government had no reserved water right or other interest in the navigable waters running through federal lands

---

[264] *Katie John I*, 72 F.3d at 703; *see also Katie John II*, 247 F.3d at 1035-44 (Tallman, J., concurring in the judgment) (disagreeing with *Katie John I*'s decision not to impose the subsistence priority on all navigable waters under the Commerce Clause).

[265] AFN argues that "[b]ecause the State is relitigating the *Katie John* cases, the Court must also reconsider whether the Commerce Clause, and relatedly the navigational servitude, extends federal protection of traditional subsistence fishing to all navigable waters within the State of Alaska." AFN Opp. 37 (cleaned up). That is wrong. *Katie John I*'s reserved water rights holding is no longer good law after *Sturgeon*. But *Sturgeon* had no effect on these other holdings.

[266] *Katie John I*, 72 F.3d at 702.

[267] *Id.*

[268] AFN Opp. 37-38; AVCP Opp. 37-38.

[269] 16 U.S.C. §3102(1)-(3); *Sturgeon II*, 139 S.Ct. at 1076-80.

[270] *Katie John I*, 72 F.3d at 707 (Hall, J., dissenting) (quoting *United States v. Lopez*, 514 U.S. 549, 557-59 (1995)).

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                    50
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 64 of 84

in Alaska, Congress has the power to provide a subsistence priority on [navigable] waters under the Property Clause."[271] But again, whatever "power" the United States has under the Property Clause is irrelevant. The question is whether the Kuskokwim River qualifies as "public lands" under ANILCA. And AFN never explains how the Property Clause somehow makes the Kuskokwim River "public lands" under ANILCA.

Nor does the Property Clause give the United States this power in any event. The Property Clause states that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."[272] But the United States does not own the Kuskokwim River.[273] Under the Submerged Lands Act, "Alaska, not the United States, has title to the lands beneath the [Kuskokwim] River."[274] The Property Clause does not affect this case.

**D.     The Kuskokwim River is not "public land" under Congress's authority over Native Affairs**

AVCP argues that "Title VIII [of ANILCA] is Indian legislation enacted to benefit Alaska Natives," and so "the definition of public lands 'must be liberally construed in favor of establishing Indian rights.'"[275] But AVCP never mentions—presumably on purpose— the binding Ninth Circuit precedent rejecting this argument.

---

[271] AFN Opp. 35; *see also* U.S. Opp. 29 n.18.
[272] U.S. Const. art. IV, §3, cl.2.
[273] *See* State Mot. 7-8, 28.
[274] *Sturgeon II*, 139 S.Ct. at 1078.
[275] AVCP Opp. 34-35.

*United States v. Alaska*                                                     Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                        51
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 65 of 84

In *Hoonah Indian Association v. Morrison*, the Ninth Circuit held that ANILCA is "*not* … Indian legislation."[276] As the Ninth Circuit explained, ANILCA "expressly states that it is for the benefit of rural subsistence users, regardless of whether they are members of tribes."[277] ANILCA "says that its purpose is to protect 'subsistence uses by rural residents of Alaska, including *both* Natives and non-Natives.'"[278] "There could not be a plainer declaration that Congress was not passing Indian legislation."[279] That ANILCA "may benefit Natives more than others does not make it Indian legislation, any more than legislation affecting snowmobiles and river boats is Indian legislation because of the greater importance of snowmachines and boats than automobiles in the many villages unconnected with the highway system."[280]

---

[276] 170 F.3d at 1228-29 (emphasis added).

[277] *Id.* at 1228.

[278] *Id.* at 1229 (emphasis in original).

[279] *Id.*

[280] *Id.* The Intervenors point to Representative Udall's floor remarks as evidence of Congress' purpose. AFN Opp. 6-9; AVCP Opp. 9-11. But these statements are "not part of the statute passed by both houses and signed by the President"; the Intervenors' reliance on it is "'the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends.'" *Hoonah Indian*, 170 F.3d at 1228 (quoting *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring in the judgment)). There is also better legislative history on the other side. *See id.* "The report of the Senate Energy and Natural Resources Committee is at pains, every time it mentions rural subsistence, to make it clear that it is not speaking only of what Natives do, and is not speaking of what people in Alaska's five largest cities do regardless of whether they are Native; it says the provision is for 'Native and non-Native residents of "rural" Alaska.'" *Id.* (quoting S. Rep. 96-413, at 233 (Nov. 14, 1979)). Indeed, "earlier drafts of the statute 'protected only subsistence uses by Native Alaskans,' but 'Congress broadened the preference to include all "rural residents" to avoid state constitutional concerns." *Id.*

AFN similarly spills much ink discussing Congress's supposed "intent to protect traditional Alaska Native subsistence."[281] As explained above, providing subsistence fishing rights to Alaska Natives was not ANILCA's primary purpose.[282] And AFN, like AVCP, never even mentions *Hoonah Indian Association*.

At any rate, AFN's argument appears to be that this Court should ignore ANILCA's text in favor of Congress's supposed "purpose." Indeed, AFN makes no argument for why the Kuskokwim River is somehow "public land" under ANILCA because of Congress's "constitutional authority over Native affairs."[283] The Court is bound by ANILCA's text. And because ANILCA's subsistence priority is not limited to Alaska Natives, ANILCA's regulation of activities of non-Natives would exceed any "constitutional authority over Native affairs" that the United States has.

Finally, Ahtna argues that the Kuskokwim River is "public land" because the United States "holds title to reserved 'fishing rights' held in trust for Alaska Natives in navigable waters in Alaska."[284] This argument fails for four reasons. First, Ahtna provides no evidence that the United States actually has "fishing rights" on the Kuskokwim River that it is holding "in trust for Alaska Natives."[285] Second, even if the United States had these

---

[281] AFN Opp. 41-48.
[282] *Supra* 42 & n.222, 52; *see Amoco Prod.*, 480 U.S. at 549 ("ANILCA's primary purpose was to complete the allocation of federal lands in the State of Alaska").
[283] AFN Opp. 47.
[284] Ahtna Opp. 36-48.
[285] *See* Ahtna Opp. 36-42. Ahtna points only to Section 4 of the Statehood Act, *see* Ahtna Opp. 21 n.41, 35 n.101, but that provision does not create any fishing rights, *see* Alaska Statehood Act, Pub. L. No. 85-508, §4, 72 Stat. 339, 339 (1958).

*United States v. Alaska*                                          Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                              53
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 67 of 84

fishing rights, it would not have "'fee ownership'" or "'possessory'" "title" in them.[286]

Third, even if the United States had "title" to these fishing rights, they were extinguished

by ANCSA.[287] Finally, "fishing rights held in trust for Alaska Natives" could never be

"public land" because ANILCA applies more broadly to all "rural residents," which

"'include *both* Natives and non-Natives.'"[288] The United States' authority over Native

affairs thus does not affect this case.

## VII. The State's orders are not preempted because the FSB members were not properly appointed.

All parties agree that the State's orders are not preempted if the FSB members were

improperly appointed. The FSB members weren't properly appointed for two reasons.

First, they are "officers" of the United States, but their positions are not established "by

Law." Second, they are "principal" officers who were not nominated by the President and

confirmed by the Senate.

### A.     The FSB members are "officers of the United States."

The United States argues that the members of the Federal Subsistence Board are not

"officers," but merely "employees."[289] That argument fails. The Supreme Court has

identified two considerations for determining whether an individual is an "officer of the

---

[286] *See Sturgeon*, 139 S.Ct. at 1079.

[287] 43 U.S.C. §1603 (extinguishing "[a]ll aboriginal titles, if any, and claims of aboriginal title in Alaska based on use and occupancy … including any aboriginal hunting or fishing rights," "all claims" based on such title, and "all claims" against either the United States or the State that are "based on any statute or treaty of the United States relating to Native use and occupancy"); *see also United States v. Atl. Richfield Co.*, 612 F.2d 1132, 1136 (9th Cir. 1980) (43 U.S.C. §1603 "'is to be broadly construed to eliminate such claims and titles as any basis for any form of direct or indirect challenge to land in Alaska'").

[288] *Hoonah Indian*, 170 F.3d at 1229 (quoting 16 U.S.C. §3111(1)).

[289] U.S. Opp. 34-36.

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                              54
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 68 of 84

United States": (1) whether the individual's duties are "'continuing and permanent,'" rather than "'occasional or temporary'"; and (2) whether the individual exercises "'significant authority pursuant to the laws of the United States.'"[290] The United States concedes the first inquiry, never disputing that the FSB positions are continuing and permanent.[291] For good reason. Because their positions are set by regulation, FSB members are an "institution distinct from the person holding it" and their positions "persis[t] beyond an individual's incumbency."[292] Indeed, FSB members often serve for many years and across multiple administrations.[293]

The United States cannot satisfy the second inquiry either. The United States ignores *Buckley v. Valeo*, where the Supreme Court held that only officers can issue regulations.[294] Because FSB members "issue regulations for the management of subsistence taking and uses of fish and wildlife on public lands," they must be considered officers.[295] Moreover, the FSB members' duties are not "confined" and "limited," as the United States tries to

---

[290] *Lucia*, 138 S.Ct. at 2051; *Duenas*, 78 F.4th at 1072.
[291] U.S. Opp. 34-36; *see* State Mot. 35-36.
[292] *United States v. Donziger*, 38 F.4th 290, 297 n.3 (2d Cir. 2022) (cleaned up).
[293] State Mot. 11-12, 35-36.
[294] *See* U.S. Opp. 35; *Buckley*, 424 U.S. at 140-41 ("rulemaking" is too "significant [of a] governmental duty" to be done by employees); *Alfa Int'l Seafood v. Ross*, 264 F. Supp. 3d 23, 41 (D.D.C. 2017) ("The Supreme Court has held that, under the Constitution, only 'Officers,' both principal and inferior, have the power to issue rules; employees do not.").
[295] 50 C.F.R. §100.10(d)(4); *see* State Mot. 36-37. The United States' assertion that the FSB "must defer to the recommendations" of regional advisory councils is wrong. U.S. Opp. 35. The Secretary need only "consider [their] report[s] and recommendations," and can "choose not to follow any [of their] recommendation[s]." 16 U.S.C. §3115(c).

*United States v. Alaska*                                      Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                            55
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 69 of 84

argue.[296] The Secretaries gave the FSB their *entire authority* "to implement Title VIII of ANILCA."[297] That the FSB's regulations apply only in Alaska is irrelevant. "Officer" status does not require nationwide power.[298] Nor does it require "adjudicatory functions and powers."[299] The FSB members thus easily qualify as officers. "If a postmaster first class … and the clerk of a district court" are officers, then "surely" the FSB members are too.[300]

### B. The FSB's members are unconstitutionally appointed because the FSB is not established "by Law."

The United States agrees that if FSB members are officers then their positions must be established "by Law."[301] The United States also recognizes that neither ANILCA nor any other statute expressly creates the FSB offices.[302] Indeed, not one sentence of the United States Code ever mentions the Federal Subsistence Board. That should end the matter. Because the FSB members are "officers" whose positions were not established "by Law," they were not properly appointed under the Appointments Clause.[303]

---

[296] U.S. Opp. 35.

[297] 50 C.F.R. §100.10(d)(4) ("The Board is empowered, to the extent necessary, to implement Title VIII of ANILCA."); *see* State Mot. 36-37.

[298] *See Buckley*, 424 U.S. at 126 (local postmasters and court clerks are "officers"); *Duenas*, 78 F.4th at 1073 (Board of Immigration Appeals members, who issue opinions for only individuals, are "officers").

[299] U.S. Opp. 35; *see, e.g.*, *Bowsher v. Synar*, 478 U.S. 714, 718, 722-27 (1986) (Comptroller General); *Myers v. United States*, 272 U.S. 52, 107 (1926) (postmaster); *United States v. Hartwell*, 73 U.S. 385, 390-94 (1867) (Treasury clerk); *see also Arthrex*, 141 S.Ct. at 1979 ("Today, thousands of officers wield executive power on behalf of the President in the name of the United States.").

[300] *Buckley*, 424 U.S. at 126.

[301] U.S. Opp. 32.

[302] *See id.* at 32-34; *Compare id. with* 16 U.S.C. §§742b, 932, 1401, 3181.

[303] State Mot. 37-39.

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                    56
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 70 of 84

The United States asserts—without citation—that "regulations with the force of law may properly create an office."[304] But the Court should easily reject that argument. When the Constitution states that an action cannot be taken except "by Law," that means the action "must be authorized by a statute."[305] As the United States Office of Legal Counsel put it, "[t]he Appointments Clause … provide[s] that offices not recognized by the Constitution itself 'shall be established by Law,' thus *lodging in Congress* ultimate authority over the creation of most offices."[306]

Although the United States points to two legislative provisions, it concedes that neither law creates the FSB.[307] Section 814 of ANILCA, titled "Regulations," states: "The Secretary shall prescribe such regulations as are necessary and appropriate to carry out his responsibilities under this subchapter."[308] And the Reorganization Plan No. 3 of 1950 states: "The Secretary of the Interior may from time to time make such provisions as he shall deem appropriate authorizing the performance by any other officer, or by any agency or employee, of the Department of the Interior of any function of the Secretary, including

---

[304] U.S. Opp. 32.

[305] *E.g.*, *OPM v. Richmond*, 496 U.S. 414, 424 (1990) (interpreting identical language in the Appropriations Clause); State Mot. 38 & n.218.

[306] *Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 117 (2007) (emphasis added). "The Office of Legal Counsel, or OLC, is an office within the U.S. Department of Justice that drafts legal opinions of the Attorney General and provides its own written opinions and other advice in response to requests from various agencies within the executive branch. Although not binding on courts, OLC opinions reflect the legal position of the executive branch and are generally viewed as providing binding interpretive guidance for executive agencies." *Casa De Md. v. DHS*, 924 F.3d 684, 692 n.1 (4th Cir. 2019) (cleaned up).

[307] U.S. Opp. 32-33.

[308] 16 U.S.C. §3124.

*United States v. Alaska*                                        Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                              57
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 71 of 84

any function transferred to the Secretary by the provisions of this reorganization plan."[309]

Neither statute says anything about the Federal Subsistence Board or appointments.[310]

Indeed, the Reorganization Plan was passed in 1950—more than three decades *before*

ANILCA.

The United States argues that Section 814 and the Reorganization Plan implicitly

give the Secretaries "authority to create inferior offices and appoint their members."[311] But

these are simply "'housekeeping statute[s]'" that authorize the Secretary of the Interior to

carry out his responsibilities.[312] "This power to 'keep house' … is not the same as the power

to 'build the house' by appointing officers."[313] Reading Section 814 and the Reorganization

Plan too broadly would "rea[d] out of the Constitution the phrase 'established by Law'"

because it would empower the Executive to "both creat[e] and fil[l] [a] position, which is

the chief danger against which the clause is a safeguard."[314]

In addition, the United States concedes that both Section 804 and the Reorganization

Plan apply only to the Secretary of the Interior.[315] But both the Secretary of Interior *and*

the Secretary of Agriculture implement ANILCA and the Secretaries jointly created the

---

[309] U.S.C. Reorg. Plan 3 1950, §2.

[310] *Cf. Edmond*, 520 U.S. at 655-57 (statute that did not contain "any mention of the 'appointment' of [officers]," but only conferred "the power to 'assign' officers to a particular task" did not authorize appointment).

[311] U.S. Opp. 32-33.

[312] *United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 618, 622 (D.D.C. 2018).

[313] *Id.* at 622.

[314] *Tucker v. Comm'r of Internal Revenue*, 135 T.C. 114, 158 (2010).

[315] *See* U.S. Opp. 32-33.

*United States v. Alaska*    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.    58
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 72 of 84

FSB.[316] The United States identifies no provision empowering the Secretary of Agriculture to create the FSB offices. It is also unlikely that Congress gave only one Secretary—but not the other—these enormous powers to create constitutional officers.[317] Such an interpretation would not treat ANILCA "'as a symmetrical and coherent regulatory scheme.'"[318]

Even if the Appointments Clause let Congress delegate its power to create offices to agencies, Congress did not delegate it here. Section 814 of ANILCA is merely a general rulemaking provision, letting the Secretary "prescribe such regulations as are necessary and appropriate to carry out his responsibilities under this subchapter."[319] This "general rulemaking authority plus statutory silence does not … equal congressional

---

[316] *See, e.g.*, 16 U.S.C. §§3102(12), 3123, 3167(a), 3181(i)(1), 3182, 3203(b), 3209(a), 3210(a); 50 C.F.R. §100.10(a) ("The Secretary of the Interior and Secretary of Agriculture hereby establish a Federal Subsistence Board, and assign it responsibility for administering the subsistence taking and uses of fish and wildlife on public lands."); 36 C.F.R. §242.10(a) (same).

[317] *See Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100-01 (2012) (courts must "'fit, if possible, all parts [of a statute] into a harmonious whole'" in light of "contextual and structural considerations").

[318] *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

[319] 16 U.S.C. §3124.

*United States v. Alaska*                                          Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                          59
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 73 of 84

authorization."[320] "Nor does the absence of an express limitation of authority establish [the Secretary's] capacity to act."[321] "'Agency authority may not be lightly presumed.'"[322]

Moreover, nothing in the structure of ANILCA suggests that Congress in Section 804 gave the Secretaries blanket authority to create and appoint officers to implement ANILCA.[323] On the contrary, Congress "se[t] out in great detail the officials who" will implement ANILCA and "the procedures to be employed for their appointment."[324] In Section 805 of ANILCA, Congress ordered that "the Secretary … shall establish" (1) "at least six Alaska subsistence resource regions which, taken together, include all public lands"; (2) "local advisory committees within each region"; and (3) "a regional advisory council in each subsistence resource region."[325] This administrative structure "raises the obvious question of why Congress would go to the trouble of enshrining [these] positions in statute and providing for their appointment if, as the [United States] argues, the Secretary

---

[320] *Merck & Co., Inc. v. HHS*, 385 F. Supp. 3d 81, 92 (D.D.C. 2019); *see NYSE LLC v. SEC*, 962 F.3d 541, 546 (D.C. Cir. 2020) ("An agency's general rulemaking authority does not mean that the specific rule the agency promulgates is a valid exercise of that authority." (cleaned up)).

[321] *Merck*, 385 F. Supp. 3d at 93.

[322] *Id.* (quoting *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 9 (D.C. Cir. 2002)); *see also Brown & Williamson*, 529 U.S. at 125 (an agency "may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law'").

[323] U.S. Opp. 32-33.

[324] *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014).

[325] 16 U.S.C. §3115(a).

*United States v. Alaska*                                           Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                60
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 74 of 84

already has the authority under [Section 804] to do so."[326] The United States' argument "makes no sense in the face of the statutory structure that Congress has enacted."[327]

The United States' reliance on the Reorganization Plan of 1950 is even weaker. A reorganization plan is a "transfer [of] the federal government's responsibility for enforcing [a statute] from one executive agency to another" that "effect[s] no substantive change in the applicable substantive legislation."[328] No reorganization plan may "authoriz[e] an agency to exercise a function which is not expressly authorized by law at the time the plan is transmitted to Congress."[329] Yet even if the Reorganization Plan of 1950 somehow gave the Secretary new powers, the Secretary could only transfer the performance of functions to *existing officers*, not *create new* officers.[330]

*Duenas v. Garland* is not to the contrary.[331] There, the "key question" was "whether Immigration Judges and BIA members are principal or inferior officers"; the Ninth Circuit said nothing at all about whether their offices were "'established by Law.'"[332] If anything, *Duenas* supports the State's arguments. The Ninth Circuit specifically found that

---

[326] *Janssen*, 73 M.J. at 225.

[327] *Id.*

[328] *EEOC v. Hernando Bank, Inc.*, 724 F.2d 1188, 1192 n.2 (5th Cir. 1984).

[329] 5 U.S.C. §905(a)(4).

[330] U.S.C. Reorg. Plan 3 1950, §2 ("The Secretary of the Interior may … authoriz[e] the performance by any other officer … of the Department of the Interior of any function of the Secretary").

[331] 78 F.4th 1069 (9th Cir. 2023).

[332] *Id.* at 1073.

"*Congress authorized* the Attorney General to enact the regulations establishing the BIA."[333] No such statutory authorization exists here.[334]

Finally, KRITFC (and the United States in a footnote) argues that the FSB members were "established by Law" because the "final rule on federal waters [promulgated in January 1999] mentions the FSB no fewer than 45 times" and so "Congress's choice to leave the federal management scheme in place ratifies not only the Secretary's interpretation of 'public lands' but also her implementation of federal authority through the FSB."[335] This ratification argument fails for the same reasons discussed above.[336] Most obvious, Congress could not have ratified 1999 rules that were finalized *after* the 1997 and 1998 appropriations acts.[337] Moreover, even if the timeline were different, neither

---

[333] *Id*. at 1073 n.2 (emphasis added) (citing 6 U.S.C. §521).

[334] *Willy v. Admin. Rev. Bd.*, 423 F.3d 483 (5th Cir. 2005) and *Varnadore v. Sec'y of Labor*, 141 F.3d 625 (6th Cir. 1998), also are inapposite. Although both found that the Secretary of Labor had the authority to appoint individuals to the Administrative Review Board, neither "opinio[n] suggests that any party had argued that the positions under review were not 'established by Law.' Rather, the parties and the courts seem to have assumed that if the positions existed, then the positions were 'established by Law.'" *Tucker*, 135 T.C. at 157-58. Neither opinion addressed the issue. And the reasoning of those opinions has been roundly criticized. *See id.*; *Janssen*, 73 M.J. at 224; Steven G. Calabresi & Gary Lawson, *Why Robert Mueller's Appointment as Special Counsel Was Unlawful*, 95 Notre Dame L. Rev. 87, 106 n.121 (2019) ("*Willy* was obviously wrong."); Kevin Sholette, *The American Czars*, 20 Cornell J.L. & Pub. Pol'y 219, 239-40 (2010) (*Willy*'s reasoning is "inconsistent with case law and the Constitution").

[335] KRITFC Opp. 40-41; U.S. Opp. 34 n.21.

[336] *Supra* 45-49.

[337] *Supra* 45-46.

*United States v. Alaska*                                        Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                   62
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 76 of 84

appropriation act says a word about the Federal Subsistence Board.[338] There is no "overwhelming evidence of acquiescence" in the FSB.[339]

### C. The FSB members are "principal" officers who were not appointed by the President with the advice and consent of the Senate.

As previously explained, the FSB members are "principal" officers because (1) they have the "sole responsibility to administer" Title VIII of ANILCA;[340] (2) they have the "'power to render a final decision on behalf of the United States'" without any "review by [a] nominal superior or any other principal officer in the Executive Branch"[341]; and (3) most of the FSB members can be removed only "for cause," depriving the Secretaries of "meaningfu[l] contro[l]" over the FSB.[342] The FSB members thus have all the hallmarks of "principal" officers. The United States' arguments to the contrary miss the mark.

The United States first argues that the Secretaries oversee the FSB members as a "factua[l]" matter.[343] But *Arthrex* makes clear that any behind-the-scenes oversight is irrelevant. The Appointments Clause "demand[s]" clear "lines of accountability" because there must be a "transparent decision for which a politically accountable officer must take

---

[338] *See* Pub. L. No. 105-83, §316, 111 Stat. at 1592-95; Pub. L. No. 105-277, Div. A, §339(a), 112 Stat. at 2681-295.

[339] *SWANCC*, 531 U.S. at 169 & n.5.

[340] *Seila Law*, 140 S.Ct. at 2200; *see* 50 C.F.R. §100.10(a) ("The Secretary of the Interior and Secretary of Agriculture hereby establish a Federal Subsistence Board, and *assign it responsibility* for administering [Title VIII]." (emphasis added)); *id.* §100.10(d)(4) ("The Board is empowered, to the extent necessary, to implement Title VIII of ANILCA.").

[341] *Arthrex*, 141 S.Ct. at 1981.

[342] *Seila Law*, 140 S.Ct. at 2203.

[343] U.S. Opp. 37.

responsibility."[344] Here, the regulations say that *the FSB* is in charge of implementing ANILCA, not the Secretaries. That is what matters.

Even if nonpublic oversight mattered, the Secretaries still do not "'direc[t] and supervis[e]'" the FSB.[345] The United States points to a *single email* from the "Senior Adviser for Alaskan Affairs" in the Department of the Interior in which he asks the "Assistant Regional Director [of] Subsistence" in the U.S. Fish & Wildlife Service Alaska Region to "please pause or defer [certain] Board actions" pending the resolution of a lawsuit against the FSB.[346] Indeed, the individual references a prior email "requesting"— not ordering—a "temporary pause in Board activities."[347] This email exchange is paltry evidence that the Secretaries in fact "'direc[t] and supervis[e]'" the FSB.[348]

The United States concedes that the FSB has final and "'unreviewable authority'" to promulgate regulations under subparts C and D but attempts to downplay this regulatory power as minor and not "an occasion for constitutional crisis."[349] But issuing regulations under subparts C and D is a powerful responsibility. These regulations cover such issues as deciding what communities qualify for the subsistence priority and the approved manner and means for subsistence harvesting, including rules for permits, equipment, and

---

[344] *Arthrex*, 141 S.Ct. at 1982.
[345] *Id.* at 1980.
[346] U.S. Opp. 37; *see* AR 0245-46.
[347] AR 0245.
[348] *Arthrex*, 141 S.Ct. at 1980.
[349] U.S. Opp. 37-38.

*United States v. Alaska*                                              Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                    64
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 78 of 84

methods.[350] Indeed, the United States identifies no other way that the Secretaries implement ANILCA.

The United States further concedes that there is no "specified (or mandatory) path for higher level review" of an FSB decision.[351] That concession should be dispositive under *Arthrex*. The Supreme Court has stressed that "adequate supervision entails review of decisions issued by inferior officers."[352] But how can the Secretaries effectively review FSB decisions if parties before the FSB have no way to seek the Secretaries' review? The United States' only response is to suggest that the Secretaries might somehow "'step in' to address (or suspend) FSB actions."[353] But again, there is no mechanism for a party before the FSB to seek the Secretaries' review, and the Secretaries could not overrule the FSB without amending their own regulations.[354] Indeed, the United States provides no example of the Secretaries vetoing or amending an FSB decision.

The United States notes that the Secretaries could always "'rescind'" their regulations and "'abolis[h]'" the FSB.[355] But this theoretical "possibility"[356] is insufficient

---

[350] *See* 50 C.F.R. §§100.22 *et seq.*

[351] U.S. Opp. 38.

[352] *Arthrex*, 141 S.Ct. at 1983.

[353] U.S. Opp. 38. Contra the United States, *Arthrex* drew no distinctions between "statutory restrictions" and "regulatory restrictions." U.S. Opp. 38 n.22. The Secretaries' regulations, no less than the statutory restrictions in *Arthrex*, prevent the Secretaries from "'direct[ing] and supervis[ing]'" the FSB members. *Arthrex*, 141 S.Ct. at 1980.

[354] *See Nat'l Env't Dev. Ass'n's Clean Air Proj. v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("It is axiomatic … that an agency is bound by its own regulations. … Although it is within the power of an agency to amend or repeal its own regulations, an agency is not free to ignore or violate its regulations while they remain in effect." (cleaned up)).

[355] U.S. Opp. 37.

[356] *Id.*

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                        65
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 79 of 84

to make the FSB members "inferior" officers.[357] Under *Arthrex*, the Court must assess

"how much power [the FSB] exercises free from control by a superior" and whether there

is "direction and supervision" by the Secretaries.[358] The mere prospect of the Secretaries

abolishing the FSB does not satisfy this standard. It is also terribly unrealistic, given that

the Secretaries would need to jointly amend their rules through the notice-and-comment

process.[359] It thus is not surprising that the United States provides no example where the

Secretaries proposed or even contemplated abolishing the FSB.

Finally, there is no dispute that five of the eight FSB members (a majority of the

FSB) can be removed only "for cause."[360] The United States points out that these members

can be removed if they receive a "final rating of unsatisfactory"[361] and can be reassigned

---

[357] *See, e.g.*, *Edmond*, 520 U.S. at 662-63 ("It is not enough that other officers may be identified who formally maintain a higher rank, or possess responsibilities of a greater magnitude. … '[I]nferior officers' are officers whose work is directed and supervised at some level by [principal officers].").

[358] *Arthrex*, 141 S.Ct. at 1982. The United States relies on *In re Grand Jury Investigation*, 916 F.3d 1047 (D.C. Cir. 2019), but that case was decided before *Arthrex* and thus is not persuasive.

[359] *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015) (the APA "mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance."); *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1205 (D.C. Cir. 2020) (same).

[360] State Mot. 42.

[361] 5 C.F.R. §359.501(c); *see also Esparraguera v. Dep't of the Army*, 981 F.3d 1328, 1330-31 (Fed. Cir. 2020) ("There are two relevant mechanisms by which senior executives may be removed from the SES. First, … for 'misconduct, neglect of duty, [or] malfeasance' … [and] [s]econd, … for 'unsatisfactory' or 'less than fully successful' performance.").

if certain conditions are satisfied.[362] But what matters is that these laws limit the Secretaries' power of removal.[363] Simply put, if the Secretaries don't like what these FSB members are doing, the Secretaries cannot remove them at will and install others who will carry out the Secretaries' agenda. The FSB members thus cannot be "'meaningfully controlled' by the threat of removal."[364] The United States is wrong to argue otherwise.[365]

## CONCLUSION

For these reasons, the Court should deny the United States' and Intervenors' motions for summary judgment and grant the State's motion for summary judgment.

---

[362] *See* 5 U.S.C. §3395 (allowing reassignment for a career SES if (1) the new position is in the same agency and the persons is qualified for it; (2) the reassignment occurs outside certain periods, such as when there is no new agency head or noncareer supervisor; and (3) there is consultation and substantial notice for reassignment outside the official's commuting area); 5 C.F.R. §317.901 (same).

[363] *See* State Mot. 42.

[364] *Arthrex*, 141 S.Ct. at 1982.

[365] In attempting to diminish the importance of for-cause removal, the United States (at 39-40) points to judicial language addressing whether certain officers violated "the constitutional principle of separation of powers," not the Appointments Clause. *Morrison v. Olson*, 487 U.S. 654, 685-693 (1988); *see, e.g.*, *Duenas*, 78 F.4th at 1074 (discussing whether "a double layer of for-cause protection *violated Article II* because it insulated an official from presidential oversight and removal" (emphasis added)). Those citations say nothing about whether officials are principal officers under the Appointments Clause.

*United States v. Alaska*                                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                    67
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 81 of 84

DATED: December 22, 2023                    Respectfully Submitted,

                                            TREG TAYLOR
                                            ATTORNEY GENERAL

                                            By: _/s/ Margaret Paton-Walsh_

J. Michael Connolly (*pro hac vice*)           Margaret Paton-Walsh
Steven C. Begakis (*pro hac vice*)             (Alaska Bar No. 0411074)
Consovoy McCarthy PLLC                         Chief Assistant Attorney General
1600 Wilson Boulevard, Suite 700               _/s/ Aaron C. Peterson_
Arlington, VA 22209                            Aaron C. Peterson
Telephone: (703) 243-9423                      (Alaska Bar No. 1011087)
mike@consovoymccarthy.com                      Senior Assistant Attorney General
steven@consovoymccarthy.com                    Department of Law
                                               1031 West Fourth Avenue, Suite 200
                                               Anchorage, AK 99501
                                               Telephone: (907) 269-5232
                                               Facsimile: (907) 276-3697
                                               margaret.paton-walsh@alaska.gov
                                               aaron.peterson@alaska.gov

          *Attorneys for the State of Alaska*

*United States v. Alaska*                              Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                    68
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 82 of 84

**CERTIFICATE OF SERVICE**

I certify that on December 22, 2023, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system, serving all counsel of record.

*/s/ Margaret Paton-Walsh*
Margaret Paton-Walsh

*United States v. Alaska*                                                        Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                                                    69
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 83 of 84

**CERTIFICATE OF COMPLIANCE**

Per Local Civil Rule 7.4(a)(3), I certify that this memorandum complies with the type-volume limitation of 7.4(a)(1) and contains 67 pages, excluding the parts exempted by Local Civil Rule 7.4(a)(4), in compliance with the page limit requested in Plaintiffs' Unopposed Motion for Leave to File Excess Pages, which was filed concurrently.

*/s/ Margaret Paton-Walsh*
Margaret Paton-Walsh

*United States v. Alaska*                    Case No.: 1:22-cv-54-SLG
Defs' Reply in Supp. of Mot. for Sum. J.                    70
Case 1:22-cv-00054-SLG   Document 122   Filed 12/22/23   Page 84 of 84