# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

THE UNITED STATES OF AMERICA,

        Plaintiff,

   and

KUSKOKWIM RIVER INTER-TRIBAL
FISH COMMISSION, *et al.*,

        Intervenor-Plaintiffs

    v.

THE STATE OF ALASKA, *et al.*,

        Defendants.

Case No. 1:22-cv-00054-SLG

---

## ORDER RE MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT

Before the Court at Docket 70 is the United States' Motion for Summary Judgment. The State of Alaska[1] filed a Combined Motion for Summary Judgment and Opposition to the United States' Motion for Summary Judgment at Docket 72 and Docket 73.[2] The United States filed a Reply Memorandum in Support of Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment at Docket 101. Intervenor-Plaintiffs joined the United States'

---

[1] Defendants are the State of Alaska, the Alaska Department of Fish and Game ("ADF&G"), and Doug Vincent-Lang, Commissioner of ADF&G (collectively, "the State" or "Defendants"). Docket 1 at ¶¶ 9-11.

[2] The documents are identical. For convenience, the Court refers only to Docket 73 in this order.

Motion for Summary Judgment.[3]  Each filed a combined response in opposition to the State's motion for summary judgment and reply in support of the United States' motion for summary judgment.[4]  The State filed a Reply in Support of Motion for Summary Judgment at Docket 122.  While the Court previously indicated that oral argument could be held,[5] upon review of the parties' briefing, oral argument was not requested by any party and was not necessary to the Court's determination.[6]

## BACKGROUND

The United States Supreme Court observed that Congress has "repeatedly recognize[d] that Alaska is different—from its 'unrivaled scenic and geological values,' to the 'unique' situation of its 'rural residents dependent on subsistence uses,' to 'the need for development and use of Arctic resources with appropriate recognition and consideration given to the unique nature of the Arctic environment.'"[7]  The unique situation of rural Alaskans' dependence on subsistence uses is squarely implicated in this case.

---

[3] Docket 71 at 1-2; Docket 98 at 1.  Intervenor-Plaintiffs are Kuskokwim River Inter-Tribal Fish Commission ("the Commission"), *see* Docket 29; the Association of Village Council Presidents, Betty Magnuson, and Ivan Ivan (collectively, "AVCP"), *see* Docket 37; Ahtna Tene Nené and Ahtna, Inc. (collectively, "Ahtna"), *see* Docket 47; and Alaska Federation of Natives ("AFN"), *see* Docket 96.  The United States and Intervenor-Plaintiffs are collectively referred to as "Plaintiffs."

[4] Docket 109 (the Commission); Docket 110 (AFN); Docket 113 (Ahtna); Docket 115 (AVCP).

[5] Docket 68 at 2.

[6] Docket 126.

[7] *Sturgeon v. Frost* (*Sturgeon I*), 577 U.S. 424, 438-39 (2016) (quoting Alaska National Interest Lands Conservation Act, 16 U.S.C. §§ 3101(b), 3111(2), 3147(b)(5)).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 2 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 2 of 29

The Kuskokwim River runs more than 700 miles in southwest Alaska before it ends in the Bering Sea. Approximately 180 miles of the Kuskokwim River runs within the Yukon Delta National Wildlife Refuge ("the Refuge") beginning at the mouth of the river.[8] The Kuskokwim River contains several species of salmon, including Chinook and chum salmon. "The residents of the local villages along the Kuskokwim River and its tributaries are almost entirely federally qualified subsistence users, both native and non-native, who are highly dependent on salmon as a source of food."[9] In addition, "subsistence harvest of salmon is engrained within the culture and identity of these Kuskokwim area rural residents."[10]

## I.   Alaska National Interest Lands Conservation Act

In 1980, Congress enacted the Alaska National Interest Lands Conservation Act ("ANILCA").[11] One of ANILCA's primary objectives is to protect and preserve the opportunity for rural residents to engage in a subsistence way of life.[12] Congress expressly found that "the continuation of the opportunity for subsistence uses by rural residents of Alaska, including both Natives and non-Natives, . . . is

---

[8] Docket 5-1 at ¶ 3 (Decl. of Boyd Blihovde). *See* Docket 101-1 at ¶ 3 (2d Decl. of Boyd Blihovde) (referencing first declaration).

[9] Docket 5-1 at ¶ 8.

[10] Docket 5-1 at ¶ 8.

[11] Pub. L. No. 96-487, 94 Stat. 2371 (1980) (codified at 16 U.S.C. § 3101 *et seq.*).

[12] 16 U.S.C. § 3101. *See Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1091 (9th Cir. 2008).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 3 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 3 of 29

essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence."[13] The "Congressional statement of policy" in § 802 of ANILCA provides that "the purpose of this subchapter is to provide the opportunity for rural residents engaged in a subsistence way of life to do so."[14]

Section 804 of ANILCA, entitled "Preference for subsistence uses," provides that "the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes."[15] ANILCA defines "subsistence uses" to mean "customary and traditional uses by *rural* Alaska residents of wild, renewable resources."[16] Thus, Title VIII of ANILCA[17] requires that "rural Alaska residents be accorded a priority for subsistence hunting and fishing on public lands."[18] In enacting Title VIII of ANILCA, Congress indicated it was "invok[ing] . . . its constitutional authority under the property clause and the commerce clause to protect and provide the

---

[13] 16 U.S.C. § 3111(1).

[14] *Id.* § 3112(1).

[15] *Id.* § 3114. *See also id.* § 3102(1)-(3) (defining "land," "Federal land," and "public lands").

[16] *Id.* § 3113 (emphasis added).

[17] Title VIII of ANILCA is codified at 16 U.S.C. §§ 3111-3126.

[18] *Alaska v. Babbitt* (*Katie John I*), 72 F.3d 698, 700 (9th Cir. 1995) (citing 16 U.S.C. §§ 3113-3114), *adhered to sub nom. John v. United States* (*Katie John II*), 247 F.3d 1032 (9th Cir. 2001) (en banc) (per curiam).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 4 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 4 of 29

opportunity for continued subsistence uses on the public lands by Native and non-Native rural residents."[19]

Pursuant to § 805(d) of ANILCA, "Congress gave the state authority to implement the rural subsistence preference by enacting laws . . . consistent with ANILCA's operative provisions."[20]  If Alaska "enforce[d] a rural subsistence priority through the exercise of its own sovereignty, Congress [would] return primary regulatory authority over [subsistence uses] to state stewardship," but if Alaska failed to do so, then "the federal government would step in to protect subsistence [uses] as traditionally practiced by rural Alaskans."[21]  Promptly after ANILCA's enactment, the State enacted laws consistent with Title VIII's rural subsistence preference, and, in 1982, "the Secretary of the Interior certified the state to manage subsistence hunting and fishing on public lands" in Alaska.[22]

However, in 1989, the Alaska Supreme Court in *McDowell v. Alaska* "struck down the state act granting the rural subsistence preference as contrary to the Alaska state constitution."[23]  The court "stayed its decision to give the [Alaska] legislature an opportunity to amend the constitution or otherwise bring its program

---

[19] 16 U.S.C. § 3111(4).

[20] *Katie John I*, 72 F.3d at 700 (citing 16 U.S.C. § 3115(d)).

[21] *Katie John II*, 247 F.3d at 1037 (Tallman, J., concurring) (citing 16 U.S.C. § 3115(d)).  The terms "rural subsistence priority" and "rural subsistence preference" are used interchangeably in this order.

[22] *Katie John I*, 72 F.3d at 700-01.

[23] *Katie John I*, 72 F.3d at 701 (citing *McDowell v. Alaska*, 785 P.2d 1 (Alaska 1989)).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 5 of 29

into compliance with ANILCA," but the state legislature "failed to act."[24]  Therefore, in 1990, "the federal government withdrew Alaska's certification and took over implementation of Title VIII."[25]  To this day, the relevant provisions of Alaska's Constitution remain the same, and so a rural subsistence preference remains unconstitutional under Alaska law.

In ANILCA, Congress directed the Secretaries of the Interior and Agriculture to promulgate regulations in furtherance of ANILCA's directives.[26]  Following *McDowell*, the Secretaries enacted temporary emergency regulations in 1990 creating the Federal Subsistence Board ("FSB") to "administer[]" "[s]ubsistence taking and uses of fish and wildlife on public lands."[27]  The regulations were made permanent in 1992, and they presently provide that the Secretaries of the Interior and Agriculture "assign [the FSB] responsibility for administering the subsistence taking and uses of fish and wildlife on public lands."[28]  The FSB is composed of:

---

[24] *Katie John I*, 72 F.3d at 701.

[25] *Id.  See also* Temporary Subsistence Management Regulations for Public Lands in Alaska, 55 Fed. Reg. 27114 (June 29, 1990).

[26] 16 U.S.C. § 3124; *id.* § 3102(12) ("The term 'Secretary' means the Secretary of the Interior, except that when such term is used with respect to any unit of the National Forest System, such term means the Secretary of Agriculture."); *Fed. Subsistence Bd.*, 544 F.3d at 1092.  "The Secretaries promulgated identical regulations, codified at 50 C.F.R., pt. 100, and 36 C.F.R., pt. 242."  *Fed. Subsistence Bd.*, 544 F.3d at 1092 n.1.  The Department of the Interior's regulations are codified at 50 C.F.R. Part 100, and the Department of Agriculture's regulations are codified at 36 C.F.R. Part 242.  For the sake of simplicity, the Court cites to the regulations promulgated by the Secretary of the Interior at 50 C.F.R. Part 100 in this order.

[27] Temporary Subsistence Management Regulations for Public Lands in Alaska, 55 Fed. Reg. at 27123; 50 C.F.R. § 100.10(a).

[28] 50 C.F.R. § 100.10(a); Subsistence Management Regulations for Public Lands in Alaska, Subparts A, B, and C, 57 Fed. Reg. 22940, 22953 (May 29, 1992) (to be codified at 36 C.F.R.

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 6 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 6 of 29

A Chair to be appointed by the Secretary of the Interior with the concurrence of the Secretary of Agriculture; two public members who possess personal knowledge of and direct experience with subsistence uses in rural Alaska to be appointed by the Secretary of the Interior with the concurrence of the Secretary of Agriculture; the Alaska Regional Director, U.S. Fish and Wildlife Service; Alaska Regional Director, National Park Service; Alaska Regional Forester, U.S. Forest Service; the Alaska State Director, Bureau of Land Management; and the Alaska Regional Director, Bureau of Indian Affairs.[29]

The FSB is "empowered . . . to implement Title VIII of ANILCA," and it is authorized to "[i]ssue regulations for the management of subsistence taking and uses of fish and wildlife on public lands"; "[a]llocate subsistence uses of fish and wildlife populations on public lands"; and "[r]estrict the taking of fish and wildlife on public lands for nonsubsistence uses or close public lands to the take of fish and wildlife for nonsubsistence uses when necessary for the conservation of healthy populations of fish and wildlife, to continue subsistence uses of fish and wildlife, or for reasons of public safety or administration."[30] The FSB can also entirely "[r]estrict or eliminate taking of fish and wildlife on public lands."[31] In addition, the FSB has the authority to adopt "special actions" to "open or close public lands for

_____

pt. 242 and 50 C.F.R. pt. 100).

[29] 50 C.F.R. § 100.10(b)(1). Initially, in 1990, FSB membership was narrower; it included the same members listed in the current regulation, but without "two public members who possess personal knowledge of and direct experience with subsistence uses in rural Alaska." *See* Temporary Subsistence Management Regulations for Public Lands in Alaska, 55 Fed. Reg. at 27123.

[30] 50 C.F.R. § 100.10(d)(4)(i), (iv), (vi).

[31] *Id.* § 100.10(d)(4)(ix).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 7 of 29

the taking of fish" "if necessary to ensure the continued viability of a fish . . . population" or "to continue subsistence uses of fish."[32]

## II.    Federal and State Closures of the Kuskokwim River

In 2021 and 2022, the FSB and federal field officials determined that closing the 180-mile section of the Kuskokwim River within the Refuge to non-subsistence uses was "necessary to conserve the fish population for continued subsistence uses of the Chinook salmon upon which rural residents of the area depend."[33] Accordingly, "the FSB and agency field officials exercised their authority under ANILCA to issue emergency special actions to close the 180-mile-long section of the Kuskokwim River within the Yukon Delta National Wildlife Refuge . . . to non-subsistence uses, while allowing limited subsistence uses by local rural residents under narrowly prescribed terms and means of harvest."[34]  In both 2021 and 2022, the Alaska Department of Fish and Game ("ADF&G") subsequently issued its own emergency orders that overlapped with, and to some degree were inconsistent with, the FSB's emergency actions.[35]

---

[32] 50 C.F.R. § 100.19(a).  *See* Subsistence Management Regulations for Public Lands in Alaska, Subparts A, B, and C, 57 Fed. Reg. at 22957.

[33] Docket 1 at ¶ 4; *accord* Docket 1-1 at 4 ("The closure of Federal public waters to the harvest of salmon with gillnets beginning June 1 is based on conservation concerns and provisions of opportunity for subsistence uses."); Docket 5-1 at ¶ 11 ("[I]n 2021 and 2022, the underlying basis for my decisions relating to harvest of salmon has been to reach an escapement of at least 110,000 Chinook while allowing at least some opportunity for federally qualified local residents to address their subsistence needs.") (Decl. of Boyd Blihovde).

[34] Docket 1 at ¶ 4.

[35] *See* Docket 1 at ¶ 5.

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 8 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 8 of 29

### a. 2021 Closures

In May 2021, federal authorities, in an emergency special action, closed the Kuskokwim River located within the Refuge to all gillnet fishing of salmon, beginning on June 1, 2021. However, the closure action provided five dates during which federally qualified subsistence users could use gillnets to fish.[36] Federal authorities later added additional days and locations during which federally qualified subsistence users could use gillnets within the Refuge.[37] At no time during the federal closure were non-federally qualified users allowed by federal emergency special actions to gillnet fish on the Kuskokwim River within the Refuge.

Several days after the first federal closure order was issued in May 2021, ADF&G issued an emergency order closing parts of the Kuskokwim River to gillnet fishing, which was consistent with the federal closure action.[38] At the same time, however, ADF&G issued a second emergency order that allowed subsistence gillnet fishing along the Kuskokwim River for *all* Alaskans—that was not limited to federally qualified subsistence users—on each of the same dates that the federal

---

[36] Docket 1-1 at 2-3 (Federal Emergency Special Action ("ESA") #3-KS-01-21). The emergency actions set different dates for federally qualified users to harvest salmon using set gillnets and using drift gillnets. For the purposes of this order, the Court groups the set gillnet dates and the drift gillnet dates together.

[37] Docket 1-1 at 5 (Federal ESA #3-KS-02-21); Docket 1-1 at 7-8 (Federal ESA #3-KS-03-21).

[38] Docket 1-2 at 2-4 (State Emergency Order ("EO") #3-S-WR-01-21).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 9 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 9 of 29

emergency actions had reserved for federally qualified subsistence users.[39]  When two federal emergency actions opened additional dates for federally qualified subsistence gillnet fishing, the State followed suit for the same dates, but authorized subsistence gillnet fishing for all Alaskans.[40]  In one state emergency order in 2021, the State authorized subsistence gillnet fishing for all Alaskans on a date when federal subsistence gillnet fishing was not allowed.[41]

### b.  2022 Closures

On May 2, 2022, federal authorities issued an emergency special action closing the main stem of the Kuskokwim River within the Refuge to gillnet fishing for all salmon and closing river tributaries to all gillnet fishing and to the harvest of Chinook and chum salmon, effective June 1, 2022.[42]  However, the emergency action allowed federally qualified subsistence users to use gillnets to harvest salmon on June 1, 4, 8, 12, and 16, 2022.[43]

On May 13, 2022, ADF&G issued an emergency order closing parts of the Kuskokwim River to gillnet fishing, which was consistent with the federal

---

[39] Docket 1-2 at 5-6 (State EO #3-S-WR-02-21), 7 (State EO #3-S-WR-04-21).  *See also* Docket 73 at 29 ("Unlike [the federal] orders, the State's orders authorized subsistence fishing for all Alaskans that qualified for subsistence fishing, not just rural Alaskans, as required by the Alaska Constitution.").

[40] *Compare* Docket 1-1 at 5 (Federal ESA #3-KS-02-21), 7-8 (Federal ESA #3-KS-03-21), *with* Docket 1-2 at 9 (State EO #3-S-WR-06-21), 15 (State EO #3-S-WR-08-21).

[41] *Compare* Docket 1-2 at 12-13 (State EO #3-S-WR-07-21), *with* Docket 1-1 at 2-9 (2021 Federal ESAs).

[42] Docket 1-1 at 10 (Federal ESA #3-KS-01-22).

[43] Docket 1-1 at 11-12 (Federal ESA #3-KS-01-22).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 10 of 29

emergency action taken earlier that month.[44]  However, at the same time, ADF&G issued a second emergency order that authorized subsistence gillnet fishing by all Alaskans—not just federally qualified subsistence users—on three of the dates that the federal emergency action had reserved for federally qualified subsistence users: June 1, 4, and 8, 2022.[45]  The State explained that it intended this opportunity to "allow those individuals who have been displaced to the urban areas of Alaska for educational, social, health or other reasons to practice their traditional and cultural subsistence way of life that is closely tied to the Kuskokwim River."[46]

Plaintiffs sought—and the Court granted—a preliminary injunction enjoining ADF&G from implementing its order authorizing subsistence gillnet fishing on three dates in June 2022 by all Alaskans for the duration of this case.[47]  ADF&G was further prohibited "from taking similar actions that authorize gillnet fishing by all Alaskans on the Kuskokwim River within the Yukon Delta National Wildlife Refuge when such action(s) would be contrary to federal orders issued pursuant to Title VIII of the ANILCA."[48]

Now before the Court are the parties' motions for summary judgment on whether the FSB's orders pursuant to Title VIII of ANILCA preempt ADF&G's

_____

[44] Docket 1-2 at 17-18 (State EO #3-S-WR-01-22).

[45] Docket 1-2 at 19-20 (State EO #3-S-WR-02-22).

[46] Docket 1-2 at 19 (State EO #3-S-WR-02-22).

[47] *United States v. Alaska* (*Kuskokwim I*), 608 F. Supp. 3d 802, 813 (D. Alaska 2022).

[48] *Id.*

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 11 of 29

emergency orders authorizing subsistence gillnet fishing on the Kuskokwim River for all Alaskans.[49]   The State maintains that its actions are not preempted by federal law because ANILCA does not apply to the Kuskokwim River and the FSB violates the Appointments Clause of the United States Constitution.[50]

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1345 because the United States commenced this civil action, and pursuant to 28 U.S.C. § 1331 because this is a civil action with claims arising under federal law, namely ANILCA, 16 U.S.C. § 3101 *et seq.*, and the Appointments Clause of the United States Constitution. Whether a federal law preempts a state law is a question of federal law.[51]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the movant.[52] In reviewing cross-motions for summary judgment, a court "review[s] each

---

[49] *See* Docket 70 at 2; Docket 73 at 8-9.

[50] Docket 73 at 8-9.

[51] *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 214 (1985).

[52] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 12 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 12 of 29

separately, giving the non-movant for each motion the benefit of all reasonable inferences."[53]

**DISCUSSION**

## I. Waiver

The United States contends that the State has "waived any argument on preemption."[54]  The State counters that the State "briefed the issue extensively" in its motion for summary judgment by asserting that "[t]he State's orders are not preempted because the Kuskokwim River is not 'public land' under ANILCA," and "because the FSB members were not properly appointed."[55]  In essence, the State claims that federal preemption does not apply to the State's conduct here because the portion of the Kuskokwim River at issue is outside ANILCA's purview, and any potentially preemptive federal action by the FSB was conducted by unconstitutionally selected federal officers.  The Court therefore finds that the State has not waived its argument against federal preemption and proceeds to address the State's challenges to preemption below.

## II. ANILCA and the Kuskokwim River Within the Refuge

As a threshold issue, Plaintiffs maintain that the State is "precluded from relitigating" its "defenses" because they were, or could have been, decided in prior

---

[53] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

[54] Docket 101 at 20.

[55] Docket 122 at 22 (quoting Docket 73 at 34-50).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 13 of 29

litigation.[56]  The United States contends that issue preclusion bars the State from "relitigating whether ANILCA Title VIII applies to subsistence fishing in navigable waters that include the Kuskokwim River."[57]  The United States maintains that "[t]his issue was squarely decided by the Ninth Circuit in the *Katie John* litigation in which Alaska was a plaintiff."[58]  The State counters that issue preclusion does not apply because, among other reasons, *Sturgeon v. Frost* constitutes a "change in the applicable legal context."[59]

Issue preclusion, or collateral estoppel, applies "where (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding."[60]  "Offensive collateral estoppel refers to the situation where the plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in

---

[56] Docket 101 at 21.  *See* Docket 109 at 21-26.  In its response brief, the Commission also contends that 28 U.S.C. § 2401(a), which contains a six-year statute of limitations on claims against the federal government, bars the State's defenses.  Docket 109 at 27-31.  However, as the State notes, that limitation applies to "civil action[s] commenced against the United States" and the State did not commence this action but rather is the defendant.  Docket 122 at 45.

[57] Docket 101 at 22-31.

[58] Docket 101 at 22 (first citing *Katie John I*, 72 F.3d 698; then citing *Katie John II*, 247 F.3d 1032; and then citing *John v. United States* (*Katie John III*), 720 F.3d 1214 (9th Cir. 2013), *cert. denied sub nom. Alaska v. Jewell*, 572 U.S. 1042 (2014)).

[59] Docket 122 at 27-29 (citing *Sturgeon v. Frost* (*Sturgeon II*), 587 U.S. 28 (2019)).

[60] *Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007) (quoting *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005)).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 14 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 14 of 29

another action against the same or a different party."[61] Issue preclusion does not "foreclose[] . . . relitigation of [an] issue in [a] second action between the parties" if "[t]he issue is one of law and . . . a new determination is warranted in order to take account of an intervening change in the applicable legal context."[62]

Here, all three prerequisites for issue preclusion are present. Nonetheless, the Court finds that *Sturgeon* constitutes a "change in the legal context," as it addressed the definition of public lands in ANILCA—albeit in the application of Title I and not Title VIII—such that issue preclusion should not apply.[63]

Further, Plaintiffs maintain that judicial estoppel prevents the State from arguing that *Sturgeon* undermines the *Katie John* trilogy because the State asserted, in an amicus brief before the Supreme Court in *Sturgeon*, that *Katie John* was not at issue in that case.[64] The State maintains that judicial estoppel is inapposite because the State was not a party in *Sturgeon*; rather, it participated only as an amicus curiae.[65]

Judicial estoppel applies when (1) a party takes a position that is clearly inconsistent with its earlier position; (2) the earlier position was judicially accepted;

---

[61] *Coeur D'Alene Tribe of Idaho v. Hammond*, 384 F.3d 674, 689 (9th Cir. 2004) (internal quotation marks omitted) (quoting *Nat'l Med. Enters., Inc. v. Sullivan*, 916 F.2d 542, 545 n.2 (9th Cir. 1990)).

[62] *Segal v. Am. Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979) (citation omitted).

[63] *Sturgeon II*, 587 U.S. at 38-53.

[64] Docket 101 at 27-31; Docket 109 at 13-21.

[65] Docket 122 at 39-40.

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 15 of 29

and (3) the party asserting the inconsistent position would derive an unfair advantage if not estopped.[66]  The Court finds that judicial estoppel does not apply because the State was not a party in *Sturgeon* and, while judicial estoppel might apply to non-parties in privity with a party, the State is not in privity with either party involved in *Sturgeon*.[67]

The Court now turns to the State's contention that "*Sturgeon* 'undercut[s] the theory [and] reasoning underlying' *Katie John*, the two decisions are 'clearly irreconcilable' and so this Court should not follow *Katie John*."[68]  Instead, the State maintains, "the Court should follow *Sturgeon* and hold that the Kuskokwim River is not 'public land' under ANILCA and so the United States cannot impose a subsistence priority on the river under ANILCA."[69]

The Court declines to do so.  To disregard the binding nature of *Katie John*, the Court would have to find that *Katie John* and *Sturgeon* are "clearly

---

[66] *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (citations omitted).

[67] The United States maintains that participation as an "amicus . . . does not foreclose application of judicial estoppel" and "judicial estoppel can apply in suitable circumstances to representations by a non-party participant in prior litigation."  Docket 101 at 30 n.12 (citing *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 995-96 (9th Cir. 2012)).  However, in *Milton H. Greene Archives, Inc.*, the Ninth Circuit held that an executor and the beneficiary of an estate were in privity and applied judicial estoppel to prevent a beneficiary from asserting that the decedent was domiciled in California when the executors had previously and consistently represented that the decedent was domiciled in New York.  As noted, there is no privity between the State and the parties in *Sturgeon*.  Plaintiffs have not otherwise persuaded the Court that judicial estoppel is appropriate in this case.

[68] Docket 73 at 39 (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)).

[69] Docket 73 at 39.

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 16 of 29

irreconcilable."[70] This "high standard"[71] is only met when the prior precedent has been "effectively overruled" by the intervening higher authority, although "the issues decided by the higher court need not be identical in order to be controlling."[72] "For [a court] to hold that an intervening Supreme Court decision has 'effectively overruled' circuit precedent, the intervening decision must do more than simply 'cast doubt' on our precedent. Rather, it must 'undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.'"[73]

As the Commission and other Plaintiffs observe, in *Sturgeon*, the Supreme Court expressly acknowledged that in *Katie John*, the Ninth Circuit defined "'public lands,' when used in ANILCA's subsistence-fishing provisions, [to] encompass[] navigable waters," and the Supreme Court noted that "[t]hose provisions are not at issue" in *Sturgeon*.[74] The Supreme Court expressly stated that its ruling in *Sturgeon* does "not disturb the Ninth Circuit's holdings that the Park Service may regulate subsistence fishing on navigable waters."[75] As such, *Sturgeon* did not

---

[70] *Miller*, 335 F.3d at 900.

[71] *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (citation omitted).

[72] *Miller*, 335 F.3d at 893, 900.

[73] *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011) (quoting *Miller*, 335 F.3d at 900).

[74] *See Sturgeon II*, 587 U.S. at 45 n.2; Docket 109 at 31-32; Docket 101 at 34; Docket 110 at 32-33; Docket 113 at 32-35; Docket 115 at 37-43.

[75] *Sturgeon II*, 587 U.S. at 45 n.2.

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 17 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 17 of 29

effectively overrule the Ninth Circuit's holding in *Katie John*, and the two cases are not clearly irreconcilable.

The Court therefore is bound by the *Katie John* trilogy of cases to find that Title VIII's rural subsistence priority applies to "navigable waters in which the United States has reserved water rights,"[76] and that the Secretaries lawfully designated the Kuskokwim River in the Refuge as a navigable water subject to Title VIII of ANILCA.[77]  Therefore, the State is not entitled to summary judgment on that basis.[78]

### III.    Appointments Clause

Plaintiffs contend that claim preclusion bars the State from challenging the creation of the FSB and the appointment of its members because it could have raised such a challenge in *Katie John* or other litigation involving the FSB, including *Alaska v. Federal Subsistence Board*.[79]  The State maintains that claim preclusion does not bar its Appointments Clause challenge to the FSB because there is an exception to claim preclusion "where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating

---

[76] *Katie John III*, 720 F.3d at 1239 (quoting *Katie John I*, 72 F.3d at 700).

[77] *Id.* at 1245; 50 C.F.R. § 100.3(b)(4).

[78] Because the Court is bound by *Katie John*, the Court does not reach AFN's argument that, irrespective of *Katie John*, pursuant to the Commerce and Property Clauses of the Constitution "the federal government's authority to regulate pursuant to ANILCA's subsistence priority extends to fish in navigable waters in Alaska."  Docket 110 at 44.

[79] Docket 101 at 31-32 (citing *Fed. Subsistence Bd.*, 544 F.3d 1089); Docket 109 at 26-27.

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 18 of 29

an altered situation."[80]  The State asserts that there "have been intervening decisions on the Appointments Clause" since the prior litigation involving the FSB.[81]

"[C]laim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated."[82]  In other words, "[i]f a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'"[83]  "Suits involve the same claim (or 'cause of action') when they 'aris[e] from the same transaction,' or involve a 'common nucleus of operative facts.'"[84]

Plaintiffs present a compelling case that claim preclusion applies to the State's Appointment Clause defense, as the federal regulations establishing the FSB were the very same regulations at issue in *Katie John III*, and the State could

---

[80] Docket 122 at 38-39 (quoting *State Farm Mut. Auto. Ins. Co. v. Duel*, 324 U.S. 154, 162 (1945)).

[81] Docket 122 at 38 (first citing *Lucia v. SEC*, 585 U.S. 237 (2018); then citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020); and then citing *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021)).

[82] *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020).

[83] *Id.* (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).

[84] *Id.* at 1595 (first quoting *United States v. Tohono O'odham Nation*, 563 U.S. 307, 316 (2011); and then quoting Restatement (Second) of Judgments § 24 cmt. b (1982)).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 19 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 19 of 29

have invoked the Appointments Clause in that litigation to challenge the constitutionality of the FSB.

However, even if claim preclusion does not apply, the Court finds that the State's challenges pursuant to the Appointments Clause fail. "The Appointments Clause specifies the exclusive ways of appointing 'Officers of the United States.'"[85] The Clause provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law."[86] The Clause further provides that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."[87] As such, "[t]he Appointments Clause applies only to 'Officers of the United States'—not simple employees. Unlike employees, officers, whether principal or inferior, exercise 'significant authority pursuant to the laws of the United States,' and their duties are 'continuing and permanent,' rather than 'occasional or temporary.'"[88] For example, Administrative Law Judges at the Securities and Exchange Commission[89] and Immigration Judges and Board of Immigration Appeals ("BIA") Officers are

---

[85] *Cody v. Kijakazi*, 48 F.4th 956, 960 (9th Cir. 2022) (quoting U.S. Const. art. II, § 2, cl. 2).

[86] U.S. Const. art. II, § 2, cl. 2.

[87] *Id.*

[88] *Duenas v. Garland*, 78 F.4th 1069, 1072 (9th Cir. 2023) (quoting *Lucia*, 585 U.S. at 241, 245).

[89] *Lucia*, 585 U.S. at 244-48.

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 20 of 29

Case 1:22-cv-00054-SLG    Document 129    Filed 03/29/24    Page 20 of 29

constitutional officers because their "responsibilities are legally defined and continuous" and they "wield substantial authority."[90]

The State advances two challenges to the FSB: (1) that it is unconstitutional because the Appointments Clause provides that "Officers of the United States . . . shall be established by Law" and the FSB was created by regulation and not by statute;[91] and (2) that the FSB's members are principal officers and therefore they must be appointed by the President with the consent of the United States Senate.[92] As to the State's first contention, Plaintiffs counter that the FSB was created by law through regulation, and "Congress directed in Title VIII that '[t]he Secretary shall prescribe such regulations as are necessary and appropriate to carry out [the Secretary's] responsibilities under this subchapter.'"[93] Regarding the State's second challenge, Plaintiffs maintain that the FSB's members are employees, not officers at all, but, at most, FSB members are inferior officers and do not require appointment by the President and confirmation by the Senate.[94]

First, the Court finds that the FSB was established by law. The Appointments Clause provides that "Congress may by Law vest the Appointment

---

[90] *Duenas*, 78 F.4th at 1073.

[91] Docket 73 at 44-46; U.S. Const. art. II, § 2, cl. 2.

[92] Docket 73 at 46-50.

[93] Docket 101 at 40-41 (quoting 16 U.S.C. § 3124); Docket 109 at 46-47; Docket 110 at 58.

[94] Docket 101 at 42-48.

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 21 of 29

Case 1:22-cv-00054-SLG    Document 129    Filed 03/29/24    Page 21 of 29

of such inferior Officers, as they think proper, in the . . . Heads of Departments."[95]

ANILCA accords to the Secretaries the authority to "prescribe such regulations as are necessary and appropriate to carry out his responsibilities under" ANILCA.[96] And so, in ANILCA, Congress, by law, vested the appointment of inferior officers necessary to carry out ANILCA in the Secretaries of the Interior and Agriculture. And there is nothing improper about the Secretaries creating the FSB by promulgating federal regulations, as it is a "black-letter principle that properly enacted regulations have the force of law."[97]

The State relies on *Office of Personnel Management v. Richmond* for the proposition that because the Appointments Clause provides that "Congress may by Law" vest the appointment of inferior officers in the Secretaries, inferior office positions must be created by law, meaning only by statute.[98] However, that case concerned Congress's sole authority to appropriate funds from the Treasury under a different constitutional clause—the Appropriations Clause.[99] And while language in the Appointments Clause suggests that principal officers "shall be established by Law," with respect to inferior officers, the Appointments Clause requires only

---

[95] U.S. Const. art. II, § 2, cl. 2.

[96] 16 U.S.C. § 3124.  *See id.* at § 3102(12) (defining "Secretary" as the Secretary of the Interior, but when the National Forest System is implicated, as the Secretary of Agriculture).

[97] *Flores v. Bowen*, 790 F.2d 740, 742 (9th Cir. 1986).

[98] Docket 122 at 71 (citing *OPM v. Richmond*, 496 U.S. 414, 424 (1990)); Docket 73 at 45.

[99] *Richmond*, 496 U.S. at 424 (quoting U.S. Const. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law.")).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 22 of 29

that Congress, by law, vest the appointment of inferior officers in the head of a department.[100] Because Congress did so here in ANILCA, the Court finds that the FSB was lawfully created.

Next, the Court finds that members of the FSB are constitutional officers, not employees. The responsibilities of the FSB's members are "legally defined" by federal regulations, the FSB's responsibilities are "continuous" in that they have a continuing obligation to ensure a rural subsistence priority in Alaska under ANILCA, and federal regulations do not provide for a term limit for members of the FSB.[101] Further, FSB members exercise "significant authority pursuant to the laws of the United States,"[102] in that they are empowered to issue regulations pursuant to subparts C and D of the regulations implementing ANILCA, allocate subsistence uses of fish and wildlife, and restrict or eliminate the taking of fish and wildlife on public lands in Alaska.[103]

The question is therefore whether the FSB's members are principal or inferior officers. "When distinguishing between these types of officers, [courts] mainly look at whether the officer's work is 'directed and supervised at some level' by other officers appointed by the President with the Senate's consent."[104] In

---

[100] U.S. Const. art. II, § 2, cl. 2.

[101] *See* 50 C.F.R. § 100.10; *Duenas*, 78 F.4th at 1073.

[102] *Lucia*, 585 U.S. at 245 (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)).

[103] 50 C.F.R. § 100.10(d)(4)(i), (iv), (vi), (ix).

[104] *Duenas*, 78 F.4th at 1073 (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 23 of 29

Case 1:22-cv-00054-SLG    Document 129    Filed 03/29/24    Page 23 of 29

*Duenas v. Garland*, the Ninth Circuit held that immigration judges and BIA members are inferior officers because "[t]he Attorney General—who is appointed by the President with the consent of the Senate—ultimately directs and supervises the work of both officials."[105]

Here, the Court finds that the members of the FSB are inferior officers, as their work is directed by the Secretaries, they are ultimately supervised by either the Secretary of the Interior or the Secretary of Agriculture, and Presentially-appointed and Senate-approved officers also supervise the five *ex officio* members of the FSB.[106] The federal regulations promulgated by the Secretaries direct FSB members as to the FSB's responsibilities, the scope of its authority, and the objectives of the FSB's actions. For example, the FSB is tasked with determining which communities in the State qualify as rural and which rural communities have customary and traditional uses of specific fish or wildlife, and establishing priorities for the subsistence taking of fish and wildlife on public lands;[107] the Secretaries have provided the FSB with factors and criteria to consider when making

---

U.S. 477, 510 (2010)). *See Arthrex, Inc.*, 594 U.S. at 13.

[105] *Duenas*, 78 F.4th at 1073 (citing 8 C.F.R. § 1003.1(a)(1) ("[Members of the BIA] shall . . . act as the Attorney General's delegates in the cases that come before them.")) (additional citations omitted).

[106] *See* Docket 101 at 44-45.

[107] 50 C.F.R. § 100.10(d)(4)(ii), (iii), (viii).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 24 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 24 of 29

customary and traditional use determinations and when prioritizing subsistence uses among rural Alaskans.[108]

Additionally, members of the FSB are "supervised at some level" by the Secretaries. In the final rule establishing the FSB, the Secretaries responded to a comment regarding what is now 50 C.F.R. § 100.13, noting that

> [t]o simplify and localize the process for promulgating rural determinations, customary and traditional use determinations, seasons and bag limits, and methods and means provisions, the Secretaries have delegated administrative and signature authority for subparts C and D to the Board. As with any such internal departmental delegation, the Secretaries remain responsible, as statutorily charged, for the proper administration of the program.[109]

More explicitly, the Secretaries also acknowledged that the rule "delegated promulgation and signature authority for regulations of Subparts C and D to the Board," but that "[t]his delegation does not constitute a delegation of the Secretaries' final authority over these, or other subparts, of this rule."[110]

The Court agrees with the United States that "the absence of a specified (or mandatory) path for higher level review does not render FSB members principal officers,"[111] and that while "[t]he Board is the final administrative authority on the promulgation of subparts C and D regulations relating to the subsistence taking of

---

[108] *Id.* §§ 100.16, 100.17.

[109] Subsistence Management Regulations for Public Lands in Alaska, Subparts A, B, and C, 57 Fed. Reg. at 22947.

[110] *Id.* at 22946.

[111] Docket 101 at 46 (citing *Fleming v. U.S. Dep't of Agric.*, 987 F.3d 1093, 1103 (D.C. Cir. 2021)).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 25 of 29

fish and wildlife on public lands," the Secretaries are not precluded from reviewing the FSB's actions or supervising the FSB's conduct.[112]

Additionally, five of the FSB's members are the Alaska Regional Director, U.S. Fish and Wildlife Service; Alaska Regional Director, National Park Service; Alaska Regional Forester, U.S. Forest Service; the Alaska State Director, Bureau of Land Management; and the Alaska Regional Director, Bureau of Indian Affairs.[113] Each of these positions is supervised "at some level" by other officers appointed by the President with the Senate's consent.[114] The remaining members

---

[112] 50 C.F.R. § 100.13(a)(2). The State maintains that "*Arthrex* makes clear that any behind-the-scenes oversight is irrelevant." Docket 122 at 77 (citing 594 U.S. 1). However, the record indicates that the Department of the Interior routinely reviews—and, in fact, approves—proposed regulatory changes approved by the FSB, demonstrating that the Secretary of the Interior in fact provides final review of the FSB's regulatory actions pursuant to subparts C and D. *See* Docket 53-1 at 17 (email from Assistant Regional Director, Subsistence, U.S. Fish and Wildlife Service, Alaska Region, to Senior Advisor for Alaskan Affairs, Department of the Interior, noting that "the final rule for 2020-2022 wildlife regulations is still waiting for Dept approval before it can be published in the FR. In the interim, to enact these regulatory changes in time for the upcoming hunts (many of which begin Sept 1), the Board can act under its authority for temporary special actions to enact these while waiting for the Dept. to sign the final rule."). The Court finds such supervision by the Secretary of the Interior highly relevant to the inquiry as to whether FSB members are principal or inferior officers.

[113] 50 C.F.R. § 100.10(b)(1).

[114] *See* 16 U.S.C. § 742b(b) (establishing office of Director of U.S. Fish and Wildlife Service and providing for the appointment of the Director by the President with the advice and consent of the Senate); 54 U.S.C. § 100302(a)(1) (providing for the appointment of the Director of the National Park Service by the President with the advice and consent of the Senate); 36 C.F.R. § 200.1(b) (noting that "[t]he Chief of the Forest Service, under the direction of the Secretary of Agriculture, administers the formulation, direction, and execution of Forest Service policies, programs, and activities); 43 U.S.C. § 1731(a) (establishing office of Director of the Bureau of Land Management and providing for the appointment of the Director by the President with the advice and consent of the Senate); 43 U.S.C. § 1453 (creating two Assistant Secretaries of the Interior and providing for their appointment by the President with the advice and consent of the Senate). One of the Assistant Secretaries of the Interior is the Assistant Secretary for Indian Affairs. *See* U.S. Department of the Interior, Indian Affairs, *Office of the Assistant Secretary for Indian Affairs*, https://www.bia.gov/as-ia (last visited Mar. 29, 2024).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 26 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 26 of 29

are appointed by the Secretary of the Interior, with the consent of the Secretary of Agriculture, and as such they are directly accountable to the Secretary.[115]

In sum, the Court finds that the FSB was created by law and the members of the FSB are properly appointed inferior officers.[116]  As such, no violation of the Appointments Clause has occurred.

* * *

As the State's arguments against federal preemption of ADF&G's orders pursuant to *Sturgeon* and the Appointments Clause fail, the State is not entitled to summary judgment.  And because the State has failed to create a genuine dispute of material fact as to federal preemption, the Court grants summary judgment to the United States. The United States can impose a rural subsistence priority on the Kuskokwim River under ANILCA.

## IV.    Permanent Injunction

Plaintiffs seek a permanent injunction preventing the State "from reinstating Defendants' 2021 orders, from proceeding under Defendants' 2022 orders, or from

---

[115] *See* Docket 101 at 47 (citing Docket 52-4 at 5 (Secretary's letter noting dismissal of FSB Chairman as "perhaps marking a new direction by this Administration")); Docket 52-4 at 7 (terms and conditions of appointment of public FSB member noting that "[s]upervision and guidance on terms of employment for the position shall be assigned to the Alaska Affairs Office of the Secretary's Office").

[116] The State did not assert that, if the FSB members are inferior officers, that their appointment is unconstitutional.

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 27 of 29

taking similar actions interfering with or in contravention of federal orders addressing ANILCA Title VIII and applicable regulations."[117]

An injunction is an "extraordinary remedy never awarded as of right."[118] "To be entitled to a permanent injunction, a plaintiff must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction."[119]

As explained above, Plaintiffs have succeeded on the merits in this case. And, for the reasons outlined in the Court's prior order granting a preliminary injunction, Plaintiffs have satisfied the remaining factors and are therefore entitled to a permanent injunction.[120] They have shown irreparable harm to the United States' ability to enforce ANILCA's rural subsistence priority and to federally qualified subsistence users caused by the State's issuance of conflicting emergency orders. And they have shown that the balance of the equities and the public interest support a permanent injunction, as allowing a state to enforce a

---

[117] Docket 1 at 24. *See* Docket 12-1 at 7; Docket 38-1 at 7; Docket 41 at 5; Docket 97 at 7.

[118] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[119] *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019) (quoting *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Rels.*, 730 F.3d 1024, 1032 (9th Cir. 2013)).

[120] *See Kuskokwim I*, 608 F. Supp. 3d at 809-13. The only argument offered by the State as to a permanent injunction is one sentence, that "because the United States and the Intervenors cannot succeed on the merits, their requests for a permanent injunction should likewise be denied." Docket 73 at 34.

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 28 of 29

regulation that is preempted by federal law in violation of the Supremacy Clause is neither equitable nor in the public interest.[121]

## CONCLUSION

In light of the foregoing, the Court **DENIES** the State's Cross-Motion for Summary Judgment at Docket 73 and **GRANTS** the United States' Motion for Summary Judgment at Docket 70.

The State is **ENJOINED** from reinstating ADF&G's 2021 or 2022 orders and from taking similar actions interfering with or in contravention of federal orders addressing Title VIII of ANILCA and applicable regulations on the Kuskokwim River within the Yukon Delta National Wildlife Refuge.

The Clerk of Court shall enter a final judgment accordingly.

DATED this 29th day of March, 2024, at Anchorage, Alaska.

_/s/ Sharon L. Gleason_
UNITED STATES DISTRICT JUDGE

---

[121] *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available." (citation omitted)).

Case No. 1:22-cv-00054-SLG, *USA v. SOA*
Order re Motion and Cross-Motion for Summary Judgment
Page 29 of 29

Case 1:22-cv-00054-SLG   Document 129   Filed 03/29/24   Page 29 of 29